RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
DAMALI A. TAYLOR (S.B. #262489)
dtaylor@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:     +1 415 984 8700
Facsimile:      +1 415 984 8701

AMY LAURENDEAU (S.B. #198321)
alaurendeau@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California  92660
Telephone:     +1 949 823 6900
Facsimile:      +1 949 823 6994

Attorneys for Defendant
FORD MOTOR COMPANY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VANESSA MILLER,<br><br>              Plaintiff,<br><br>     v.<br><br>FORD MOTOR COMPANY,<br><br>              Defendant. | Case No. 2:20-cv-01796-TLN-CKD<br><br>**DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)(6) AND LOCAL RULE 230(A) AND (B)**<br><br>Hearing Date: November 12, 2020<br>Time:        2:00 p.m.<br>Judge:      Hon. Troy L. Nunley<br>Courtroom:  2, 15th Floor<br><br>Action Filed:  September 4, 2020 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................... 1

II.   BACKGROUND FACTS ...................................................................... 3

III.   LEGAL STANDARD ............................................................................ 4

IV.   ARGUMENT ......................................................................................... 4

    A.   Plaintiff's Breach of Express Warranty Claim (Count VI) Fails Because She Does Not Allege Ford Breached Any of the Limited Warranty's Terms and Does Not Allege She Relied on the Warranty in Purchasing Her Vehicle. ........................................................................................... 4

        1.   Plaintiff Does Not Allege That Ford Refused to Make A Repair During the Warranty Period. .......................................... 4

        2.   Plaintiff Fails to Adequately Allege that Any Warranty Formed the Basis of Her Bargain. ................................................. 6

    B.   Plaintiff's Implied Warranty Claims (Counts III & V) Should Be Dismissed Because Her Vehicle Was Fit for Ordinary Use During the Period of the Warranty. .......................................................................... 7

        1.   Plaintiff's Vehicle Was Fit For Its Ordinary Purposes. (Counts III and V). ................................................................... 7

        2.   Plaintiff's Implied Warranty Is Limited To The Duration Of The Limited Warranty. (Counts III and V) ..................... 8

        3.   Plaintiff's Implied Warranty Claim Under the California Commercial Code (Count V) Further Fails Because Plaintiff Is Not In Privity With Ford. ....................................... 9

        4.   Plaintiff's Claim for Breach of Implied Warranty under the Song-Beverly Act (Count III) Also Fails Because She Purchased Her Vehicle Used from a Third Party, Not Ford. ............................. 10

    C.   Plaintiff's Claim Under the Magnuson-Moss Warranty Act (Count IV) Fails Along With the Other Warranty Claims, and as to Her Class Claim Because She Did Not Use the Available Informal Dispute Mechanism First. ....................................................................................................... 10

    D.   Plaintiff's Fraud-Based Claims (Counts I, II, & VII) Should be Dismissed Because Plaintiff Does Not Allege a Misrepresentation or Concealment of Undisclosed Material Fact Ford Knew at the Time of Sale. ............................... 11

        1.   Plaintiff Has Not Alleged Ford Had Knowledge of Material Facts About the Purported Defect. ........................................ 12

        2.   Plaintiff Has Not Alleged She Encountered or Relied on Any Statements About The Vehicle Before She Purchased It. ......................... 15

        3.   Plaintiff Also Cannot State A UCL Claim (Count II) Because She Has Not Alleged Restitutionary Harm. ......................... 16

        4.   Plaintiff Has Not Alleged Any "Unfair" Practice Separate From Her Failed Fraud-Based And Warranty Claims. (Count II) ............................ 16

        5.   Plaintiff Has Not Alleged A "Transaction" That Could Support a CLRA Claim. (Count I) ............................................... 17

**TABLE OF CONTENTS**
(continued)

Page

E.   Plaintiff Has Not Stated A Claim for Unjust Enrichment (Count VIII) Because a Contract Governs the Rights At Issue and Because Ford Received No Benefit from Plaintiff. .................................................... 17

F.   Plaintiff's Equitable Claims Should be Dismissed.  (Counts, I, II III & VIII)......................................................................................................... 18

V.   CONCLUSION ............................................................................................. 19

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Similasan Corp.*,
   96 F. Supp. 3d 1063 (S.D. Cal. 2015) ................................................................. 11

*Am. Suzuki Motor Corp. v. Super. Ct.*,
   37 Cal. App. 4th 1291 (1995)................................................................................ 7

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013)............................................................. 12, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 4

*Banh v. Am. Honda Motor Co., Inc.*,
   2019 WL 8683361 (C.D. Cal. Dec. 17, 2019) ....................................................... 5

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735 (E.D. Mich. 2017) ................................................................ 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 4

*Berenblat v. Apple, Inc.*,
   2009 WL 2591366 (N.D. Cal. Aug. 21, 2009) ...................................................... 9

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
   94 Cal. App. 4th 151 (2001)................................................................................ 18

*Cholakyan v. Mercedes-Benz USA, LLC*,
   796 F. Supp. 2d 1220 (C.D. Cal. 2011)................................................................. 7

*Cipollone v. Liggett Grp., Inc.*,
   505 U.S. 504 (1992) ............................................................................................ 5

*Clemens v. DaimlerChrysler Corp.*,
   534 F. 3d 1017 (9th Cir. 2008).............................................................. 6, 9, 10, 11

*Coleman v. Boston Sci. Corp.*,
   2011 WL 3813173 (E.D. Cal. Aug. 29, 2011) ................................................... 6, 7

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006)............................................................................... 6

*Davis v. S. Energy Homes, Inc.*,
   305 F.3d 1268 (11th Cir. 2002)........................................................................... 11

*Dei Rossi v. Whirlpool Corp.*,
   2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) ....................................................... 6

*Deras v. Volkswagen Grp. of Am., Inc.*,
   2018 WL 2267448 (N.D. Cal. May 17, 2018) ................................................ 14, 18

*Durkee v. Ford Motor Co.*,
   2014 WL 4352184 (N.D. Cal. Sept. 2, 2014)....................................................... 18

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
  2015 WL 4941789 (N.D. Cal. Aug. 19, 2015) ........................................................................ 19

*Foulkrod v. Ford Motor Co.*,
  2019 WL 3064478 (C.D. Cal. Apr. 10, 2019) ........................................................................ 10

*Frenzel v. AliphCom*,
  76 F. Supp. 3d 999 (N.D. Cal. 2014) ...................................................................................... 9

*Fulford v. Logitech, Inc.*,
  2008 WL 4914416 (N.D. Cal. Nov. 14, 2008) ....................................................................... 17

*Gerstle v. Am. Honda Motor Co.*,
  2017 WL 2797810 (N.D. Cal. June 28, 2017) ....................................................................... 18

*Gertz v. Toyota Motor Corp.*,
  2011 WL 3681647 (C.D. Cal. Aug. 22, 2011) ........................................................................ 5

*Gray v. Toyota Motor Sales, U.S.A.*,
  2012 WL 313703 (C.D. Cal. Jan. 23, 2012), *aff'd*, 554 F. App'x 608 (9th Cir.
  2014) ...................................................................................................................................... 15

*Green v. Canidae Corp.*,
  2009 WL 9421226 (C.D. Cal. June 9, 2009) ......................................................................... 17

*Greenbroz, Inc., v. Laeger Built LLC*,
  2017 WL 3622308 (S.D. Cal. Aug. 22, 2017) ......................................................................... 8

*Grodzitsky v. Am. Honda Motor Co.*,
  2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ................................................................... 14, 15

*Hauck v. Advanced Micro Devices, Inc.*,
  2019 WL 1493356 (N.D. Cal. Apr. 4, 2019), *aff'd*, 816 F. App'x 39 (9th Cir.
  2020) ........................................................................................................................... 13, 14, 17

*Hill v. Opus Corp.*,
  464 B.R. 361 (C.D. Cal. 2011) .............................................................................................. 16

*In re Actimmune Mktg. Litig.*,
  2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) .................................................................... 16, 17

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
  2010 WL 2813788 (D.N.J. July 9, 2010) ............................................................................... 16

*In re Ford Tailgate Litig.*,
  2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ....................................................................... 18

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  801 F. Supp. 2d 993 (S.D. Cal. 2011) ................................................................................... 16

*In re MyFord Touch Consumer Litig.*,
  291 F. Supp. 3d 936 (N.D. Cal. 2018) ................................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................................................ 7, 11

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................ 13

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ............................................................................ 12

*Johnson v. Nissan N. Am., Inc.*,
   272 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................................. 4

*Kearney v. Hyundai Motor Co.*,
   2010 WL 9093204 (C.D. Cal. June 4, 2010) ..................................................... 11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................. 4, 12, 15

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ........................................................................ 6

*Keegan v. Am. Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ............................................................. 4, 7

*Korea Supply v. Lockheed Martin Corp.*,
   63 P.3d 937 (Cal. 2003) .................................................................................... 16

*Long v. Graco Children's Prods. Inc.*,
   2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ..................................................... 9

*Madrigal v. Hint, Inc.*,
   2017 WL 6940533 (C.D. Cal. June 23, 2017) .................................................... 19

*Margolis v. Dial Corp.*,
   2013 WL 12069023 (S.D. Cal. Aug 23, 2013) ................................................... 11

*McQueen v. BMW of N. Am.*,
   2014 WL 656619 (D.N.J. Feb. 20, 2014) ........................................................... 14

*Mocek v. Alfa Leisure, Inc.*,
   114 Cal. App. 4th 402 (2003) .............................................................................. 7

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) .................................................................................... 18, 19

*Morris v. BMW of N. Am., LLC*,
   2007 WL 3342612 (N.D. Cal. Nov. 7, 2007) ..................................................... 13

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) .............................................................................. 4

*Mullins v. Premier Nutrition Corp.*,
   2018 WL 510139 (N.D. Cal. Jan. 23, 2018) ...................................................... 19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd* 322 F. App'x 489 (9th Cir. 2009)............... 13, 14

*Ortega v. Toyota Motor Sales, U.S.A., Inc.*,
   422 F. App'x 599 (9th Cir. 2011)................................................................................... 9

*Park-Kim v. Daikin Indus., Ltd.*,
   2016 WL 6744764 (C.D. Cal. Nov. 14, 2016), *aff'd* 747 F. App'x 639 (9th Cir.
   2019).................................................................................................................................... 6

*Philips v. Ford Motor Co.*,
   726 F. App'x 608 (9th Cir. 2018).................................................................................. 19

*Salas v. Toyota Motor Sales, U.S.A. Inc.*,
   2016 WL 7486600 (C.D. Cal. Sept. 27, 2016)......................................................... 19

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ......................................................................... 7

*Schechter v. Hyundai Motor Am.*,
   2019 WL 3416902 (D.N.J. July 29, 2019) ................................................................ 15

*Sheinfeld v. BMW Fin. Servs. NA, LLC*,
   2019 WL 4667323 (D. Nev. Sept. 24, 2019) ........................................................... 11

*Sloan v. Gen. Motors LLC*,
   2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) ......................................................... 18

*Smith v. LG Elecs. U.S.A., Inc.*,
   2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ............................................................ 9

*Snyder v. TAMKO Bldg. Prods., Inc.*,
   2019 WL 4747950 (E.D. Cal. Sept. 30, 2019) ..................................................... 6, 7

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. June 5, 2009) ...................................................... 11, 16

*Stewart v. Electrolux Home Prods., Inc.*,
   304 F. Supp. 3d 894 (E.D. Cal. 2018).................................................................... 10

*Taison Commc'ns, Inc., v. Ubiquiti Networks, Inc.*,
   2014 WL 2916472 (N.D. Cal. June 26, 2014) ........................................................ 6

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
   551 U.S. 308 (2007) .................................................................................................. 4

*Troup v. Toyota Motor Corp.*,
   545 F. App'x 668 (9th Cir. 2013)............................................................................. 8

*Tucker v. Pac. Bell Mobile Servs.*,
   208 Cal. App. 4th 201 (2012)................................................................................. 19

*Victorino v. FCA US LLC*,
   326 F.R.D. 282 (S.D. Cal. 2018)............................................................................ 10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Walton v. Rose Mobile Homes LLC*,
    298 F.3d 470 (5th Cir. 2002) ................................................................... 11

*Wash v. Major Motors Cars, Inc.*,
    2020 WL 5440555 (C.D. Cal. July 27, 2020) ............................................. 6

*Weidman v. Ford Motor Co.*,
    2019 WL 3003693 (E.D. Mich. July 10, 2019) .......................................... 8

*Weinstat v. Dentsply Int'l, Inc.*,
    180 Cal. App. 4th 1213 (2010) .................................................................. 7

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ................................................................. 13

**Statutes**

15 U.S.C. § 2308(b) .......................................................................................... 8

15 U.S.C. § 2310(a)(3)(C)(ii) ......................................................................... 11

15 U.S.C. § 2310(d) ........................................................................................ 11

Cal. Civ. Code § 1761(e) ............................................................................... 17

Cal. Civ. Code § 1770(a) ............................................................................... 17

Cal. Civ. Code § 1791(a) ............................................................................... 10

Cal. Civ. Code § 1795.5 ................................................................................. 10

Cal. Com. Code § 2314 .................................................................................... 7

Cal. Com. Code § 2316 .................................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Vanessa Miller cannot state a viable claim against Ford Motor Company from the sparse factual allegations that she purchased a used 2017 Ford Edge from a third party, Enterprise Car Sales, and later experienced two engine problems nearly 50,000 miles apart.  The first occurred while the vehicle was still under warranty and was repaired at no cost to her.  The second occurred after the warranty had expired.  Plaintiff does not allege any misrepresentation by Ford.  Nor does she allege any specific fact about her vehicle's engine that Ford both knew when it sold the vehicle and that Ford did not disclose despite an obligation to do so.  Nonetheless, she purports to represent a putative class of owners and lessors of five different Ford and Lincoln vehicle models spanning seven different model years and equipped with three different types of engines.  Her meager factual allegations about her experiences with her own vehicle are insufficient to state any claim, much less one ostensibly on behalf of so vast a class.

*First*, Plaintiff's claim that Ford breached its express warranty fails because Plaintiff does not allege facts showing any violation of the terms of Ford's New Vehicle Limited Warranty ("Limited Warranty") that accompanied her vehicle.  The first problem she alleges occurred within the time-and-mileage limits of the warranty and was repaired without cost to her, as the warranty provided.  Her other alleged problem occurred at high mileage beyond the limits covered by the warranty's express terms, so there could be no breach.  In addition, Plaintiff has not alleged the warranty formed the basis of the bargain when she purchased her vehicle used; the Complaint alleges neither that she was aware of, nor relied upon, any warranty when making the decision to purchase her vehicle used from a third party.

*Second*, Plaintiff's implied warranty claims brought under the Song-Beverly Consumer Warranty Act and California's Commercial Code likewise should be dismissed because Plaintiff has not alleged facts showing that her vehicle was unfit for the ordinary purpose of providing transportation—and indeed her use of the vehicle over tens of thousands of miles belies any such contention.  These claims further fail because Ford's Limited Warranty precludes any implied warranty beyond its durational limits.  Her claim under the Song-Beverly Act further fails

FORD'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
2:20-CV-01796-TLN-CKD

because the Act does not apply to remote manufacturers of vehicles that a plaintiff purchased used from a third party.  Plaintiff's California Consumer Code claim similarly fails, because as the purchaser of a used vehicle, she cannot satisfy the requirement that she be in privity with Ford.

**Third**, Plaintiff's claim under the federal Magnuson-Moss Warranty Act ("MMWA") fails because the claim is entirely dependent on asserting viable breach of warranty claims under state law, which Plaintiff fails to do.  Plaintiff also did not use the dispute resolute mechanism that Ford made available, which independently precludes her from bringing class claims under the statute.

**Fourth**, Plaintiff's fraud-based claims are similarly deficient.  Plaintiff's two statutory claims grounded in fraud—brought under the California Unfair Competition Law ("UCL") and Consumers Legal Remedies Action ("CLRA")—and her common law fraud-by-concealment claim are based upon allegations that Ford misrepresented or failed to disclose material facts about her vehicle's engine.  These allegations must be pled with particularity under Rule 9(b), and Plaintiff's general assertions fall far short.  She identifies no affirmative misrepresentation that Ford made.  Nor does she allege any material fact Ford actually knew about her vehicle but failed to disclose at the time Ford sold the vehicle, or even at the time Plaintiff purchased it.  Plaintiff cites less than a dozen public NHTSA complaints concerning unspecified engines and a recall Ford conducted for a **different** engine, neither of which could impute on Ford knowledge of a material fact relevant to Plaintiff's vehicle because they all post-date Ford's sale of the vehicle, and, as publicly available documents, do not provide a basis to infer Ford's unique knowledge of a material fact it failed to disclose.  Plaintiff's UCL claims fail for the additional reason that she does not allege she has an interest in any funds received by Ford, as required by the statute, nor does she allege any "unfair" conduct separate from her deficient fraud allegations.

**Fifth**, Plaintiff cannot state a claim for unjust enrichment because such a claim is legally impossible where a written contract (here, her vehicle's warranty) governs.

**Sixth and finally**, Plaintiff's equitable claims should be dismissed because an adequate remedy exists at law (namely the CLRA and Song-Beverly Act)—and under that well-settled

FORD'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
2:20-CV-01796-TLN-CKD

1   rule, her failure to state valid claims at law does not allow her to obtain an equitable remedy as a

2   consolation prize.

3   **II.      BACKGROUND FACTS**

4          Plaintiff is a California resident who purchased a 2017 Ford Edge in November 2017.

5   Class Action Complaint for Damages (Dkt. No. 1) ¶¶ 13, 33.  She did not purchase her vehicle

6   from Ford or an authorized Ford dealer, however.  *Id.* ¶ 13.  She purchased it used, from

7   Enterprise, with approximately 20,699 miles on it.  *Id.*  Plaintiff's vehicle was equipped with a

8   2.0L gasoline-fueled, turbocharged, direct-injection Ecoboost engine.  *Id.* ¶¶ 13, 22.  Plaintiff

9   does not allege that she received, viewed or relied on any specific representation or marketing

10  regarding either the Ford Edge or the engine in making her purchase.

11         Plaintiff alleges that she experienced problems with her engine in June 2018 and

12  November 2019.  *Id.* ¶ 14.  In June 2018, when the vehicle had approximately 36,000 miles on it,

13  Plaintiff's "check engine light came on" and her vehicle "began to shake."  *Id.* ¶ 33.  Her vehicle

14  was in-warranty, and a leak identified in the engine was repaired at an authorized Ford dealership,

15  at no cost to Plaintiff.  *Id.* ¶¶ 14, 33.  In November 2019, when the vehicle had approximately

16  85,000 miles on it, Plaintiff experienced a second engine problem.  *Id.* ¶¶ 14, 34.  Plaintiff's

17  vehicle was then far beyond the warranty period of five years or 60,000 miles (whichever comes

18  first).  *Id.* ¶¶ 34, 61.  Nevertheless, Ford covered $1,500 of the approximately $7,500 in repair

19  costs.  *Id.* ¶ 36.  Plaintiff does not allege that she experienced any additional problems with her

20  vehicle.

21         Based on these allegations, Plaintiff seeks to certify a class of persons in California who

22  purchased or leased 2013-2019 Ford Escapes, 2013-2019 Ford Fusions, 2015-2018 Ford Edges,

23  2017-2019 Lincoln MKCs, and 2017-2019 Lincoln MKZs equipped with 1.5L, 1.6L, or 2.0L

24  Ecoboost engines.  *Id.* ¶¶ 2, 96.  Plaintiff asserts eight claims:  violation of California's CLRA,

25  violation of California's UCL, breach of implied warranty under the Song-Beverly Act and

26  California's Uniform Commercial Code, violation of the federal Magnuson-Moss Warranty Act,

27  breach of express warranty, fraud by concealment, and unjust enrichment.  Plaintiff seeks

28  damages in an unspecified amount and various declaratory and injunctive relief.

FORD'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
2:20-CV-01796-TLN-CKD

### III.   LEGAL STANDARD

Dismissal is proper when a plaintiff's complaint does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court construes the facts alleged in the complaint in the light most favorable to the plaintiff, statements that "do nothing more than state a legal conclusion" are entitled to no deference. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The Court should not accept legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*  In addition, claims that "sound in fraud," including Plaintiff's fraud by concealment and statutory consumer claims premised on fraud allegations, are not viable unless they meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), as described more fully below.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

When resolving a "Rule 12(b)(6) motion[] to dismiss," the Court "must consider … documents incorporated … by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007).  Because Plaintiff's Complaint refers repeatedly to her vehicle's express warranty, and she bases her claims in part on its provisions, the Court may consider its terms.  *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 936 & n.38 (C.D. Cal. 2012) (considering vehicle warranty "under the 'incorporation by reference' doctrine"); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (same).

### IV.   ARGUMENT

**A.     Plaintiff's Breach of Express Warranty Claim (Count VI) Fails Because She Does Not Allege Ford Breached Any of the Limited Warranty's Terms and Does Not Allege She Relied on the Warranty in Purchasing Her Vehicle.**

**1.     Plaintiff Does Not Allege That Ford Refused to Make A Repair During the Warranty Period.**

The terms of the warranty define the scope of a manufacturer's obligation on a claim for

1   breach of express warranty.  *E.g.*, *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992).  The

2   applicable warranty here is Ford's Limited Warranty that came with Plaintiff's vehicle.  Compl.

3   ¶¶ 60, 183.  That warranty provides bumper-to-bumper coverage for the earlier of three years or

4   36,000 miles, and as relevant here, coverage for certain powertrain components for the earlier of

5   five years or 60,000 miles.  *Id.* ¶¶ 59, 61.[1]  The Limited Warranty provides that, under certain

6   circumstances, an authorized Ford dealer will, "without charge, repair, replace or adjust all parts"

7   that malfunction on Plaintiff's vehicle "during normal use during the applicable coverage period

8   due to a manufacturing defect in factory-supplied materials or factory workmanship."  2017

9   Model Year Ford Warranty Guide, attached as Ex. A to the Declaration of Randall Edwards, at 9.

10  This repair-or-replace remedy is the sole remedy available under the Limited Warranty.  Nowhere

11  does the Limited Warranty promise that once repaired, a vehicle or one of its components will

12  work perfectly or never need another repair.  Nor does it promise that the vehicle will be free of

13  defects.  On the contrary, it specifically alerts warranty-holders that "[t]his warranty does not

14  mean that each Ford vehicle is defect free," and promises that when a covered problem occurs

15  during the warranty period, Ford will repair or replace the malfunctioning part.  *Id.*

16         The Complaint shows that Ford fully complied with the terms of its Limited Warranty.

17  Plaintiff alleges that when she experienced an issue with her vehicle while it was still under

18  warranty, Ford promptly repaired Plaintiff's vehicle free of charge.  Compl. ¶ 14.  Plaintiff

19  neither alleges that she was charged for any repair while the vehicle was covered under the

20  Limited Warranty, nor that Ford ever refused or failed to make a requested repair during the

21  warranty period.  *See Gertz v. Toyota Motor Corp.*, 2011 WL 3681647, at *2 (C.D. Cal. Aug. 22,

22  2011) ("[I]n the context of automobile warranties, courts have held that an express warranty is not

23  considered breached unless and until the defendant refuses or fails to repair."); *see also Banh v.*

24  *Am. Honda Motor Co., Inc.*, 2019 WL 8683361, at *10 (C.D. Cal. Dec. 17, 2019).

25         Plaintiff claims she had to pay for her second repair, but that occurred after her vehicle

26  

_____

27  [1] Plaintiff also notes that Ford provides a limited warranty covering certified pre-owned vehicles
    for the earlier of 12 months or 12,000 miles, but does not allege Ford breached this warranty,
    presumably because her vehicle was not a certified pre-owned vehicle and both repairs identified
28  in the Complaint occurred after this coverage period expired.

                                    FORD'S MEMORANDUM IN SUPPORT OF
                                           MOTION TO DISMISS
                                         2:20-CV-01796-TLN-CKD

had been driven for 85,000 miles and thus was well outside of the warranty period.  Compl. ¶ 14.

Ford's refusal to cover this repair cannot serve as the basis for a breach of express warranty

claim, as the law is settled that a limited warranty "does not cover repairs made after the

applicable time or mileage periods have elapsed."  *Daugherty v. Am. Honda Motor Co.*, 144 Cal.

App. 4th 824, 830 (2006); *see also Wash v. Major Motors Cars, Inc.*, 2020 WL 5440555, at *2

(C.D. Cal. July 27, 2020) (dismissing claim where plaintiff experienced issue with vehicle after

warranty period lapsed); *Clemens v. DaimlerChrysler Corp.*, 534 F. 3d 1017, 1023 (9th Cir.

2008) (affirming dismissal of express warranty claims where repairs were sought after warranty

period expired).

### 2.    Plaintiff Fails to Adequately Allege that Any Warranty Formed the Basis of Her Bargain.

In California, absent privity between the parties, which is lacking here, express warranty

claims require reliance.  *Coleman v. Boston Sci. Corp.*, 2011 WL 3813173, at *4 (E.D. Cal. Aug.

29, 2011) (dismissing express warranty claim for failure to plead reliance and rejecting

"plaintiff's argument that she need not plead reliance in order to state a cognizable breach of

express warranty claim" as "contrary to California law").  In light of this reliance requirement,

Plaintiff's failure to allege that she read and relied on statements from Ford that formed the basis

of her bargain is fatal to her claim.  *Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484, at *9 (E.D.

Cal. Apr. 28, 2015) (Nunley, J.) (holding "[I]n California, a plaintiff must adequately plead

reliance or privity in order to succeed on a breach of express warranty claim."); *Snyder v.*

*TAMKO Bldg. Prods., Inc.*, 2019 WL 4747950, at *6 (E.D. Cal. Sept. 30, 2019) (Nunley, J.)

(dismissing plaintiff's express warranty claim for failure to adequately allege privity or reliance);

*Taison Commc'ns, Inc., v. Ubiquiti Networks, Inc.*, 2014 WL 2916472, at *9-10 (N.D. Cal. June

26, 2014) (finding that when plaintiffs are not in privity with the defendant courts have required

reliance); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 546 (C.D. Cal. 2012) (holding

reliance is required when there is no privity); *Park-Kim v. Daikin Indus., Ltd.*, 2016 WL 6744764,

at *9 (C.D. Cal. Nov. 14, 2016) (dismissing plaintiff's warranty claim because plaintiffs were not

in privity with the defendant and plaintiffs inadequately alleged reliance), *aff'd* 747 F. App'x 639

FORD'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
2:20-CV-01796-TLN-CKD

1   (9th Cir. 2019).  Plaintiff has not alleged that she was even aware of Ford's Limited Warranty

2   before purchasing her vehicle, much less that she relied on it.  As such, her express warranty

3   claim must be dismissed.  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 988 (N.D. Cal. 2009)

4   (failing "to allege reasonable reliance" requires dismissal of express warranty claim).[2]

5
    **B.      Plaintiff's Implied Warranty Claims (Counts III & V) Should Be Dismissed
6             Because Her Vehicle Was Fit for Ordinary Use During the Period of the
              Warranty.**

7
            **1.      Plaintiff's Vehicle Was Fit For Its Ordinary Purposes.  (Counts III and
8                     V)**

9           Plaintiff's implied warranty claims (Count III & V) fail because the alleged "defect" is

10  insufficient to render the vehicle unmerchantable.  A vehicle is merchantable if it fulfills its

11  "ordinary purpose[]."  Cal. Com. Code § 2314.  The ordinary purpose of a vehicle is to provide

12  transportation.  *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1296 (1995);

13  *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 945-46 (C.D. Cal. 2012) ("The basic

14  inquiry [for merchantability], therefore, is whether the vehicle was fit for driving.").  A vehicle

15  that provides drivers with normal transportation does not breach the implied warranty of

16  merchantability.  *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1241-42 (C.D.

17  Cal. 2011) (vehicles only need "a minimum level of quality" to be merchantable); *Mocek v. Alfa

18  Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003) (unmerchantable "means the product did not

19  possess even the most basic degree of fitness for ordinary use").

20          Plaintiff's description of an alleged defect in her vehicle falls short of alleging facts to

21  show that the vehicle was unmerchantable.  Plaintiff made extensive use of her vehicle.  Compl.

22  ¶¶ 13-14.  And before she purchased it, the prior owner(s) drove it for over 20,000 miles.  *Id*.

23  ¶ 13.  Plaintiff herself drove her vehicle for over 16,000 additional miles before allegedly

24
    ---
[2] A few federal district courts have wrongly held that reliance is not required absent privity under
25  California law.  *See e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 972 (N.D.
    Cal. 2014).  These courts have misapplied the leading California decision on this issue, *Weinstat*
26  *v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1225 (2010).  Courts that have properly
    considered *Weinstat* have concluded it cannot support a "contention that reliance is not required
27  where privity is absent." *Coleman*, 2011 WL 3813173, at *4; *see also Snyder*, 2019 WL 4747950,
    at *5 (E.D. Cal. Sept. 30, 2019) (Nunley, J.) (dismissing plaintiff's express warranty claim for
28  failure to allege privity and reliance).

1    encountering the lone in-warranty issue she complains of here, and then she drove it for another

2    nearly 50,000 miles before alleging she experienced further problems.  *Id*. ¶¶ 13-14, 33.  Plaintiff

3    alleges only a single problem with her vehicle in the first 85,000 miles, and that problem was

4    promptly repaired at no cost to her.  *Id*. ¶¶ 13-14.

5         Even though Plaintiff asserts that an alleged defect hinders the "safe" and "comfortable"

6    use of her vehicle (*id*. ¶ 8), this is a legal conclusion couched as a factual allegation that the Court

7    should not accept as true.  *See Greenbroz, Inc. v. Laeger Built LLC*, 2017 WL 3622308, at *1

8    (S.D. Cal. Aug. 22, 2017) ("[T]he Court is not bound to accept as true a legal conclusion couched

9    as a factual allegation or … allegations that are merely conclusory, unwarranted deductions of

10   fact, or unreasonable inferences." (citations and quotations omitted)).  Plaintiff does not contend

11   that she suffered any injury, was put in danger when experiencing issues with her engine,

12   believed the vehicle was unsafe to drive, or had to stop using her vehicle due to the alleged

13   defect, belying any claim that her vehicle is unfit for driving.  Under these circumstances,

14   Plaintiff has not stated a claim for breach of the implied warranty of merchantability.  *E.g.*,

15   *Weidman v. Ford Motor Co.*, 2019 WL 3003693, at *4-5 (E.D. Mich. July 10, 2019) (dismissing

16   California implied warranty claims involving alleged brake malfunction where plaintiff did "not

17   allege his vehicle cannot brake nor that he is unable to use his vehicle"); *Beck v. FCA US LLC*,

18   273 F. Supp. 3d 735, 763 (E.D. Mich. 2017) (dismissing implied warranty claims under

19   California law because "there is no indication in the complaint that, despite the safety concerns,

20   [plaintiff] has actually stopped driving his vehicle); *Troup v. Toyota Motor Corp.*, 545 F. App'x

21   668, 669 (9th Cir. 2013) (affirming district court's dismissal of implied warranty claims because

22   plaintiffs "failed to allege that their [vehicle] was unfit for its intended purpose").

23            **2.       Plaintiff's Implied Warranty Is Limited To The Duration Of The**
                       **Limited Warranty.  (Counts III and V)**
24

25        The Limited Warranty on Plaintiff's vehicle expressly limited the duration of any implied

26   warranties to "the time period covered by the written warrant[y]."  Edwards Decl., Ex. A at 6.

27   Such a limitation is specifically authorized by federal and California law.  15 U.S.C. § 2308(b);

28   *Ortega v. Toyota Motor Sales, U.S.A., Inc.*, 422 F. App'x 599, 600 (9th Cir. 2011) (finding that

FORD'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
2:20-CV-01796-TLN-CKD

Section 2308(b) "permits a party to limit the duration of an implied warranty…."); Cal. Com. Code § 2316 ("[T]o exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.").  The relevant duration of Plaintiff's Limited Warranty is, at most, five years or 60,000 miles (whichever comes first) for certain powertrain components, and shorter for other components.  Edwards Decl., Ex. A at 8.  During this period, Plaintiff alleges she experienced only a single issue at roughly 36,000 miles, which Ford promptly repaired.  Compl. ¶ 14.  This is insufficient to state a claim for breach of implied warranty.  *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1020 (N.D. Cal. 2014) (finding California implied warranty of merchantability claims fail where plaintiff did not allege that defendant "refused to repair or replace his device during the applicable warranty period").  To the extent Plaintiff's breach of implied warranty claims are predicated on allegations about her experience with the vehicle after 60,000 miles, such incidents fall outside the warranty period and cannot serve as the basis of a claim for breach of implied warranty.  *Berenblat v. Apple, Inc.*, 2009 WL 2591366, at *4 (N.D. Cal. Aug. 21, 2009) (dismissing implied warranty claim based on "one-year limitation contained in the express warranty, which appears to bar Plaintiffs from raising an implied warranty claim at this point in time"); *see also Smith v. LG Elecs. U.S.A., Inc.*, 2014 WL 989742, at *6 (N.D. Cal. Mar. 11, 2014) (upholding limitation in express warranty because it would be "wholly untenable" to "leave [Defendants] susceptible to a breach of warranty claim for every [machine] which, at any time, required repairs" (alterations in original)).

### 3. Plaintiff's Implied Warranty Claim Under the California Commercial Code (Count V) Further Fails Because Plaintiff Is Not In Privity With Ford.

Because Plaintiff purchased her vehicle used from a third party (Compl. ¶ 13), she cannot allege privity with Ford, as is required to assert a breach of implied warranty claim under the California Commercial Code.  *Clemens*, 534 F.3d at 1023 (holding that "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant," which exists only when plaintiff and defendant "are in adjoining links of the distribution chain"); *Long v. Graco Children's Prods. Inc.*, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013) ("[a] lack of vertical privity requires the dismissal of [] implied warranty claims" (alterations in original)).

1  Plaintiff cannot escape this conclusion by her invocation of the third-party beneficiary exception

2  (*see* Compl. ¶ 177); California courts do not recognize that exception in the context of consumer

3  contractual warranties.  *E.g.*, *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 915

4  (E.D. Cal. 2018) (holding the Ninth Circuit's decision in *Clemens* forecloses a third-party-

5  beneficiary exception to the rule of privity in California).  As the Ninth Circuit has stated,

6  "California courts have painstakingly established the scope of the privity requirement under

7  California Commercial Code section 2314, and a federal court sitting in diversity is not free to

8  create new exceptions to it."  *Clemens*, 534 F.3d at 1024.

> **4.    Plaintiff's Claim for Breach of Implied Warranty under the Song-Beverly Act (Count III) Also Fails Because She Purchased Her Vehicle Used from a Third Party, Not Ford.**

11          Plaintiff's Song-Beverly Act claim also should be dismissed because the Act precludes a

12  claim against a manufacturer based on the purchase of a used vehicle from a third party.  On its

13  face, the statute extends only to "consumer goods," defined as "any new product or part."  Cal.

14  Civ. Code § 1791(a).  Where a plaintiff purchased her car used from a third party, the Act only

15  creates obligations on behalf of the seller, not the manufacturer.  *Id.*; *Foulkrod v. Ford Motor Co.*,

16  2019 WL 3064478, at *4 (C.D. Cal. Apr. 10, 2019) ("A used vehicle is indeed covered under the

17  Act with regards to an implied warranty, as long as it was also accompanied by an express

18  warranty at the time of purchase.  The party responsible for that implied warranty, however, is not

19  the original manufacturer, but rather the third party distributor or retailer." (collecting cases)).

20  Plaintiff does not allege that Ford is subject to the Song-Beverly Act's extension of the implied

21  warranty to "a distributor or retail seller."  Cal. Civ. Code § 1795.5.  Nor could she:  courts

22  routinely reject such a contention.  *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 291 F. Supp.

23  3d 936, 950 (N.D. Cal. 2018) (granting summary judgment on Song-Beverly Act claims by

24  purchasers of used Ford vehicles); *Victorino v. FCA US LLC*, 326 F.R.D. 282, 301 (S.D. Cal.

25  2018) (similar).

> **C.    Plaintiff's Claim Under the Magnuson-Moss Warranty Act (Count IV) Fails Along With the Other Warranty Claims, and as to Her Class Claim, Because She Did Not Use the Available Informal Dispute Mechanism First.**

28          The MMWA creates a federal cause of action for breach of written and implied warranties

under state law, 15 U.S.C. § 2310(d), and Plaintiff's attempt to bootstrap this statute fails along with those claims, *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *9 (N.D. Cal. June 5, 2009). This is true because the MMWA does not create additional federal law protections or expand a plaintiff's rights under state warranty law. *Id.* For the reasons set forth above (*see* Sections IV.A & B *supra*), Plaintiff has not alleged a viable breach of warranty claim under state law. Therefore, the MMWA claim also should be dismissed. *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1075 (S.D. Cal. 2015) ("[D]ismissal of the state law claims requires the same disposition with respect to an associated MMWA claim." (quotations and citations omitted)); *Clemens*, 534 F.3d at 1022 n.3; *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 985-86 (N.D. Cal. 2014); *Margolis v. Dial Corp.*, 2013 WL 12069023, at *8 (S.D. Cal. Aug 23, 2013).

A further reason for dismissal of any putative class claim is that, where a warrantor has made available a valid informal dispute resolution mechanism, a plaintiff must exhaust that procedure before asserting class claims under the MMWA. 15 U.S.C. § 2310(a)(3)(C)(ii). Ford's Limited Warranty contains just such a dispute resolution mechanism: "You are required to submit your warranty dispute to the BBB AUTO LINE before exercising rights or seeking remedies under the Federal Magnuson-Moss Warranty Act." Edwards Decl., Ex. A at 7. Plaintiff has not alleged that she initiated this procedure. Thus, the MMWA class claim must be dismissed as a matter of law. *E.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 989 (dismissing MMWA claim based on failure to comply with informal dispute resolution settlement procedure in Ford's Limited Warranty); *Kearney v. Hyundai Motor Co.*, 2010 WL 9093204, at *6 (C.D. Cal. June 4, 2010); *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 478 (5th Cir. 2002); *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1272 (11th Cir. 2002); *Sheinfeld v. BMW Fin. Servs. NA, LLC*, 2019 WL 4667323, at *5 (D. Nev. Sept. 24, 2019).

**D.      Plaintiff's Fraud-Based Claims (Counts I, II, & VII) Should be Dismissed Because Plaintiff Does Not Allege a Misrepresentation or Concealment of Undisclosed Material Fact Ford Knew at the Time of Sale.**

Like Plaintiffs' fraud by concealment claim, her CLRA and UCL claims must satisfy Rule 9(b)'s heightened pleading standards because they are likewise premised on Ford's alleged concealment of a defect in her vehicle (Compl. ¶¶ 114, 131). *Kearns*, 567 F.3d at 1126 (holding

FORD'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
2:20-CV-01796-TLN-CKD

1   that if the allegations supporting a claim "allege a unified course of fraudulent conduct and rely

2   entirely on that course of conduct as the basis of [a] claim," then that claim is "grounded in fraud"

3   and is subject to Rule 9(b)'s heightened pleading standards); *Asghari v. Volkswagen Grp. of Am.,*

4   *Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) ("[P]laintiffs' UCL and CLRA claims 'sound in

5   fraud' because they are based on defendants' allegedly fraudulent omission and/or concealment

6   of material information concerning the engine defect.").  Plaintiff is required to plead the time,

7   place, and content of the alleged fraudulent representation or omission underlying these claims—

8   the "who, what, when, where, and how."  *Kearns*, 567 F.3d at 1126-27.  This important

9   procedural requirement is designed to protect a defendant from unwarranted reputational harm

10  and to prevent a plaintiff from imposing the burden and expense of fraud claims based on nothing

11  more than legal assertions.  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996).

12       Here, Plaintiff alleges generally that Ford "failed to disclose and actively concealed" the

13  alleged engine defect.  Compl. ¶¶ 10, 83.  She asserts in conclusory fashion that "Ford knowingly

14  and intentionally concealed material facts and breached its duty not to do so."  *Id.* ¶ 119.  But her

15  Complaint lacks required details about what material facts Ford knew about the alleged defect,

16  when (and how) it learned those facts, or what Ford did (or did not) represent about each

17  vehicle's condition.  Because Plaintiff has not made sufficient fact-based allegations for each

18  element of the claims, all of her fraud-based claims fail.

19          **1.     Plaintiff Has Not Alleged Ford Had Knowledge of Material Facts**

20                 **About the Purported Defect.**

21       Plaintiff fails to plead facts showing that Ford made a fraudulent omission.  A party

22  obviously cannot have an obligation to disclose facts that it did not know.  *Hauck v. Advanced*

23  *Micro Devices, Inc.*, 2019 WL 1493356, at *11 (N.D. Cal. Apr. 4, 2019) ("Under California law,

24  a manufacturer must have known of the defect *at the time of sale* for a plaintiff to state a claim for

25  fraud by omission against the manufacturer." (emphasis added)), *aff'd*, 816 F. App'x 39 (9th Cir.

26  2020); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,

27  758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) (explaining defendant "had no duty" under the

28  CLRA "to disclose facts of which it was unaware").  And as courts regularly hold, silence by a

1    manufacturer does not constitute fraud absent special circumstances creating a duty to disclose.

2    Thus, Plaintiff must state sufficient factual allegations from which the Court may reasonably infer

3    that Ford knew, at the time of sale, a material fact of which Plaintiff was unaware and that Ford

4    was required to disclose.  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145-47 (9th Cir.

5    2012).  And these allegations must be pled with particularity under Rule 9(b).  *E.g.*, *Oestreicher*

6    *v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008), *aff'd*  322 F. App'x 489 (9th Cir.

7    2009).

8        Rather than providing factual allegations to meet these requirements, Plaintiff's Complaint

9    is replete with conjecture.  Plaintiff speculates, without any particularity or supporting facts, that

10   pre-release analysis "would have revealed" the defect to Ford, and she asserts that Ford "should

11   have known" about the defect based on its warranty data, and that the (unspecified) number of

12   engine replacement orders "should have alerted Ford" to the presence of some kind of defect.

13   Compl. ¶¶ 42-49.  But nowhere does the Complaint actually allege what specific information

14   Ford knew about the supposed defect or when Ford learned that information.  Allegations based

15   solely on what a defendant "should have known" do not satisfy Rule 9(b).  *Wilson*, 668 F.3d at

16   1146; *Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, at *6 (N.D. Cal. Nov. 7, 2007)

17   (dismissing UCL claim based in fraud where "defendant correctly points out that plaintiffs fail to

18   unequivocally allege that BMW had actual knowledge that the tires were defective, instead

19   alleging that BMW 'knew or should have known' of the defects").[3]

20       The only actual facts about Ford's knowledge identified in the Complaint—a handful of

21   complaints publicly submitted to NHTSA and a publicly-announced recall—cannot establish

22   Ford's knowledge at the time it sold the vehicle as they occurred after the date of sale and would

23   not be sufficient to allege knowledge even if they occurred before the sale.  Plaintiff identifies

24   less than a dozen consumer complaints submitted to NHTSA regarding incidents that occurred

25

26   _____

[3] Plaintiff's Complaint alleges a common-law claim for fraud by concealment, not by omission.
27   *See* Compl. ¶¶ 187-202.  Even if an omission claim had been asserted (and it has not), dismissal
     still would be warranted because Plaintiff "may not state an omission claim with allegations that a
28   defendant *should have* known about a defect from general knowledge."  *Hauck*, 2019 WL
     1493356, at *12 (emphasis in original).

FORD'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
2:20-CV-01796-TLN-CKD

1    from August 18, 2017 to July 8, 2020 (*see* Compl. ¶¶ 38, 39, 54), but these complaints cannot

2    establish Ford's knowledge as Plaintiff does not allege these complaints predate Ford's original

3    sale of the vehicle. *Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 690822, at *7 (C.D. Cal. Feb.

4    19, 2013) (dismissing CLRA claim).  Even if these complaints were submitted to NHTSA before

5    Ford's sale of the vehicle, the fact that NHTSA had received a handful of complaints about

6    engine problems in a 2017 Ford Edge is entirely unremarkable and provides no basis to infer

7    Ford's knowledge of a defect.  Courts have rejected fraud-based claims where the knowledge

8    element was premised on far more alleged information than this.  *See Deras v. Volkswagen Grp.*

9    *of Am., Inc.*, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) (explaining "[f]orty-five, or even

10   fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an

11   unusually high number of complaints" that could be said to put a manufacturer on notice of a

12   defect); *Oestreicher*, 554 Supp. 2d at 967, 974 (dismissing allegations that defendant had

13   knowledge of defect "through consumer complaints and postings on the internet" because

14   "allegations of this nature … could be made about any alleged design defect in any manufactured

15   product" and "[t]he heightened pleading requirements of Rule 9(b) were designed to avoid

16   exactly this situation").  Indeed, courts repeatedly have held that a plaintiff must identify more

17   than just complaints to NHTSA to adequately state a fraud claim under Rule 9(b).  As one court

18   explained, "[t]he allegations concerning complaints filed with the NHSTA are similarly unhelpful

19   to Plaintiff here, for the simple fact that what consumers told the NHSTA about their [vehicles]

20   tells the Court nothing about what [the manufacturer] knew about [the] vehicles and when it knew

21   it." *McQueen v. BMW of N. Am.*, 2014 WL 656619, at *4 (D.N.J. Feb. 20, 2014); *see also*

22   *Grodzitsky*, 2013 WL 690822, at *7 ("courts have expressed doubt that customer complaints in

23   and of themselves adequately support an inference that a manufacturer was aware of a defect,

24   because complaints posted on a manufacturer's webpage merely establish the fact that some

25   consumers were complaining" (quotation omitted)).

26            Plaintiff likewise does not—and cannot—allege that Ford's March 27, 2017 recall of

27   certain 2013-2015 Escapes, Fiesta STs, Fusions, and Transit Connects equipped with 1.6L

28   engines (Compl. ¶ 66) occurred before it sold her vehicle (to Enterprise).  In any event, a recall

featuring different vehicle models from different model years, equipped with a different engine says nothing about Ford's knowledge at the time of sale of any defect in Plaintiff's 2017 Ford Edge equipped with a 2.0L engine. *See Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at *6-7 (D.N.J. July 29, 2019) (holding NHTSA complaints about different vehicles insufficient to show Hyundai's knowledge about plaintiffs' vehicles). And even if the recall was probative to Ford's knowledge about the engine in Plaintiff's vehicle, public notice of a recall is not evidence of concealment; on the contrary, such information is aimed primarily at members of the purchasing public, such as Plaintiff. *E.g.*, *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *8 (C.D. Cal. Jan. 23, 2012) (holding that "public information" did not constitute facts of which Toyota had "*exclusive* knowledge" (emphasis in original)), *aff'd*, 554 F. App'x 608 (9th Cir. 2014). Moreover, this public information was available *well before* Plaintiff purchased her vehicle, and thus cannot be said to have been "concealed" by Ford.

### 2. Plaintiff Has Not Alleged She Encountered or Relied on Any Statements About The Vehicle Before She Purchased It.

Plaintiff similarly has no claim for affirmative representation. Plaintiff generically asserts that Ford violated the UCL and CLRA and engaged in fraud by concealment. But Plaintiff does not identify a single, specific advertisement or affirmative statement related to her vehicle or the engine that she encountered before she purchased it. Where—as here—the plaintiff does not identify any alleged misstatements that she relied on in making her purchase, dismissal is warranted. *Kearns*, 567 F.3d at 1126 (holding that the failure to allege specific misrepresentations "fails to give Ford the opportunity to respond to the alleged misconduct"); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1006-07 (S.D. Cal. 2011) (dismissing consumer protection claims because "it is unclear what representations each Plaintiff relied on" and "the [complaint] does not consistently allege that each Plaintiff saw or read the advertising claims before purchasing the product"). "Merely stating that a purchaser heard a statement and then purchased a product in a particular year is not sufficient"—and here, Plaintiff fails to even make this baseline allegation. *Stearns*, 2009 WL 1635931, at *11; *see also In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *11 (N.D. Cal. Nov. 6, 2009) (dismissing CLRA

1   claim based on affirmative misrepresentations plaintiffs did not allege they heard or relied on).

2         **3.    Plaintiff Also Cannot State A UCL Claim (Count II) Because She Has Not Alleged Restitutionary Harm.**

3

4         Plaintiff's UCL claim fails for the additional reason that she has not alleged that any funds

5   she paid to purchase her vehicle were transmitted directly or even indirectly to Ford.  Plaintiff did

6   not purchase her vehicle from Ford, or even a Ford dealer; rather she purchased her vehicle used

7   from Enterprise after tens of thousands of miles of Enterprise's use.  Compl. ¶ 13.  Plaintiff does

8   not, and could not, allege that Ford was involved in the used-vehicle sale or received any

9   monetary benefit from it.  This is fatal to the UCL claim because a Plaintiff can only seek

10  restitution under the UCL, not damages.  *Asghari*, 42 F. Supp. 3d at 1324 (citing *Korea Supply v.*

11  *Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003)).  "To show that she is entitled to restitution, a

12  plaintiff must demonstrate that the defendant is in possession of money or property taken from

13  her."  *Id.*  Courts routinely dismiss UCL claims regarding used vehicles where, as here, "the

14  complaint alleges that [plaintiff] bought her vehicle from a third party."  *Id; see also, e.g.*, *In re*

15  *Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, 2010 WL 2813788, at *15 (D.N.J. July 9,

16  2010) (rejecting claim on same basis); *Hill v. Opus Corp.*, 464 B.R. 361, 395 (C.D. Cal. 2011)

17  ("Because plaintiffs have adduced no evidence that they had an ownership interest in specific

18  property that was transferred to defendants, they cannot obtain restitution under the UCL.").

19        **4.    Plaintiff Has Not Alleged Any "Unfair" Practice Separate From Her Failed Fraud-Based And Warranty Claims.  (Count II)**

20

21        To the extent Plaintiff's UCL claim includes "unfair" prong claims, as it appears to (*see*

22  Compl. ¶ 130), Plaintiff alleges no separate facts to support such a claim.  Where the "unfair"

23  conduct "overlap[s] entirely" with the conduct alleged to constitute "fraud," then the "unfair"

24  claim fails if the fraud claims fail.  *Hauck*, 2019 WL 1493356, at *15; *In re Actimmune Mktg.*

25  *Litig.*, 2009 WL 3740648, at *14 (explaining "because plaintiffs' UCL unfair prong claims sound

26  entirely in fraud, they must satisfy Rule 9(b)'s pleading requirement" and dismissing claim

27  because "plaintiffs have not pled defendants' fraudulent conduct with sufficient specificity").

28  And to the extent Plaintiff's "unfair" prong claim is based on Ford's alleged failure to comply

with the express warranty or provide a permanent fix, that theory fails along with the warranty claims, which define Ford's only legal obligation regarding repairs.

### 5. Plaintiff Has Not Alleged A "Transaction" That Could Support a CLRA Claim. (Count I)

Plaintiff's CLRA claim fails for the additional reason that she does not allege a "transaction" as required by the statute. The CLRA provides that certain practices are "unlawful" if "undertaken by any person in *a transaction* intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a) (emphasis added). The statute defines "transaction" as "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id.* § 1761(e). Here, Ford did not engage in any transaction with Plaintiff, who did not purchase her vehicle from Ford or even from an authorized Ford dealer; instead, she purchased it from a different company altogether (Enterprise), with no alleged connection to Ford. She does not allege facts that Ford was aware of her acquisition at the time it occurred, let alone engaged in it. Accordingly, Plaintiff's CLRA claim must be dismissed. *Green v. Canidae Corp.*, 2009 WL 9421226, at *4 (C.D. Cal. June 9, 2009) (dismissing CLRA claim because "[t]he CLRA does not provide a cause of action for consumers against the supplier of goods and services to a retailer from whom the consumer purchased"); *see Fulford v. Logitech, Inc.*, 2008 WL 4914416, at *1 (N.D. Cal. Nov. 14, 2008) (dismissing CLRA claim because "[a]lthough [plaintiff] has alleged he suffered damage as a result of [defendant's] deceptive acts, he has failed to allege that [defendant] engaged in such acts *in the course of a transaction with him*." (emphasis added) (citation omitted)).

### E. Plaintiff Has Not Stated A Claim for Unjust Enrichment (Count VIII) Because a Contract Governs the Rights At Issue and Because Ford Received No Benefit from Plaintiff.

It is well settled that "a quasi-contract action for unjust enrichment does not lie where [] express binding agreements exist and define the parties' rights." *Gerstle v. Am. Honda Motor Co.*, 2017 WL 2797810, at *14 (N.D. Cal. June 28, 2017) (dismissing unjust enrichment claim) (citing *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172

FORD'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
2:20-CV-01796-TLN-CKD

1  (2001)); *Deras*, 2018 WL 2267448, at *3 (same).  Because an express contract—the Limited

2  Warranty—governs the same subject matter here, Plaintiffs cannot pursue an unjust enrichment

3  claim.  *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *27 (N.D. Cal. Apr. 23, 2020)

4  ("Numerous cases indicate that the mere existence of a contract that defines the parties' rights

5  bars a claim for unjust enrichment."); *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D.

6  Cal. Mar. 12, 2014) (noting courts in California have "rejected independent unjust enrichment

7  claims").  A separate reason for dismissal exists because Plaintiff purchased her vehicle used

8  from Enterprise, Ford received none of the funds from that used-vehicle sale, and Ford thus

9  cannot be said to have been unjustly enriched by the sale.  *See Gerstle*, 2017 WL 2797810, at *14

10  (unjust enrichment claim is only available where "(1) the plaintiff conferred a benefit on the

11  defendant, who had knowledge of the benefit; (2) the defendant accepted and retained the benefit;

12  and (3) it would be inequitable to retain the benefit").

13      **F.**    **Plaintiff's Equitable Claims Should be Dismissed.  (Counts, I, II III & VIII)**

14      A plaintiff seeking equitable relief must show that there is no adequate legal remedy

15  available.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992); *Durkee v. Ford*

16  *Motor Co.*, 2014 WL 4352184, at *2 (N.D. Cal. Sept. 2, 2014).  Here, Plaintiff seeks equitable

17  relief, including a variety of declaratory judgments and injunctive relief pursuant to the UCL,

18  CLRA, Song-Beverly Act, and the equitable principle of unjust enrichment.  But Plaintiff seeks

19  legal damages on other claims for the same alleged conduct under the California CLRA, the

20  Song-Beverly Act, and the California Commercial Code[4]—and fails to allege any facts showing

21  why the legal remedies are inadequate for any plaintiff that had a valid claim.  Compl. ¶¶ 124,

22  149; *e.g.*, *Morales*, 504 U.S. at 381; *Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir.

23  2018) (affirming dismissal of equitable relief under UCL, FAL, and CLRA); *Salas v. Toyota*

24  *Motor Sales, U.S.A. Inc.*, 2016 WL 7486600, at *14 (C.D. Cal. Sept. 27, 2016) (dismissing UCL

25  claim and CLRA equitable remedy).  Plaintiffs cannot justify their equitable claims by pleading in

26

27  ――――――――――――――――
[4] Equitable relief is the sole remedy available under the California UCL.  *Tucker v. Pac. Bell*
*Mobile Servs.*, 208 Cal. App. 4th 201, 226 (2012); *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,

28  2015 WL 4941789, at *8 (N.D. Cal. Aug. 19, 2015).

FORD'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
2:20-CV-01796-TLN-CKD

1  the alternative:  "legal and equitable claims based on the same factual predicates are not true

2  alternative theories of relief but rather are duplicative."  *Madrigal v. Hint, Inc.*, 2017 WL

3  6940533, at *4-5 (C.D. Cal. June 23, 2017).  Nor does the ultimate outcome of the legal claims

4  matter:  dismissal of equitable claims depends on "whether an adequate remedy is available, not

5  whether the plaintiff … will be successful in that pursuit."  *Mullins v. Premier Nutrition Corp.*,

6  2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018); *see also Madrigal*, 2017 WL 6940533, at *4

7  (denial of damage claim "does not mean a legal remedy was unavailable, thereby justifying an

8  equitable remedy, but only that their claim lacks merit." (quotations omitted)).

9  **V.    CONCLUSION**

10         For the foregoing reasons, each claim in the Complaint should be dismissed.

11

12         Dated:  October 15, 2020              O'MELVENY & MYERS LLP

13

14                                              By:   */s/ Randall W. Edwards*
                                                      Randall W. Edwards
15                                              Attorneys for Defendant
                                                Ford Motor Company

16

17

18

19

20

21

22

23

24

25

26

27

28

FORD'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
2:20-CV-01796-TLN-CKD