UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA MILLER, PATSY LUND, AMBER WEST, EVAN WEST, DARRICK CHRISTODARO, AMY HOFFER, JAMES PADGETT, JILLIAN CONSTABLE, MONTERIO BUTCHER, HARLAMPI BOZHINOV, MARY GLADE, TERESA BALSZEK, CRAIG MORFORD, KELLI MORFORD, AARON MANFRA, VICTORIA MANFRA, STACEY COPPOCK, RACHEL GOODRICH, BRIAN SIMONDS, DAVID SCHIAVI, ROBYN PIROG, ZACHARY SCOTT DAMM, AMANDA GATES, AND SHARI TECHLIN, *as individuals and on behalf of all others similarly situated*, <br><br>Plaintiffs, <br><br>v. <br><br>FORD MOTOR COMPANY, <br><br>Defendant. | Case No. 2:20-cv-01796-TLN-CKD (Consolidated with Nos. 2:21-cv-00417-TLN-CKD, 2:21-cv-00468-TLN-CKD) <br><br>**STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED AND HARD COPY INFORMATION** |

I. **GENERAL GUIDELINES**

1. **General**. The purpose of this Order is to facilitate the exchange of ESI and hard copy documents in this case.

2. **Scope**. Except as specifically set forth herein, this Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of the U.S. District Courts ("Local Rules"), as applicable; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules.

3. **Limitations and Non-Waiver**. By stipulating to this Order and agreeing to produce documents, generally, in a particular form or forms, no party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

4. **Variations**. If any Party identifies a circumstance where application of this Order is not reasonably feasible, the Party will disclose to the Party requesting the ESI or hard copy documents ("Requesting Party") the reason(s) for, and circumstances surrounding, the need to vary from this Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

II. **IDENTIFICATION AND COLLECTION OF DOCUMENTS AND ESI**

5. **Custodians and Sources**. The Parties will disclose the custodians and/or non-custodial sources from which the parties will produce responsive information, including ESI, and will provide a description of the custodian's role and the applicable timeframe for collection and review of documents and ESI. Also, the Parties agree to meet and confer if disputes regarding custodians arise.

6. **Search Methodology**. If the Producing Party[1] is searching for and producing documents for custodians in response to a request for production or interrogatory solely through

---

[1] "Producing Party" shall have the same meaning as in the Protective Order entered by the Court in this case.

the use of search terms, the producing party will disclose the list of search terms to the receiving party and provide the receiving party the opportunity to propose additional reasonable search terms, where needed. No term will be added to the list if hit reports indicate that the term will generate an unreasonable number of nonresponsive documents. Focused terms and queries rather than overbroad queries should be employed. Further, the Producing Party will not be required to share the sampling of nonresponsive documents with the Receiving Party.

7. **Use of Technology Assisted Review ("TAR") or Other Search Technologies**. If the Producing Party plans to use TAR, including "predictive coding," to identify or cull documents to be reviewed or produced, the Producing Party will notify the Receiving Party in advance to discuss an appropriate protocol for that type of review.

8. **Unsearchable Documents**. If a party is using search terms and knows that the use of search terms will be ineffective based on the text or format of a particular document or set of documents (because, for example, the document has light text and OCR is ineffective), that document or documents must be reviewed, without culling by search terms, predictive coding, or other technologies that rely primarily on text.

9. **Reservation of Rights**. Upon reviewing any production made by a party to this action or conducting other investigation and discovery, no party waives its right to seek additional discovery, upon a showing of a good cause.

### III. FORM OF PRODUCTIONS

10. In general, the responsive electronic discovery shall be produced to the requesting party in a commercially reasonable manner or in the manner kept in the producing party's regular course of business, whichever is less burdensome and more economical for the producing party or as set forth herein. The format provided herein shall only be provided if it is proportional and reasonably feasible for a party to do so. If a Producing Party cannot comply with the format provided herein, the Parties will meet and confer to discuss a reasonable alternative format.

11. **ESI File Types and Formats**. All unredacted spreadsheet (e.g., Microsoft Excel, Corel Quattro, etc.) files shall be produced as native files with TIFF placeholder images. A party may seek other document types in native format on a showing of good cause. All media files,

such as audio and video files, files shall be produced as native files with TIFF placeholder images. The parties will endeavor to produce emails and other documents as TIFFs.[2] All TIFF images of native files shall be processed to show and reveal track changes, comments, and hidden content in Word documents and speaker notes and hidden content in PowerPoint files. Where reasonably possible, any occurrences of date/time auto field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged, work product or contains personal identifying information.

     a.    **TIFF Images**. Documents produced with TIFF images shall be named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. All TIFF images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

     b.    **Metadata to Be Produced**. The metadata fields detailed in Exhibit A should be produced for each document to the extent that such information is reasonably available or, in the case of metadata created during processing such as Bates numbers, created at the time of collection and processing. If a field contains privileged or work product information or information otherwise protected from disclosure under order of the Court, that information may be redacted. Responsive privileged or work product information may be noted in a corresponding privilege or work product log as set forth below.

     c.    **Native Files**. Any file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced for which a TIFF rendering of the document is not produced, the production will include a *.tiff image slip-sheet indicating the production number of the native file and the confidentiality designation, and stating

---

[2] The Producing Party may also, in some cases, produce certain documents in pdf format.

1  "File Provided Natively." To the extent that it is available, the original document text shall be
2  provided in a document-level UTF-8 text file with a text path provided in the *.dat file; otherwise
3  the text contained on the slip-sheet language shall be provided in the *.txt file with the text path
4  provided in the *.dat file. Native files will be produced in a separate folder on the production
5  media. To the extent the producing party is not able to reasonably provide a document in
6  reasonably usable TIFF format, the party may redact the document in native format. In this
7  instance, the Producing Party will maintain an unredacted copy of the native file and identify that
8  the document was redacted in native format in the production cover letter. The parties will meet
9  and confer, if the Receiving Party identifies concerns, in writing, after receipt of the production
10 letter referenced herein.

11       d.    **Production Format for Computer-Aided Engineering**. To the extent a
12 request or response calls for the production of Computer-Aided-Engineering ("CAE"), these
13 materials will be produced in the format in which they are utilized or stored in the normal course
14 of the producing party's business, which may require special software not licensed by the
15 producing party for production to third parties. For example, Ford generally produces CAE
16 models in their native format, which require special software not licensed by Ford to be viewed.
17 While Ford does not own these software programs, the programs necessary to run these models
18 are commercially available from third parties. If Plaintiffs are unable to locate commercially
19 available software programs from third parties to run the models, Ford will meet and confer with
20 Plaintiffs in an attempt to such identify commercially available programs.

21       e.    **Production Format for Hard Copy Documents**. Documents that exist in
22 hardcopy will be scanned to *.tiff image format[3] and produced with a load file, single page TIFF
23 images in the same format as electronic files, except the metadata fields provided will be limited
24 to in accordance with the specifications set forth on <u>Exhibit A</u>. Also, instead of extracted text,
25 OCR text will be provided for scanned hard copy documents if the Producing Party has applied
26 OCR to the documents. If the Producing Party has decided that the utility of the OCR does not
27 outweigh the burden, it will notify the Receiving Party and the Receiving Party can apply OCR to
28

---

[3] The Producing Party also may produce some documents in .pdf format.

the documents if it wishes to do so. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized[4]). If documents were scanned previous to this case, however, and are not logically unitized, they may be produced in the format in which they were maintained. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately. The parties will make their best efforts to unitize the documents correctly.

      f.    **Digital Photos**. Where reasonably possible, all digital photographs will be produced as full color image files in color TIFF, pdf, or native format (such as .jpg).

12.    **Databases, Structured, Aggregated, or Application Data**. The producing party will produce data exported from databases in a reasonably useable format, such as Excel, or in a .pdf report format if reasonably useable or in another reasonably useable format. If data from databases or other structured data sources cannot be produced in a reasonably useable format, the parties will meet and confer to discuss the issue.

13.    **Mobile and Handheld Device Documents and Data**. If non-duplicative responsive data that can reasonably be extracted is identified on a mobile or handheld device, that data shall be produced in accordance with this Order. To the extent that responsive data identified on a mobile or handheld cannot be produced in a reasonably useable format, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

14.    **De-NISTing**. Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

---

[4] Logical Unitization is the process of using human review of each individual page in an image collection using local cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, staples, clips, binders, report titles, similar headers and footers, and other logical indicators.

15. **Deduplication**. ESI produced by the Parties may be globally de-duplicated across all collected custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). Near-duplicate documents shall not be removed. Standalone documents shall not be deduplicated against email attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL CUSTODIANS metadata field. Should the ALL CUSTODIANS metadata field produced become outdated due to rolling productions, an overlay file providing all the custodians for the affected documents will be produced prior to substantial completion of the document production.

16. **No Email Threading**. Email thread suppression techniques will not be applied in production without written agreement of all Parties, although such techniques may be used as a review tool.

17. **Embedded Files**. Embedded files, except for images embedded in emails, are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

18. **Dynamic Fields**. If reasonably feasible, documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

19. **Parent-Child Relationships**. For email families, the parent-child relationships (the association between emails and attachments) should be preserved. Produced non-privileged email attachments should be consecutively produced with the parent email record. If a Producing Party withholds any attachment to a produced email, the Producing Party will create and produce a log of withheld email attachments identifying the reason each attachment has been withheld from production with sufficient detail for the Receiving Party to ascertain whether the withheld attachments are in fact properly withheld under the Federal Rules of Civil Procedure.

20. **Time Zone**. The time zone in which the data was processed for production will be disclosed by the Producing Party.

1   21.   **Bates Numbering**. Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, or an attachment to a document is not produced, the skipped number, document, or set of numbers should be noted with a placeholder. Produced attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

22.   **Excluded File Types**. Absent a particularized need and good cause showing, the Parties agree that there is no need to collect ESI from the following sources:

   a.   Deleted, slack, fragmented, unallocated or other data only accessible by forensics;

   b.   Random access memory (RAM), temporary files, or other data difficult to preserve without disabling the operating system;

   c.   On-line access data such as temporary internet files, history, cache, cookies, and the like;

   d.   Back-up data that is duplicative of data that can be collected elsewhere; and

   e.   Server, system, or network logs.

23.   **Redactions**. Other than as permitted by this Order, the Protective Order, or any other order entered in this litigation, or consent of the Parties, no redactions for relevance may be made within a produced document or ESI item. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "Privileged"). All redactions must be logged in a Privilege/Redaction Log, as described in paragraphs 36-39 below. Where a responsive family of documents contains both redacted and non-redacted content, or both produced and withheld documents, the Parties shall produce the remainder of the non-redacted portions of the family of

documents as TIFFs rather than natives, except for Excel spreadsheets which may be redacted in native form, and with the text/OCR corresponding to the non-redacted portions.

24.  **Color**. The requesting party may request the reproduction of documents in color TIFF format or in native format where color is necessary to understanding the document.

25.  **Load File Formats**. ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

26.  **Extracted Text and OCR**. Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR as described herein.

    a.  <u>Extracted Text (Emails, Unredacted Native ESI, and Natively Redacted Spreadsheets)</u>. All email, un-redacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files. Extracted text shall include all comments, track changes, and hidden content in Word documents and speaker's notes and hidden content in PowerPoint files. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

    b.  <u>OCR (Redacted Native ESI, Hard Copy Documents)</u>. In the event a document, other than natively redacted spreadsheets, e.g., Excel files, contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for any un-redacted portions of the documents. Document-level OCR text files shall also be provided for all hard copy scanned documents. OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.).

Documents containing foreign language text must be OCR'd using the appropriate settings for that language, (e.g., OCR of German documents must use settings that properly capture umlauts and OCR of Asian language documents must properly capture the relevant Asian characters). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

27. **Format of Extracted Text and OCR**. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

28. **Encryption**. To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection. In such cases, the Parties shall transmit the encryption key or password to a requesting Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

29. **Exception Files**. The Parties will use reasonable efforts and standard industry practices to address documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI where the document appears to contain relevant content) ("Exception Files").

IV. **PROCESSING OF NON-PARTY DOCUMENTS**

30. A Party that issues a non-Party subpoena ("Issuing Party") must include a copy of this Order with the subpoena and request that the non-Party produce documents in accordance with the specifications set forth herein.

31. The Issuing Party is responsible for producing to all other Parties any document(s) obtained pursuant to a subpoena to any non-Party in the form in which the document(s) was/were produced by the non-Party, and the requesting party shall pay reasonable copying, scanning, and imaging costs for the production. To the extent practical given the data volume and load time, productions by a non-Party should be produced by the Issuing Party to all other Parties within fourteen (14) calendar days of the non-Party's production to the Issuing Party.

32. For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties to object to a subpoena.

V. **MISCELLANEOUS PROVISIONS**

33. **Document Storage**. During the pendency of this litigation, the Parties shall make reasonable efforts to preserve the hard copy and ESI documents collected and/or produced for purposes of this litigation and to preserve the original native format version of any ESI produced in nonnative format.

34. **Effect of Order**. The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

35. **Good Faith Compliance and Conferral Obligation.** The Parties will make good faith efforts to comply with and resolve any differences concerning compliance with this Order. No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties.

VI. **PRIVILEGE/REDACTION LOGS**

36. The Parties recognize that some documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, PII, or other applicable privilege or immunity from disclosure (collectively, "privilege"). Absent further agreement by the parties, the Parties agree to produce a privilege/redaction log thirty (30) days after their initial production of documents and on a rolling basis thereafter.

37. The rolling privilege/redaction logs from the Producing Party shall be in a searchable/sortable Excel format. For each responsive document withheld or redacted because of privilege or work product, the Parties agree to include the following information on the privilege/redaction log:

    a. Date of the document;

    b. Document Type (file extension or msg or similar indication of file type for email);

    c. Document Title (documents), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged;"

    d. Subject Line (email), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged;"

    e. The beginning and ending Bates number and for other documents not produced, a numerical identifier;

    f. Author(s);

    g. Recipient(s), CC(s), BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda);

    h. General description of the nature and subject matter of the document, as well as the role of the author (e.g., attorney), that will enable other parties to assess the claim;

    i. The basis for the privilege claim (e.g., attorney-client; work product);

  When the document is an e-mail thread containing one or more separate e-mails, it shall be logged as one entry, and the Date, Author and Recipient(s), CC(s) and BCC(s) fields on the log can be provided from the top line e-mail as long as the Party withholding documents adequately describes the basis of the privilege or work product claim. Otherwise, each privileged or work product document within a family shall be separately logged. If, due to the number of privileged or work product documents involved, creating a privilege/redaction log with the information noted above would create an undue burden, the parties will meet in good faith and discuss whether a categorical log or other method may be appropriate.

  38. The Parties agree that no party is required to conduct a search or prepare a privilege/redaction log for any discovery request or portion thereof to which non-privileged or non-work product objections have been made until the non-privileged or non-work product objections have been overruled and the right to object based on the attorney-client privilege or

work product doctrine is preserved until that time. Also, the Parties agree that there is no duty to log any litigation files created or maintained by Plaintiffs' counsel or Defendants' in house or outside counsel (or those working under their direction or supervision) in connection with this Litigation only.

39. If any disputes arise concerning any privilege/redaction log, the Parties shall meet and confer to try to reach a mutually agreeable solution.

**VII.    ESI LIAISONS**

40. To promote transparency, communications, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. As proposed by the Parties, the ESI liaison for Plaintiffs shall be Annika K. Martin or her designee, and the ESI liaison for Ford shall be Sherry Rozell or her designee.

/s/ Annika K. Martin                             DATED: June 30, 2022

Annika K. Martin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Attorneys for Plaintiffs and the Proposed Class and Subclasses

/s/ Sherry A. Rozell                             DATED: June 30, 2022

Sherry A. Rozell
MCAFEE & TAFT
Attorneys for Defendant Ford Motor Company

So Ordered.

Dated:  July 5, 2022

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

**Appendix A**

**Fields to Exchange (where available)**

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| BEGBATES | Beginning production number for a given file/document | Email, E-Doc and Other[5] |
| ENDBATES | Ending production number for a given file/document | Email, E-Doc and Other |
| BEGATTACH | Production number of first page of parent | Email, E-Doc and Other |
| ENDATTACH | Production number of last page of last attachment | Email, E-Doc and Other |
| CUSTODIAN | If the Producing Party's vendor maintains separate Custodian and Duplicate Custodian fields, this field will be populated with the person, shared file or other source from whom the original file was collected | Email, E-Doc and Other |
| All CUSTODIAN | If the Producing Party's vendor maintains separate Custodian and Duplicate Custodian fields, this field will be populated with the name of other custodians the Producing Party agreed to produce who had the file but where the file was eliminated through deduplication. If the Producing Party's vendor does not maintain separate Custodian and Duplicate Custodian fields, this field will be populated with the names of all custodians the Producing Party agreed to produce who had the file | Email and E-Doc |
| FILEEXT | File extension | Email and E-Doc |
| HASH | MD5 Hash Value | E-mail and E-Doc |
| SUBJECT | E-mail subject | E-mail |
| DOCTITLE | Title field for documents | E-doc |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Copyee | E-mail |

---

[5] Other is defined as documents maintained in image file format or that were scanned from hard copy.

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| BCC | Blind Copyee | E-mail |
| DATESENT | Date Sent & Time (MM/DD/YYYY HH:MM) | E-mail |
| DATERECEIVED | Date Received & Time (MM/DD/YYYY HH:MM) | E-mail |
| MESSAGE ID | Message ID field | E-mail |
| EMAIL CONVERSATION INDEX | Field identifies e-mails within the same thread | E-mail |
| AUTHOR | Author | E-Doc |
| DATELASTMOD | Date modified & Time (MM/DD/YYYY HH:MM) | E-Doc |
| DATECREATED | Date created & Time (MM/DD/YYYY HH:MM) | E-Doc |
| DATELASTPRINTED | Date last printed & Time (MM/DD/YYY HH:MM) | E-Doc |
| FILENAME | Original file name | E-Doc |
| PAGE COUNT | Number of pages in document | E-mail and E-doc |
| ATTACHMENT RANGE | Bates number of the first page of the parent document and the last page of the last attachment or embedded document | E-mail and E-doc |
| ATTACHMENT COUNT | Number of attachments to, or documents embedded in, an email or edoc | E-mail and E-doc |
| ATTACHMENT TITLE | Title of all attachments | |
| APPLICATION | Type of application used to generate the document | E-mail and E-doc |
| DOCUMENT CATEGORY | The category of document (Email, E-doc) | E-mail and E-doc |
| FILE SIZE | The category of document (Email, E-doc) | E-mail and E-doc |
| ORIGINAL FOLDER PATH | The folder path from which the document was collected if it is feasible to collect for a particular set of data | E-mail and E-doc |
| DOC EXTENSION | The file extension of the document | E-mail and E-doc |
| REDACTED | Identifies whether the document is redacted | E-mail, E-doc and Other |
| NATIVEFILE | Path to native file as produced for Excel spreadsheets and any other native files produced | Native |

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| TEXTPATH | Path to OCR or extracted text file | E-mail, E-Doc and Other |
| TIMEZONE | The time zone in which the documents were processed | E-mail and E-Doc |
| CONFIDENTIALITY LEVEL | Level of confidentiality assigned pursuant to the Protective Order entered | E-mail, E-Doc and Other |
| PRODUCING PARTY | The name of the party producing the documents | E-mail, E-Doc and Other |
| LAST MODIFIED BY | Internal file property: the last person who modified the document | E-Doc |
| HASHIDDENTEXT | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENSLIDES | Identification of hidden fields in the documents | E-Doc |
| HASSPEAKERNOTES | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENROWS | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENCOLUMNS | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENWORKSHEETS | Identification of hidden fields in the documents | E-Doc |