1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   VANESSA MILLER, et al., as individuals
     and on behalf of all others similarly          No. 2:20-cv-01796-TLN-CKD
12   situated,

13                        Plaintiffs,

14          v.                                        **ORDER**

15   FORD MOTOR COMPANY,

16                        Defendant.

17

18          This matter is before the Court on Defendant Ford Motor Company's ("Defendant")

19   Motion to Dismiss and Motion to Stay Discovery.  (ECF Nos. 51, 56.)  Plaintiffs Vanessa Miller

20   ("Miller"); Patsy Lund ("Lund"); Amber West, Evan West (collectively, "Wests"); Darrick

21   Christodaro ("Christodaro"); Amy Hoffer ("Hoffer"); James Padgett ("Padgett"); Jillian

22   Constable ("Constable"); Monterio Butcher ("Butcher"); Harlampi Bozhinov ("Bozhinov"); Mary

23   Glade ("Glade"); Teresa Balaszek[1] ("Balaszek"); Craig Morford, Kelli Morford (collectively,

24   "Morfords"); Aaron Manfra, Victoria Manfra (collectively, "Manfras"); Stacey Coppock

25   ("Coppock"); Rachel Goodrich ("Goodrich"); Brian Simonds ("Simonds"); David Schiavi

26   _____

27   [1]      Plaintiffs spell this name as "Teresa Balaszek" in the Consolidated Class Action
     Complaint ("Consolidated Complaint"), but spell it "Teresa Balszek" in the caption, which is how
28   it appears on the docket.  Plaintiffs are directed to provide the correct spelling of this name in any
     future briefing.

                                                    1

("Schiavi"); Robyn Pirog ("Pirog"); Zachary Scott Damm, Amanda Gates (collectively, "Damm and Gates"); and Shari Techlin[2] ("Techlin") (collectively, "Plaintiffs") filed oppositions.  (ECF Nos. 57, 58.)  Defendant replied.  (ECF Nos. 59, 62.)  For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss and DENIES Defendant's Motion to Stay Discovery as moot.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiffs, 24 individuals spanning 15 states, purchased new and used 2013–19 Ford Edge, Escape, and Fusion vehicles equipped with 1.5L, 1.6L, or 2.0L Ecoboost engines.  (ECF No. 43 ¶¶ 2, 12–171.)  Plaintiffs allege the vehicles have a defect that causes engine coolant to leak, which purportedly can cause engine overheating and engine cylinder head cracking, corrosion in the cylinders, or "total engine failure."  (*Id.* at ¶¶ 4, 182–87.)  Plaintiffs allegedly experienced engine-related issues at various times after purchase such as vehicles shaking violently while in use, overheating, running rough, or catching on fire.  (*Id.* at ¶¶ 17, 39, 53, 68, 80, 140.)  Plaintiffs bring 51 claims based on an express and implied breach of warranty and fraud.  (*See generally id.*)  They further bring Magnuson-Moss Warranty Act ("MMWA"), California's Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), implied warranty, fraud by concealment, and unjust enrichment claims on behalf of a putative nationwide class.  (*Id.* at ¶¶ 275–331, 1293–1334.)

This action was initiated on September 4, 2020.  (ECF No. 1.)  On May 5, 2021, the Court issued an Order consolidating three related actions.  (ECF No. 36.)  The operative Consolidated Complaint was filed on June 21, 2021.  (ECF No. 43.)  Defendant filed the instant motion to dismiss on August 2, 2021.  (ECF No. 51.)  Plaintiffs opposed on September 24, 2021.  (ECF No. 57.)  Defendant replied on October 14, 2021.  (ECF No. 59.)  Additionally, Defendant filed a

---

[2]     Plaintiffs also list Benito Almanza and Tammy Almanza as Plaintiffs (ECF No. 43 at 2), but these names do not appear in the caption nor anywhere else in the Consolidated Complaint (*see generally id.*).  Accordingly, the Court construes this as an error and will not address these individuals.

[3]     The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Consolidated Complaint.  (ECF No. 43.)

1   motion to stay discovery on September 21, 2021.  (ECF No. 56.)  Plaintiffs opposed on October

2   14, 2021 (ECF No. 58), and Defendant replied on October 21, 2021 (ECF No. 62).

3       **II.     STANDARD OF LAW**

4           A motion to dismiss for failure to state a claim upon which relief can be granted under

5   Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th

6   Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim

7   showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*,

8   556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give

9   the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell*

10  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

11          On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

12  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

13  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

14  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

15  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

16  relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

17          Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

18  factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

19  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

20  unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

21  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

22  elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678.  Thus,

23  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

24  dismiss" for failure to state a claim.  *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004)

25  (citations omitted).  Moreover, it is inappropriate to assume the plaintiff "can prove facts that it

26  has not alleged or that the defendants have violated the . . . laws in ways that have not been

27  alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*

28  (*Associated Gen. Contractors*), 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

If a complaint fails to state a plausible claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.   ANALYSIS

Defendant moves to dismiss all 51 of Plaintiffs' claims. (*See* ECF No. 51-1.) The Court will first address the express warranty claims, followed by the implied warranty claims, then turn to the fraud-based claims, and conclude with the nationwide class claims.

#### A.   Express Warranty Claims

Defendant moves to dismiss Plaintiffs' claims on the bases that: (1) Plaintiffs' claims occurred outside the warranty's timeframe; (2) successful in-warranty repairs were completed; (3) some Plaintiffs brought their vehicle to independent mechanics; (4) Plaintiffs pleaded insufficient

allegations to support a breach of express warranty claim; and (5) certain states impose specific bars on Plaintiffs' claims.  (ECF No. 51-1 at 17–21.)  The Court will address each argument in turn.

<em>i.      Warranty Timeframe</em>

Defendant argues the express warranty claims of Hoffer (FL), Butcher (GA), the Morfords (KS), the Manfras (MD), Coppock (MI), Simonds (MN), Schiavi (NJ), and Techlin (WI) fail because the allegations establish they sought a repair after the warranty period expired.[4]  (ECF No. 51-1 at 17.)  In opposition, Plaintiffs do not dispute such vehicles were out-of-warranty but contend Defendant's warranty is unconscionable.  (ECF No. 57 at 16–17.)

Here, as it is undisputed the above Plaintiffs sought repair after the express warranty period expired, their express warranty claims fail unless the warranty is unconscionable.

<em>a)      Unconscionability</em>

"Unconscionability is ultimately a question of law for the court."  *See Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996).  "Unconscionability has both a procedural and a substantive element."  *See Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 808 (2006).  "Both elements must be present for a court to invalidate a contract or clause[.]"  *Id.*  "The procedural element of unconscionability focuses on two factors: oppression and surprise."  *Id.* at

---

[4]     The "2019 MY Limited Warranty" (the "Limited Warranty") is attached to the instant motion.  (*See* ECF No. 51-1 at 17 n.3; ECF No. 51-3.)  Defendant contends the Limited Warranty is identical to the warranty provisions for the model years (2013–19) of the class vehicles at issue.  (ECF No. 51-1 at 17 n.3.)  Plaintiffs do not oppose consideration of the Limited Warranty.  (*See generally* ECF No. 57.)  Accordingly, the Court will consider the Limited Warranty, as it is incorporated by reference in the Consolidated Complaint and is central to Plaintiffs' claims.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The Limited Warranty provides coverage for the earlier of five years or 60,000 miles.  (ECF No. 51-1 at 16–17; ECF No. 51-3 at 14.)  However, Plaintiffs allege Hoffer sought her first repair at 67,000 miles (ECF No. 43 ¶ 61), the Morfords at 66,331 miles (*id.* at ¶ 110), the Manfras at 64,500 miles (*id.* at ¶ 118), Coppock at 64,041 miles (*id.* at ¶ 125), Simonds at 64,000 miles (*id.* at ¶ 140), and Techlin at 69,150 miles (*id.* at ¶ 169).  Similarly, Schiavi brought his vehicle in for repair on October 28, 2020 — more than five years after he purchased the vehicle on July 29, 2015.  (*Id.* at ¶¶ 143, 147.)  Butcher's allegations also reveal his vehicle was out-of-warranty at the time of purchase (a 2013 vehicle purchased on November 30, 2020) and alleges no further warranty.  (*Id.* at ¶ 78.)

808.  "Oppression arises from an inequality of bargaining power which results in no real

negotiation and an absence of meaningful choice."  *Id.* (internal quotation and citation omitted).

"Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are

hidden in a prolix printed form drafted by the party seeking to enforce the disputed

terms."  *Id.* (internal quotation and citation omitted).  "The substantive element of

unconscionability focuses on the actual terms of the agreement and evaluates whether they create

overly harsh or one-sided results that shock the conscience."  *See id.* (internal quotations and

citations omitted).

Here, similarly standard warranties, despite generally being non-negotiable, have

routinely been upheld absent allegations the plaintiffs lacked other viable options to purchase a

similar product or for obtaining additional warranty protections from the defendant.  *See Smith v.

Ford Motor Co.*, 749 F. Supp. 2d 980, 993–94 (N.D. Cal. 2010), *aff'd*, 462 F. App'x 660 (9th Cir.

2011) (rejecting the plaintiff's argument that Ford's warranty was unconscionable because the

warranty was presented in the form of a nonnegotiable contract and contained a durational

limitation that Ford enforced with respect to a known, latent defect); *Berenblat v. Apple,

Inc.*, Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297, at *4–5 (N.D. Cal. Apr. 9,

2010) (holding on a motion to dismiss that the plaintiffs failed to allege "oppression" where,

despite non-negotiability of warranty terms, the plaintiffs did not allege "they lacked other

options for purchasing laptop computers or for obtaining additional warranty protections from

[the defendant] itself"); *Williams v. Yamaha Motor Co.*, No. CV 13-05066 (BRO) (VBKx), 2014

WL 12597039, at *12 (C.D. Cal. Aug. 19, 2014), *aff'd*, 851 F.3d 1015 (9th Cir. 2017) (similar);

*Knopke v. Ford Motor Co.*, No. 14-2225-JAR-JPO, 2014 WL 5817326, at *4–6 (D. Kan. Nov.

10, 2014) (similar); *White v. Volkswagen Grp. of Am., Inc.*, No. 2:11-CV-02243, 2013 WL

685298, at *4–5 (W.D. Ark. Feb. 25, 2013) (similar) (collecting cases).

Because similarly standard warranties have been upheld, and because Hoffer, Butcher, the

Morfords, the Manfras, Coppock, Simonds, Schiavi, and Techlin do not allege they lacked other

viable options to purchase a similar product or for obtaining additional warranty protections from

Defendant, the Court finds Defendant's warranty is not procedurally or substantively

1   unconscionable.  As Hoffer, Butcher, the Morfords, the Manfras, Coppock, Simonds, Schiavi, and

2   Techlin sought repair after the express warranty period expired, their express warranty claims fail.

3   For that reason, amendment would be futile.  Therefore, their express warranty claims are

4   DISMISSED without leave to amend.

5                              *ii.*        *Successful In-Warranty Repairs*

6           Defendant moves to dismiss Bozhinov (IL) and Constable's (FL) express warranty claims

7   because their allegations demonstrate Defendant's compliance with the terms of the express

8   warranty.  (ECF No. 51-1 at 18.)  In opposition, Plaintiffs argue Defendant breached the express

9   warranty by failing to fix Constable's issues at no cost and merely "giving [Bozhinov] the same

10  ineffective band-aid as it did the other Plaintiffs."  (ECF No. 57 at 13–14.)  In reply, Defendant

11  notes it erroneously noted in its motion that Constable received an engine replacement under

12  warranty and contends that while she alleges she paid for an engine replacement, she does not

13  allege the vehicle was under warranty.  (ECF No. 59 at 8 n.2 (citing ECF No. 43 ¶ 75).)  The

14  Court will address each Plaintiff in turn.

15          With respect to Bozhinov, he alleges he brought his vehicle to a Ford dealership, which

16  replaced the entire engine block.  (ECF No. 43 ¶ 89.)  He does not allege he was charged for this

17  repair or that he experienced any issues since.  (*See id.*)  Accordingly, Bozhinov's express

18  warranty claim fails because Defendant abided by the terms of the warranty by providing a free

19  successful in-warranty repair.  *See Marchionna v. Ford*, No. 94 C 275, 1995 WL 476591, at *11

20  (N.D. Ill. Aug. 10, 1995) (entering summary judgment in favor of the defendant on an express

21  warranty claim where the plaintiff's allegations showed the defendant repaired the defects as soon

22  as the plaintiff requested it and none of the problems recurred after such repairs had been made).

23          To the extent Bozhinov complains Defendant only made a temporary fix instead of

24  resolving the root of the problem, his claim similarly fails.  In *Baranco v. Ford Motor Co.*, an

25  Illinois plaintiff (as is Bozhinov) alleged Ford made only a temporary fix during the warranty

26  period.  294 F. Supp. 3d 950, 973–74 (N.D. Cal. 2018).  However, the court held "even where

27  eventual, post-warranty replacement is predictable," the warranty did not require Ford to go

28  beyond repairs allowing the vehicle to function properly during the warranty.  *Id.*; *see also*

7

1    *Cipollone v. Liggett Grp.*, 505 U.S. 504, 525 (1992) (holding the warranty terms define the

2    manufacturer's obligations).  Therefore, absent any allegations that Bozhinov experienced any

3    further issues after Defendant complied with the terms of the express warranty, Bozhinov's

4    express warranty claim is DISMISSED with leave to amend.

5            With respect to Constable, she alleges she purchased a used 2016 Ford Edge Titanium on

6    August 25, 2017, and that she brought her vehicle to Auto Nation Ford Dealership on January 2,

7    2021.  (*Id.* at ¶ 75.)  However, the Court agrees with Defendant that she does not allege the

8    vehicle was under warranty when it was repaired.  (*See* ECF No. 43 ¶¶ 70–76); *see also*

9    *Associated Gen. Contractors*, 459 U.S. at 526 (holding it is inappropriate to assume the plaintiff

10   "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways

11   that have not been alleged.").  Accordingly, Constable's express warranty claim is DISMISSED

12   with leave to amend.

13                        *iii.*        *Independent Mechanics*

14           Defendant moves to dismiss Glade (IL) and Balaszek's (IN) express warranty claims

15   because they took their vehicles to an independent mechanic, as opposed to a Ford dealership,

16   contrary to the requirements of the Limited Warranty.  (ECF No. 51-1 at 18.)  Plaintiffs oppose,

17   arguing when Balaszek presented her car to a Ford dealership for repair, the dealership attempted

18   to charge her $100 simply to inspect the vehicle, in violation of the Limited Warranty.  (ECF No.

19   57 at 14; ECF No. 43 ¶ 103.)  Plaintiffs do not respond to Defendant's argument about Glade.

20           Here, the Limited Warranty applies only if the vehicle is taken "to a Ford dealership for a

21   warranted repair during the warranty period."  (ECF No. 51-3 at 15.)  However, Glade and

22   Balaszek took their vehicles for service to "independent mechanics" instead of an authorized Ford

23   dealership.  (ECF No. 43 ¶¶ 96, 103.)  As Plaintiffs do not dispute this with respect to Glade,

24   Glade's express warranty claim is DISMISSED.  *See, e.g.*, *Knotts v. Nissan*, 346 F. Supp. 3d

25   1310, 1321 (D. Minn. 2018) (no breach "if [the plaintiff] did not submit his vehicle to a Nissan-

26   authorized dealer for repair"); *Kearney v. BMW*, No. 17-13544 (WHW-CLW), 2018 WL

27   4144683, at *15 (D.N.J. Aug. 29, 2018) (similar); *see also Walsh v. Nev. Dep't of Human*

28   *Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (where an opposition fails to address arguments in a

motion to dismiss, the plaintiff failed to demonstrate a continuing interest in pursuing a claim for relief and it was "effectively abandoned" and could not be raised on appeal).

However, Balaszek sufficiently pleaded she attempted to present her vehicle to an authorized Ford dealership but was refused an inspection unless she paid a $100 diagnostic fee. (ECF No. 43 ¶ 103; ECF No. 57 at 14.)  Defendant argues, despite such an attempt, Balaszek did not plead her vehicle was under warranty at the time.  (ECF No. 59 at 7 n.1.)  While it is possible that her vehicle was under warranty, as it had only been four years since she purchased the vehicle, absent any allegations of the vehicle's mileage at the time, the Court cannot conclude the vehicle was under warranty.  *See Associated Gen. Contractors*, 459 U.S. at 526.  Therefore, Glade and Balaszek's express warranty claims are DISMISSED with leave to amend.

<em>iv.</em>     <em>Insufficient Allegations</em>

Defendant moves to dismiss the claims of Lund (AR), Goodrich (MI), Pirog (NC), Damm and Gates (WA), Christodaro (CO), and Padgett (FL) because they allege engine problems but do not allege factual support showing these problems occurred within the warranty time and mileage limits or that Defendant refused to provide a covered repair.  (ECF No. 51-1 at 18.)  In opposition, Plaintiffs do not address Defendant's argument with respect to Lund, Goodrich, Pirog, and Damm and Gates.  (*See generally* ECF No. 57.)  However, Plaintiffs contend, with respect to Christodaro and Padgett, Defendant merely applied a "band-aid" or an "ineffective non-repair" instead of addressing the root of the problem.  (*Id.* at 13.)

Here, the Court agrees the above Plaintiffs failed to allege sufficient factual support demonstrating their engine problems occurred within the warranty time and mileage limits or that Defendant refused to provide a covered repair.  (*See* ECF No. 43 ¶¶ 22, 24, 27, 42, 46–51, 64, 67–68, 128, 132–33, 150, 154, 158, 162); *Associated Gen. Contractors*, 459 U.S. at 526.  Further, as discussed above, in the instances of Christodaro (CO) and Padgett (FL), the warranty did not require Ford to go beyond repairs allowing the vehicle to function properly during the warranty. *Baranco*, 294 F. Supp. 3d at 973–74; *see also Cipollone*, 505 U.S. 504 at 525 (holding the warranty terms define the manufacturer's obligation).  Therefore, Lund, Goodrich, Pirog, Damm

1   and Gates, Christodaro, and Padgett's express warranty claims are DISMISSED with leave to

2   amend.

3                  *v.*       *State Specific Bars*[5]

4                  *a)*      *Pre-Suit Notice*

5          Defendant argues the Arkansas, Colorado, Florida, Indiana, Maryland, Michigan, and

6   Wisconsin Plaintiffs should have provided individual pre-suit notice of the breach.  (ECF No. 51-

7   1 at 20–21, 24 (making the same argument for dismissal of the implied warranty claims).)  In

8   opposition, Plaintiffs contend the notice requirement does not require Plaintiffs to notify a

9   manufacturer of the breach, but rather is a question of whether the manufacturer had a

10  commercially reasonable opportunity to address the defect.  (ECF No. 57 at 14 (citing *Chapman*

11  *v. Gen. Motors*, No. 2:19-CV-12333-TGB-DRG, 2021 WL 1286612, at *10 (E.D. Mich. Mar. 31,

12  2021).)  Further, Plaintiffs argue in Colorado and Florida, the notice requirement only applies to

13  suits against the seller, not the manufacturer, and in Arkansas, Indiana, Maryland, Michigan, and

14  Wisconsin, a plaintiff need only present the vehicle to a dealership to satisfy the requirement.  (*Id.*

15  at 15.)

16         The Uniform Commercial Code ("UCC") requires a buyer "within a reasonable time after

17  he discovers or should have discovered any breach notify the seller of breach or be barred from

18  any remedy."  U.C.C. § 2-607(3)(a) (Am. L. Inst. & Unif. L. Comm'n 2020).  While Colorado,

19  Florida, Indiana, Maryland, Michigan, and Wisconsin have all adopted U.C.C. § 2-607(3)(a),

20  these states differ on what constitutes reasonable notice and to whom notice must be given.

21         In the instant matter, though each state has different requirements, Plaintiffs' allegations

22  are sufficient to create a question of fact as to whether their conduct, typically bringing their

23  vehicle to the dealer for repairs, is sufficient pre-suit notice such that they have stated a plausible

24  breach of warranty claim. (ECF No. 43 ¶¶ 27, 46, 48–49, 51– 53, 61, 68, 73, 75, 103, 118, 125,

25  132–33, 169); *see, e.g.*, *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 284–87 (E.D. Mich.

26   

_____

[5]     The Court notes Defendant moves to dismiss Lund (AR) and Damm and Gates's (WA)
27  express warranty claims because Arkansas and Washington have a reliance requirement.  (ECF
No. 51-1 at 20.)  However, the Court need not address the argument, as those claims have already
28  been dismissed.

1    Mar. 1, 2021) (collecting cases from Colorado and Michigan); *Jarrett v. Panasonic Corp. of N.*

2    *Am.*, 8 F. Supp. 3d 1074, 1083 (E.D. Ark. 2013); *Gen. Matters, Inc. v. Paramount Canning Co.*,

3    382 So. 2d 1262, 1263–65 (Fla. 1980); *Wallman v. Kelley*, 976 P.2d 330, 333 (Colo. App. 1998);

4    *Advantage Eng'g, Inc. v. Burks Pumps, Inc.*, 28 F.3d 1216, No. 93-3883, 1994 WL 317216, at

5    *7–9 (7th Cir. 1994) (analyzing Indiana law); *Firestone Tire & Rubber Co. v. Cannon*, 53 Md.

6    App. 106, 118 (1982), *aff'd*, 295 Md. 528 (1983); *Brame v. Gen. Motors LLC*, 535 F. Supp. 3d

7    832, 839–40 (E.D. Wis. 2021).  Therefore, dismissal of their claims at this stage would be

8    inappropriate.[6]

9                                 B.    Implied Warranty Claims

10        Defendant moves to dismiss Plaintiffs' implied warranty claims on the bases that: (1)

11   Plaintiffs' vehicles were merchantable; (2) Plaintiffs' issues occurred after the warranty expired;

12   (3) Plaintiffs were not in contractual privity with Defendant; and (4) Miller's (CA) Song-Berly

13   Consumer Warranty Act ("Song-Berly Act") implied warranty claim fails because she

14   purchased her car used from a third-party retailer.  (ECF No. 51-1 at 21–24.)  The Court will

15   address each argument in turn.

16                                 i.    *Merchantability*

17        For each of the states at issue (with the exception of Washington), Plaintiffs have brought

18   at least one claim of breach of the implied warranty of merchantability.  (*See* ECF No. 43.)  Most

19   claims, although not all,[7] are based on state statutes that have adopted UCC § 2-314.  (*See id.*)

20   UCC § 2-314 provides "a warranty that the goods shall be merchantable is implied in a contract

21   for their sale if the seller is a merchant with respect to goods of that kind" and "[g]oods to be

22   merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods

23

24   ───────────────
     [6]      Defendant makes the same argument as to the implied warranty claims of Lund (AR),
     Hoffer (FL), Padgett (FL), Balaszek (IN), the Manfras (MD), Coppock (MI), Goodrich (MI), and
25   Techlin (WI).  (ECF No. 51-1 at 24.)  Accordingly, the Court similarly finds Plaintiffs'
     allegations are sufficient to create a question of fact as to whether their conduct is sufficient pre-
26   suit notice such that they have stated a plausible breach of warranty claim.  Therefore, dismissal
     of their implied warranty claims at this stage would be inappropriate as well.

27
     [7]      (*See, e.g.*, ECF No. 43 ¶¶ 305–318 (alleging a breach of implied warranty under the Song-
28   Berly Consumer Warranty Act).)

                                                      11

are used." U.C.C. § 2-314.  For all claims, whether or not it is based on the UCC, Plaintiffs generally offer the same basic theory — the vehicles were not fit for their ordinary purpose.  (*See, e.g.*, ECF No. 43 ¶ 328 (alleging Defendant "breached this implied warranty in that its Class Vehicles are (1) not fit for ordinary use, and (2) not of a merchantable quality."); *id.* at ¶ 388 (alleging "the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff[s] and Class Members with reliable, durable, and safe transportation.").)

In its motion, Defendant argues the implied warranty claims should be dismissed because the ordinary purpose of a car is to provide transportation, and Plaintiffs have not alleged they were unable to drive their vehicles.  (ECF No. 51-1 at 21–22.)  In opposition, Plaintiffs argue that the vehicles were not fit for providing safe transportation.  (ECF No. 57 at 17 (citing *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1276 (E.D. Mich. 2021)).)

The Court is unpersuaded that dismissal at this stage is warranted.  The ordinary purpose of a vehicle is not just to provide transportation, but rather safe and reliable transportation.  *See, e.g.*, *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (citing *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989) ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects.  Thus, where a car can provide safe, reliable transportation[,] it is generally considered merchantable.") (internal quotation marks omitted)).  Here, it is a question of fact for the jury as to whether the alleged engine defect posed enough of a safety risk such that the vehicles at issue could not be said to provide safe and reliable transportation.

Indeed, the degree of safety risk varies amongst Plaintiffs.  (ECF No. 43 ¶¶ 17, 140 (the alleged engine issue caused cars to shake violently while the vehicle was in use); *id.* at ¶¶ 39, 53 (vehicles overheated and/or stop working shortly after starting up); *id.* at ¶ 68 (a vehicle ran rough); *id.* at ¶ 80 (most seriously, a vehicle caught on fire).)  However, the level of risk to safety need not be gross or certain.  *See, e.g.*, *Aguilar v. Gen. Motors, LLC*, No. 13-cv-00437-LJO-GS, 2013 WL 5670888, at *7 (E.D. Cal. Oct. 16, 2013) (finding sufficient the plaintiff's allegation

1   that a steering defect *could* "result in potential failure of power steering, pulling to the left and

2   right, and loss of steering control during the normal course of driving[;] [s]uch a defect would

3   render a vehicle unfit for driving"); *cf. Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997–

4   98 (N.D. Cal. 2013) (in the context of assessing a fraud claim, finding "that Plaintiffs successfully

5   showed that the alleged defect posed a genuine safety risk because a headlamp flickering or going

6   out at night or in inclement weather could put the car's driver in danger"); *see also Cholakyan v.*

7   *Mercedes–Benz USA, LLC*, 796 F. Supp. 2d 1220, 1243–44 (C.D. Cal. 2011) (noting plaintiff's

8   allegation that a water leak defect could cause engine and/or electrical failure: "[v]ehicles subject

9   to engine failure cannot be said to be merchantable"). Accordingly, the Court finds the degree of

10  safety risk posed by the alleged engine issues cannot be decided on a Rule 12(b)(6) motion. *See,*

11  *e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 981 (N.D. Cal. 2014).

12                                    *ii.*          *Durational Limit*

13         Defendant moves to dismiss the implied warranty claims of Plaintiffs Hoffer (FL),

14  Butcher (GA), the Morfords (KS), the Manfras (MD), Coppock (MI), Simonds (MN), Schiavi

15  (NJ), and Techlin (WI) because their alleged problems occurred after the Limited Warranty

16  expired. (ECF No. 51-1 at 22–23.) In opposition, said Plaintiffs concede "the duration of an

17  implied warranty tracks that of an express warranty" but argue the durational limit at issue is

18  unconscionable. (ECF No. 57 at 21.)

19         The Limited Warranty expressly limits the duration of any implied warranties to "the time

20  period covered by the written warranties." (ECF No. 51-3 at 12.) This limitation is enforceable

21  under Florida, Georgia, Michigan, Minnesota, and New Jersey law, as well as the MMWA. *See,*

22  *e.g.*, *Fisher v. Harley-Davidson Motor Grp.*, No. 2:19-CV-14154-ROSENBERG/MAYNARD,

23  2019 WL 8014364, at *5 (S.D. Fla. Oct. 18, 2019); *Hemmings v. Camping Time RV Ctrs., LLC*,

24  No. 1:17-CV-1331-TWT, 2017 WL 4552896, at *7 (N.D. Ga. Oct. 11, 2017); *In re Gen. Motors*

25  *Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 627–28 (E.D. Mich. 2019);

26  *Knotts*, 346 F. Supp. 3d at 1321–22 (Minnesota); *Nobile v. Ford*, No. 10-1890 (PGS), 2011 WL

27  900119, at *4 (D.N.J. Mar. 14, 2011); 15 U.S.C. § 2308(b) ("implied warranties may be limited in

28  duration to the duration of a written warranty of reasonable duration").

It is undisputed the above Plaintiffs allege engine-related issues for the first time outside the Limited Warranty period.  (ECF No. 51-1 at 22–23; ECF No. 57 at 21.)  As already discussed, Defendant's durational limitation is not unconscionable.  *See supra* Part III.A.*i*.  Accordingly, their implied warranty claims similarly fail.  *See In re Gen. Motors Air*, 406 F. Supp. 3d at 628 (dismissing express and implied warranty claims where plaintiffs did not seek warranty coverage "during the durational limits" of warranties); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1020 (N.D. Cal. 2014) (dismissing implied warranty claims for failure to allege defendant "refused to repair or replace his device during the applicable warranty period").

However, Defendant could not locate Kansas, Maryland, or Wisconsin[8] law that squarely addresses whether a limitation on an implied warranty is enforceable.  Defendant urges the Court to similarly apply this principle to these states, given the weight of authority and Plaintiffs' concession.  (ECF No. 51-1 at 22 n.15.)  However, the Court declines to do so.  On a motion to dismiss, it is Defendant's burden to demonstrate Plaintiffs have failed to state a claim upon which relief can be granted.  *See Avalanche Funding, LLC v. Five Dot Cattle Co.*, No. 2:16-cv-02555-TLN-KJN, 2017 WL 6040293, at *3 (E.D. Cal. Dec. 6, 2017) ("In the context of a motion to dismiss, the burden is on the defendant to prove that the plaintiff failed to state a claim.").  As Defendant fails to point to any authority in Kansas, Maryland, or Wisconsin which adopts and applies the above principle, and Defendant's own Limited Warranty acknowledges not all states permit a durational limit on implied warranties (ECF No. 51-3 at 13 ("Some states do not allow [Defendant] to limit how long an implied warranty lasts or to exclude or limit incidental or consequential damages, so the limitation and exclusions described above may not apply to you.")), Defendant has failed to meet its burden.

---

[8]     Defendant cites *Le Bleu Corp. v. Fed. Mfg. LLC*, No. 17-CV-549, 2018 WL 4936032, at *4 (E.D. Wis. Oct. 10, 2018), for the proposition that Wisconsin follows the same principle. (ECF No. 51-1 at 22 n.15.)  However, the Court is unpersuaded.  In that case, at issue was whether the terms and conditions disclaimed an implied warranty, whereas here, at issue is whether an implied warranty can be limited in duration to the duration of an express warranty.

1    Therefore, as amendment would be futile, given Hoffer, Butcher, Coppock, Simonds, and

2    Schiavi's implied warranty claims occurred outside the enforceable durational limits of the

3    Limited Warranty, their claims are DISMISSED without leave to amend.  However, Defendant's

4    motion to dismiss the implied warranty claims of the Morfords, the Manfras, and Techlin is

5    DENIED in the absence of controlling state law to the contrary.

6                            *iii.        Privity*

7    Defendant moves to dismiss the implied warranty claims of Miller (CA) (only her

8    common-law claim, not her Beverly-Song Act claim), Hoffer (FL), Butcher (GA), Glade (IL),

9    and Techlin (WI) for lack of privity because these Plaintiffs purchased their vehicles from third-

10   party retailers.  (ECF No. 51-1 at 23.)  Defendant further moves to dismiss the Wests (CA),

11   Christodaro (CO), Padgett (FL), Constable (FL), Bozhinov (IL), Balaszek (IN), the Morfords

12   (KS), the Manfras (MD), Coppock (MI), Simonds (MN), Schiavi (NJ), and Pirog's (NC) implied

13   warranty claims because, though they purchased their vehicles from authorized Ford dealerships

14   (ECF No. 43 ¶¶ 42, 64, 71, 86, 99, 106, 114, 121, 136, 143, 150), such dealerships are not

15   Defendant's agents for purposes of privity.[9]  (ECF No. 51-1 at 24.)  Plaintiffs oppose, arguing

16   Colorado, Indiana, Kansas, Maryland, Michigan, Minnesota, and New Jersey have no privity

17   requirement for implied warranty of merchantability claims.  (ECF No. 57 at 19.)  Further,

18   Plaintiffs contend the remaining states have a third-party beneficiary exception.  (*Id.* at 20–21.)

19   As an initial matter, Defendant does not cite any supporting authority for its contention

20   that Colorado, Indiana, Kansas, Maryland, Michigan, Minnesota, and New Jersey law require

21   privity for an implied warranty claim.  (*See* ECF No. 51-1 at 24; ECF No. 59 at 10–11.)

22   Conversely, Plaintiffs cite case law supporting the proposition that there is no such privity

23   requirement in those states.  (ECF No. 57 at 19–20 (collecting cases).)

24   However, much of Plaintiffs' cited authority is either not on point or supports Defendant's

25   contention.  *See Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1026 (N.D. Ind. 2011)

26   ("Thus, in most cases 'manufacturers or wholesalers who sell to retailers are not liable for

27   _____

28   [9]      The Court need not address Hoffer (FL), Butcher (GA), Schiavi (NJ), and Coppock's (MI)
         implied warranty claims here, as they have already been dismissed without leave to amend.

1   warranties the retailer makes to the ultimate buyer.'" (quoting *Hunt v. Unknown Chem. Mfr. No.*

2   *One*, No. IP 02-389-C, No. IP02-389CMS, 2003 WL 23101798, at \*12 (S.D. Ind. Nov. 5,

3   2003))); *Gonzalez v. Pepsico*, 489 F. Supp. 2d 1233, 1243 (D. Kan. 2007) ("The Kansas Supreme

4   Court has stated, however, that the implied warranty of merchantability '[is] not extended to a

5   remote seller or manufacturer of an allegedly defective product, which is not inherently

6   dangerous, for only economic loss suffered by a buyer who is not in contractual privity with the

7   remote seller or manufacturer.'" (quoting *Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*, 675

8   P.2d 887, 898–99 (Kan. 1984))); *Morris v. Osmose Wood Preserving*, 340 Md. 519, 546 (Md. Ct.

9   App. 1995) (in the context of real estate not subject to the UCC, "[t]he plaintiffs, however, cannot

10  sue these defendants under the new home warranties because the warranties are given only by

11  builders and real estate brokers, not by manufacturers of construction materials").  Further,

12  neither party cites any North Carolina case law, except to state an exception applies.

13  Accordingly, the Court will only discuss each state's requirement in turn to the extent it has been

14  properly briefed.  *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1066 (9th Cir. 2009) ("Judges

15  are not like pigs, hunting for truffles buried in briefs.") (citations omitted)).

16                          *a)      California*

17          "Under California Commercial Code [§] 2314 . . . a plaintiff asserting breach of warranty

18  claims must stand in vertical contractual privity with the defendant," meaning buyer and seller

19  "are in adjoining links of the distribution chain."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d

20  1017, 1023 (9th Cir. 2008).  However, California district courts are split on the application of

21  the third-party beneficiary exception to the privity requirement.  *See Stewart v. Electrolux Home*

22  *Prod., Inc.*, No. 1:17-cv-01213-LJO-SKO, 304 F. Supp. 3d 894, 914 n.10–11 (E.D. Cal. Jan. 9,

23  2018) (collecting cases).  Plaintiffs point to multiple cases for the proposition that the Ninth

24  Circuit did not reject the third-party beneficiary exception in *Clemens* because the Ninth Circuit

25  did not specifically consider the third-party beneficiary exception or cases that have adopted

26  the third-party beneficiary exception.  (ECF No. 57 at 20 (collecting cases).)

27          However, the Ninth Circuit's omission of a third-party beneficiary exception in its list of

28  exceptions to the rule of privity persuades this Court and others that "*Clemens* forecloses a third-

party beneficiary exception to the rule of privity." *Stewart*, 304 F. Supp. 3d at 915.  "*Clemens*

specifically addressed exceptions to privity in the consumer warranty context, but it did not

recognize or acknowledge a third-party beneficiary exception." *Id.*  The district court in

*Stewart* further noted "there is no published California authority recognizing this exception

to privity in the consumer warranty context." *Id.*  The *Clemens* court also noted that other state

courts have split on this question, but added "California courts have painstakingly established the

scope of the privity requirement under . . . [§] 2314," and stated it was "not free to create new

exceptions to it." *Clemens*, 534 F.3d at 1024.

Accordingly, the Court is bound by *Clemens* and DISMISSES the Wests and Miller's

implied warranty claims without leave to amend.  *See Stewart*, 304 F. Supp. 3d at 915.

*b)      Colorado*

Privity is not a required element of a warranty claim in Colorado.  *See In re ConAgra*

*Foods, Inc.*, 90 F. Supp. 3d 919, 989 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods,*

*Inc.*, 674 F. App'x 654 (9th Cir. 2017), *and aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844

F.3d 1121 (9th Cir. 2017) (citing *Hansen v. Mercy Hospital, Denver*, 40 Colo. App. 17, 18, 570

P.2d 1309 (1977) ("lack of privity no longer presents an obstacle to recovery for breach of

implied warranty")); *see also* Colo. Rev. Stat. Ann. § 4-2-318 ("A seller's warranty whether

express or implied extends to any person who may reasonably be expected to use, consume, or be

affected by the goods and who is injured by breach of the warranty").

Here, as Defendant cites no contrary authority, the Court finds no privity requirement

under Colorado law.  Accordingly, Defendant's motion to dismiss Christodaro's (CO) implied

warranty claim for lack of privity is DENIED.

*c)      Florida*

"Florida law requires privity between the contracting parties for an action to

proceed." *Cruz v. Mylan, Inc.*, No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, at *2 (M.D. Fla.

Feb. 17, 2010); *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988).  "A plaintiff who

purchases a product, but does not buy it directly from the defendant, is not in privity with that

defendant." *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995).  However,

Florida jurisprudence recognizes the third-party beneficiary exception. *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2014); *see also Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1032 (11th Cir. 2017) ("Florida courts have found the privity requirement to be satisfied when a manufacturer directly provides a warranty to, or otherwise has direct contact with, a buyer who purchases from a third party."); *Brusherd v. Ford Motor Co.*, No. 3:08-CV-513-J-JRK, 2009 WL 10670567, at *3 (M.D. Fla. Sept. 18, 2009) ("Thus, under Florida law, properly pled agency allegations can give rise to privity between manufacturers and purchasers necessary to maintain a breach of implied warranty claim.").

Here, though Florida law requires privity, Padgett (FL) and Constable (FL) have adequately plead an exception to the requirement. (*See* ECF No. 43 ¶¶ 514 ("[Defendant] directly sold and marketed vehicles equipped with the engines to customers through authorized dealers, like those from whom Florida Plaintiffs and the Florida Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. [Defendant] knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Florida Plaintiffs and the Florida Sub-Class Members, with no modification to the defective engines."); *see also id.* at ¶ 9, 197 (alleging Defendant's authorized dealerships are Defendant's agents for vehicle sales, leases, servicing, and repairs)); *Brusherd*, 2009 WL 10670567 at *3. Therefore, Defendant's motion to dismiss Padgett and Constable's implied warranty claims for lack of privity is DENIED.

### d) Illinois

Under Illinois law, a claim for breach of implied warranty requires privity of contract. *Neptun Light v. Edison Opto USA Corp.*, No. 19 CV 6865, 2020 WL 1042055, at *2 (N.D. Ill. Mar. 4, 2020); *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1121 (N.D. Ill. 2019); *Chapman*, 531 F. Supp. 3d 1257 at 1277 (finding Illinois has a privity requirement with no exceptions). Further, "bare allegations of an agency relationship between the manufacturer and dealer are insufficient." *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1000 (N.D. Ill. 2008) (citing *Bushendorf v. Freightliner Corp.*, 13 F.3d 1024, 1026 (7th Cir. 1993)). Indeed, "'an automobile dealer or other similar type of dealer, who . . . merely buys

18

1   goods from manufacturers or other suppliers for resale to the consuming public, is not his

2   supplier's agent.'" *Zaro v. Maserati N.A., Inc.*, No. 07 C 3565, 2007 WL 4335431, at *4 (quoting

3   *Bushendorf*, 13 F.3d at 1026).

4        Here, as Illinois has a privity requirement and, contrary to other states, allegations of an

5   agency relationship are insufficient, Bozhinov's implied warranty fails, as he purchased his

6   vehicle from an authorized Ford dealership.  (ECF No. 43 ¶ 86.)  Further, Glade has not and

7   cannot allege privity of contract with Defendant, as she purchased her vehicle from a third-party

8   retailer.  (*See id.* at ¶¶ 91–97); *Zaro*, 2007 WL 4335431 at *4.  Therefore, Bozhinov and Glade's

9   implied warranty claims are DISMISSED without leave to amend.

10                  *e)     Indiana*

11       Defendant cites no Indiana authority for its contention that Indiana has a privity

12  requirement.  (ECF No. 51-1 at 23–24.)  In opposition, Plaintiffs cite *Atkinson v. P & G-Clairol,*

13  *Inc.*, 813 F. Supp. 2d 1021, 1026 (N.D. Ind. 2011).  (ECF No. 57 at 19.)  While *Atkinson* supports

14  the contention that "[v]ertical privity is not required for a claim of breach of the implied warranty

15  of merchantability even if that claim sounds in contract[,]" it also states "'manufacturers or

16  wholesalers who sell to retailers are not liable for warranties the retailer makes to the ultimate

17  buyer.'"  *Id.* (quoting *Hunt*, 2003 WL 23101798, at *12).  In the instant matter, it is ambiguous

18  how to apply this law, given Defendant sells to retailers but also provides the warranty in tandem

19  with the retailer.  Absent thorough briefing on the issue,[10] the Court declines to address the

20  question.

21                  *f)     Wisconsin*

22       Wisconsin also has a privity requirement.  *Allstate Ins. Co. v. Fasco*, No. 09-CV-00311,

23  2010 WL 11640206, at *2 (E.D. Wis. Feb. 16, 2010) (citing *Paulson v. Olson Implement Co.*, 319

24  N.W.2d 855, 857–58 (Wis. 1982)).

25       Here, Plaintiffs do not respond to Defendant's argument.  (ECF No. 57 at 19–21.)  "Where

26  a party fails to address arguments against a claim raised in a motion . . . , the claims are

27  _____

28  [10]     The briefing on Kansas, Maryland, Minnesota, and North Carolina's requirements is
    similarly lacking.  Accordingly, the Court declines to address the requirements in those states.

1  abandoned and dismissal is appropriate." *Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-2999-

2  BEN (WVG), 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014); *Walsh*, 471 F.3d at 1037.

3  Thus, Plaintiffs' failure to respond to Defendant's arguments is a concession of those arguments.

4  Accordingly, the Court GRANTS Defendant's motion to dismiss Techlin's (WI) implied

5  warranty claim with leave to amend.

6                    *iv.*      *Song-Beverly Act*

7       Defendant moves to dismiss Miller's (CA) Song-Beverly Act implied warranty claim

8  because she purchased her car used from a third-party retailer.  (ECF No. 51-1 at 24.)  Plaintiffs

9  fail to address Defendant's argument in opposition.  (*See generally* ECF No. 57.)

10      The Song-Beverly Act provides that "every sale of consumer goods that are sold at retail

11  in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty

12  that the goods are merchantable."  Cal. Civ. Code § 1792.  "Consumer goods" are defined as

13  "new" products.  *Id.* § 1791(a).  However, § 1795.5 expands the act to cover used consumer

14  goods that are accompanied by express warranties, but the obligation of warranties falls on the

15  distributor or retailer, not the original manufacturer.  *Id.* § 1795.5(c); *see Johnson v. Nissan N.*

16  *Am., Inc.*, 272 F. Supp. 3d 1168, 1178–79 (N.D. Cal. 2017).

17      Here, though the Song-Beverly Act covers used vehicles, Defendant, as the manufacturer,

18  is not liable for implied warranties where Plaintiffs purchased their vehicle from a third-party

19  retailer.  *See Foulkrod v. Ford*, No. 5:18-cv-02613-SJO-KK, 2019 WL 3064478, at *4 (C.D. Cal.

20  Apr. 10, 2019) (finding the Song-Beverly Act covers used vehicles with respect to an implied

21  warranty and the party responsible for the implied warranty is the third-party distributor or

22  retailer, not the defendant — the original manufacturer of the vehicle — as the plaintiffs did not

23  allege they purchased the vehicle from the defendant).  Therefore, Miller's (CA) Song-Beverly

24  Act implied warranty claim is DISMISSED.  *See Victorino v. FCA US LLC*, 326 F.R.D. 282, 301

25  (S.D. Cal. 2018); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 950 (N.D. Cal.

26  2018) (§ 1795.5 "does not create additional obligations on a manufacturer vis-à-vis used car

27  purchasers; rather, it simply states that the retailer or distributor is also subject to whatever

28  obligations already apply to the manufacturer.").  As amendment would be futile, given

1  Defendant cannot be liable on an implied warranty claim as a matter of law, the claim is

2  DISMISSED without leave to amend.

3                              C.        Fraud-Based Claims

4        Defendant moves to dismiss Plaintiffs' fraud-based claims on the grounds that: (1)

5  Plaintiffs have not alleged an affirmative misrepresentation; (2) there was no failure to disclose;

6  (3) Plaintiffs have not alleged Defendant knew of a material fact prior to sale it failed to disclose;

7  and (4) certain state fraud claims fail for individualized reasons.  (ECF No. 51-1 at 25–32.)  The

8  Court will address each argument in turn.

9        As an initial matter, the Court notes that fraud claims are subject to the heightened

10  pleading standard as required by Rule 9(b).  Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor*

11  *Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) provides: "In alleging fraud or mistake, a

12  party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent,

13  knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ.

14  P. 9(b).  There are several purposes for Rule 9(b): (1) to provide defendants notice to defend

15  against allegations; (2) to deter plaintiffs from filing complaints as a tool for discovery; (3) to

16  protect defendants from reputation harm that may result from fraud charges; and (4) to prohibit

17  plaintiffs from exhausting resources absent some factual basis.  *Kearns*, 567 F.3d at 1125.

18        "When an entire complaint, or an entire claim within a complaint, is grounded in fraud

19  and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district

20  court may dismiss the complaint or claim."  *Vess v. Ciba–Geigy Corp. USA*, 317 F. 3d 1097,

21  1107 (9th Cir. 2003).  The Ninth Circuit has made clear that dismissal under Rule 9(b) should be

22  with leave to amend unless the district court "determines that the pleading could not possibly be

23  cured by the allegation of other facts."  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.

24  2001).

25                              i.        *Affirmative Misrepresentation*

26        Defendant contends Plaintiffs do not plead an actionable affirmative misrepresentation —

27  namely, they fail to identify any misstatements they relied on in making their purchases.  (ECF

28  No. 51-1 at 25.)  However, in opposition, Plaintiffs argue they pleaded a theory of omission,

1    rather than an affirmative misrepresentation.  (ECF No. 57 at 22.)  In reply, Defendant argues

2    Plaintiffs do not plead what information Defendant was obligated to disclose prior to the purchase

3    of their vehicles.  (ECF No. 59 at 11.)

4          Typically, "[a]verments of fraud must be accompanied by 'the who, what, when, where,

5    and how' of the misconduct charged," but claims based on an omission "can succeed without the

6    same level of specificity required by a normal fraud claim."  *Kearns*, 567 F.3d at 1124; *Baggett v.*

7    *Hewlett–Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).  This is because a plaintiff

8    alleging an omission-based fraud will "not be able to specify the time, place, and specific content

9    of an omission as would a plaintiff in a false representation claim."  *Baggett*, 582 F. Supp. 2d at

10   1267; *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007).

11   "Because such a plaintiff is alleging a failure to act instead of an affirmative act, the plaintiff

12   cannot point out the specific moment when the defendant failed to act."  *Baggett*, 582 F. Supp. 2d

13   at 1267.

14         In the instant matter, Plaintiffs adequately allege the "who, what, when, where, and how,"

15   given the inherent limitations of an omission claim.  The "who" is Defendant, the "what" is its

16   knowledge of a defect, the "when" is prior to the sale of Plaintiffs' vehicles, the "where" is the

17   various channels of information through which Defendant sold its vehicles, and the "how" is

18   Defendant's omission — a failure to disclose a known defect.  (*See generally* ECF No. 43); *see*

19   *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (2014) (finding the same).

20   Accordingly, Plaintiffs have sufficiently alleged a theory of omission-based fraud.

21                              *ii.        Failure to Disclose*

22         Defendant argues Plaintiffs' claims fail to plead what Defendant was required to disclose

23   to consumers.  (ECF No. 51-1 at 26.)  In opposition, Plaintiffs contend Defendant knew or should

24   have known about the engine defect.  (ECF No. 57 at 22.)

25         In general, a claim based on failure to disclose information requires a plaintiff to

26   demonstrate the defendant had a duty to disclose such information.  *See Falk*, 496 F. Supp. 2d at

27   1094–95.  Such a duty arises "(1) when the defendant is in a fiduciary relationship with the

28   plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the

plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Id.* at 1095 (quotation and citation omitted). Here, Plaintiffs' claims are premised on the notion that the defect was material and Defendant had exclusive knowledge of the defect or actively concealed it from consumers.

The standard for materiality of the defect depends on whether it arises in-warranty or post-warranty. "[A] manufacturer has a duty to disclose any defects that fall within the warranty period, whether relating to safety or to costly repairs, that would have caused the consumer to not purchase the car if they had been disclosed." *Apodaca v. Whirlpool Corp.*, No. 13-00725 JVS (ANx), 2013 WL 6477821, at *7 (C.D. Cal. Nov. 8, 2013) (quotation omitted). However, if the defect arises outside of the warranty period, the manufacturer only has a duty to disclose "safety issues." *Id.* The purpose of this limitation is to ensure durational limits on express warranties are not rendered meaningless. *Baranco*, 294 F. Supp. 3d at 960. To allege a safety issue for purposes of a post-warranty claim, "a party must allege (1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect and the alleged safety hazard; and that the manufacturer knew of the defect at the time a sale was made." *Williams*, 851 F.3d at 1025 (citation and quotation omitted).

Both in-warranty and post-warranty claims also require a plaintiff to demonstrate "actual reliance" on the omission. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). Actual reliance can be demonstrated by showing that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id.* (quotations and citations omitted). The Court may infer or presume the plaintiff would have behaved differently if the omitted information was material. *Id.* However, a plaintiff must show they "would have been aware of a disclosure by [the defendant]." *Id.* at 1226.

### a)   In-Warranty Claims

Plaintiffs adequately allege they would not have purchased the vehicles if they had known of the defect. (*See, e.g.*, ECF No. 43 ¶ 21 ("If [Defendant] had adequately disclosed these facts, [Miller] would not have bought her vehicle or would have paid less for it."); *id.* at ¶ 40 ("If they

1    had known these facts, they would not have bought the vehicle or would have paid less for it.");

2    *id.* at ¶ 74 ("Furthermore, had she known of the Engine Defect, [Constable] would not have

3    purchased her vehicle or would have paid less for her vehicle").)  This assertion is plausible.

4    *Baranco*, 294 F. Supp. 3d at 963.  Further, Plaintiffs allege they would have "seen and been

5    aware of the disclosures."  (*See, e.g.*, ECF No. 43 ¶¶ 60, 67, 88, 95, 102, 109, 117, 124, 131, 139,

6    146, 153, 161.)

7        Accordingly, as Plaintiffs need only show they would have behaved differently (*e.g.*, that

8    they would not have purchased their vehicle or that they would have paid less for it) had they

9    known the truth, to the extent the defect arose during the warranty period, Plaintiffs adequately

10    allege materiality for in-warranty claims.  *See Baranco*, 294 F. Supp. 3d at 964–65.

11            *b)*      *Post-Warranty Claims*

12        For post-warranty manifestations of a defect, a plaintiff must allege the defect creates an

13    unreasonable safety risk.  *See id.* at 965.  "Where a plaintiff alleges a sufficiently close nexus

14    between the claimed defect and the alleged safety issue, the injury risk need not have come to

15    fruition."  *Williams*, 851 F.3d at 1028.  However, if the nexus is not "sufficiently close," the

16    plaintiff must allege examples of the safety risk coming to fruition to plausibly plead an

17    unreasonable safety hazard.  *Id.*

18        Here, as above, Plaintiffs allege they would have "seen and been aware of the

19    disclosures."  (*See, e.g.*, ECF No. 43 ¶¶ 60, 67, 88, 95, 102, 109, 117, 124, 131, 139, 146, 153,

20    161.)  Additionally, Plaintiffs have demonstrated specific safety risks directly associated with the

21    defect in question.  In particular, when the defect occurred: (1) the vehicle shook violently while

22    in use (*id.* at ¶¶ 17, 140); (2) the vehicle overheated and stop working shortly after starting up (*id.*

23    at ¶¶ 39, 53); (3) the vehicle ran rough (*id.* at ¶ 68); (4) the vehicle smoked and eventually caught

24    on fire (*id.* at ¶ 80).

25        In each instance, Plaintiffs allege such incidents with a direct causal link to the purported

26    defect.  (*See, e.g.*, *id.* at ¶ 17 ("When [Miller] took the vehicle to a Ford dealership for repairs, the

27    service center employee informed her that coolant was leaking into the engine system, and that

28    the long block needed to be replaced."); *id.* at ¶ 140 ("The dealership informed [Simonds] that his

1    vehicle needed the engine replaced because there was a coolant leak into the cylinders resulting in

2    engine failure . . ."); *id.* at ¶ 38–39 ("[Defendant] told [the Wests] that there was a problem with

3    the coolant sensor . . . on each occasion the dealership merely told the Wests to add more coolant

4    to the engine."); *id.* at ¶ 49 ("The mechanic suspected coolant intrusion into the engine's

5    cylinder."); *id.* at ¶ 68 ("The dealership confirmed diagnostic codes P0302 and P0316 and found

6    coolant leaking into a cylinder."); *id.* at ¶ 80 ("Prior to this incident, [Butcher] had experienced

7    coolant leaking from his vehicle on numerous occasions. [Butcher] had to replace the coolant

8    three times in one month because so much had leaked from the engine.").)  Moreover, Plaintiffs

9    specifically allege they experienced these safety hazards, as opposed to merely alleging safety

10   risks that could occur.

11          However, whether these safety risks are "unreasonable" is a separate question.

12   "Unreasonableness" of a safety hazard is often measured by whether the defect manifests without

13   adequate warning to prevent a vehicle occupant from being placed in danger.  *See Apodaca*, 2013

14   WL 6477821, at *9 (the plaintiff did not need to "wait until his dishwasher actually catches fire"

15   to establish an unreasonable safety risk); *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363

16   MMM (PJWx), 2014 WL 5017843, at *15 (C.D. Cal. Oct. 3, 2014) (finding allegations of

17   unreasonableness were sufficient where a water pump defect could cause an engine to overheat at

18   any time, and if it happened while vehicle was being driven, it would experience failures that

19   render vehicle unable to accelerate and cause steering and braking problems).  However, there is a

20   lack of clarity as to when a progressive condition gives rise to an actionable safety hazard.  *See*

21   *Williams*, 851 F.3d at 1028 (the alleged defect was not "unreasonable" where it "merely

22   accelerates the normal and expected process of corrosion"); *but see Daniel*, 806 F.3d at

23   1226 (holding "[a] reasonable fact finder could infer that a vehicle that experiences premature and

24   more frequent tire wear would pose an unreasonable safety risk").

25          Here, Plaintiffs expressly allege suddenness or surprise in encountering issues with the

26   defect.  (*See* ECF No. 43 ¶¶ 17, 39, 53, 68, 80, 140.)  Accordingly, a reasonable jury could find

27   the defect to be an unreasonable safety hazard.  *See Herremans*, 2014 WL 5017843 at *15.

28

1   Therefore, if Defendant had knowledge (as discussed in the succeeding section herein) of the

2   defect prior to Plaintiffs' purchase, it had a duty to disclose.

3                   *iii.*          *Defendant's Knowledge of a Material Fact Prior to Sale*

4           Defendant contends Plaintiffs do not allege it knew a material fact about their vehicles

5   that it failed to disclose before their purchases.  (ECF No. 51-1 at 26–29.)  Plaintiffs point to

6   several sources to support their contention that Defendant had knowledge of the defect prior to

7   Plaintiffs' purchases: (1) testing and repair data; (2) consumer complaints; (3) technical service

8   bulletins ("TSBs"); (4) customer service program ("CSP"); and (5) recalls.  (ECF No. 43 ¶¶ 198–

9   200, 203, 206(a)–(h), 207, 209, 219–24.)  The Court will address each source in turn.

10                  *a)*          *Testing and Repair Data*

11          Plaintiffs allege Defendant had knowledge of the defect prior to the purchase of their

12  vehicles because Defendant designed and manufactured the engine, had quality control measures,

13  and possessed aggregate testing data.  (*See* ECF No. 43 ¶ 9, 198–200, 203.)  Defendant contends

14  Plaintiffs do not identify any specific information Defendant "actually knew showing the

15  supposed defect" or when Defendant learned that information.  (ECF No. 51-5 at 27.)

16          Courts often reject general allegations about testing and analysis conducted by the

17  manufacturer.  *See, e.g.*, *Smith*, 988 F.3d at 885 (rejecting "theoretical results from pre-production

18  tests without accompanying verification that the tests occurred and revealed a safety

19  defect");  *Grodzitsky v. Am. Honda Motor Corp., Inc.*, No. 2:12-cv-1142, 2013 WL 690822, at *6

20  (C.D. Cal. Feb. 19, 2013) (finding the plaintiffs' generalized assertion that unspecified "pre-

21  release testing data" and "aggregate data from Honda dealers" failed to suggest how this

22  information could have informed the defendant of the alleged defect at the time of sale); *Wilson*,

23  668 F.3d at 1147 (finding the plaintiffs had not sufficiently alleged the defendant's knowledge of

24  the defect at the time of sale when the complaint alleged the defendant had "access to the

25  aggregate information and data regarding" the defect).

26          Accordingly, the Court is unpersuaded that these generalized allegations support that

27  Defendant had knowledge of the defect prior to the sale of Plaintiffs' vehicles.

28  ///

*b)*      *Consumer Complaints*

Plaintiffs cite a sampling of twenty-three consumer complaints submitted to the National Highway Traffic Safety Administration ("NHTSA"), alleging such complaints sufficiently gave Defendant notice of the defect.  (ECF No. 43 ¶¶ 219–24.)  Defendant contends Plaintiffs do not allege facts "to establish an unusual number of complaints as to vehicles owned by each Plaintiff."  (ECF No. 51-1 at 27.)

"[T]he Ninth Circuit has held that consumer complaints suffice to establish knowledge only where there were an *unusual* number of complaints, such that the manufacturer would be on notice of a specific problem."  *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (emphasis in original) (citing *Williams*, 851 F.3d at 1026).

Here, Plaintiffs allege six consumer complaints occurred prior to the first dozen Plaintiffs' vehicle purchases.  (*See* ECF No. 43; ECF No. 57-1 at 2–4.)  However, some of those twelve Plaintiffs purchased different vehicles than those cited in the six NHTSA complaints.  (*Id.*)  In the aggregate, even twenty-three complaints before the purchase of Butcher's vehicle are insufficient to demonstrate Defendant had knowledge of the defect.  *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753–54 (E.D. Mich. 2017) (finding forty-three NHTSA complaints insufficient to demonstrate knowledge); *Dawson v. Gen. Motors LLC*, No. CV 19-8680, 2019 WL 3283046, at *6 (D.N.J. July 22, 2019) ("the ninety-nine consumer complaints submitted by [d]efendant to NHTSA plus the handful made by consumers to NHTSA and in online forums are not numerous; a company cannot be certain about a systemic part failure based on about 100 instances of failure in a national market over the course [of] several years."); *but see In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010) (finding 37,000 consumer complaints sufficient to put the defendant on notice).  Indeed, twenty-three nationwide complaints spanning eight years and different vehicles does not indicate an unusually high number of complaints.  *See Wilson*, 668 F.3d at 1147 (finding fourteen consumer complaints, twelve of which were undated, and the two dated complaints made over two years after the plaintiffs purchased the product, insufficient); *Sloan v. Gen. Motors LLC*, 287

27

1    F. Supp. 3d 840, 865 (N.D. Cal. 2018) (subsequent history omitted) (finding the plaintiffs failed

2    to allege eighty-one complaints posted over the course of seven years was an unusually high

3    number); *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-05452-JST, 2018 WL 2267448, at

4    *4 (N.D. Cal. May 17, 2018) ("Forty-five, or even fifty-six, complaints out of hundreds of

5    thousands of vehicles does not on its face indicate an unusually high number of complaints . . .

6    ."). Therefore, the Court finds the alleged consumer complaints do not demonstrate Defendant's

7    knowledge of the defect.

8                                    *c)      TSBs*

9           Plaintiffs allege Defendant had knowledge of the defect because Defendant issued eight

10   TSBs regarding the defect between March 30, 2018, and July 10, 2020. (ECF No. 43 ¶¶ 206a–h.)

11   Defendants contend the TSBs to which Plaintiffs cite were issued after the vast majority of the

12   original vehicle sales and courts have held TSBs are insufficient to allege knowledge. (ECF No.

13   51-1 at 28.)

14          Thirteen of the twenty vehicles at issue were purchased prior to the issuance of the first

15   TSB. (*See* ECF No. 43 ¶¶ 12–164.) Plaintiffs point to several cases to demonstrate an inference

16   exists that Defendant was collecting evidence of the defect prior to the issuance of the first TSB.

17   (ECF No. 57 at 24.) However, the Court is unpersuaded that Defendant possessed such

18   knowledge years in advance with respect to those thirteen vehicles. For example, though no

19   purchase date is alleged, the Wests purchased a new 2013 vehicle and thus they likely purchased

20   their vehicle five years prior to the first TSB. (*See* ECF No. 43 ¶ 33.)

21          Plaintiffs especially rely on *Philips v. Ford*, No. 14-CV-02989-LHK, 2015 WL 4111448,

22   at *9 (N.D. Cal. July 7, 2015), for the proposition that a manufacturer's knowledge of a defect

23   extends sixteen months prior to the issuance of a TSB. (ECF No. 57 at 24.) However, in that

24   case, in addition to the TSBs, the plaintiffs also relied on the defendant's internal e-mails

25   demonstrating the defendant had knowledge sixteen months prior to the TSB, as well as hundreds

26   of complaints, some of which were dated well before the TSB. *Philips*, 2015 WL 4111448, at *9;

27   *see also Falco v. Nissan N. Am. Inc.*, No. CV 13-00686 DDP MANX, 2013 WL 5575065, at *6

28   (C.D. Cal. Oct. 10, 2013) (holding a 2007 TSB *and* a 2006 or 2007 redesign of the defective part

1    "permit plausible inferences that [the defendant] was aware of the defect at the time they sold the

2    vehicles in 2005 and 2006 . . .").  Here, while Plaintiffs similarly rely on complaints (discussed

3    above), they give the Court no reason to believe Defendant possessed knowledge of the defect

4    sixteen months prior to the first TSB.  The Court agrees Defendant had knowledge prior to the

5    issuance of the TSB but will not extend that inference to an unfounded or unreasonable time

6    period.  *See Merkin v. Honda N. Am., Inc.*, No. 17-cv-03625 (PGS) (DEA), 2017 WL 5309623, at

7    *4 (D.N.J. Nov. 13, 2017) ("[The defendant] issued the TSB seven months after [the plaintiff]

8    purchased his car; however, [the plaintiff] has failed to present any competent evidence that

9    plausibly infers that Honda was aware of this defect prior to his purchase.").

10        The most recent purchase of a vehicle, prior to the first TSB, was made by Coppock in

11   September of 2017, six months prior to the TSB.  (ECF No. 43 ¶ 121.)  As the parties do not cite

12   any authority that extends a reasonable inference that a defendant had knowledge of the defect

13   more than *five* months prior to the TSB, without relying on other plausible evidence of

14   knowledge, the Court cannot find Defendant had knowledge of the defect for the thirteen

15   Plaintiffs who purchased their vehicle prior to the TSB.  *See MacDonald*, 37 F. Supp. 3d at 1094

16   (finding knowledge was sufficiently alleged where there was a post-sale TSB issued five months

17   after the last relevant purchase, and less than two years after the first purchase); *Parrish v.*

18   *Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1057–58 (C.D. Cal. 2020) (finding

19   knowledge of the defect five months prior to release of the TSB to be plausible at the motion to

20   dismiss stage); *see also Granillo v. FCA US LLC*, No. CV 16-153 (FLW)(DEA), 2016 WL

21   9405772, at *9 (D.N.J. Aug. 29, 2016) ("TSBs issued after [p]laintiffs purchased their vehicles do

22   not indicate that [d]efendant had pre-sale knowledge of the content of those TSBs").

23        Though the remaining seven vehicles are different years and models, each one contains an

24   Ecoboost engine, and Plaintiffs allege "Ecoboost engines have the same engine block design, are

25   made from the same materials, and likewise suffer from the Engine Defect."  (ECF No. 43 ¶ 238.)

26   Accordingly, the Court finds the eight TSBs sufficiently allege Defendant's knowledge of the

27   defect for the remaining seven vehicles owned by Hoffer, Padgett, Butcher, Bozhinov, Glade,

28   Goodrich, and Techlin.

1           *d)      CSP*

2           Plaintiffs allege Defendant was on notice of the defect because on December 21, 2019,

3    Defendant initiated a CSP.  (*Id.* at ¶ 207.)  Notice of the CSP stated: "Some of the affected

4    vehicles may exhibit coolant intrusion into the cylinder bores.  Customer symptoms include

5    coolant loss, excessive tailpipe smoke, or illuminated malfunction indicator lights (MIL) due to

6    engine misfire.  Over time, this condition may damage the engine, requiring replacement of the

7    engine short block."  (*Id.*)

8           However, December 21, 2019, was two months after Plaintiffs purchased their vehicles.[11]

9    (ECF No. 43 ¶¶ 12–164.)  While Plaintiffs point to several cases for an inference that Defendant

10   was collecting evidence of the defect prior to the issuance of the CSP, and the Court agrees such

11   an inference exists, they do not contend what reasonable amount of time the Court should extend

12   for such an inference.  As the majority of Plaintiffs purchased their vehicles in 2018 or earlier, the

13   Court is reluctant to find Defendant had enough evidence of the defect (as opposed to evidence of

14   a few anomalies) at the time of Plaintiffs' purchases.  Accordingly, the Court finds the CSP does

15   not sufficiently demonstrate Defendant's knowledge of the defect.

16          *e)      Recalls*

17          Plaintiffs allege Defendant had knowledge of the defect because Defendant issued a recall

18   of certain vehicles equipped with a specific engine.  (*Id.* at ¶¶ 209–218.)  In its motion to dismiss,

19   Defendant contends the recall does not mean Defendant had knowledge at the time of Plaintiffs'

20   purchases, as many purchased their vehicle prior to the recall, and others purchased a different

21   vehicle from the recall.  (ECF No. 51-1 at 28–29.)  Plaintiffs do not respond to Defendant's

22   argument in their opposition.  (ECF No. 57 at 23–26.)

23          Absent an opposition, the Court cannot find Defendant had knowledge of the defect due to

24   the recall.  *See Walsh*, 471 F.3d at 1037.

25

26   _____

[11]      This excludes Butcher, who purchased a vehicle on November 30, 2020, and Techlin, who
27   purchased a vehicle on April 24, 2020.  (ECF No. 43 ¶¶ 78, 164.)  However, the Court has
     already determined the TSBs satisfied the knowledge requirement for these Plaintiffs and thus
28   need not address them here.

In sum, the Court finds Plaintiffs sufficiently allege Defendant's knowledge of the defect at the time of sale of Hoffer, Padgett, Butcher, Bozhinov, Glade, Goodrich, and Techlin's vehicles.  However, Plaintiffs have failed to allege knowledge of the defect at the time of sale for the remaining thirteen vehicles.  Thus, Defendant's motion to dismiss Miller, the Wests, Coppock, the Morfords, Schiavi, Lund, Christodaro, Constable, Balaszek, the Manfras, Simonds, Pirog, Damm and Gates's fraud-based claims is GRANTED with leave to amend.

*iv.*        *State-Specific Arguments*

As the aforementioned Plaintiffs' claims have already been dismissed, the Court will only address arguments regarding each remaining claim.

*a)*        *Michigan Consumer Protection Act ("MCPA")*

Defendant moves to dismiss Goodrich's MCPA claim on the basis that vehicle sales are exempt from the MCPA.  (ECF No. 51-1 at 30.)  In opposition, Plaintiffs argue whether vehicles are subject to the MCPA is "unsettled," and Defendant has not met its burden of proving an exemption to warrant dismissal.  (ECF No. 57 at 28.)

The MCPA provides that "[t]he burden of proving an exemption from this act is upon the person claiming the exemption."  Mich. Comp. L. § 445.904.

Here, in its motion, Defendant merely states, "Goodrich's claim under the MCPA must be dismissed because vehicle sales are exempt from the MCPA."  (ECF No. 51-1 at 30.)  As support for its contention, Defendant cites an unpublished Michigan state court opinion.  (*Id.*)  Though Defendant provides three additional cases in its reply (*see* ECF No. 59 at 14–15), Defendant still fails to provide any statutory basis on which the Court could conclude MCPA § 445.904(1) permits an exemption.  *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1110 (N.D. Cal. 2021) ("However, Toyota fails to identify any specific law or statutory authority applicable here.  As the Act places '[t]he burden of proving an exemption . . . upon the person claiming the exemption,' the [c]ourt concludes that Toyota has failed to demonstrate that its conduct is exempt from the [MCPA], at least at this juncture.") (citations omitted)); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d at 643 ("[The defendant] has not yet identified a specific statutory provision that purports to authorize the transactions at

31

1    issue here.  In the absence of such a detailed statutory analysis, the [c]ourt declines to hold, at this

2    time, that the exemption bars [the plaintiff's] MCPA claim.").  Accordingly, as Defendant has not

3    met its burden, the Court DENIES Defendant's motion to dismiss Goodrich's MCPA claim.

4                          *b)*      *Illinois Consumer Fraud Act ("ICFA")*

5           Defendant moves to dismiss Glade's ICFA claim because the claim "lacks any connection

6    between [Defendant's] conduct and [Glade's] vehicle purchase of a used vehicle years later."

7    (ECF No. 51-1 at 31.)  In opposition, Plaintiffs contend an IFCA claim can be brought against a

8    manufacturer that conceals material facts about its vehicle's safety risks.  (ECF No. 57 at 27.)

9           "A consumer cannot maintain an action under the [ICFA] when the plaintiff does not

10   receive, directly or indirectly, communication or advertising from the defendant."  *De Bouse v.*

11   *Bayer*, 922 N.E.2d 309, 316 (Ill. 2009).

12          Here, Glade alleges "[b]efore making her purchase, [Glade] researched her vehicle.

13   [Glade] did a general online search for information on the vehicle. . . ."  (ECF No. 43 ¶ 94.)  As

14   such, Glade has not alleged she saw or read any of Defendant's communications or

15   advertisements.  Indeed, Glade purchased her vehicle used from a third-party retailer, thus

16   making no allegations of any communication with Defendant.  (*Id.* at ¶ 92.)  Accordingly,

17   Glade's ICFA claim is DISMISSED with leave to amend.  *See De Bouse*, 922 N.E.2d at 315

18   ("[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be

19   deceived by a statement or omission.  If there has been no communication with the plaintiff, there

20   have been no statements and no omissions.").

21                          *c)*      *Georgia's Fair Business Practices Act ("FBPA")*

22          Defendant moves to dismiss Butcher's FBPA claim on the grounds that an FBPA claim

23   cannot be asserted on behalf of a class.  (ECF No. 51-1 at 31.)  In opposition, Plaintiffs contend

24   state statutory class action limits, such as this one, are procedural and thus not applicable in

25   federal court.  (ECF No. 57 at 27.)

26          Federal district courts are divided on whether the prohibition of FBPA class action

27   claims applies in federal court.  *See Lessin v. Ford*, 2020 WL 6544705, at *13 (S.D. Cal. Nov. 6,

28   2020) (finding the prohibition is applicable in federal court); *Matanky v. Gen. Motors*, 370 F.

1    Supp. 3d 772, 798–99 (E.D. Mich. 2019) (same); *Delgado v. Ocwen Loan Servicing*, 2017 WL

2    5201079, at *10 (E.D.N.Y. Nov. 9, 2017) (same); *but see In re Hydroxycut*, 299 F.R.D. 648, 654

3    (S.D. Cal. 2014) (finding the prohibition is inapplicable in federal court); *Reynolds v. FCA US*

4    *LLC*, 546 F. Supp. 3d 635, 657 (E.D. Mich. 2021) (same); *Amin v. Mercedes-Benz USA, LLC*,

5    301 F. Supp. 3d 1277, 1292 (N.D. Ga. 2018) (same).

6           When resolving whether a state law applies in federal court, a court "must first determine

7    whether [the relevant Federal Rule] answers the question in dispute." *Shady Grove Orthopedic*

8    *Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *accord Burlington N. R.R. Co. v.*

9    *Woods*, 480 U.S. 1, 4–5 (1987) (describing this as "[t]he initial step" in such determinations);

10   *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 755 (9th Cir. 2010) (noting the district court must

11   "first determine whether the federal rule is 'sufficiently broad to control the issue,'" and only "[i]f

12   there is no direct conflict between the federal rule and the state rule" should the court then turn to

13   the traditional *Erie* analysis) (citations omitted); *Hamm v. Am. Home Prods. Corp.*, 888 F. Supp.

14   1037, 1038 (E.D. Cal. 1995) ("[T]he first step of the analysis is to determine whether there is a

15   Federal Rule of Civil Procedure that governs the matter at issue.").

16          As the split concerning FPBA § 10-1-399 amply indicates, the task of classifying a law

17   "as 'substantive' or 'procedural' for *Erie* purposes" is "challenging" when the law is not

18   construed as covered by one of the Federal Rules. *Gasperini v. Ctr. for Humanities, Inc.*, 518

19   U.S. 415, 427 n.7 (1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *see also Shady*

20   *Grove*, 559 U.S. at 398 (describing the *Erie* analysis as "murky" when there is no governing

21   Federal Rule); *Hamm*, 888 F.Supp. at 1038 (acknowledging "the line between substance and

22   procedure is neither static nor easily drawn"). However, a court need not make a challenging and

23   "relatively unguided *Erie* choice" when "a situation is covered by one of the Federal

24   Rules." *Hanna v. Plumer*, 380 U.S. 460, 471 (1965); *see Verizon Del., Inc. v. Covad Commc'ns*

25   *Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (finding no "need to proceed to the secondary test"

26   under *Erie* because "a direct collision with a federal procedural rule exists"). Instead, "when a

27   Federal Rule of Civil Procedure is on point, it, not the state law, governs, so long as it does not

28

1   run afoul of the Rules Enabling Act" or the Constitution.  *McCalla v. Royal MacCabees Life Ins.*

2   *Co.*, 369 F.3d 1128, 1135 (9th Cir. 2004).

3          Rule 23 prescribes a class action may be maintained if two conditions are met: "The suit

4   must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and

5   adequacy of representation), and it also must fit into one of the three categories described in

6   subdivision (b).  By its terms this creates a categorical rule entitling a plaintiff whose suit meets

7   the specified criteria to pursue his claim as a class action."  *Shady Grove*, 559 U.S. at 398.  By

8   contrast, FPBA § 10-1-399 provides: "Any person who suffers injury or damages . . . as a result

9   of consumer acts or practices in violation of this part . . . may bring an action individually, but not

10  in a representative capacity. . . ."  Ga. Code Ann. § 10-9-399.

11         In *Lisk v. Lumber One Wood Preserving, LLC*, the Eleventh Circuit analyzed a similar

12  state law which prohibited bringing a claim in a representative capacity.  792 F.3d 1331, 1335

13  (11th Cir. 2015).  The Eleventh Circuit held that Rule 23 applied rather than Alabama's

14  Deceptive Trade Practices Act's prohibition on class actions.  *Id.*  The Eleventh Circuit explained

15  that Rule 23 does not "abridge, enlarge or modify any substantive right" of the parties under

16  Alabama's law.  *Id.* at 1337 ("The disputed issue is not whether Mr. Lisk and other buyers are

17  entitled to redress for any misrepresentation; they are.  The disputed issue is only whether they

18  may seek redress in one action or must instead bring separate actions — whether any

19  representative action may be brought by a consumer or must be brought by the Attorney General

20  or a district attorney. Because Rule 23 does not 'abridge, enlarge or modify any substantive

21  right,' Rule 23 is valid and applies in this action").

22         Here, given the force of the Eleventh Circuit's reasoning, the Court follows *Lisk* and holds

23  the plain meaning of Rule 23 conflicts with § 10-9-399, making FPBA § 10-1-399 inapplicable in

24  federal court.  *Accord In re Hydroxycut*, 299 F.R.D. at 654; *Reynolds*, 546 F. Supp. 3d at 657;

25  *Amin*, 301 F. Supp. 3d at 1292.  Accordingly, Defendant's motion to dismiss Butcher's FBPA

26  claim is DENIED.

27  ///

28  ///

34

*d)      Wisconsin's Deceptive Trade Practices Act ("DTPA")*

Defendant moves to dismiss Techlin's DTPA claim because DTPA claims cannot be premised on a defendant's omission.  (ECF No. 51-1 at 32.)  Plaintiffs fail to address Defendant's argument in opposition.  (ECF No. 57 at 26–30.)

"Silence — an omission to speak — is insufficient to support a claim under Wis. Stat. § 100.18(1).  The DTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading." *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 244 (Wis. 2004).

Here, as the Wisconsin Supreme Court has clearly articulated a DTPA claim cannot be based on an omission and Plaintiffs fail to provide any authority to the contrary, the Court DISMISSES Techlin's DTPA claim with leave to amend.

D.    <u>Nationwide Claims</u>

As a preliminary matter, Defendant moves to dismiss or strike all nationwide claims on the basis that Plaintiffs lack standing.  (ECF No. 51-1 at 33.)  In opposition, Plaintiffs argue it is premature to dismiss nationwide claims before discovery or class certification.  (ECF No. 57 at 30.)

The Ninth Circuit has held, under California's choice of law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, No. 19-56514, 2022 WL 1053459 (9th Cir. Apr. 8, 2022).  "In analogous cases, *Mazza* is not only relevant but controlling, even at the pleading stage." *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) (citations and quotations omitted).

Though there is no hard and fast rule to apply, many courts in this circuit have declined to defer consideration of these issues, treating standing as a threshold matter addressed at the pleading stage.  *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1069 (N.D. Cal. 2015) (collecting cases); *Morales v. Unilever U.S., Inc.*, No. 2:13-2213 WBS EFB, 2014 WL 1389613,

35

1    at *6 (E.D. Cal. Apr. 9, 2014) (dismissing claims based on laws of states other than those

2    represented by named plaintiffs); *Mollicone v. Universal Handicraft, Inc.*, No. 2:16-cv-

3    07322, 2017 WL 440257, at *9–10 (C.D. Cal. Jan. 30, 2017) (same).  Indeed, the Supreme Court

4    has expressly recognized, in certain contexts, courts may address class certification prior to

5    resolving standing questions.  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Amchem*

6    *Prods., Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997)).  Accordingly, district courts "ha[ve] the

7    discretion to defer questions of standing until after class certification," but may nonetheless "opt[

8    ], as a matter of case management," to address standing in advance of class certification.  *In re*

9    *Carrier IQ, Inc.*, 78 F. Supp. 3d at 1074–75.

10        In the instant matter, the Court joins the several other courts in this circuit which have

11   opted to require Plaintiffs to present named class representatives who possess individual standing

12   to assert each state law's claims against Defendant.  *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at

13   1075 (finding that named plaintiffs did not have standing to assert claims from states in which

14   they did not reside or make a relevant purchase).  Plaintiffs have twenty-four named class

15   representatives spanning fifteen states purporting to represent a nationwide class, creating the

16   significant burden of nationwide discovery.  *See id.* at 1074 ("The [c]ourt has reservations of

17   subjecting the [defendant] to the expense and burden of nationwide discovery without Plaintiffs

18   first securing actual plaintiffs who clearly have standing and are willing and able to assert claims

19   under these state laws.").  Therefore, the Court concludes Plaintiffs do not have standing to

20   maintain a nationwide class action.  Though Plaintiffs have not expressed a willingness to identify

21   additional named plaintiffs to adequately represent class members in other states, based on the

22   liberal standard in favor of granting leave to amend, the Court DISMISSES the nationwide claims

23   with leave to amend.  *Lopez*, 203 F.3d at 1130.  Accordingly, the Court need not address the

24   parties' remaining arguments on these claims, with the exception of unjust enrichment.

25                          *i.      Unjust Enrichment*

26        Defendant moves to dismiss Plaintiffs' unjust enrichment claims because: (1) a claim for

27   unjust enrichment does not lie where a vehicle was purchased pursuant to a valid express

28   contract; and (2) Plaintiffs who purchased used vehicles cannot bring claims of unjust enrichment

1    because the purchase of a used car does not confer a benefit on Defendant.  (ECF No. 51-1 at 33.)

2    Plaintiffs respond: (1) their claims are pleaded in the alternative and should be afforded an

3    election of remedies on which the jury would be instructed; and (2) Defendant received an unjust

4    benefit from Plaintiffs who purchased used vehicles when Plaintiffs paid for repairs and

5    replacement parts.  (ECF No. 57 at 30.)

6         In the instant matter, the case law Defendant cites is clear: "a quasi-contract action for

7    unjust enrichment does not lie where [ ] express binding agreements exist and define the parties'

8    rights."  *See, e.g.*, *Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2017 WL

9    2797810, at *14–15 (N.D. Cal. June 28, 2017) (alteration in original and citations omitted); *Sloan*

10   *v. Gen. Motors*, No. 16-cv-07244-EMC, 2020 WL 1955643, at *27 (N.D. Cal. Apr. 23, 2020)

11   ("the mere existence of a contract that defines the parties' rights bars a claim for unjust

12   enrichment"); *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D.

13   Cal. Mar. 12, 2014); *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th

14   151, 172 (2001).  Nor can Plaintiffs base their unjust enrichment claims on post-sale repairs at

15   dealerships, or even directly purchasing the used cars at manufacturer-controlled dealerships.

16   *Gerstle*, 2017 WL 2797810 at *14–15.  Plaintiffs appear to be attempting to describe an exception

17   to the valid express contract rule but cite no authority to support the exception.[12]  Such an

18   exception must be developed in the legislature, not in a federal district court.  *Id.*  As amendment

19   of these claims would be futile, as Plaintiffs pleaded the existence of express agreements,

20   Plaintiffs' unjust enrichment claims are DISMISSED without leave to amend.

21   ///

22   ///

23   ///

24   _____

25   [12]      Plaintiffs cite *Parrish*, 463 F. Supp. 3d at 1061.  (ECF No. 57 at 30.)  However, in that
     case, the plaintiffs' unjust enrichment claims were not dismissed because the Ninth Circuit has
26   made clear unjust enrichment claim should not be dismissed merely because they are duplicative
     of or superfluous to the plaintiffs' other claims.  *See Astiana v. Hain Celestial Grp., Inc.*, 783
27   F.3d 753, 762 (9th Cir. 2015).  Here, though Plaintiffs' pleaded unjust enrichment in the
     alternative, the claims are not dismissed for being superfluous, but rather because of the existence
28   of express agreements.

IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss (ECF No. 51) as detailed below:

| Plaintiff(s) | State | Express Warranty Claim | Implied Warranty Claim(s) | Fraud-Based Claim(s) |
|---|---|---|---|---|
| Miller | CA | Survives the motion | Common law: Dismissed without leave to amend (privity) Song-Beverly: Dismissed without leave to amend (third-party retailer) | Dismissed with leave to amend (knowledge) |
| Wests | CA | Survives the motion | Common law: Dismissed without leave to amend (privity) Song-Beverly: Survives the motion | Dismissed with leave to amend (knowledge) |
| Lund | AR | Dismissed with leave to amend (insufficient allegations) | Survives the motion | Dismissed with leave to amend (knowledge) |

| Christodaro | CO | Dismissed with leave to amend (insufficient allegations) | Survives the motion | Dismissed with leave to amend (knowledge) |
| Hoffer | FL | Dismissed without leave to amend (outside timeframe) | Dismissed without leave to amend (outside timeframe) | Survives the motion |
| Padgett | FL | Dismissed with leave to amend (insufficient allegations) | Survives the motion | Survives the motion |
| Constable | FL | Survives the motion | Survives the motion | Dismissed with leave to amend (knowledge) |
| Butcher | GA | Dismissed without leave to amend (outside timeframe) | Dismissed without leave to amend (outside timeframe) | Survives the motion |
| Bozhinov | IL | Dismissed without leave to amend (successful in-warranty repair) | Dismissed without leave to amend (privity) | Survives the motion |
| Glade | IL | Dismissed with leave to amend | Dismissed without leave to amend (privity) | Dismissed with leave to amend |

| | | | | |
|---|---|---|---|---|
| | | (independent mechanic) | | (no contact with Defendant) |
| Balaszek | IN | Dismissed with leave to amend (no allegations vehicle was in-warranty) | Survives the motion | Dismissed with leave to amend (knowledge) |
| Morfords | KS | Dismissed without leave to amend (outside timeframe) | Survives the motion | Dismissed with leave to amend (knowledge) |
| Manfras | MD | Dismissed without leave to amend (outside timeframe) | Survives the motion | Dismissed with leave to amend (knowledge) |
| Coppock | MI | Dismissed without leave to amend (outside timeframe) | Dismissed without leave to amend (outside timeframe) | Dismissed with leave to amend (knowledge) |
| Goodrich | MI | Dismissed with leave to amend (insufficient allegations) | Survives the motion | Survives the motion |
| Simonds | MN | Dismissed without leave to amend (outside timeframe) | Dismissed without leave to amend (outside timeframe) | Dismissed with leave to amend (knowledge) |

| | | | | |
|---|---|---|---|---|
| Schiavi | NJ | Dismissed without leave to amend (outside timeframe) | Dismissed without leave to amend (outside timeframe) | Dismissed with leave to amend (knowledge) |
| Pirog | NC | Dismissed with leave to amend (insufficient allegations) | Survives the motion | Dismissed with leave to amend (knowledge) |
| Damm and Gates | WA | Dismissed with leave to amend (insufficient allegations) | Survives the motion | Dismissed with leave to amend (knowledge) |
| Techlin | WI | Dismissed without leave to amend (outside timeframe) | Dismissed with leave to amend (privity) | Dismissed with leave to amend (no viable claim for an omission) |
| All Plaintiffs | Nationwide Allegations | Dismissed with leave to amend | Dismissed with leave to amend | Dismissed with leave to amend; Unjust enrichment: Dismissed without leave to amend |

The Court further DENIES Defendant's Motion to Stay Discovery (ECF No. 56) as moot. Plaintiffs are hereby granted thirty (30) days from the electronic filing date of this Order to file an amended complaint in conformity with this Order.  Defendant shall file a response to the

amended complaint within twenty-one (21) days from the electronic filing date of the amended complaint.

IT IS SO ORDERED.

**DATED:  AUGUST 9, 2022**

Troy L. Nunley
United States District Judge