RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Tel: +1 (415) 984-8700
Fax: +1 (415) 984-8701

AMY J. LAURENDEAU (S.B. #198321)
alaurendeau@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: +1 (949) 823-6900
Fax: +1 (949) 823-6994

KELSEY M. LARSON (S.B. #267982)
klarson@omm.com
O'MELVENY & MYERS LLP
400 S. Hope St., 19th Floor
Los Angeles, CA 90071
Tel: +1 (213) 430-6000
Fax: +1 (213) 430-6407

*Counsel for Defendant*
*Ford Motor Company*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA MILLER, et al., as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 2:20-cv-01796-DAD-CKD<br><br>(Consolidated with Nos. 2:21-cv-00417-DAD-CKD, 2:21-cv-00468-DAD-CKD)<br><br>**DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing: September 21, 2026<br>Time: 1:30 pm<br>Judge: Hon. Dale A. Drozd<br>Courtroom: 4, 15th Floor<br><br>Second Am. Consol. Compl. ("SACC," Dkt. 144) filed: Jan. 5, 2026) |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................ 2

III.    LEGAL STANDARD...................................................................................... 4

IV.     ARGUMENT .................................................................................................. 5

    A.   The Express Warranty Claim of the Wests (CA) Fails and the Claim of Mullen (OH) Was Disclaimed .......................................................... 5

        1.   Ford Did Not Fail to Repair the Wests' (CA) Vehicle After Multiple Attempts During the Warranty Period.......................... 5

        2.   Mullen (OH) Is Estopped from Bringing an Express Warranty Claim ............................................................................. 7

    B.   The Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) Implied Warranty Claims Fail as a Matter of Law ....................... 8

        1.   The Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) Implied Warranty Claims Fail Because Their Vehicles Were Merchantable as a Matter of Law.............. 8

        2.   Balaszek's (IN) Implied Warranty Claim Also Fails Because All Alleged Problems Were Outside the Implied Warranty Period ................. 11

    C.   Plaintiffs' Magnuson-Moss Warranty Act Claims Fall Along with Their Express and Implied Warranty Claims ................................... 12

    D.   Several Claims of the Wests (CA), Miller (CA), and Pickering (IN) Fail Because They Purchased Their Vehicles for Business Use ................... 13

    E.   Kennedy's (MN) Minnesota False Statement in Advertising Act Claim Fails Because He Did Not See Any Ford Ads Related to His Vehicle ................. 14

    F.   Gonzalez's (TX) DTPA Claim Fails Because Ford Had No Duty to Disclose ............................................................................................... 15

    G.   The Wests' (CA) and Miller's (CA) UCL Claims for Restitution Fail Because Undisputed Facts Show They Do Not Lack an Adequate Remedy at Law.............................................................................. 16

    H.   Certain Plaintiffs' Claims Are Barred by the Statute of Limitations ..................... 16

        1.   Lund's (AR) Implied Warranty Claim Is Time-Barred ........................... 17

        2.   The Wests' (CA) CLRA, UCL, and Implied Warranty Claims Are Time-Barred ................................................................................ 17

        3.   Pickering's (IN) and Balaszek's (IN) IDCSA and Implied Warranty Claims Are Time-Barred.................................................... 19

        4.   The Manfras' (MD) Implied Warranty Claim Is Time-Barred.................. 20

        5.   Metro's (MI) Implied Warranty Claim Is Time-Barred........................... 21

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

**TABLE OF CONTENTS**
**(continued)**

                                                                                      **Page**

I.      Batdorf (TN) Spoliated His Vehicle During This Litigation Without Giving
        Ford a Chance to Inspect, Warranting Dismissal.................................................... 22

V.      CONCLUSION ...................................................................................................... 23

**TABLE OF AUTHORITIES**

**Page**

<u>**CASES**</u>

*A.J.'s Auto. Sales, Inc. v. Freet*,
725 N.E.2d 955 (Ind. Ct. App. 2000) ........................................................................... 19

*Adams v. Nissan N. Am., Inc.*,
395 F. Supp. 3d 838 (S.D. Tex. 2018) .......................................................................... 15

*Allen v. Similasan Corp.*,
96 F. Supp. 3d 1063 (S.D. Cal. 2015) ........................................................................... 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................ 5

*Apple Inc. v. Samsung Elecs. Co.*,
881 F. Supp. 2d 1132 (N.D. Cal. 2012) ........................................................................ 22

*Apple Inc. v. Samsung Elecs. Co.*,
888 F. Supp. 2d 976 (N.D. Cal. 2012) .......................................................................... 23

*Cabrera v. Ford Motor Co.*,
2024 WL 4101907 (S.D. Cal. June 4, 2024) ................................................................. 18

*Cadena v. Am. Honda Motor Co.*,
2018 WL 8130613 (C.D. Cal. Nov. 14, 2018) ................................................................ 6

*Carroll v. BMW of N. Am., LLC*,
553 F. Supp. 3d 588 (S.D. Ind. 2021) ..................................................................... 19, 20

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) ........................................................................................................ 5

*Clark v. Am. Honda Motor Co.*,
2021 WL 4260232 (C.D. Cal. Sept. 14, 2021) ............................................................ 6, 7

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ...................................................................................... 13

*Click v. Gen. Motors LLC*,
2020 WL 3118577 (S.D. Tex. Mar. 27, 2020) .............................................................. 15

*Compass Bank v. Morris Cerullo World Evangelism*,
104 F. Supp. 3d 1040 (S.D. Cal. 2015) ........................................................................ 22

*Drake v. Toyota Motor Corp.*,
2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) ................................................................ 7

*Emerald Tex., Inc. v. Peel*,
920 S.W.2d 398 (Tex. App. 1996) ................................................................................ 15

*Fedrick v. Mercedes-Benz USA, LLC*,
366 F. Supp. 2d 1190 (N.D. Ga. 2005) ........................................................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Filipovic v. Fairchild Chevrolet*,
   2001 WL 1141384 (Ohio Ct. App. Sept. 27, 2001) ............................................................. 8, 10

*Franco v. Ford Motor Co.*,
   644 F. Supp. 3d 672 (C.D. Cal. 2022)..................................................................................... 18

*Galvez v. Ford Motor Co.*,
   2018 WL 4700001 (E.D. Cal. Sept. 30, 2018).......................................................................... 18

*Garcia v. Gen. Motors LLC*,
   2018 WL 6460196 (E.D. Cal. Dec. 10, 2018)............................................................................ 19

*Gittings v. Deal*,
   109 N.E.3d 963 (Ind. 2018) ....................................................................................................... 20

*Goldstein v. Gen. Motors LLC*,
   517 F. Supp. 3d 1076 (S.D. Cal. 2021) ..................................................................................... 18

*Guisinger v. Keystone RV Co.*,
   2026 WL 1046715 (C.D. Cal. Apr. 2, 2026) ............................................................................ 19

*Guzman v. Polaris Indus. Inc.*,
   49 F.4th 1308 (9th Cir. 2022)..................................................................................................... 16

*Herremans v. BMW of N. Am., LLC*,
   2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ............................................................................. 19

*Horne v. Harley-Davidson, Inc.*,
   660 F. Supp. 2d 1152 (C.D. Cal. 2009)...................................................................................... 16

*In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*,
   2015 WL 4591236 (D.N.J. July 29, 2015).................................................................................. 13

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*,
   393 F. Supp. 3d 871 (N.D. Cal. 2019) ....................................................................................... 18

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) ......................................................................................... 13

*In re Seagate Tech. LLC Litig.*,
   233 F. Supp. 3d 776 (N.D. Cal. 2017) ......................................................................................... 5

*J&B Tankers, Inc. v. Navistar Int'l Corp.*,
   539 F. Supp. 3d 955 (E.D. Ark. 2021) ....................................................................................... 17

*Jerry Beeman & Pharmacy Servs., Inc. v. Caremark Inc.*,
   322 F. Supp. 3d 1027 (C.D. Cal. 2018)...................................................................................... 23

*Kiriacopoulos v. Gen. Motors LLC*,
   2023 WL 2789622 (E.D. Mich. Apr. 5, 2023)...................................................................... 21, 22

*Knotts v. Nissan N. Am., Inc.*,
   346 F. Supp. 3d 1310 (D. Minn. 2018) ...................................................................................... 14

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

**TABLE OF AUTHORITIES**
(continued)

Page

*Kovack v. Daimler Chrysler Corp.*,
2006 WL 1293213 (Mich. Ct. App. May 11, 2006) ........................................................ 8, 11

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006).................................................................................................... 22

*Lessin v. Ford Motor Co.*,
2021 WL 3810584 (S.D. Cal. Aug. 25, 2021) .......................................................................... 15

*Lessin v. Ford Motor Co.*,
600 F. Supp. 3d 1137 (S.D. Cal. 2022) ...................................................................................... 7

*Lessin v. Ford Motor Co.*,
756 F. Supp. 3d 885 (S.D. Cal. 2024), *rev'd in part on other grounds*,
No. 25-2211, 2026 WL 382608 (9th Cir. Feb. 11, 2026) ...................................................... 5, 10

*Ludwig v. FCA US LLC*,
795 F. Supp. 3d 525 (D.N.J. 2025) .......................................................................................... 15

*Ludwig v. Ford Motor Co.*,
510 N.E.2d 691 (Ind. Ct. App. 1987)........................................................................................ 20

*Lyman v. Ford Motor Co.*,
2022 WL 856393 (E.D. Mich. Mar. 22, 2022) .......................................................................... 11

*Marksberry v. FCA US LLC*,
606 F. Supp. 3d 1075 (D. Kan. 2022) ...................................................................................... 8, 9

*Matray v. Ford Motor Co.*,
2011 WL 13221015 (C.D. Cal. Nov. 9, 2011).......................................................................... 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..................................................................................................................... 5

*Mazur v. eBay Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009)................................................................................................ 13

*Mendoza v. Midea Microwave & Elec. Appliances Mfg. Co.*,
2023 WL 8358208 (E.D. Cal. Dec. 1, 2023)............................................................................. 18

*Mercedes-Benz of N. Am., Inc. v. Garten*,
618 A.2d 283 (Md. Ct. Spec. App. 1993) ................................................................................. 21

*Miller v. DaimlerChrysler Motors Corp.*,
2001 WL 587496 (Ohio Ct. App. May 31, 2001)..................................................................... 10

*Miller v. Ford Motor Co.*,
2024 WL 1344597 (E.D. Cal. Mar. 29, 2024) ....................................................................... 12, 14

*Miller v. Gen. Motors, LLC*,
773 F. Supp. 3d 461 (E.D. Mich. 2025)............................................................................. 17, 21, 22

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Nelson v. Ford Motor Co.*,
2025 WL 2581611 (E.D. Cal. Sept. 5, 2025)........................................................................ 16, 21

*New Hampshire v. Maine*,
532 U.S. 742 (2001)................................................................................................................... 7

*Palm Harbor Homes, Inc. v. McCoy*,
944 S.W.2d 716 (Tex. App. 1997)........................................................................................... 15

*Patterson v. McMickle*,
191 S.W.3d 819 (Tex. App. 2006)........................................................................................... 15

*Perez v. Discover Bank*,
74 F.4th 1003 (9th Cir. 2023).............................................................................................. 7, 8

*Perez v. Volkswagen Grp. of Am., Inc.*,
2013 WL 1661434 (W.D. Ark. Apr. 17, 2013)........................................................................ 17

*Philips v. Ford Motor Co.*,
2015 WL 4111448 (N.D. Cal. July 7, 2015)............................................................................ 18

*Plumlee v. Pfizer, Inc.*,
2014 WL 695024 (N.D. Cal. Feb. 21, 2014)............................................................................ 17

*Popham v. Keystone RV Co.*,
2016 WL 4993393 (N.D. Ind. Sept. 19, 2016).................................................................... 11, 12

*Priebe v. Autobarn Ltd.*,
240 F.3d 584 (7th Cir. 2001)..................................................................................................... 8

*Rutherford v. BMW of N. Am., LLC*,
579 F. Supp. 3d 737 (D. Md. 2022) .................................................................................. 20, 21

*Seibert v. Gen. Motors Corp.*,
853 S.W.2d 773 (Tex. App. 1993)........................................................................................... 15

*Sharkus v. Daimler Chrysler Corp.*,
2002 WL 31319119 (Ohio Ct. App. 2002) ............................................................................. 10

*Sharp v. Tom Wood E., Inc.*,
822 N.E.2d 173 (Ind. Ct. App. 2004)................................................................................... 8, 11

*Shea v. Gen. Motors LLC*,
567 F. Supp. 3d 1011 (N.D. Ind. 2021) ............................................................................. 12, 20

*Sheris v. Nissan N. Am. Inc.*,
2008 WL 2354908 (D.N.J. June 3, 2008) ................................................................................. 9

*Silvestri v. Gen. Motors Corp.*,
271 F.3d 583 (4th Cir. 2001)................................................................................................... 23

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)................................................................................................... 16

vi

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Stearns v. Select Comfort Retail Corp.*,
2009 WL 1635931 (N.D. Cal. June 5, 2009) ................................................ 12

*Treuhaft v. Mercedes-Benz USA, LLC*,
2021 WL 2864877 (C.D. Cal. July 6, 2021) .................................................. 6

*Valdez v. Ford Motor Co.*,
2024 WL 1344420 (E.D. Cal. Mar. 29, 2024) ......................................... 5, 13

*Weidman v. Ford Motor Co.*,
2020 WL 674348 (E.D. Mich. Feb. 11, 2020) ............................................ 11

*Weidman v. Ford Motor Co.*,
2022 WL 1071289 (E.D. Mich. Apr. 8, 2022) ............................................ 23

*White v. Volkswagen Grp. of Am., Inc.*,
2013 WL 685298 (W.D. Ark. Feb. 25, 2013) ............................................. 17

**STATUTES**

15 U.S.C. § 2310(d) ......................................................................................... 12

Ark. Code § 4-2-725(2) .................................................................................... 17

Cal. Civ. Code § 1761(d) ................................................................................. 13

Cal. Civ. Code § 1791(a)................................................................................... 13

Cal. Com. Code § 2725(2) ............................................................................... 18

Ind. Code § 24-5-0.5-2(a)(1) ............................................................................ 13

Md. Code Com. Law § 2-725(2) ...................................................................... 20

Mich. Comp. Laws § 440.2725 ........................................................................ 21

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

## I.     <u>INTRODUCTION</u>

Plaintiffs' own testimony and documents about their experience with their Ford vehicles establish that several of their claims fail as a matter of law.  Many Plaintiffs drove their vehicles tens of thousands of miles over years yet now sue Ford on a theory that would require establishing an inability for those vehicles to provide basic transportation.  Another couple did not make multiple repair attempts during the warranty period, yet now assert an express warranty claim, and another plaintiff asserts an express warranty claim after having previously disavowed it.  Other claims fail because some Plaintiffs (1) drove their vehicles mostly for business purposes yet sue under statutes limited to products primarily used for personal, family, or household purposes, (2) did not see or rely on any Ford advertisements about their vehicle yet sue under a false advertising statute, (3) had no confidential or fiduciary relationship, or any direct contact, with Ford yet sue under a statute that requires such a relationship, or (4) sued Ford only long after the expiration of the statute of limitations period, where the law clearly holds the discovery rule does not apply.  Ford is entitled to summary judgment on all of these claims.  Ford will address classwide bases for summary judgment only if and after a class is certified.

***The Undisputed Record Precludes Certain Express Warranty Claims.***  Plaintiffs the Wests' (CA) express warranty claim fails as a matter of law because the undisputed facts show that Ford did not fail to repair the vehicle within multiple attempts within the warranty period.  Plaintiff Mullen (OH) is further estopped from bringing an express warranty claim as Plaintiffs' counsel have previously represented to the Court that he is not pursuing this claim.

***Plaintiffs' Admissions Defeat Four Implied Warranty Claims as a Matter of Law.***  Plaintiffs Morfords (KS), Mullen (OH), Metro (MI), and Balaszek (IN) testified to such extensive use of their vehicles both before and after experiencing the alleged engine issues that they cannot genuinely dispute that their vehicles were merchantable as a matter of law.  Each relevant state's implied warranty law requires Plaintiffs to establish their vehicle was unmerchantable at the point of sale, meaning that the vehicle was not fit for the ordinary purpose of providing safe and reliable transportation.  But each Plaintiff's own testimony of ongoing and heavy vehicle usage defeats any claim their vehicle was unmerchantable.

***Undisputed Evidence Forecloses Several Additional State-Law Claims.*** Plaintiffs Pickering (IN), the Wests (CA), and Miller's (CA) deceptive practices statutory claims and the Wests' (CA) Song-Beverly implied warranty claim fail because they testified they purchased their vehicles for "business" not personal use. Plaintiff Kennedy's (MN) Minnesota False Statement in Advertising Act claim fails because he testified under oath that he did not see any advertisements. Plaintiff Gonzalez's (TX) Texas Deceptive Trade Practices Act claim fails because non-disclosure is not actionable under the Texas DTPA absent a duty to disclose. Plaintiff the Wests' (CA) and Miller's (CA) UCL claims for restitution are further barred as a matter of law because they cannot establish they lack an adequate remedy at law.

***Many Plaintiffs' Claims Are Time-Barred.*** Claims accrue at the time of sale for breach of the implied warranty of merchantability under Arkansas, California, Indiana, Maryland, and Michigan law, the California CLRA and UCL, and the Indiana DCSA—not upon discovery of the defect or the existence of a claim. Because the statute of limitations had run at the time Plaintiffs Lund (AR), the Wests (CA), Balaszek (IN), Pickering (IN), the Manfras (MD), and Metro (MI) filed their claims against Ford, their claims under those theories are barred. Undisputed evidence also forecloses any tolling under a fraudulent concealment theory.

***Plaintiff Batdorf's (TN) Claims Must Be Dismissed Because He Spoliated His Vehicle.*** Plaintiff Batdorf (TN) testified under oath that after he filed this lawsuit he sold his vehicle to CarMax without allowing Ford a chance to inspect the vehicle or retaining any documents related to its sale. Terminating sanctions are warranted because Batdorf has spoliated key evidence, and Plaintiffs have already conceded that a plaintiff who disposes of their vehicle before giving Ford a chance to inspect cannot proceed in this case.

## II.    BACKGROUND

Plaintiffs are 21 individuals from 16 states who allegedly purchased MY 2013-2019 Ford Escapes, Fusions, Edges, and Lincoln MKCs and MKZs equipped with 1.6L, 1.5L, and 2.0L GTDI engines that Plaintiffs allege have a design "defect" that allows coolant to intrude into the engine cylinders. Dkt. 144 ¶ 342. No Plaintiff experienced an accident, loss of vehicle control, or a fire due to coolant intrusion.

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

This action was first filed in September 2020, with one Plaintiff, Vanessa Miller.  Dkt. 1. On May 6, 2021, two other cases brought by six Plaintiffs (Dkts. 33, 34, 36), which Judge Nunley deemed "related" under Local Rule 123(a), were consolidated with this case.  In June 2021, Plaintiffs filed a Consolidated Amended Complaint.  Dkt. 43.  Ford moved to dismiss on the grounds that Plaintiffs failed to state breach of express warranty, breach of implied warranty, and fraud-based state consumer protection claims.  Dkt. 51.  After the Court granted Ford's motion in part and denied it in part (Dkt. 76), Plaintiffs filed a First Amended Consolidated Class Action Complaint ("FACC") in September 2022.  Ford moved to dismiss Plaintiffs' FACC on similar grounds and, on March 29, 2024, the Court issued an order granting in part and denying in part Ford's motion.  Dkt. 101.  Plaintiffs filed a Second Amended Consolidated Class Action Complaint in January 2026.[1]  Dkt. 144.  Now that discovery is complete, Ford moves for partial summary judgment on the claims of the following Plaintiffs:

- ***Patsy Lund (AR).***  Lund purchased a used 2016 2.0L Ford Escape on October 21, 2016.  Ex[2]. C, Lund Dep. 49:6-14.  Lund first filed suit in the Western District Court of Arkansas on December 9, 2020.  *Lund v. Ford*, W. Ark. Case No. 2:20-cv-02228-PKH, Dkt. 1.  (Consolidated with *Miller v. Ford*, Dkt. 36.)

- ***Vanessa Miller (CA).***  Miller purchased a used 2017 2.0L Ford Edge on November 22, 2017.  Ex. I, Miller Dep. Ex. 3.  Miller initiated this action on September 4, 2020.  Dkt. 1.

- ***Evan and Amber West (CA).***  The Wests purchased a new 2013 1.6L Ford Fusion on May 27, 2013.  Ex. D, A. West Dep. 12:9-11; 28:3-11.  The Wests joined this action on November 5, 2020.  Dkt. 20.

- ***Teresa Balaszek (IN).***  Balaszek purchased a new 2017 2.0L Ford Escape on November 23, 2016.  Ex. K, Balaszek Dep. Ex. 2.  Balaszek joined this action on June

---

[1] Between March 2024 and January 2026, several Plaintiffs have also voluntarily been dismissed or substituted.

[2] All references to "Ex." refer to the exhibits attached to the concurrently filed Declaration of Katie Sinclair in Support of Defendant Ford Motor Company's Motion for Partial Summary Judgment

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

21, 2021.  Dkt. 43.

- **Scott Pickering (IN).**  Pickering purchased a used 2014 1.5L Ford Fusion on January 27, 2016.  Ex. M, Pickering Dep. 75:5-11.  Pickering joined this action on September 28, 2022.  Dkt. 81.

- **Craig and Kelli Morford (KS).**  The Morfords purchased a new 2017 2.0L Ford Edge on April 18, 2017.  Ex. O, Morford Dep. Ex. 3.  The Morfords first filed suit in the District Court of Delaware, on November 30, 2020.  *Reed v. Ford*, D. Del. Case No. 1:20-cv-01631-LPS, Dkt. 1.  (Consolidated with *Miller v. Ford*, Dkt. 36.)

- **Aaron and Victoria Manfra (MD).**  The Manfras purchased a new 2017 1.5L Fusion on February 18, 2017.  Ex. R, A. Manfra Dep. Ex. 6.  The Manfras joined this action on June 21, 2021.  Dkt. 43.

- **Tracey Metro (MI).**  Metro purchased a new 2.0L 2018 Edge on January 22, 2018.  Ex. U, Metro Dep. 53:24-54:7.  Metro joined this action on September 28, 2022.  Dkt. 81.

- **Mark Kennedy (MN).**  Kennedy purchased a used 2016 2.0L Ford Edge on November 24, 2020.  Ex. T, Kennedy Dep. 116:8-117:1.  Kennedy joined this action on September 28, 2022.  Dkt. 81.

- **Brad Mullen (OH).**  Mullen purchased a used 2.0L 2017 Edge on May 11, 2020.  Ex. X, Mullen Dep. Ex. 2.  Plaintiffs' motion to substitute Mullen as a new Ohio plaintiff was granted on December 29, 2025.  Dkt. 143.

- **Tyson Batdorf (TN).**  Batdorf purchased a used 2017 2.0L Lincoln MKC on December 20, 2020.  Ex. AA, Batdorf Dep. 80:17-81:20.  Batdorf joined this action on September 28, 2022.  Dkt. 81.

- **David Gonzalez (TX).**  Gonzalez purchased a new 2014 Ford Escape on September 20, 2014.  Ex. BB, Gonzalez Dep. 75:3-22.  Gonzalez joined this action on September 28, 2022.  Dkt. 81.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, if "the record taken as a whole could not lead a

4

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To oppose summary judgment, Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. Bare assertions of genuine issues of fact are insufficient. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Valdez v. Ford Motor Co.,* 2024 WL 1344420, at *11 (E.D. Cal. Mar. 29, 2024) (granting Ford summary judgment because undisputed facts showed Ford was not in breach of express warranty and the vehicle was not a consumer good covered by Song-Beverly implied warranty); *Lessin v. Ford Motor Co.*, 756 F. Supp. 3d 885, 928 (S.D. Cal. 2024), *rev'd in part on other grounds*, No. 25-2211, 2026 WL 382608 (9th Cir. Feb. 11, 2026) (granting Ford summary judgment on express warranty, implied warranty, and statutory fraud claims).

## IV.   ARGUMENT

### A.   The Express Warranty Claim of the Wests (CA) Fails and the Claim of Mullen (OH) Was Disclaimed

#### 1.   Ford Did Not Fail to Repair the Wests' (CA) Vehicle After Multiple Attempts During the Warranty Period

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992). The Wests' (CA) express warranty claim fails because undisputed evidence shows that Ford did not fail to repair the vehicle after multiple attempts within the express warranty period. Ford's Limited New Vehicle Warranty covers certain powertrain components including the engine for the earlier of five years or 60,000 miles. Ex. A (2013 Ford's Warranty Guide). It provides that, under certain circumstances, an authorized Ford dealer will repair or replace a covered part that fails "during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship." Nowhere does the Limited Warranty promise that a vehicle or its components will work perfectly or never need another repair. For breach of an express warranty of this type, California law requires "multiple" unsuccessful attempts to repair the vehicle within the warranty period. *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 784 (N.D. Cal. 2017) (rejecting express warranty claim that "mere

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

two successive failures within the warranty period—or in other words, only one unsuccessful replacement—can meet that test where a warranty both specifically contemplates replacement of defective drives and provides the same warranty coverage for replacement drives"); *Treuhaft v. Mercedes-Benz USA, LLC*, 2021 WL 2864877, at *3 (C.D. Cal. July 6, 2021) ("To constitute a 'reasonable number of repair attempts,' a plaintiff must present the vehicle to the manufacturer or seller more than once, complaining of the same defect each time."); *Clark v. Am. Honda Motor Co.*, 2021 WL 4260232, at *3 (C.D. Cal. Sept. 14, 2021) (similar).

The Wests' (CA) claim fails because Ford did not fail to repair the vehicle's engine after multiple attempts within the express warranty period. Mr. West testified that the vehicle stalled once within the warranty period, in 2016. Ex. E, E. West Dep. 110:5-11, 115:24-116:8. He took it to a Ford dealership, which failed to replicate the issue. *Id*. 93:15-94:20. Mr. West testified that he did not experience the stalling issue again while the vehicle was within warranty and, critically, did not take his vehicle back into the Ford dealership for engine issues while the vehicle was still within the warranty period. *Id*. 115:21-4, 126:16-18. Mr. West testified to other repair visits, beginning in May 2018 at 68,834 miles, but those visits were all outside the warranty period. *Id*. 123:17-124:4, 126:3-15; Ex. F (May 2018 visit); Ex. G; Ex. E, West Dep. 133:23-134:3, 138:6-11 (West decided to not take the vehicle to a dealership at 74,079 miles in November 2018 because "at this time it was out of warranty"); *id*. 185:22-186:5 (dealer visit at 86,950 miles in 2020).

That the Ford dealer was unable to replicate the Wests' engine issue during their single repair attempt in the warranty period is not sufficient for Ford to be in breach. As noted above, a single repair attempt is insufficient for an express warranty claim, regardless of whether the attempt was successful. Moreover, California express warranty law is clear that a dealer failing to replicate an issue does not mean that a dealer "refuses" a repair. *Cadena v. Am. Honda Motor Co.*, 2018 WL 8130613, at *7 (C.D. Cal. Nov. 14, 2018) ("[T]he Court is unpersuaded by Plaintiffs' argument that Honda 'refused' to repair the vehicles when the dealerships could not duplicate the alleged issue and thus did not initiate any repairs – these facts simply cannot support the conclusion that the dealership 'refused' to repair, as the dealer could not identify any issue

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

that required repair."); *see also Clark*, 2021 WL 4260232, at *3 (dealership's failure to identify issue on single repair attempt not sufficient to show breach).  Nor is a post-warranty engine replacement—at nearly 27,000 miles after the warranty expiration (Ex. E, E. West Dep. 185:22-186:5)—relevant to show multiple repair attempts for purposes of a breach of express warranty claim under California law: Ford warranties its vehicles for a certain period of time, and failure outside of that time period is not sufficient for breach.  *E.g.*, *Lessin v. Ford Motor Co.*, 600 F. Supp. 3d 1137, 1143 (S.D. Cal. 2022) (express warranty claims dismissed after problem reoccurred outside warranty period); *Drake v. Toyota Motor Corp.*, 2020 WL 7040125, at *8 (C.D. Cal. Nov. 23, 2020) ("an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed" (quotations omitted)).  Because the Wests failed to present their vehicle more than once for repair during the term of the express warranty period, their claims for breach of express warranty fail as a matter of law.

**2.    Mullen (OH) Is Estopped from Bringing an Express Warranty Claim**

Mullen (OH) previously told the Court that he would not pursue an express warranty claim, so he is equitably estopped from maintaining it now.  A "party is estopped from making an argument when 1) its current position is 'clearly inconsistent' with its previous position; 2) 'the party has succeeded in persuading a court to accept that party's earlier position'; and 3) the party, if not estopped, 'would derive an unfair advantage or impose an unfair detriment on the opposing party.'"  *Perez v. Discover Bank*, 74 F.4th 1003, 1008 (9th Cir. 2023) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).  All three elements are met here.

In their prior successful argument for leave to substitute Mullen in as a new plaintiff, Plaintiffs represented to the Court that Mullen would not bring an express warranty claim.  Dkt. 123 at 5 n.5 (stating in reply that Plaintiffs' "motion was clear" that Mullen is only bringing implied warranty claim).  Ford first opposed the motion to substitute on grounds that it would include a *third* round of motion to dismiss briefing, as Mullen's Ohio express warranty claim failed on the face of the Complaint.  Dkt. 121 at 7-8.  Plaintiffs responded that they only sought to bring a breach of implied warranty claim on behalf of Mullen (Dkt. 123 at 5 n.5),  and this Court's Order allowing Mullen to join as a plaintiff adopted that representation.  Dkt. 143 at 5

7

("Plaintiffs state in reply that they do not seek to amend to add an express warranty claim, instead stating that the proposed amendment regarding express warranty claims is solely intended to preserve appellate rights."). Given their prior disavowal, Plaintiffs would derive an unfair advantage if Mullen were permitted to proceed now with an Ohio express warranty claim. *Perez*, 74 F.4th at 1009 ("A party derives an unfair advantage from taking two contradictory positions if invoking the new position creates the possibility of the party prevailing on the very position it successfully discredited." (quotations omitted)). Mullen is thus estopped from bringing an express warranty claim, and Ford should be granted judgment against him.[3]

> **B.    The Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) Implied Warranty Claims Fail as a Matter of Law**
>
> **1.    The Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) Implied Warranty Claims Fail Because Their Vehicles Were Merchantable as a Matter of Law**

Under Kansas, Ohio, Michigan, and Indiana law, a vehicle is only unmerchantable if it is unfit for its ordinary purpose of providing transportation.[4] The Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) implied warranty claims fail as a matter of law because undisputed facts show that the alleged engine defect did not prevent them from driving and using their vehicles; their vehicles have over 100,000 miles. Some plaintiffs even gave their alleged "unmerchantable" vehicles to family members, including children. Ex. W, Mullen Dep. 250:12-19, 255:14-22; Ex. J, Balaszek Dep. 44:7-10. All of their vehicles proved capable of providing basic transportation and are thus merchantable as a matter of law. *See Priebe v. Autobarn Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001) (no breach of implied warranty claim when plaintiff "continued

---

[3] Ford recognizes Plaintiffs have said they assert the claim for appeal purposes. But Ford is entitled to an order clearly eliminating the claim from the case.

[4] **KS:** *Marksberry v. FCA US LLC*, 606 F. Supp. 3d 1075, 1087 (D. Kan. 2022) ("a good is merchantable if it is 'fit for the ordinary purposes for which such goods are used'"; **OH**: *Filipovic v. Fairchild Chevrolet*, 2001 WL 1141384, at *3 (Ohio Ct. App. Sept. 27, 2001) (implied warranty "represents that those goods are fit for the ordinary purposes for which such goods are used"); **MI**: *Kovack v. Daimler Chrysler Corp.*, 2006 WL 1293213, at *3 (Mich. Ct. App. May 11, 2006) (vehicle must be "reasonably fit for its intended, anticipated, or reasonably foreseeable use"); **IN**: *Sharp v. Tom Wood E., Inc.*, 822 N.E.2d 173, 175 (Ind. Ct. App. 2004) ("The ordinary purpose of a privately owned vehicle is to provide transportation.").

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

to drive the car" and vehicle had "more than 30,000 miles" despite plaintiff claiming it was "dangerous to drive"); *Sheris v. Nissan N. Am. Inc.*, 2008 WL 2354908, at *5 (D.N.J. June 3, 2008) (no breach of implied warranty of merchantability when plaintiff drove vehicle for 20,618 miles and two years before needing to replace defective part); *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 & n.13 (N.D. Ga. 2005) (granting summary judgment because plaintiff had air conditioner fixed within 6 months and "she used the car daily and put over 31,000 miles on it in the first one and one-half years of ownership").

*Morfords (KS).* The Morfords purchased a new 2017 Ford Escape in April 2017. For three-and-a-half years, and for 66,000 miles, the vehicle did not present any issue with the engine. Ms. Morford was the primary driver of the car and used it "for driving [her] family around, using it "almost daily" for "errands" and driving her daughter. Ex. Q, K. Morford Dep. 55:1-14, 55:24-56:1, 57:1-7. In October 2020 at approximately 66,000 miles, the Morfords took the vehicle to a Ford dealership upon noticing a check engine light and rough idling. Ex. N, C. Morford Dep. 115:2- 118:4. The Ford dealership recommended an engine repair, but the Morfords declined. For the next five years, the Morfords continued to drive the Escape without repairing the engine, only topping off the coolant at times. *Id*. 59:2-22, 62:6-18. Ms. Morford's use of the vehicle has never changed since their purchase. Ex. Q, K. Morford Dep. 69:13-16. Ms. Morford continues to use the Escape as her daily driver, and they still use the vehicle to drive their young daughter to school and activities. Ex. N, C. Morford Dep. 56:4-19. As of December 2025, the vehicle had 118,000 miles, over 50,000 miles after experiencing what they allege are symptoms of coolant intrusion. Ex. P, Morfords Rog. Resp. 9. Their vehicle is thus merchantable as a matter of law. *Marksberry*, 606 F. Supp. 3d at 1080, 1080, 1087 (vehicle found merchantable as a matter of law when "Plaintiff had driven his truck for more than 11 years and 80,000 miles [and] Plaintiff's truck has met his transportation needs.").

*Mullen (OH).* Mullen purchased a used 2017 Ford Edge with 43,956 miles. He had no complaints until the vehicle had 56,000 miles on it in April 2021. Ex. W, Mullen Dep. 126:1-16. At that time, Mullen says he experienced some trouble starting the vehicle, but the vehicle would start when he re-pushed the start button. It also would run without issue. *Id*. 126:1-16, 128:16-

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

18, 131:14-25, 134:25-135:14. Mullen continued to drive his vehicle. *Id*. 63:5-64:25, 185:19-186:2, 192:7-19. He testified that, even with the engine issue, the Edge was the "better choice" to complete a 700-mile road trip from Ohio to Missouri compared to his alternative vehicle. *Id*. 193:20-23. His Edge had 143,000 miles on it at the time Mullen gave it to his daughter in September 2025. *Id*. 258:15-19. He had "no concerns" with her driving it, *id.* 57:21-24, and his daughter considered the 2017 Ford Edge an "upgrade" from her prior vehicle. *Id*. 56:20-57:7. The extensive use of Mullen's Ford Edge shows that it was merchantable as a matter of law. *Filipovic*, 2001 WL 1141384, at *5 ("A reasonable trier of fact could only find that the stalling problem, while certainly an annoyance, did not interfere with her ability to drive the car. . . . The car provided her with reliable, if not perfect, transportation."); *Sharkus v. Daimler Chrysler Corp.*, 2002 WL 31319119, at *1, *3 (Ohio Ct. App. 2002) (vehicle that experienced issues on start-up not unmerchantable as a matter of law); *Miller v. DaimlerChrysler Motors Corp*., 2001 WL 587496, at *5 (Ohio Ct. App. May 31, 2001) ("intermittent noise and vibration which do not interfere with the functioning of the vehicle do not render a vehicle unfit for its ordinary purpose"); *Lessin*, 756 F. Supp. 3d at 917 (finding vehicle merchantable as a matter of OH law when plaintiff continued to drive vehicle and vehicle had over 100,000 miles).

***Metro (MI)***. Metro (MI) purchased a new 2018 2.0L Ford Edge in January 2018. As of December 2025, the vehicle has 164,391 miles. Ex. V, Metro Rog. Resp. 9. Metro testified that she at times experienced "hesitation" on acceleration that would resolve on its own and did not cause her to pull over or stop driving. Ex. U, Metro Dep. 138:3-139:10, 144:2-7. She continued to drive the vehicle and did not take it in for repair until she saw a check engine light three years later in 2021. *Id.* 139:12-140:17. The dealership told her she needed to replace her O2 sensors, which she had done by a co-worker at her school who taught high school auto-repair classes. *Id*. 150:22-152:21. Her use of the vehicle did not change, other than a gap during the COVID pandemic, and she continued to drive the vehicle 30-40 minutes each way during her daily commute as a teacher. *Id*. 57:2-12. Between 2021 and 2022, she drove approximately 38,000 more miles before seeking a repair. *Id*. 195:7-20. Metro required an engine replacement at 98,200 miles. *Id*. 194:17-22, 195:22-24. After receiving an engine replacement in 2022, she

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

continued to drive her vehicle without seeking any further repair. *Id*. 240:4-11, 241:5-16. Metro's extensive use of her vehicle defeats any claim her vehicle was unmerchantable. *Lyman v. Ford Motor Co*., 2022 WL 856393, at *8 (E.D. Mich. Mar. 22, 2022) (a "plaintiff cannot maintain an implied warranty claim when he or she does not allege that the defect prevented an ability to drive the vehicle"); *Weidman v. Ford Motor Co*., 2020 WL 674348, at *3-*4 (E.D. Mich. Feb. 11, 2020) (Michigan plaintiff's implied warranty claims fail where plaintiff did not stop using the vehicle); *Kovack*, 2006 WL 1293213, at *1, *3 (vehicle taken in for service for steering alignment problem 5 times merchantable as a matter of law because the vehicle was successfully repaired).

       *Balaszek (IN).*  Balaszek purchased a new 2017 Ford Escape in November 2016.  Over three years later, with the vehicle having 80,000 miles on it, the technician noticed there was empty coolant during a routine oil change.  Ex. J, Balaszek Dep. 75:3-16.  During these three years, she drove an average of over 20,000 miles a year.  *Id*. 77:22-78:1.  In September 2020, she started her vehicle and saw "white smoke" but it "cleared quickly" and she "just drove wherever [she] was going." *Id*. 78:18-79:25.  At the time of her 2024 deposition, the vehicle had 150,000 miles on it and her teenaged daughter was the primary driver of the Ford Escape, using it to go to work and school.  *Id*. 33:3-6, 32:12-16, 43:18-22.  Her daughter's use of the vehicle also has not changed since she started using the vehicle.  *Id*. 44:14-17.  At the time she disposed of the vehicle by giving it to her brother, the vehicle had 163,604 miles on it.  Ex. L, Balaszek Resp. to Rog 9. Given the history, Balaszek's vehicle is thus merchantable under Indiana law, which holds that a vehicle is merchantable if it provides its primary purpose of transportation.  *Sharp*, 822 N.E.2d at 174-75; *Popham v. Keystone RV Co*., 2016 WL 4993393, at *6 (N.D. Ind. Sept. 19, 2016) (RV merchantable when used "for two years" without incident).

        **2.**      **Balaszek's (IN) Implied Warranty Claim Also Fails Because All Alleged Problems Were Outside the Implied Warranty Period**

       Balaszek's implied warranty claim also fails because the claimed problems occurred only outside the implied warranty period.  Indiana law permits Ford's limitation of the implied warranty period to the length of the express warranty period.  As noted above, Balaszek first

11

experienced engine issues when her vehicle had 80,000 miles on it, outside the durational limits of the 5 year/60,000 mile powertrain warranty.  Ex. J, Balaszek Dep. 75:3-16.  Under Indiana law, limiting an implied warranty of merchantability to the terms of an express warranty is enforceable if it is conspicuous, which includes clauses in boldface type or in a different color; whether a disclaimer is conspicuous is a question for the court.  *Shea v. Gen. Motors LLC*, 567 F. Supp. 3d 1011, 1020-21 (N.D. Ind. 2021).  Ford's "Limitations and Disclaimers" section begins in bold, all caps type, is in a different color than other paragraphs in the warranty, and states, "These implied warranties are limited, to the extent allowed by law, to the time period covered by the written warranties."  Ex. B, pp. 5-7.  (2017 Ford Escape Warranty).  Because she first experienced engine issues outside the limits of the express warranty period, Balaszek's implied warranty claim fails.  *Shea*, 567 F. Supp. 3d at 1020-21; *Popham*, 2016 WL 4993393, at *5.

### C.    Plaintiffs' Magnuson-Moss Warranty Act Claims Fall Along with Their Express and Implied Warranty Claims

The MMWA claims stand or fall along with a plaintiff's state-law warranty claim, which means that here Ford is entitled to summary judgment against several MMWA claims as well.  The MMWA creates a federal cause of action for breach of written and implied warranties under state law, 15 U.S.C. § 2310(d), but does not create additional federal law protections or expand a plaintiff's rights under state warranty law.  *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *9 (N.D. Cal. June 5, 2009).  Lund's (AR),[5] the West's (CA), Balaszek's (IN), Pickering's (IN), the Morfords' (KS), Manfras' (MD), Metro's (MI), and Mullen's (OH) MMWA claims fail because, as addressed above and below in Section IV.D, H, their express or implied warranty claims fail as a matter of law.  This Court already dismissed other MMWA claims in connection with motions to dismiss in this case when other plaintiffs' state-law warranty claims failed on the pleadings.  *Miller v. Ford Motor Co.*, 2024 WL 1344597, at *29 (E.D. Cal. Mar. 29, 2024); *see also, e.g.*, *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1075 (S.D. Cal. 2015) ("[D]ismissal of the state law claims requires the same disposition with respect to an associated

---

[5] Ford moves for summary judgment on Lund's MMWA claim to the extent it is based on breach of implied warranty only.  *See infra* Section IV.H.

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

MMWA claim." (quotations and citations omitted)); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 985-86 (N.D. Cal. 2014).

### D. Several Claims of the Wests (CA), Miller (CA), and Pickering (IN) Fail Because They Purchased Their Vehicles for Business Use

The California Consumers Legal Remedies Act and Indiana Deceptive Consumer Sales Act ("IDCSA") expressly limit claims to products purchased primarily for personal, family, or household use. Cal. Civ. Code § 1761(d); *Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009) (CLRA); Ind. Code § 24-5-0.5-2(a)(1); *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2015 WL 4591236, at *33 (D.N.J. July 29, 2015) (IDCSA). The California Song-Beverly Act also limits implied warranty of merchantability claims to those involving products purchased primarily for personal, as opposed to business, use. Cal. Civ. Code § 1791(a) ("'Consumer goods' means any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes"); *Valdez*, 2024 WL 1344420, at *7 (granting summary judgment for Song-Beverly claim because vehicle purchaser testified he purchased his vehicle for business). Miller, Amber West, and Pickering all testified that they purchased their vehicles for business purposes, warranting summary judgment against these claims.

*Miller (CA).* Miller testified that she purchased her 2017 Ford Edge with the intent to use it for her job as a sales representative for a medical device company. Ex. H, Miller Dep. 67:15-20. And she used her vehicle "50 percent" for business use. *Id.* 103:18-23, 105:2-4. Thus, it was not purchased primarily for personal, family, or household use, and her CLRA claim fails.

*Wests (CA).* When the Wests purchased their 2013 Fusion, Amber West intended to use it for work purposes, Ex. D, A. West Dep. 33:10-13, 83:1-4, specifically using it to visit clients during her job as a social worker. *Id.* 33:10-13, 34:14-21. While she also used it to travel with her family, Ms. West admitted that she could not testify whether she used it for work more or less than 50% of the time, or even whether it was 90% of the time. *Id.* 36:10-37:5. Thus, she cannot establish the CLRA and Song-Beverly Act requirements that the vehicle be purchased primarily

13

for personal, family, or household use.  Her husband admitted the Fusion was Ms. West's vehicle.  Ex. E, E. West Dep. 21:25-22:3.  Thus, their CLRA and Song-Beverly Act claims fail.

*Pickering (IN)*.  Pickering testified that he purchased his 2014 1.5L Ford Fusion for use at his job as a sales representative as well as general use.  Ex. M, Pickering Dep. 80:15-81:15.  He estimates that at the time of his purchase, and for years afterward, he used the vehicle 75-80% for business use.  *Id*. 81:10-15.  Thus, his vehicle was not primarily for personal, family, or household use, and his Indiana DCSA claim fails.

**E.    Kennedy's (MN) Minnesota False Statement in Advertising Act Claim Fails Because He Did Not See Any Ford Ads Related to His Vehicle**

A claim under the Minnesota False Statement in Advertising Act requires that the plaintiff viewed a false or misleading advertisement.  *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1325 (D. Minn. 2018); *Miller*, 2024 WL 1344597, at *47 (dismissing other MN plaintiff for not viewing advertisements).  The Court previously denied Ford's motion to dismiss Kennedy's false advertising claim but did so based on his allegation that he saw six advertisements.  Dkt. 101 at 84 (citing Dkt. 81 ¶ 271).  But during his deposition, Kennedy admitted that he did not see any advertisements relating to his 2016 Ford Edge before he purchased it; he had been "just sitting on a laptop and looking online at different locations of different Fords at different dealerships."  Ex. T, Kennedy Dep. 100:25-101:6, 102:8-16.  He ultimately purchased his Edge as a used vehicle from a BMW—not Ford—dealership, so any representations at the point of sale cannot be attributable to Ford.  Kennedy also admitted that he did not see any information regarding the 2016 Edge vehicle on Ford's website, but rather only viewed the specifications for Ford vehicles available at the time of his purchase in 2020.  *Id*. 94:18-95:5, 95:22-96:12.  These would be the 2020-2021 Ford Edges—not his vehicle and not a vehicle equipped with the saw-cut cooling channel that forms the basis of his claim of defect.  Ex. L, Balaszek Resp. to Rog 12 (identifying 2015-2018 Ford Edges as those with the alleged saw-cut defect).[6]  Because the evidence shows Kennedy did not view any advertisements by Ford, let alone false ones, related to his vehicle, he

---

[6] Plaintiffs provided identical responses to Rog 12; Ford cites to Balaszek's response to reduce the exhibits for the Court.

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

has no claim under Minnesota's false advertising statute.

**F.        Gonzalez's (TX) DTPA Claim Fails Because Ford Had No Duty to Disclose**

Gonzalez's Texas Deceptive Trade Practices Act claim fails as a matter of law because Ford does not have a duty to disclose under that statute.  Plaintiffs' theory of fraud is entirely omissions-based, Dkt. 85 at 13 n.13, so Ford can only be liable if there is a duty to disclose.  But under the DTPA, "[m]ere nondisclosure of material information is not enough."  *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. 2006).  Recent cases interpreting the TX DTPA have found that "'numerous cases . . . at both the motion to dismiss and summary judgment stages [have] found a manufacturer has no duty of disclosure to a consumer' without a 'fiduciary or confidential relationship' between them.'"  *Ludwig v. FCA US LLC*, 795 F. Supp. 3d 525, 555 (D.N.J. 2025) (quoting *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 849 (S.D. Tex. 2018)).  Cases hold that in a pure omissions case, "a party has an affirmative duty to disclose only where a confidential or fiduciary relationship exists."  *Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 722 (Tex. App. 1997) (citing *Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 403 (Tex. App. 1996)); *Seibert v. Gen. Motors Corp.*, 853 S.W.2d 773, 778 (Tex. App. 1993).  The lack of a confidential or fiduciary relationship is indisputable here: Gonzalez purchased from a dealership, not Ford directly, and thus has no confidential or fiduciary relationship with Ford.  *E.g.*, *Adams*, 395 F. Supp. 3d at 850 ("No duty arises in an arms-length transaction between a manufacturer and consumer, particularly where Plaintiffs did not purchase or lease their vehicles directly from the manufacturer."); *Lessin v. Ford Motor Co.*, 2021 WL 3810584, at*12-13 (S.D. Cal. Aug. 25, 2021) (dismissing TX DTPA claim against Ford because plaintiff "did not purchase her truck directly from Ford" but from a Ford dealership.); *Ludwig*, 795 F. Supp. 3d at 555 (dismissing DTPA and concealment claims because "[i]n Texas, a vehicle transaction between a plaintiff and a dealership does not impose a duty on a manufacturer"); *Click v. Gen. Motors LLC*, 2020 WL 3118577, at *7 (S.D. Tex. Mar. 27, 2020) ("Generally, no duty arises in an arms-length transaction between a manufacturer and consumer, particularly where the plaintiffs did not purchase or lease their vehicles directly from the manufacturer.").  Gonzalez also admitted he had no interactions with Ford Motor Company before purchasing his vehicle.  Ex. BB, Gonzalez Dep.

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

85:19–25.

### G.   The Wests' (CA) and Miller's (CA) UCL Claims for Restitution Fail Because Undisputed Facts Show They Do Not Lack an Adequate Remedy at Law

In the related *Nelson* action, this Court held that plaintiffs were foreclosed from bringing claims under the UCL for restitution because plaintiffs there failed to establish they lacked an adequate remedy at law, and the same should result here. *Nelson v. Ford Motor Co.*, 2025 WL 2581611, at *4 (E.D. Cal. Sept. 5, 2025) ("plaintiffs have not alleged that a remedy at law is inadequate with respect to their request for restitution or disgorgement in connection with their UCL . . . claims"). UCL claims are entirely equitable in nature and are only available if plaintiffs lack legal remedies. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1311-12 (9th Cir. 2022). Where, as here, the Wests and Miller have an adequate remedy at law for any damages (i.e., their other claims), they cannot bring a claim for equitable relief. *Id.*; *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020). Their UCL claims for restitution fail as a matter of law.

### H.   Certain Plaintiffs' Claims Are Barred by the Statute of Limitations

Many Plaintiffs purchased their vehicles many years before they filed this lawsuit in 2020 or joined it in 2021 or 2022 (Dkts. 1, 43, 81), making their claims facially barred by the governing statute of limitations as a matter of law. Claims for breach of the implied warranty under Arkansas, California, Indiana, Kansas, and Michigan law and claims under the California CLRA, California UCL, and Indiana DCSA all accrue at the time of sale, do not allow for the application of the discovery rule, and all have statutes of limitations that are two, three, or four years. The federal MMWA statute likewise sets the statute of limitations for a given claim based on the relevant state's warranty law. *Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1157 (C.D. Cal. 2009) ("Because Magnuson–Moss contains no express statute of limitations, district courts must look to the most analogous state statute to determine what statute of limitations to apply."). Plaintiffs also cannot establish the facts of affirmative concealment or similar conduct necessary to toll the relevant limitations periods. Ford addresses each relevant state law separately for those Plaintiffs whose claims are barred by the statutes of limitations.

###### 1.    Lund's (AR) Implied Warranty Claim Is Time-Barred

The statute of limitations for an Arkansas breach of implied warranty claim is four years, and the claim accrues at delivery. *Perez v. Volkswagen Grp. of Am., Inc.*, 2013 WL 1661434, at *6 (W.D. Ark. Apr. 17, 2013); *White v. Volkswagen Grp. of Am., Inc.*, 2013 WL 685298, at *5 (W.D. Ark. Feb. 25, 2013). Lund purchased her vehicle used in October 2016, with her vehicle having been first sold by Ford in December 2015. Dkt. 144 ¶ 24. She did not file her suit until December 2020, outside the four-year statute of limitations period.[7] Arkansas law also holds that the discovery rule does not apply to implied warranty claims. Ark. Code § 4-2-725(2); *J&B Tankers, Inc. v. Navistar Int'l Corp.*, 539 F. Supp. 3d 955, 961 (E.D. Ark. 2021) (implied warranty claim filed 5 years after delivery of truck was time-barred). Lund also cannot show that fraudulent concealment tolling applies in this case. Under Arkansas law, fraudulent concealment only tolls the statute of limitations if a party is under a duty to disclose. *Miller v. Gen. Motors, LLC*, 773 F. Supp. 3d 461, 518-19 (E.D. Mich. 2025) (AR law). In *Miller*, the court held there was no duty to disclose when plaintiffs bought their vehicles used from a third-party dealership, absent evidence that the manufacturer committed a "positive act" of fraud. Here, Lund similarly purchased her vehicle from a third party, Fort City Motors, Ex. C, Lund Dep. 49:6-14, not a Ford dealership. Plaintiffs also have identified no affirmative acts of fraud by Ford against Lund; she testified that she did not communicate with anyone at Ford Motor Company before filing suit. *Id*. 33:12-15. Fraudulent concealment tolling thus does not apply, and her implied warranty claim is barred by the statute of limitations.

###### 2.    The Wests' (CA) CLRA, UCL, and Implied Warranty Claims Are Time-Barred

The Wests' CLRA  and UCL claims have three- and four-year statutes of limitations, respectively, which accrue at the time of purchase. *Plumlee v. Pfizer, Inc.*, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014). Implied warranty claims under the Song-Beverly Act have a four-year

---

[7] Under Arkansas law, courts use the date of the *first* delivery of a product for statutes of limitations purposes. *Perez*, 2013 WL 1661434, at *6; *White*, 2013 WL 685298, at *5. Here, Lund's implied warranty claim is barred if measured under either by the date the vehicle was first sold (2015) and even by Lund's 2016 used-vehicle purchase date.

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

statute of limitations period and also accrue at the time of purchase. *Matray v. Ford Motor Co.*, 2011 WL 13221015, at *2 (C.D. Cal. Nov. 9, 2011). The Wests purchased their 2013 Ford Fusion in May 2013, **seven years** before joining this lawsuit in November 2020. All three of the Wests' CLRA, UCL, and Song-Beverly claims are time-barred on their face.

The discovery rule does not apply to a claim for breach of implied warranty under the Song-Beverly Act. The claim accrues at the time of purchase, "regardless of the aggrieved party's lack of knowledge of the breach." Cal. Com. Code § 2725(2); *Mendoza v. Midea Microwave & Elec. Appliances Mfg. Co.*, 2023 WL 8358208, at *6 (E.D. Cal**.** Dec. 1, 2023) (plaintiff's "implied warranty claim accrued at the time of delivery as the discovery rule only applies to express warranties" (quotations omitted)); *Cabrera v. Ford Motor Co.*, 2024 WL 4101907, at *6 (S.D. Cal. June 4, 2024) (collecting cases).

Undisputed evidence also shows that the delayed discovery rule does not apply to the Wests' CLRA and UCL claims. The delayed discovery exception for a CLRA or UCL claim requires the plaintiff to show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1091 (S.D. Cal. 2021) (citing cases); *see also Franco v. Ford Motor Co.*, 644 F. Supp. 3d 672, 682 (C.D. Cal. 2022) (absent exception, claim accrues at purchase). Tolling due to delayed discovery does not apply here because the Wests' own admissions establish they were not diligent in investigating and pursuing their claim. A plaintiff has "reason to discover the defects in their vehicle" when they experience "adverse effects resulting from those defects." *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 884 (N.D. Cal. 2019); *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *4 (N.D. Cal. July 7, 2015). Evan West testified that he first took his vehicle into Antelope Valley Ford in September 2016 and that they experienced a reduction in motive power "every three to six months." Ex. E, E. West Dep. 88:13-17. The fact that they delayed filing suit until November 2020 (Dkt. 20)—over **four years** after first experiencing what they now claim is the alleged defect—precludes the Wests from establishing diligence. *Galvez v. Ford Motor Co.*, 2018 WL 4700001, at *1, *4-5 (E.D. Cal. Sept. 30, 2018) (granting summary judgment on statute of limitations grounds when plaintiff suffered "repeated"

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

instances of a defect).

Tolling due to fraudulent concealment also is not available for the Wests' claims because tolling "requires active conduct by a defendant, ***above and beyond*** the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Guisinger v. Keystone RV Co.*, 2026 WL 1046715, at *16 (C.D. Cal. Apr. 2, 2026) (emphasis added; quotations omitted). This requires evidence that "the defendant took affirmative acts to mislead the plaintiff." *Id.* (quotations omitted). Here, no facts in the record establish that ***Ford*** took any affirmative steps to mislead the Wests or prevent them from filing suit. The Wests testified they had no interactions with Ford prior to purchasing their vehicle. Ex. D, A. West Dep. 31:7-10. The only interactions with Ford Motor Company the Wests had was Ms. West's discussions with Ford's customer service department after requiring an engine replacement, and Ms. West described no misleading actions taken by Ford. *Id.* 72:15-74:8 (Ms. West states all Ford Motor Company told her was that they would not cover the engine replacement). Given the absence of any affirmative misleading act by Ford, tolling for fraudulent concealment is not available. *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *5 (C.D. Cal. Oct. 3, 2014); *Garcia v. Gen. Motors LLC*, 2018 WL 6460196, at *7 (E.D. Cal. Dec. 10, 2018).

### 3. Pickering's (IN) and Balaszek's (IN) IDCSA and Implied Warranty Claims Are Time-Barred

The Indiana DCSA has a two-year statute of limitations and accrues at the time of the allegedly deceptive act, which in this case would be failure to disclose the alleged defect at the vehicle's point of sale. *Carroll v. BMW of N. Am., LLC*, 553 F. Supp. 3d 588, 612 (S.D. Ind. 2021); *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 965 (Ind. Ct. App. 2000) (deceptive act occurred at time of sale of subject vehicle). Under Indiana law, implied warranty claims have a four-year statute of limitations accrue at the time of sale. *Carroll*, 553 F. Supp. 3d at 612. Neither claim applies the discovery rule to the statute of limitations. *Id.* at 612-13 (IDCSA and implied warranty); *A.J.'s Auto. Sales*, 725 N.E.2d at 964-65 (IDCSA). Both Balaszek's and Pickering's claims are thus time-barred, as they purchased their vehicles in 2016, over four years before joining this suit in 2021 and 2022, respectively. Dkts. 43, 81.

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

Nor can either Plaintiff rely on tolling due to fraudulent concealment. Under Indiana law, the party seeking fraudulent concealment tolling must show "that either (1) the alleged wrongdoer actively concealed the cause of action and the claimant exercised due diligence to discover the cause of action, or (2) the parties' relationship—such as a fiduciary relationship—imposed on the alleged wrongdoer a duty to disclose the cause of action to the claimant." *Gittings v. Deal*, 109 N.E.3d 963, 973 (Ind. 2018). "Mere silence will not constitute concealment, absent a duty to speak arising from a fiduciary or confidential relationship." *Carroll*, 553 F. Supp. 3d at 614; *see also Shea*, 567 F. Supp. 3d at 1021 (concealment must be "active and intentional"). Ford did not actively conceal anything from Balaszek or Pickering to prevent them from discovering their claims. Ex. J, Balaszek Dep. 97:16-21 (Balaszek never communicated with Ford after experiencing engine trouble); Ex. M, Pickering Dep. 133:25-134:5 (Pickering "did not communicate with Ford"). Further, Ford did not have a fiduciary or confidential relationship, as it was simply a manufacturer not even in privity with the plaintiffs. *Carroll*, 553 F. Supp. 3d at 615 (no confidential relationship between purchaser and auto manufacturer) (citing *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind. Ct. App. 1987)); Balaszek Dep. 54:17-22 & Pickering Dep. 75:5-9 (purchased their vehicles from Webb Ford and Fieldhouse Ford dealerships, not Ford). Fraudulent concealment tolling thus does not apply, and their claims are time-barred.

### 4.    The Manfras' (MD) Implied Warranty Claim Is Time-Barred

Under Maryland law, the statute of limitations for an implied warranty claim is four years, and it accrues at the time of sale. *Rutherford v. BMW of N. Am., LLC*, 579 F. Supp. 3d 737, 746 (D. Md. 2022); Md. Code Com. Law § 2-725(2) (breach of implied warranty "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach"). The Manfras purchased a 2017 Fusion in February 2017 but did not join the lawsuit until June 2021. Dkt. 43. Their implied warranty claim is thus time-barred. Tolling due to fraudulent concealment is not available here either. Under Maryland law, to establish fraudulent concealment, a party must show that "(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was

20

made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation with clear and convincing evidence." *Rutherford*, 579 F. Supp. 3d at 747 (quotations omitted). Here, Plaintiffs cannot show any misrepresentations by **Ford** with the intent to defraud them. Ford did not make any representations to Plaintiffs at all: Mr. Manfra testified that before his vehicle purchase, he did not use Ford's website as a review tool about the vehicle other than to identify financial incentives available; he researched his vehicle on third-party websites. Ex. R, A. Manfra Dep. 89:16-90:19, 91:1-5. Any conversations he had with any sales people at the dealership cannot be considered any misrepresentation made by *Ford*, as under Maryland law there is no agency relationship between a dealer and automotive manufacturer. *Mercedes-Benz of N. Am., Inc. v. Garten*, 618 A.2d 233, 238 (Md. Ct. Spec. App. 1993) (dealership salesperson not agent of manufacturer). Other cases interpreting Maryland law have found that tolling based on fraudulent concealment for failure to disclose is only available if there is a confidential or fiduciary relationship, which is not present here. *Miller*, 773 F. Supp. 3d at 526 (MD law). Here, Ford was not in a "fiduciary or confidential" relationship with the Manfras, acting only as a remote manufacturer. Ex. R, A. Manfra Dep. 21:23-24, 98:4-6. As such, no tolling exists, and the statute of limitations period expired before they filed suit.

### 5.    Metro's (MI) Implied Warranty Claim Is Time-Barred

Under Michigan law, the statute of limitations for an implied warranty claim is four years, and it accrues at the time of sale. Mich. Comp. Laws § 440.2725. The discovery rule does not toll the statute of limitations for that claim. *Kiriacopoulos v. Gen. Motors LLC*, 2023 WL 2789622, at *10 (E.D. Mich. Apr. 5, 2023) (discovery rule does not toll the statute of limitations for implied warranty under MI law); *Nelson*, 2025 WL 2581611, at *14-*15 (Drozd, J.) (MI Plaintiff's claims time barred when he purchased vehicle in 2018 and filed suit in 2025). Metro purchased her 2018 Edge in January 2018 and did not join the lawsuit until September 2022, over four years later (Dkt. 81). Her implied warranty claims are thus time-barred.

Tolling due to fraudulent concealment is also not available here. To establish tolling for fraudulent concealment under Michigan law, a plaintiff must allege that "the defendant

21

committed affirmative acts of misrepresentation that were designed to prevent subsequent discovery." *Kiriacopoulos*, 2023 WL 2789622, at *11. No facts exist in the record that establish that Ford affirmatively concealed any facts from Metro that prevented her from discovering her cause of action sooner. Allegations that Ford failed to disclose any information is not sufficient. *Id*. ("Mere silence is insufficient."); *see also Miller*, 773 F. Supp. 3d at 523 ("failure to disclose the alleged defect is not enough to toll the limitations period").

### I.    <u>Batdorf (TN) Spoliated His Vehicle During This Litigation Without Giving Ford a Chance to Inspect, Warranting Dismissal</u>

Batdorf admitted he disposed of his Lincoln MKC by selling it to CarMax while this litigation was pending, but before he gave Ford a chance to inspect it. Ex. AA, Batdorf Dep. 31:14-18, 45:2-5. He also failed to retain any records relating to the sale. *Id.* His spoliation while under a duty to preserve relevant evidence warrants dismissal of his claim.

Dismissal is the appropriate remedy in cases where a party intentionally disposes of evidence. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). To determine whether sanctions are appropriate, courts consider whether "(1) . . . the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) . . . the records were destroyed with a culpable state of mind; and (3) . . . the evidence was relevant to the party's claim or defense." *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012) (quotations omitted). As to the first prong, a party "must preserve evidence it knows or should know is relevant to a claim or defense of any party." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015). As to the second prong, "bad faith" is not the required mental state—only that the parties had acted with a "conscious disregard" of their duty. *Apple*, 881 F. Supp. 2d at 1147. As to the third prong, there can be no reasonable dispute that the physical state of Batdorf's vehicle is relevant evidence. Ford undertook vehicle inspections of *22* other Plaintiffs' vehicles and examined all the removed engine blocks that had been retained by Plaintiffs, and both parties' experts addressed vehicle and engine inspections in their reports. Sinclair Decl. ¶¶ 2, 6-7. Plaintiffs further acknowledged the importance of the physical evidence in this case; Plaintiffs' counsel previously informed Ford of other Plaintiffs'

22

intent to dispose of their vehicles and allowed Ford a chance to inspect. Sinclair Decl. ¶ 3. In June 2025, they sought leave to dismiss and substitute a former Plaintiff, Hoffer (FL), solely on the grounds that she had disposed of her vehicle prior to giving Ford a chance to inspect. Dkt. 125-1 at 2-3 (arguing that "good cause" existed to substitute Hoffer because she "disposed of her Class Vehicle without notifying counsel or giving Ford an opportunity to inspect it").

To determine what degree of sanctions are appropriate, courts consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (quotations omitted). As discussed above, Batdorf knowingly disposed of his vehicle while this litigation was pending, fulfilling the first prong. This action has also prejudiced Ford, which has been deprived of any opportunity to inspect the vehicles. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 594 (4th Cir. 2001). Dismissal is appropriate because any other sanction would be infeasible, as an "order directing certain facts be taken as true"—such as a finding that Batdorf's vehicle did not experience coolant intrusion—"would [not] be any different from dismissal" of their claims. *Jerry Beeman & Pharmacy Servs., Inc. v. Caremark Inc.*, 322 F. Supp. 3d 1027, 1040 (C.D. Cal. 2018). Dismissal of Batdorf's lone remaining claim under the Tennessee Consumer Protection Act is thus warranted because the vehicle's spoliation cannot be undone. *See also Silvestri*, 271 F.3d at 594 (dismissing claims on spoliation grounds when plaintiff disposed of vehicle involved before allowing manufacturer to inspect it); *Weidman v. Ford Motor Co.*, 2022 WL 1071289, at *8 (E.D. Mich. Apr. 8, 2022) (granting summary judgment against plaintiff for spoliating vehicle).

## V.    **CONCLUSION**

For the reasons above, the Court should grant Ford's motion for partial summary judgment against the following claims:

- The Wests' (CA) express warranty and MMWA claims (Counts 3, 51) based on lack of evidence that Ford breached the terms of the express warranty;

FORD'S MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

- Mullen's (OH) express warranty and MMWA claims (Counts 49, 51) based on judicial estoppel given Plaintiffs' disclaimer of pursuing this claim;

- Balaszek's (IN), the Morfords' (KS), Metro's (MI), and Mullen's (OH) implied warranty and MMWA claims (Counts 22, 24, 29, 50, 51), based on undisputed evidence of their vehicle performance that defeats an implied warranty claim as a matter of law and, as an independent ground for Balaszek, that the claims engine failure occurred outside the duration of the limited implied warranty;

- The Wests' (CA) and Miller's (CA) CLRA claims (Count 1), the Wests' Song-Beverly implied warranty claim (Count 4), and Pickering's (IN) DCSA claim (Count 20), based on the evidence that their vehicles were not purchased primarily for personal, family, or household use;

- Kennedy's (MN) False Statement in Advertising Act claim (Count 32) because he never viewed or relied on any relevant Ford advertising;

- Gonzalez's (TX) claim under the Texas Deceptive Trade Practices Act (Count 48) because as a matter of law Ford owed him no duty to disclose any alleged defect;

- The Wests' (CA) and Miller's (CA) UCL claims for restitution because undisputed facts show they have an adequate remedy at law;

- The Wests' (CA) CLRA and UCL claims (Counts 1 and 3); the Wests' (CA) implied warranty claims (Count 4); Balaszek's (IN) and Pickering's (IN) DCSA and implied warranty claims (Counts 20, 22); the Manfras' (MD) implied warranty claim (Count 26); and Metro's (MI) implied warranty claim (Count 29) because they are barred by the statute of limitations; and

- Batdorf's (TN) Consumer Protection Act claim (Count 45) based on his spoliation of evidence.

24

Dated:  June 22, 2026                    O'MELVENY & MYERS LLP

                                         By:    /s/ *Randall W. Edwards*
                                                 Randall W. Edwards

                                         *Counsel for Defendant*
                                         Ford Motor Company