William A. Kershaw (S.B. #057486)
Stuart C. Talley (S.B. #180374)
Ian J. Barlow (S.B. #262213)
**KERSHAW TALLEY BARLOW PC**
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 779-7000
Facsimile: (916) 244-4829
bill@ktblegal.com
stuart@ktblegal.com
ian@ktblegal.com

[Additional Counsel on Signature Pages]

*Attorneys for Plaintiffs and the
Proposed Classes and Subclasses*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA MILLER, et al., as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 2:20-cv-01796-DAD-CKD<br><br>(Consolidated with Nos. 2:21-cv-00417-DAD-CKD, 2:21-cv-00468-DAD-CKD)<br><br>**PLAINTIFFS' RESPONSE TO FORD MOTOR COMPANY'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing: September 21, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Dale A. Drozd<br>Courtroom: 4, 15th Floor |

**PLAINTIFFS' RESPONSE TO FORD'S STATEMENT OF UNDISPUTED FACTS**

Pursuant to the Eastern District of California Local Rule 260(b) and in connection with their Opposition to Defendant's Motion for Partial Summary Judgment, Plaintiffs hereby submit this Response to Ford Motor Company's Separate Statement of Undisputed Facts (ECF 161-3).

| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | **Plaintiff Lund (AR)** | | |
| 1 | Patricia Lund purchased her used 2016 2.0L Ford Escape on October 21, 2016 from Fort City Motors in Fort Smith, Arkansas. | Sinclair Decl. Ex. C, Lund Dep. 49:6-14. | Undisputed.<br><br>Plaintiffs note, however, that Ford's cited evidence does not support the asserted fact. Lund Dep. Tr. 49:6–14 concerns Ms. Lund's November 24, 2020 purchase of a 2020 Ford Escape and trade-in of the 2016 Ford Escape, not her original purchase of the 2016 Ford Escape. |
| 2 | Ms. Lund did not communicate with Ford Motor Company before filing a lawsuit against it related to her Escape. | Sinclair Decl. Ex. C, Lund Dep. 33:12-15 | **Undisputed in part and disputed in part.**<br><br>Ford's cited testimony addresses only whether Ms. Lund had spoken with anyone at Ford Motor Company before purchasing the vehicle; it does not address other Ford-related communications or exposures before suit. Ms. Lund testified that, before purchasing the 2016 Ford Escape, she reviewed pricing information on Randall Ford's website. Talley Decl., Ex. 38, Lund Dep. Tr. 29:5–10.<br><br>She also testified that, before filing suit, she went in person to Randall Ford regarding the issues with her 2016 Ford Escape, spoke with Randy at Randall Ford about what they were going to do with the vehicle, was told the vehicle needed a new engine, was told the vehicle was still within the engine warranty period, and was told Randall Ford had contacted Ford's regional office. Talley Decl., Ex. 38, Lund Dep. Tr. 46:7–47:24.<br><br>Plaintiffs further dispute any implication that communications with Ford-authorized dealerships are legally irrelevant. |

| Plaintiffs Evan and Amber West (CA) | | | |
|---|---|---|---|
| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
| 3 | Before their vehicle purchase, the Wests did not speak to anybody at Ford Motor Company. | Sinclair Decl. Ex. D, A. West Dep. 31:7-10; Ex. E, E. West Dep. 58:16-25. | **Disputed in part and undisputed in part.**<br><br>Ford's cited testimony addresses only whether Amber West spoke directly with Ford Motor Company regarding the Ford Fusion pre-purchase.<br><br>Disputed to the extent Ford implies that no communications with a Ford-authorized dealership or other Ford-related exposures occurred. |
| 4 | The Wests purchased their Fusion in part for Ms. West's use as a business vehicle to visit clients during her job as a social worker. | Sinclair Decl. Ex. D, A. West Dep. 33:10-13; 34:14-21; 83:1-4. | **Disputed.**<br><br>Ford's cited testimony addresses Amber West's use of the Ford Fusion to travel to and from work and to travel to various locations to meet with individuals as part of her job as a social worker. Talley Decl., Ex. 24, A. West. Dep. Tr. 33:10-35:5.<br><br>Ford's cited testimony does not concern Amber West's use of the vehicle for business purposes or to transport individuals other than herself as part of her job. The Wests testified that they selected the vehicle and used the vehicle as a family car, for family trips, and for daily personal errands. Talley Decl., Ex. 25, E. West Dep. Tr. 22:6-16, 23:4-12; Talley Decl., Ex. 24, A. West Tr. 21:15–20, 33:3–17, 37:6–38:11.<br><br>Plaintiffs further dispute any implication that Amber West purchased the vehicle for use other than "primarily for personal, family, or household purposes" as defined by Cal. Civ. Code §§ 1761(a) and 1791(a). |

| Plaintiffs Evan and Amber West (CA) | | | |
|---|---|---|---|
| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
| 5 | The applicable warranty on the Wests' 2013 Ford Fusion is Ford's Limited New Vehicle Warranty, which covers certain powertrain components including the engine for the earlier of five years or 60,000 miles. | Sinclair Decl. Ex. A (2013 Ford's Warranty Guide). | **Undisputed in part and disputed in part.**<br><br>Undisputed that Sinclair Decl. Ex. A is a version of Ford's 2013 Warranty Guide and that it provides: "Extended warranty coverage periods are available for certain vehicle parts and conditions, Specifically, [that] … Powertrain components are covered for five years or 60,000 miles, whichever occurs first," and that the extended warranty coverage applies to the Engine.<br><br>Disputed that Sinclair Decl. Ex. A is the applicable warranty on the Wests' 2013 Ford Fusion. Ford's cited evidence does not show the Warranty Guide, version DW7J 19T201 CA, is the one applicable to the Wests' vehicle. |
| 6 | Under the Limited New Vehicle Warranty, in certain circumstances an authorized Ford dealer will repair or replace a covered part that fails "during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship." | Sinclair Decl. Ex. A (2013 Ford Warranty Guide) at 9. | **Undisputed in part and disputed in part.**<br><br>Undisputed that the Warranty Guide contains the quoted language; disputed to the extent Ford characterizes the remedy as limited to repair or replacement of a 'covered part,' because the Warranty Guide also refers to repair, replacement, or adjustment of all parts that malfunction or fail during the applicable coverage period. Sinclair Decl. Ex. A at 9. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| Plaintiffs Evan and Amber West (CA) | | | |
|---|---|---|---|
| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
| 7 | Mr. West testified his wife experienced a stalling issue in 2016. | Sinclair Decl. Ex. E, E. West Dep. 110:5-11; 115:24-116:8. | Undisputed.<br><br>Plaintiffs note, however, that Ford's cited evidence does not support the asserted fact. Ford's cited evidence concerns testimony from Evan West stating between some date in September 2016 and June 2017, Amber West did not report that the vehicle was stalling. Evan West also testified that between 2016 and 2020, the vehicle was stalling every three to six months. Talley Decl., Ex. 25, E. West Dep. Tr. 88:13-17. |
| 8 | Antelope Valley Ford was unable to replicate the stalling issue in September 2016. | Sinclair Decl. Ex. E, E. West Dep. 93:15-94:20. | Undisputed. |
| 9 | Mr. West testified that he experienced loss of power issues every three to six months after the September 2016 incident. | Sinclair Decl. Ex. E, E. West Dep. 88:13-17. | Undisputed. |
| 10 | Mr. West did not take their Fusion into any dealership for any stalling issues while his vehicle was within the warranty period. | Sinclair Decl. Ex. E, E. West Dep. 115:21-116:4; 126:16-18. | **Disputed.**<br><br>Ford's cited testimony does not support the fact asserted. It concerns stalling issues occurring between September 2016 and June 2017 (Talley Decl., Ex. 25, E. West Dep. Tr. 115:21-116:4) and whether Evan West brought the vehicle to any "other" dealerships to address a stalling event (Talley Decl., Ex. 25, E. West Dep. Tr. 126:16-18).<br><br>The Wests brought the vehicle to Antelope Valley Ford on or around September 6, 2016, with approximately 47,812 miles on the odometer complaining that "while driving car stalled out and after 10mins car started." Talley Decl., Ex. 63, PLTF_0003278. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| \*\*Plaintiffs Evan and Amber West (CA)\*\* | | | |
|---|---|---|---|
| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
| 11 | Mr. West took their Fusion into a repair shop, KJ Grand Am Tires in November 2018 because his vehicle was outside the warranty period. | Sinclair Decl. Ex G, PLTF_003305 (E. West Dep. Ex. 19); Ex. E, E. West Dep. 133:23-134:3; 138:6-11. | Undisputed.<br><br>Plaintiffs note, however, that Ford's cited evidence and testimony do not support the fact asserted. The cited testimony concerns Evan West bringing the vehicle to KJ Grand Am Tires because the vehicle was not running, and Evan West testified he decided to go to KJ Grand Am Tires because "the dealership's highly expensive" and that he believed the vehicle was out of warranty at that time. |
| 12 | Ms. West first contacted Ford Motor Company regarding their vehicle in October or November 2020. | Sinclair Decl. Ex. D, A. West Dep. 72:8-14. | Undisputed. |
| 13 | Ms. West did not recall any specifics of her call with Ford Motor Company Customer Service other than that Ford indicated that it would not cover the engine replacement. | Sinclair Decl. Ex. D, A. West Dep. 72:15-74:8. | Undisputed. |

- 5 -

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| Plaintiff Miller (CA) | | | |
|------|------|------|------|
| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
| 14 | Ms. Miller purchased her vehicle for use as a work vehicle. | Sinclair Decl. Ex. H, Miller Dep. 67:15-20. | **Disputed.**<br><br>Ford's cited testimony does not support the fact asserted. Ms. Miller testified she knew she would need to travel significantly for work and considered it a factor in her vehicle purchase, not that she purchased it exclusively for business purposes. Moreover, Ms. Miller's use of the vehicle for work reduced to 0% over time. Talley Decl., Ex. 26, Miller Dep. Tr. 103:18–105:18.<br><br>Ms. Miller considered the vehicle her personal car and never stopped using it for personal purposes. Talley Decl., Ex. 26, Miller Dep. Tr. 165:16–167:11.<br><br>Plaintiffs further dispute any implication that Vanessa Miller did not purchase her vehicle "primarily for personal, family, or household purposes" as defined by Cal. Civ. Code §§ 1761(a) and 1791(a), including commuting to work. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | **Plaintiff Miller (CA)** | | |
| 15 | Ms. Miller used her Edge 50% of the time for business use. | Sinclair Decl. Ex. H, Miller Dep. 103:18-23; 105:2-4. | **Disputed.**<br><br>Ford's cited testimony does not support the fact asserted. Ford's cited testimony concerns Ms. Miller's intended use of the vehicle for personal usage and to commute for work. Ms. Miller testified that her use of the vehicle for personal and work commuting were equally important to her. Talley Decl., Ex. 26, Miller Dep. Tr. 103:24-104:3.<br><br>Ms. Miller testified she did not start traveling for work to meet with customers until sometime in 2018. Talley Decl., Ex. 26, Miller Dep. Tr. 67:9-11.<br><br>Ms. Miller testified between 2021 and 2023, she used the vehicle about 25% for traveling for work. Talley Decl., Ex. 26, Miller Dep. Tr. 104:24-25.<br><br>Ms. Miller testified after 2023, her use of the vehicle to travel for work was sporadic to none. Talley Decl., Ex. 26, Miller Dep. Tr. 104:9-15, 105:20-25.<br><br>Plaintiffs further dispute any implication that Vanessa Miller purchased her vehicle for use other than "primarily for personal, family, or household purposes" as defined by Cal. Civ. Code §§ 1761(a) and 1791(a), including traveling for work. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | **Plaintiff Balaszek (IN)** | |
| 16 | In December 2019, Ms. Balaszek took her Escape in for a routine oil change at which the technician noted empty coolant in her vehicle. No engine repair was requested or attempted during this routine oil change. | Sinclair Decl. Ex. J, Balaszek Dep. 75:3-16. | **Undisputed in part and disputed in part.**<br><br>Ford's cited testimony does not support the fact asserted. Ford's cited testimony concerns Ms. Balaszek's visit to Take 5 Oil Change for an oil change. Ms. Balaszek heard the technician state her coolant was empty and refilled it for her. Ms. Balaszek did not testify regarding requested or attempted engine repair as that question was not posed to her. Plaintiffs also note that Ms. Balaszek did not testify that she experienced any symptoms of the Defect in December 2019, prior to, during, or after the subject oil change. |
| 17 | Ms. Balaszek continued to drive her Escape after the December 2019 oil change. | Sinclair Decl. Ex. J, Balaszek Dep. 78:18-79:4; 84:15-17. | Undisputed.<br><br>Plaintiffs note, Ms. Balaszek did not testify she observed and ignored symptoms of the Defect following the December 2019 oil change and continued to drive the vehicle without repairs. On the contrary, after the December 2019 oil change, Ms. Balaszek observed white smoke emitting from the hood of the vehicle on multiple occasions and had to have the engine replaced only nine months later, in September 2020. Talley Decl., Ex. 14, Balaszek Dep. Tr. 84:18-85:2; Talley Decl., Ex. 22, PLTF_0000059.<br><br>The engine was replaced only two months after Ford issued a Technical Service Bulletin in July 2020 for Ms. Balaszek's vehicle, recommending replacement of the engine short block. Talley Decl., Ex. 60, PLTF_0000068. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| **Plaintiff Balaszek (IN)** |
| 18 | Plaintiff Balaszek has continued to drive her Escape since that time until February 2024, when her daughter became the primary driver. | Sinclair Decl. Ex. J, Balaszek Dep. 32:12-16; 43:20-22; 44:7-17. | **Undisputed in part and disputed in part.**<br><br>Disputed to the extent it implies Ms. Balaszek's daughter became the primary driver of the vehicle before the engine was replaced. Ms. Balaszek testified that in 2020, upon seeing white smoke coming out of the hood, Ms. Balaszek contacted Webb Ford to inquire about a repair; however, Webb Ford advised any repair would not be without cost. Talley Decl., Ex. 14, Balaszek Dep. Tr. 80:15-81:5.<br><br>Following her conversation with Webb Ford, Ms. Balaszek brought her vehicle to All American Tires for service and was provided a notice indicating the white smoke was a known issue with the particular engine installed in her vehicle. Talley Decl., Ex. 14, Balaszek Dep. Tr. 83:4-19.<br><br>Ms. Balaszek testified in September 2020 she authorized Dean's Auto Repair to diagnose and repair the vehicle. Talley Decl., Ex. 14, Balaszek Dep. Tr. 87:4-25; 88:8-11.<br><br>Ms. Balaszek testified in September 2020, Dean's Auto Repair replaced the vehicle's engine. Talley Decl., Ex. 14, Balaszek Dep. Tr. 90:19-25. |

- 9 -

| Plaintiff Balaszek (IN) | | | |
|-----|------|-------|------|
| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
| 19 | Ms. Balaszek did not communicate with Ford regarding the engine issues with her Escape. | Sinclair Decl. Ex. J, Balaszek Dep. 97:16-21. | **Disputed.**<br><br>Ford's cited testimony addresses only whether Ms. Balaszek had notified Ford, not whether she communicated with Ford Motor Company. Ms. Balaszek testified she told the salesperson who sold her the vehicle. Ms. Balaszek also testified she contacted Webb Ford to inquire about a repair, however, Webb Ford advised any repair would not be without cost. Talley Decl., Ex. 14, Balaszek Dep. Tr. 80:15-81:5.<br><br>Plaintiffs further dispute any implication that communications with Ford-authorized dealerships are legally irrelevant. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | **Plaintiff Pickering (IN)** | | |
| 20 | Mr. Pickering purchased the Fusion for use as a business vehicle. | Sinclair Decl. Ex. M, Pickering Dep. 80:15-81:15. | **Disputed.** Ford's cited testimony does not support the asserted fact. Ford's cited testimony concerns Mr. Pickering's intended use of the vehicle for personal usage and to commute and travel for work. The nature of Mr. Pickering's sales job at the time required him to travel for work. Mr. Pickering did not testify that the vehicle was purchased to be leased by others or to transport others.<br><br>Plaintiffs further dispute any implication that Mr. Pickering is not a consumer or that Mr. Pickering did not purchase his vehicle primarily for personal, family, or household purposes, including traveling for work. |
| 21 | Mr. Pickering did not communicate with Ford Motor Company regarding his Fusion. | Sinclair Decl. Ex. M, Pickering Dep. 133:25-134:5. | **Disputed.** Ford's cited testimony addresses only whether Mr. Pickering had communicated with Ford Motor Company regarding the short block replacement. Talley Decl., Ex. 27, Pickering Dep. Tr. 134:3-13.<br><br>Plaintiffs further dispute any implication that communications with Ford-authorized dealerships are legally irrelevant. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| Plaintiffs Craig and Kelli Morford (KS) | | | |
|---|---|---|---|
| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
| 22 | Kelli and Craig Morford purchased their new 2017 2.0L Ford Escape on April 18, 2017 from Shawnee Mission Ford. | Sinclair Decl. Ex. O, PLTF_0000033 (C. Morford Dep. Ex. 3). | Undisputed. |
| 23 | Ms. Morford is the primary driver of their Escape. | Sinclair Decl. Ex. Q, K. Morford Dep. 55:7-10. | Undisputed. |
| 24 | Ms. Morford used their Escape for errands and other daily activities, including transporting her young daughter. | Sinclair Decl. Ex. Q, K. Morford Dep. 55:1-14; 55:24-56:1; 57:1-7. | Undisputed.<br><br>Plaintiffs note, however, Ford's cited testimony does not reflect the reason for Ms. Morford's continued use of the vehicle to transport her young daughter. Ms. Morford continued using the vehicle by necessity, not by choice. She testified that she believed the vehicle was unsafe, but the Morfords had no other option but to continue using it, given they could not afford to replace it. Talley Decl., Ex. 11, K. Morford Dep. Tr. 125:20-126:3. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | **Plaintiffs Aaron and Victoria Manfra (MD)** | | |
| 25 | The Manfras purchased their new 2017 2.0L Ford Edge on April 18, 2017, from Len Stoler Ford in Owings Mills, Maryland. | Sinclair Decl. Ex. S, PLTF_002258 (A. Manfra Dep. Ex. 6); Ex. R, A. Manfra Dep. 21:23-24; 98:11-13. | **Disputed as to the vehicle model, the engine displacement, and the date of purchase. Undisputed that the vehicle was purchased new from Len Stoler Ford.** <br><br> The Manfras purchased a 2017 Ford Fusion, not a 2017 Ford Edge. Their vehicle was equipped with a 1.5L-displacement engine, not a 2.0L-displacement engine. Talley Decl., Ex. 61, PLTF_002258 (Purchase Contract). They purchased their vehicle on February 18, 2017, not April 18, 2017. *Id.* |
| 26 | Before purchasing their Edge, Mr. Manfra researched the Ford Edge on third-party websites | Sinclair Decl. Ex. R, A. Manfra Dep. 89:16-90:19. | **Disputed as to the vehicle model.** <br><br> The Manfras purchased a 2017 Ford Fusion, not a Ford Edge. Talley Decl., Ex. 61, PLTF_002258 (Purchase Contract). |
| 27 | Before purchasing their Edge, Mr. Manfra only reviewed the Ford website to check on incentives, but he did not use Ford's website as a review tool about the Edge. | Sinclair Decl. Ex. R, A. Manfra Dep. 91:1-5. | **Disputed as to the vehicle model.** <br><br> The Manfras purchased a 2017 Ford Fusion, not a Ford Edge. Talley Decl., Ex. 61, PLTF_002258 (Purchase Contract). <br><br> Plaintiffs also note that Mr. Manfra testified the financial incentives he reviewed on Ford's website enticed him to pick the Fusion over other cars. Talley Decl., Ex. 47, A. Manfra Dep. Tr. 81:10–82:10; 85:7–9; 87:3–5; 88:2–8; 91:1–5. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| **Plaintiffs Aaron and Victoria Manfra (MD)** | | | |
| 28 | Before purchasing his Edge, Mr. Manfra did not communicate with anyone at Ford. | Sinclair Decl. Ex. R, A. Manfra Dep. 98:4-6. | **Disputed as to the vehicle model, and disputed to the extent Ford's assertion includes communications with personnel at the Ford-authorized dealership rather than an individual at Ford Motor Company.** <br><br> The Manfras purchased a 2017 Ford Fusion, not a Ford Edge. Talley Decl., Ex. 61, PLTF_002258 (Purchase Contract). <br><br> Before purchasing the Fusion, Mr. Manfra spoke with a Ford salesperson about the vehicle's reliability. He later testified that, in light of the faulty engine, he felt misled about the fusion's reliability. Talley Decl., Ex. 47, A. Manfra Dep. Tr. 30:1-6. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | **Plaintiff Metro (MI)** | | |
| 29 | Ms. Metro experienced vehicle hesitation upon acceleration in 2018. | Sinclair Decl. Ex. U, Metro Dep. 138:3-139:10; 144:2-7. | **Undisputed in part and disputed in part.**<br><br>**Undisputed** that Ms. Metro experienced vehicle hesitation upon acceleration starting in 2018 and approximately 95% of the hesitation occurred during acceleration. Talley Decl., Ex. 13, Metro Dep. Tr. 143:22-144:1, 8-23.<br><br>**Disputed in part.**<br>Ford's cited testimony addresses only Ms. Metro's experience with vehicle hesitation in 2018 and whether she believed it was a symptom of the engine defect; it does not address whether the hesitation was on acceleration.<br><br>Ms. Metro testified that she experienced ongoing engine issues including misfires, hesitation on startup, and rough operation that worsened over time. Talley Decl., Ex. 13, Metro Dep. Tr. 161:8-162:20<br><br>Moreover, the misfiring, hesitation, and rough operation persisted even after ineffective repairs. Talley Decl., Ex. 13, Metro Dep. Tr. 157:14-158:13. |
| 30 | Ms. Metro took her vehicle in to Imlay Ford on July 29, 2022. | Sinclair Decl. Ex. U, Metro Dep. 187:6-21. | **Disputed**. Ford's cited testimony concerns Ms. Metro calling AAA to tow her vehicle to Imlay Ford after July 27th.<br><br>Undisputed that Plaintiff had her vehicle towed to Imlay Ford by AAA on July 28, 2022. *See* Talley Decl., Ex. 62, PLTF_0004581-4585 and Talley Decl., Ex. 21, PLTF_0002604. |

PLAINTIFFS' RESPONSE TO FORD'S STATEMENT OF UNDISPUTED FACTS NO. 2:20-CV-01796-DAD-CKD

| | Plaintiff Kennedy (MN) | | |
|---|---|---|---|
| **No** | **Fact** | **Ford's Supporting Evidence** | **Plaintiffs' Response** |
| 31 | Mark Kennedy purchased his 2016 2.0L Ford Edge used on November 24, 2020 from BMW of Minnetonka. | Sinclair Decl. Ex. T, Kennedy Dep. 116:8-117:1. | Undisputed. Plaintiffs note, however, Ford's cited testimony does not fully support the asserted fact. Ford's cited testimony does not indicate Mr. Kennedy purchased the vehicle used. |
| 32 | Mr. Kennedy did not review any advertisements from Ford Motor Company before purchasing his Edge. | Sinclair Decl. Ex. T, Kennedy Dep. 94:18-95:5; 95:22-96:12; 100:25-101:6; 102:8-16. | **Disputed.** Ford's cited testimony does not support the asserted fact. Mr. Kennedy testified he visited the Ford Motor Company manufacturer's website to review information about the Ford Edge. Ford's cited testimony does not concern Mr. Kennedy's review of any advertisements on the Ford Motor Company website. The term information may include advertisements. |
| 33 | Mr. Kennedy did not see any information regarding the 2016 Edge on Ford's website, but only viewed the specifications for the Ford vehicles available at the time of his purchase in 2020. | Sinclair Decl. Ex. T, Kennedy Dep. 94:18-95:5; 95:22-96:12. | **Disputed.** Ford's cited testimony does not support the asserted fact. Mr. Kennedy testified he visited the Ford Motor Company manufacturer's website to review information about the Ford Edge. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| | | **Plaintiff Mullen (OH)** | |
|---|---|---|---|
| **No** | **Fact** | **Ford's Supporting Evidence** | **Plaintiffs' Response** |
| 34 | In April 2021, Mr. Mullen experienced trouble initially starting his Edge, but once started, the vehicle would run without issue. | Sinclair Decl. Ex. W, Mullen Dep. 126:1-16; 128:16-18; 131:14-25; 134:25-135:14. | **Disputed.**<br><br>Ford's cited testimony does not support the asserted fact that the vehicle would run without issue. Mr. Mullen testified that even once he was able to start the vehicle, the engine would misfire and lunge for the first couple of miles. Talley Decl., Ex. 12, Mullen Dep. Tr. 134:5-135:3. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
|----|------|---------------------------|---------------------|
| | **Plaintiff Mullen (OH)** | | |
| 35 | From April 2021 to August 2021, Mr. Mullen continued to drive his Edge. | Sinclair Decl. Ex W, Mullen Dep. 63:5-64:25; 185:19-186:2; 192:7-193:23. | Undisputed.<br><br>Plaintiffs note, however, between April 2021 and August 2021, as well as after August 2021, Mr. Mullen monitored the condition of his vehicle consistently. On or around April 13, 2021, Mr. Mullen added a fuel treatment to his vehicle in hopes it would fix the rough idle he observed in the vehicle. Talley Decl., Ex. 12, Mullen Dep. Tr. 166:7-10, 18-24, 167:1-2.<br><br>Mr. Mullen testified he brought the vehicle into a Ford dealership several times between when he first observed the rough idle through the time the engine was replaced. Talley Decl., Ex. 12, Mullen Dep. Tr. 168:10-13.<br><br>Mr. Mullen also testified he brought the vehicle to a Ford dealership in April 2021 and the mechanic replaced a coil pack. Talley Decl., Ex. 12, Mullen Dep. Tr. 170:22-171:2.<br><br>Mr. Mullen also testified he brought the vehicle to a Ford dealership in May 2021 and the mechanic performed additional repairs, swapping cylinder 1 and two coil packs. Talley Decl., Ex. 12, Mullen Dep. Tr. 175:18-24.<br><br>Mr. Mullen also testified he brought the vehicle to a Ford dealership for repairs in June 2021, in which the mechanic tested the injectors. Talley Decl., Ex. 12, Mullen Dep. Tr. 183:19-23. |
| 36 | Mr. Mullen completed a 700-mile road trip from Ohio to Missouri in his Edge, favoring it over his other vehicle. | Sinclair Decl. Ex W, Mullen Dep. 193:20-23. | Undisputed.<br><br>Plaintiffs note, however, Mr. Mullen testified he decided to use the Edge for the approximate 700-mile road trip because the other vehicle had higher miles and some repairs that needed to be completed. Talley Decl., Ex. 12, Mullen Dep. Tr. 193:11-19. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| | Plaintiff Mullen (OH) | | |
|---|---|---|---|
| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
| 37 | Mr. Mullen has no concerns with his daughter driving the Edge. | Sinclair Decl. Ex W, Mullen Dep. 57:21-24. | **Disputed.**<br><br>Ford's cited testimony does not support the asserted fact. Mr. Mullen testified he did not have any concerns about giving the Edge to his daughter. Mr. Mullen was not asked whether he had concerns with his daughter driving the Edge. Additionally, Mr. Mullen gave the vehicle to his daughter after the defective engine was replaced and only after Mr. Mullen had driven the vehicle for another 75,000 miles with the replacement engine without experiencing any symptoms of the Defect. Talley Decl., Ex. 12, Mullen Dep. Tr. 57:8-24, 244:23-245:2. |
| 38 | Mr. Mullen stated his daughter considers the Edge an "upgrade" from her prior vehicle. | Sinclair Decl. Ex W, Mullen Dep. 56:20-57:7. | Undisputed.<br><br>Plaintiffs note, however, Mr. Mullen testified his daughter considered the Edge an upgrade over her prior vehicle because it had features such as all-wheel drive, a back-up camera, and a sunroof, and because it was newer. Mr. Mullen did not testify that his daughter considered the Edge an upgrade because of the vehicle's engine or powertrain. |

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
|  | **Plaintiff Batdorf (TN)** | | |
| 39 | Mr. Batdorf sold his MKC in late 2022 to CarMax located in Hendersonville, Tennessee, after he joined the action. | Sinclair Decl. Ex. AA, Batdorf Dep 30:17-31:18. | N/A – Plaintiffs intend to dismiss Tyson Batdorf. |
| 40 | Mr. Batdorf did not notify Ford when he sold his Lincoln MKC in 2022. | Sinclair Decl. Ex. AA, Batdorf Dep. 31:14-18; 45:2-5. | N/A – Plaintiffs intend to dismiss Tyson Batdorf. |

- 20 -

| | Plaintiff Gonzalez (TX) | | |
|---|---|---|---|
| No | Fact | Ford's Supporting Evidence | Plaintiffs' Response |
| 41 | Mr. Gonzalez did not recall ever contacting Ford Motor Company directly regarding his Escape. | Sinclair Decl. Ex. BB, Gonzalez Dep. 169:16-170:3. | **Undisputed in part and disputed in part.**<br><br>Ford's cited evidence does not support the asserted fact. Gonzalez Tr. 169:16–25 concerns Mr. Gonzalez's contact with Ford Motor Company through Ford Motor Company's authorized dealership, Leif Johnson Ford. Gonzalez Tr. 170:1-3 addresses only whether Mr. Gonzalez talked with anyone at Ford Motor Company directly. Plaintiffs further dispute any implication that communications with Ford-authorized dealerships are legally irrelevant.<br><br>Undisputed that Mr. Gonzalez did not recall talking to Defendant Ford Motor Company directly. Undisputed that Mr. Gonzalez owned a Ford Escape. |

Dated: July 22, 2026

Respectfully submitted,

*/s/ Stuart C. Talley* _____
Stuart C. Talley
William A. Kershaw
Ian J. Barlow
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 779-7000
Facsimile: (916) 244-4829
stuart@ktblegal.com
bill@ktblegal.com
ian@ktblegal.com

Mark P. Chalos (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
222 2nd Avenue South, Suite 1640
Nashville, Tennessee  37201
Telephone:  (615) 313-9000
mchalos@lchb.com

Phong-Chau G. Nguyen (S.B. #286789)
Clare D. Perez (S.B. #363027)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
pgnguyen@lchb.com

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD

cdperez@lchb.com

Annika K. Martin (*pro hac vice*)
Gabriel Panek (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013
akmartin@lchb.com
gpanek@lchb.com

Cody R. Padgett (S.B. #275553)
Abigail J. Gertner (*pro hac vice*)
Majdi Y. Hijazin (*pro hac vice*)
CAPSTONE LAW, APC
1875 Century Park East, Suite 1860
Los Angeles, California 90067
Telephone: (310) 556-4811
cody.padgett@capstonelawyers.com
majdi.hijazin@capstonelawyers.com
abigail.gertner@capstonelawyers.com

Russell D. Paul (*pro hac vice*)
Amey J. Park (*pro hac vice*)
Natalie Lesser (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
rpaul@bm.net
apark@bm.net
nlesser@bm.net

Thomas P. Thrash (*pro hac vice*)
William T. Crowder (*pro hac vice*)
THRASH LAW FIRM PA
1101 Garland Street
Little Rock, AR 72201
Telephone: (501) 374-1058
tomthrash@sbcglobal.net
willcrowder@thrashlawfirmpa.com

Patrick Newsom (*pro hac vice*)
NEWSOM LAW PLC
40 Music Square East
Nashville, Tennessee 37203
Telephone: 615-251-9500
patrick@newsom.law

*Attorneys for Plaintiffs and the Proposed Classes and Subclasses*

PLAINTIFFS' RESPONSE TO FORD'S
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV-01796-DAD-CKD