RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Tel: +1 (415) 984-8700
Fax: +1 (415) 984-8701

AMY J. LAURENDEAU (S.B. #198321)
alaurendeau@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: +1 (949) 823-6900
Fax: +1 (949) 823-6994

KELSEY M. LARSON (S.B. #267982)
klarson@omm.com
O'MELVENY & MYERS LLP
400 S. Hope St., 19th Floor
Los Angeles, CA 90071
Tel: +1 (213) 430-6000
Fax: +1 (213) 430-6407

*Counsel for Defendant*
*Ford Motor Company*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA MILLER, et al., as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 2:20-cv-01796-DAD-CKD<br><br>(Consolidated with Nos. 2:21-cv-00417-DAD-CKD, 2:21-cv-00468-DAD-CKD)<br><br>**DEFENDANT FORD MOTOR COMPANY'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing: September 21, 2026<br>Time: 1:30 pm<br>Judge: Hon. Dale A. Drozd<br>Courtroom: 4, 15th Floor<br><br>Second Am. Consol. Compl. (Dkt. 144) filed: Jan. 5, 2026 |

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 1

    A.   Plaintiffs Concede That Summary Judgment Should Be Granted to Ford on Certain Claims.................................................................................................. 1

    B.   The Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) Implied Warranty Claims Fail Because Their Vehicles Were Merchantable ......... 2

        1.   Undisputed Facts Show That the Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) Vehicles Were Merchantable ............... 2

        2.   The Existence of a Latent Defect Does Not Make a Vehicle Unmerchantable ................................................................................... 4

        3.   Plaintiffs' Argument That the Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) Vehicles Are "Unsafe" Is Unsupported by Any Evidence ................................................................. 6

    C.   Balaszek's (IN) Implied Warranty Claim Also Fails Because the Length of the Implied Warranty Is Limited to That of an Express Warranty .......................... 7

    D.   Plaintiffs' MMWA Claims Fall with Their Other Warranty Claims ...................... 8

    E.   Plaintiffs Cannot Meet Their Burden to Show There Is a Triable Fact That Amber West (CA), Miller (CA), or Pickering (IN) Purchased Their Vehicles Predominantly for "Personal," not Business, Use..................................... 8

    F.   Gonzalez's Texas DTPA Claim Fails as a Matter of Law ..................................... 9

    G.   Certain Plaintiffs' Claims Are Time-Barred ........................................................ 10

    H.   Leave to Substitute New Plaintiffs Should Not Be Granted ................................. 14

III.  CONCLUSION ..................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page**

<u>CASES</u>

*Aguilar v. Boulder Brands, Inc.*,
    2014 WL 4352169 (S.D. Cal. Sept. 2, 2014) ................................................................. 15

*Alger v. FCA US LLC*,
    334 F.R.D. 415 (E.D. Cal. 2020) ..................................................................................... 3

*Aliff v. Vervent Inc.*,
    2022 WL 3588322 (S.D. Cal. Aug. 22, 2022) ............................................................... 15

*BK Trucking Co. v. Paccar, Inc.*,
    2016 WL 3566723 (D.N.J. June 30, 2016) .................................................................... 10

*Bristow v. Lycoming Engines*,
    2007 WL 1752602 (E.D. Cal. June 15, 2007) ................................................................. 9

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ........................................................................................... 6

*Brown v. Rafferty*,
    2022 WL 4664596 (E.D. Cal. Sept. 30, 2022) ................................................................ 2

*Buraimoh v. BMW of N. Am.*,
    2020 WL 7711823 (W.D. Tex. Dec. 29, 2020) ............................................................... 9

*Cabrera v. Bayer Healthcare LLC*,
    2024 WL 4228237 (C.D. Cal. June 24, 2024) ............................................................... 15

*Carroll v. BMW of N. Am., LLC*,
    553 F. Supp. 3d 588 (S.D. Ind. 2021) ........................................................................... 12

*Chapman v. Gen. Motors LLC*,
    531 F. Supp. 3d 1257 (E.D. Mich. 2021) ........................................................................ 7

*Clarke v. Carmax Auto Superstores CA, LLC*,
    2017 WL 3579554 (C.D. Cal. July 24, 2017) .................................................................. 6

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ......................................................................................... 5

*Counts v. Gen. Motors, LLC*,
    606 F. Supp. 3d 678 (E.D. Mich. 2022) ........................................................................ 13

*Edwards v. Angeles Abbey Mem'l Park, Inc.*,
    2009 WL 1971375 (C.D. Cal. July 2, 2009) .................................................................. 15

*Elias v. Hewlett-Packard Co.*,
    903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................................................ 5

*Estakhrian v. Obenstine*,
    859 F. App'x 121 (9th Cir. 2021) .................................................................................. 15

**TABLE OF AUTHORITIES**
(continued)

Page

*Filipovic v. Fairchild Chevrolet*,
2001 WL 1141384 (Ohio Ct. App. Sept. 27, 2001) ................................................................ 3

*Floyd v. Koenig*,
274 S.W.3d 339 (Ark. Ct. App. 2008) .................................................................................. 11

*Galvez v. Ford Motor Co.*,
2018 WL 4700001 (E.D. Cal. Sept. 30, 2018) ...................................................................... 12

*Garick v. Mercedes-Benz USA, LLC*,
2019 WL 3815178 (D. Mass. Mar. 19, 2019) ......................................................................... 5

*Gen. Motors Corp. v. Bryant*,
285 S.W.3d 634 (Ark. 2008) ................................................................................................. 11

*Guisinger v. Keystone RV Co.*,
2026 WL 1046715 (C.D. Cal. Apr. 2, 2026) ......................................................................... 11

*Hays v. Nissan N. Am., Inc.*,
2019 WL 12054661 (W.D. Mo. Aug. 7, 2019) ....................................................................... 5

*Hines v. Mercedes-Benz USA, LLC*,
358 F. Supp. 2d 1222 (N.D. Ga. 2005) ................................................................................... 2

*Hobson v. Entergy Ark., Inc.*,
432 S.W.3d 117 (Ark. Ct. App. 2014) .................................................................................. 10

*Holiday Inn Franchising, Inc. v. Hotel Assocs., Inc.*,
382 S.W.3d 6 (Ark. Ct. App. 2011) ...................................................................................... 11

*Howard v. Hui*,
2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) ..................................................................... 14

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................................................... 4

*In re Flash Memory Antitrust Litig.*,
2010 WL 2332081 (N.D. Cal. June 9, 2010) ........................................................................ 15

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
966 F. Supp. 1525 (E.D. Mo. 1997) ........................................................................................ 4

*In re Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017) .................................................................................. 14

*In re Honda Idle Stop Litig.*,
2024 WL 5274644 (C.D. Cal. Dec. 26, 2024) ........................................................................ 8

*In re MyFord Touch Consumer Litig.*,
291 F. Supp. 3d 936 (N.D. Cal. 2018) ............................................................................... 6, 7

*In re Syntex Corp. Sec. Litig.*,
95 F.3d 922 (9th Cir. 1996) .................................................................................................. 14

FORD'S REPLY ISO MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Jamil v. Mercedes-Benz USA, LLC*,
  780 F. Supp. 3d 957 (C.D. Cal. 2025)....................................................................... 11

*Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*,
  134 N.E.3d 370 (Ind. 2019) ........................................................................................ 7

*Kovack v. Daimler Chrysler Corp.*,
  2006 WL 1293213 (Mich. Ct. App. May 11, 2006) ................................................... 3

*Lessin v. Ford Motor Co.*,
  2021 WL 3810584 (S.D. Cal. Aug. 25, 2021) ............................................................ 9

*Lessin v. Ford Motor Co.*,
  756 F. Supp. 3d 885 (S.D. Cal. 2024) ........................................................ 3, 5, 10, 12

*Lloyd v. Gen. Motors Corp.*,
  916 A.2d 257 (Md. Ct. App. 2007) ........................................................................... 13

*Ludwig v. FCA US LLC*,
  795 F. Supp. 3d 525 (D.N.J. 2025) ............................................................................. 9

*Lyman v. Ford Motor Co.*,
  2022 WL 856393 (E.D. Mich. Mar. 22, 2022) ........................................................... 3

*Marksberry v. FCA US LLC*,
  606 F. Supp. 3d 1075 (D. Kan. 2022) ......................................................................... 2

*Matanky v. Gen. Motors LLC*,
  370 F. Supp. 3d 772 (E.D. Mich. 2019) ..................................................................... 6

*Mercedes-Benz of N. Am., Inc. v. Garten*,
  618 A.2d 233 (Md. Ct. Spec. App. 1993) ................................................................. 13

*Miller v. DaimlerChrysler Motors Corp.*,
  2001 WL 587496 (Ohio Ct. App. May 31, 2001)....................................................... 3

*Miller v. Ford Motor Co.*,
  2024 WL 1344597 (E.D. Cal. Mar. 29, 2024) ........................................................... 7

*Miller v. Ford Motor Co.*,
  620 F. Supp. 3d 1045 (E.D. Cal. 2022)....................................................................... 7

*Miller v. Gen. Motors, LLC*,
  773 F. Supp. 3d 461 (E.D. Mich. 2025)................................................................ 13, 14

*Murphy v. Toyota Motor Sales USA Inc.*,
  2020 WL 10354129 (C.D. Cal. Nov. 24, 2020)......................................................... 6

*Nelson v. Ford Motor Co.*,
  2025 WL 2581611 (E.D. Cal. Sept. 5, 2025)............................................................. 14

*Palmer v. Stassinos*,
  236 F.R.D. 460 (N.D. Cal. 2006)............................................................................... 14

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Popham v. Keystone RV Co.*,
2016 WL 4993393 (N.D. Ind. Sept. 19, 2016)................................................................ 4, 7

*Priebe v. Autobarn Ltd.*,
240 F.3d 584 (7th Cir. 2001)................................................................................... 2

*Sharkus v. Daimler Chrysler Corp.*,
2002 WL 31319119 (Ohio Ct. App. Oct. 17, 2002) ......................................................... 3

*Sharp v. Tom Wood E., Inc.*,
822 N.E.2d 173 (Ind. Ct. App. 2004) ............................................................................ 4

*Shea v. Gen. Motors LLC*,
567 F. Supp. 3d 1011 (N.D. Ind. 2021) ......................................................................... 7

*Speerly v. Gen. Motors, LLC*,
143 F.4th 306 (6th Cir. 2025)....................................................................................... 1

*Suddreth v. Mercedes-Benz LLC*,
2011 WL 5240965 (D.N.J. Oct. 31, 2011)...................................................................... 5

*Szymczak v. Nissan N. Am., Inc.*,
2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ................................................................. 5

*Valdez v. Ford Motor Co.*,
2024 WL 1344420 (E.D. Cal. Mar. 29, 2024) ................................................................ 9

*Velazquez v. GMAC Mortg. Corp.*,
2009 WL 2959838 (C.D. Cal. Sept. 10, 2009)................................................................ 15

*Weidman v. Ford Motor Co.*,
2020 WL 674348 (E.D. Mich. Feb. 11, 2020) ................................................................ 4

**STATUTES**

Cal. Civ. Code § 1761(a).............................................................................................. 9

FORD'S REPLY ISO MSJ BRIEF
NO. 2:20-CV-01796-DAD-CKD

## I.  INTRODUCTION

In two key respects, Plaintiffs' Opposition fails to meet their burden of showing that a genuine dispute of material facts exists as to the specific claims that are subject to Ford's motion. First, it largely does not dispute the key facts upon which Ford's motion is based, instead addressing other evidence not applicable to the specific Plaintiffs at issue or not relevant to the specific claim elements Ford targeted.  Second, it offers incorrect interpretations of controlling law in the relevant jurisdictions or ignores that law altogether.  The Opposition, like Plaintiffs' motion for class certification, seeks to litigate a composite story rather than engage in the details of the law governing these claims and the specific evidence—and lack of evidence—applicable to these Plaintiffs.  And when Plaintiffs do address the Plaintiffs' specific evidence in limited instances, they oversell it and ignore the impact of the concessions the individual Plaintiffs made.

Nor is there any merit to Plaintiffs' contention that Ford's motion is a "distraction" based on a "grab-bag" of arguments.  It is Plaintiffs who brought each claim challenged in Ford's motion, and they declined to dismiss even when Ford presented the claims' defects during the pre-motion meet and confer.  Plaintiffs' Opposition now concedes summary judgment is warranted on some claims.  And if Plaintiffs do not wish to defend their pursuit of the multiple other state-law claims at issue in the motion, based on the evidence and law specific to those claims, they should not have brought this large, complex multi-state class action.  *See Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 321 (6th Cir. 2025) (courts "recognize the perils that multi-state, multi-defect, multi-claim classes pose").  Ford's Motion for Partial Summary Judgment should be granted in full.

## II.  ARGUMENT

### A.  Plaintiffs Concede That Summary Judgment Should Be Granted to Ford on Certain Claims

Plaintiffs concede that they do not contest Ford's motion for summary judgment as to the Wests' (CA) and Mullen's (OH) express warranty claims, Kennedy's (MN) False Statement in Advertising claim, and the Wests' (CA) and Miller's (CA) Unfair Competition Law claims.  Opp. at 1 n.3.  Ford requests summary judgment on those claims.  Plaintiffs also do not respond to Ford's argument that Batdorf (TN) knowingly spoliated his vehicle while this litigation was pending,

warranting dismissal sanctions. *Id*. at 22-23. Summary judgment against that claim should be granted as well.[1] *Brown v. Rafferty*, 2022 WL 4664596, at *9 (E.D. Cal. Sept. 30, 2022) (failure to respond to summary judgment argument abandons claim).

**B.** **The Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) Implied Warranty Claims Fail Because Their Vehicles Were Merchantable**

**1.** **Undisputed Facts Show That the Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) Vehicles Were Merchantable**

Plaintiffs do not contest the undisputed facts that establish the Morfords (KS), Mullen (OH), Metro (MI), and Balaszek (IN) all got extensive use from their vehicles for many years and tens of thousands of miles. Nor do Plaintiffs overcome the on-point law in each relevant jurisdiction establishing that such use defeats implied warranty claims as a matter of law.

*Morfords (KS).* Plaintiffs do not dispute that the Morfords drove their vehicle over 100,000 miles, including that they continued to use their Escape as a daily driver and to transport their daughter for over 50,000 miles while experiencing what they allege was coolant intrusion, and that they never proceeded with an engine repair during that extensive use. Mot. at 9. Plaintiffs also cite to no evidence that the alleged engine defect ever caused the Morfords' vehicle to lose power, let alone caused an accident. The Morfords' extensive use dooms their case under Kansas law. Plaintiffs' attempt to distinguish *Marksberry v. FCA US LLC*, 606 F. Supp. 3d 1075, 1087 (D. Kan. 2022), fails. *Marksberry*, unlike any of Plaintiffs' cases, applies Kansas implied warranty law. The Morfords, like the plaintiff in *Marksberry*, were able to drive their vehicle for years and tens of thousands of miles, and that defeats their claim. Nor can Plaintiffs salvage the Morfords' claim by citing allegations that they subjectively believe their vehicle is "unsafe." Other courts have held such evidence is insufficient as a matter of law. *Priebe v. Autobarn Ltd*., 240 F.3d 584, 588 (7th Cir. 2001) (no implied warranty claim when plaintiff "continued to drive the car" and vehicle had "more than 30,000 miles" despite plaintiff alleging it was "dangerous to drive"); *Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1233 (N.D. Ga. 2005) (belief that vehicle is "not safe to drive" not sufficient for implied warranty claim if vehicle continues to be driven). Finally, Plaintiffs also cite no law to support their argument that the Morfords' concern about cost of repair

---

[1] Plaintiffs state "they intend to dismiss Tyson Batdorf" (Opp. at 1 n.3), but they have not done so.

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

establishes unmerchantability. Opp. at 6. The cited passage in *Alger v. FCA US LLC*, 334 F.R.D. 415, 426 (E.D. Cal. 2020), is irrelevant because it discusses the elements of a CA UCL claim. The implied warranty discussion in that case addresses neither extended vehicle use nor any argument that a plaintiff's concerns about cost of post-warranty repair renders a vehicle unmerchantable.

**Mullen (OH).** Plaintiffs do not dispute that Mullen's vehicle had almost 60,000 miles on it before he experienced any symptoms of the alleged engine defect, including that he chose to use it over another vehicle to go on a 700-mile road trip from Ohio to Missouri. Mot. at 9-10. Plaintiffs argue that because his vehicle required repairs, it was unmerchantable. But they cite no authority to support that argument, and cite no cases that apply Ohio implied warranty law. Plaintiffs fail to address at all Ford's recent on-point authority, *Lessin v. Ford Motor Co.*, 756 F. Supp. 3d 885, 917 (S.D. Cal. 2024), that found an Ohio plaintiff's vehicle used on long-distance road trips merchantable as a matter of law *even though* the vehicle experienced a failed repair attempt. And Plaintiffs are not persuasive in their attempt to distinguish Ford's other cases on the ground that the dealers did not diagnose the problem. Opp. at 7-8. Plaintiffs set forth no argument why the dealers' inability to diagnose issues established merchantability. Just as with the issues for the plaintiffs in *Filipovic v. Fairchild Chevrolet*, 2001 WL 1141384, at *5 (Ohio Ct. App. Sept. 27, 2001), *Sharkus v. Daimler Chrysler Corp.*, 2002 WL 31319119, at *3-4 (Ohio Ct. App. Oct. 17, 2002), and *Miller v. DaimlerChrysler Motors Corp.*, 2001 WL 587496, at *2, *4-*5 (Ohio Ct. App. May 31, 2001), the symptoms of coolant intrusion did not prevent Mullen from starting or driving his car.

**Metro (MI).** Plaintiffs do not dispute Metro continued to drive her vehicle almost 40,000 miles after first experiencing symptoms, did not even seek a repair for three years, and only required an engine replacement at almost 100,000 miles. Mot. at 10. Plaintiffs also fail in their effort to distinguish Ford's supporting Michigan authorities rejecting implied warranty claims on similar facts of extensive use. Plaintiffs argue that in *Kovack v. Daimler Chrysler*, 2006 WL 1293213, at *1, *3 (Mich. Ct. App. May 11, 2006), the plaintiffs could not prove the root cause of the vehicles' issues, Opp. at 8, but Plaintiffs make no showing why identification of the root cause is required for a breach of implied warranty claim. And while *Lyman v. Ford Motor Co.*, 2022 WL 856393 (E.D. Mich. Mar. 22, 2022), and *Weidman v. Ford Motor Co.*, 2020 WL 674348 (E.D. Mich. Feb.

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

11, 2020), were decided at the pleadings stage, they still stand for the undisputed premise that a plaintiff's *actual use of her vehicle* is relevant to whether it is unmerchantable.  That Metro ultimately required an engine replacement after nearly 100,000 miles over many years means as a matter of law her vehicle was not unmerchantable, and Plaintiffs cite no authority to the contrary.

*Balaszek (IN).*  Plaintiffs do not dispute Ford's showing that Balaszek drove her vehicle for almost 100,000 miles before repairing it, and the defect never impacted her ability to drive her car. Mot. at 11.  Plaintiffs cite no case applying Indiana implied warranty law that holds that such facts could lead a jury to determine that Balaszek's vehicle was unmerchantable.  Plaintiffs' attempts to distinguish Ford's authority also fail: like the plaintiff in *Sharp v. Tom Wood East, Inc.*, 822 N.E.2d 173, 175 (Ind. Ct. App. 2004), Balaszek was able to use her vehicle for months and tens of thousands of miles, *despite* there being a need for repairs.  Plaintiffs' argument that *Popham v. Keystone RV Co.*, 2016 WL 4993393, at *6 (N.D. Ind. Sept. 19, 2016), does not apply because it addressed limitations of an implied warranty issue ignores the passage Ford cites: that Plaintiffs' RV was not "unmerchantable from the outset" because "the evidence shows that the Plaintiff used and enjoyed the RV for nearly two years."  This proposition supports Ford's showing that use of a vehicle for many years before experiencing any problems renders it merchantable as a matter of Indiana law, and Plaintiffs cite no authority to the contrary.

### 2.    The Existence of a Latent Defect Does Not Make a Vehicle Unmerchantable

Without engaging with the state-specific governing case law of Kansas, Ohio, Michigan, or Indiana, and instead relying on a handful of authorities from other states, Plaintiffs argue that merely alleging the existence of a latent defect during the period of Plaintiffs' extensive vehicle use is sufficient to make a vehicle unmerchantable.  *See* Opp. at 3-4.  But that is not the general standard for implied warranty law. The implied warranty of merchantability "does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer.'"  *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1532 (E.D. Mo. 1997) (nationwide implied warranty claims under UCC).  *See also, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1107-08 (N.D. Cal. 2015) ("[A] product which performs its ordinary function adequately does not breach

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

the implied warranty of merchantability merely because it does not function as well as the buyer would like, or even as well as it could.") (MI and other states' implied warranty law). Nor does an implied warranty guarantee that a product will last forever. *E.g.*, *Garick v. Mercedes-Benz USA, LLC*, 2019 WL 3815178, at *4 (D. Mass. Mar. 19, 2019) ("The warranty of merchantability is not necessarily a lifetime guarantee."); *Suddreth v. Mercedes-Benz LLC*, 2011 WL 5240965, at *5 (D.N.J. Oct. 31, 2011) (component part that failed earlier than "industry standard" did not render vehicle unmerchantable because "[i]t is simply not plausible that a motor vehicle could be classified as not merchantable when it has been used for its intended purpose for 4 years and 50,000 miles"); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 853 (N.D. Cal. 2012) (computer that experienced crashing and freezing issues 5 years after purchase merchantable as a matter of law); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("Every manufactured item is defective at the time of sale in the sense that it will not last forever[.]").

In response to Ford's authorities showing that continued, extensive use of a vehicle for years and tens of thousands of miles negates a breach of implied warranty claim, Mot. at 8-9 (citing cases), Plaintiffs argue that those cases involved defects not present at the time of sale. Opp. at 5-6. But Plaintiffs cite no implied warranty case law that disregards extensive use of the vehicle because Plaintiffs assert a latent defect that only affects vehicle operation years later. And, to the contrary, other courts have found that continued use of a vehicle over years is sufficient to show that a vehicle is merchantable, even when the alleged defect exists at the time of sale or can be expensive to fix. *E.g.*, *Hays v. Nissan N. Am.*, *Inc.*, 2019 WL 12054661, at *6 (W.D. Mo. Aug. 7, 2019) (awarding summary judgment to manufacturer for implied warranty claims based on corrosion of floor panels of the vehicle because plaintiff drove car "for more than a decade" and defect did not manifest for years); *Lessin*, 756 F. Supp. 3d at 911-17 (granting summary judgment to Ford when named plaintiffs drove tens of thousands of miles while experiencing alleged suspension defect);[2] *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *5, *11 (S.D.N.Y. Dec. 16, 2011) (dismissing implied warranty claim based on existence of radiator defect that rendered transmission inoperable because "Courts . . . have consistently held that an automobile that was

---

[2] The partial certification order in the same *Lessin* decision was later vacated in part on appeal.

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

driven for years without problems was merchantable and fit for its ordinary use at the time of sale.").

Nor do Plaintiffs' handful of cases support denial of summary judgment here. *Murphy v. Toyota Motor Sales USA In*c., 2020 WL 10354129, at \*1, \*4-\*6 (C.D. Cal. Nov. 24, 2020), only addresses the pleadings and the alleged problems arose a week after purchase; *Clarke v. Carmax Auto Superstores CA*, *LLC*, 2017 WL 3579554, at \*5 (C.D. Cal. July 24, 2017), only applies California law and involves a vehicle that experienced significant problems and multiple repairs within a month after the plaintiffs' purchase; and *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 946 (N.D. Cal. 2018), involved vehicles with alleged "persistent" problems with a vehicle ***not*** related to a particular component failing at some time after extensive use, and on that basis the court there distinguished the alleged defect in that case from the robust case law dismissing implied warranty claims where plaintiffs used vehicles for years and thousands of miles.

**3.    Plaintiffs' Argument That the Morfords' (KS), Mullen's (OH), Metro's (MI), and Balaszek's (IN) Vehicles Are "Unsafe" Is Unsupported by Any Evidence**

Plaintiffs do not dispute that the Morfords (KS), Mullen (OH), Metro (MI), and Balaszek (IN) drove their vehicles for many years and tens of thousands of miles, without any accidents, sudden losses of power, or any other safety incidents. *See* Mot. at 9-11. They also testified that they either have already replaced the allegedly defective engine (Mullen, Metro, Balaszek) or chose not to (the Morfords). Those facts are dispositive of Plaintiffs' argument that ***their*** vehicles were unmerchantable because they are unsafe. Instead of addressing the undisputed evidence about those Plaintiffs' actual, individual claims, Plaintiffs hypothetically propose that there could be a safety risk for some vehicles. Opp. at 3-5. But Plaintiffs cannot save their claims by pointing to evidence applicable to others. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998). Plaintiffs identify no evidence that anyone—let alone the Plaintiffs Ford is moving against—ever experienced complete, sudden engine failure due to coolant intrusion.[3]

The cases cited by Plaintiffs do not save their claims. First, *Matanky v. General Motors LLC*, 370 F. Supp. 3d 772, 786 (E.D. Mich. 2019), and *Chapman v. General Motors LLC*, 531 F.

---

[3] Plaintiffs also assert that "all Class Engines" suffered from "coolant leakage into the cylinders" (Opp. at 4), but this is simply wrong—even Plaintiffs' own expert does not project that 100 percent of all class engines will experience coolant intrusion. Pls. Ex. 23 at 24.

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

Supp. 3d 1257, 1276 (E.D. Mich. 2021), are pleadings decisions that had no occasion to address facts similar to the undisputed ones here about the Plaintiffs whose claims are subject to this motion. Moreover, *MyFord Touch*, 291 F. Supp. 3d at 946-48, discussed and applied case law focused on implied warranty law in California, addressed only classwide claims, and thus did not address the individualized evidence rebutting the specific Plaintiffs' safety contentions as Ford did here, and was dicta in any event because the court found a triable issue of fact on merchantability regardless of the safety issue.

> ## C. Balaszek's (IN) Implied Warranty Claim Also Fails Because the Length of the Implied Warranty Is Limited to That of an Express Warranty

Plaintiffs also do not contest Ford's showing that, under Indiana law, an implied warranty that is limited to the length of an express warranty is enforceable. Mot. at 11-12 (citing *Shea v. Gen. Motors LLC*, 567 F. Supp. 3d 1011, 1020-21 (N.D. Ind. 2021); *Popham*, 2016 WL 4993393, at *5). Plaintiffs also do not dispute that Balaszek's vehicle first experienced problems at 80,000 miles, well outside the duration of the express warranty. Mot. at 11-12. Plaintiffs argue that the defect need not manifest to maintain a claim, Opp. at 10, but they cite no cases supporting that point, and this Court already has held that similar allegations that a "latent" defect existed at the time of sale are not sufficient to make the limitation of an implied warranty to an express warranty unenforceable. *Miller v. Ford Motor Co.*, 2024 WL 1344597, at *23 (E.D. Cal. Mar. 29, 2024) (MN implied warranty claim dismissed because limited to duration of express warranty); *Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1063 (E.D. Cal. 2022) (same under GA, FL, MN, NJ law). Plaintiffs also fail to meaningfully distinguish *Shea* and *Popham*: Plaintiffs have no cogent argument for why it matters that the vehicle sold in *Shea* was used; what matters is that like the plaintiff in *Shea*, Balaszek's problems arose ***after*** the express warranty expired. And just as in *Popham*, Balaszek's vehicle was ***not*** unmerchantable from the outset; she used it for years and over 80,000 miles without experiencing any problems. Finally, Plaintiffs argue that the limitations period can be tolled for contractual claims, citing *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 382 (Ind. 2019). Opp. at 9-10. But *Kenworth* addressed tolling of the statute of limitations period for a breach of contract claim; it said nothing remotely relevant to enforcement

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

of the durational limits of an implied warranty claim.  Plaintiffs have no support for an Indiana implied warranty claim surviving based on problems after the period of the express warranty where the express warranty limits the duration of an implied warranty claim.

> **D.** **Plaintiffs' MMWA Claims Fall with Their Other Warranty Claims**

Plaintiffs do not dispute their MMWA claims depend on the viability of their underlying state-law claims.  Opp. at 10.  Because Plaintiffs do not contest breach of express warranty for the Wests' (CA) and Mullen's (OH) express warranty claims, the corresponding MMWA claims should be dismissed.  And because Lund's (AR), the Wests' (CA), Balaszek's (IN), Pickering's (IN), the Morfords' (KS), the Manfras' (MD), Metro's (MI), and Mullen's (OH) implied warranty claims fail, the corresponding MMWA claims should be dismissed.  Mot. at 12.

> **E.** **Plaintiffs Cannot Meet Their Burden to Show There Is a Triable Fact That Amber West (CA), Miller (CA), or Pickering (IN) Purchased Their Vehicles Predominantly for "Personal," not Business, Use**

Plaintiffs do not dispute that claims under the CLRA, CA Song-Beverly Act, and IN DCSA can only be brought for products purchased primarily for personal, not business, use.  Mot. at 13.  Uncontroverted evidence shows that Plaintiffs cannot meet their burden to establish that any of the Wests, Miller, and Pickering purchased their vehicles primarily for personal use.  Plaintiffs do not dispute that Amber West was unable to testify as to what portion of her vehicle was used for personal, as opposed to business, use.  *Id*. at 13-14.  Thus, she has no evidence to meet her burden to establish the purchase met the California law requirements for her claims.  That she may have used her vehicle for some portion of her daily commute—an unknown amount of time, that Plaintiffs have no evidence for—does not change the conclusion.  *In re Honda Idle Stop Litig.*, 2024 WL 5274644, at *7 (C.D. Cal. Dec. 26, 2024), is distinguishable: in that case, the plaintiff testified that his only business use of his vehicle was for commuting to work, whereas here, West testified she purchased her vehicle to visit clients during her job as a social worker.  Mot. at 13.  Similarly, Miller also testified that, at the time she purchased her vehicle, she intended to use it for her work as a traveling medical device sales representative.  *Id*.  That her business use decreased years later does not change the analysis: the personal use requirement in the CLRA, like the Song-Beverly Act, applies to the use for which the vehicle was purchased or

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

leased. *Valdez v. Ford Motor Co.*, 2024 WL 1344420, at *7 (E.D. Cal. Mar. 29, 2024) (Song-Beverly claim failed as a matter of law because plaintiff "intended" to use his truck for business use at time of purchase); *Bristow v. Lycoming Engines*, 2007 WL 1752602, at *5 n.9 (E.D. Cal. June 15, 2007) (CLRA requires personal use at time of purchase, not future use); Cal. Civ. Code § 1761(a). Finally, Plaintiffs have no support for their argument that a triable issue exists for Pickering, who testified under oath that he used his vehicle for 70-80 percent business use. The fact that some unknown percentage of Pickering's 70-80 percent business use may have been commuting (Opp. at 11) is irrelevant. It is Plaintiffs' burden to show that the vehicle was purchased "primarily" for personal use. Plaintiffs identify no such evidence.

### F.      Gonzalez's Texas DTPA Claim Fails as a Matter of Law

Plaintiffs argue that a duty to disclose exists under the Texas DTPA when a defendant has knowledge of material information, but withholds it. Opp. at 12. But Plaintiffs do not address Ford's later authority finding that a duty arises *only* with a confidential or fiduciary relationship. Mot. at 15 (citing *Lessin v. Ford Motor Co.*, 2021 WL 3810584, at *12-*13 (S.D. Cal. Aug. 25, 2021), *Ludwig v. FCA US LLC*, 795 F. Supp. 3d 525, 555 (D.N.J. 2025)).

Moreover, even under Plaintiffs' flawed argument that a duty to disclose under the Texas DTPA exists if Ford made a "partial disclosure," Plaintiffs fail to identify any partial disclosures allegedly made by Ford. Plaintiffs do not dispute that Gonzalez had no contact with *Ford* before purchasing his vehicle. Mot. at 15. Plaintiffs cannot rely on Gonzalez's dealership interactions because (1) a dealer is not a sales agent of Ford (and Plaintiffs offer no evidence to overcome that settled rule) and (2) Plaintiffs do not identify what partial disclosures made by the dealership were false and gave rise to the duty: they include no citations to any statements made by the dealer that conveyed a partial representation regarding the vehicle's engine, only citing a receipt and repair records that reflect that Gonzalez purchased his vehicle and took it in for service. That type of evidence does not create a triable issue of fact that any partial representations were made. *Buraimoh v. BMW of N. Am.*, 2020 WL 7711823, at *4 (W.D. Tex. Dec. 29, 2020), relied upon by Plaintiffs, is off point because it involved representations made by the dealer during service that the vehicle's "excessive engine oil use was normal." Plaintiffs provide *zero* evidence of any

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

statements made to Gonzalez regarding the vehicle's engine, nor do they explain how a later statement made during servicing could establish deception at the point of purchase. Plaintiffs' reliance on *BK Trucking Co. v. Paccar, Inc.*, 2016 WL 3566723, at *5 n.4 (D.N.J. June 30, 2016), is also misplaced: that case relied on New Jersey law.

### G.      Certain Plaintiffs' Claims Are Time-Barred

Plaintiffs do not dispute that Lund's (AR) implied warranty claim, the Wests' (CA) CLRA and implied warranty claim, Balaszek's (IN) and Pickering's (IN) implied warranty and IDCSA claims, the Manfras' (MD) implied warranty claim, and Metro's (MI) implied warranty claim are time-barred on their face.[4] On summary judgment, Plaintiffs must meet their burden to establish that fraudulent tolling is available to preserve their claims. *Lessin*, 756 F. Supp. 3d at 918.

In an effort to show tolling, Plaintiffs address the wrong issue. They largely rehash the arguments from their motion for class certification about Ford's alleged knowledge. *See* Opp. at 14-15 & n.47. As described in Ford's opposition to that motion, this evidence does not show that Ford had pre-sale knowledge of a defect in each Plaintiff's vehicle. *See* Dkt. 169 at 26-27. But for purposes of this motion, it does not matter. For tolling due to fraudulent concealment to apply, all the states at issue in this motion require ***more*** than the showing that Ford had knowledge of a defect; they require either the existence of a confidential or fiduciary relationship, or some affirmative act by Ford preventing Plaintiffs from discovering their cause of action sooner. Plaintiffs have no evidence of either.

***Lund (AR).*** Plaintiffs do not dispute that Lund's implied warranty claim is facially time-barred or that the discovery rule does not apply to Lund's claim, as established in Ford's motion. Mot. at 17. Tolling due to fraudulent concealment in Arkansas is available only if a party has a duty to disclose. Under Arkansas law, a third-party manufacturer has a duty to disclose only if it commits a "positive act" of fraud. *Id*. Plaintiffs identify no law to the contrary. *Hobson v. Entergy Ark., Inc.*, 432 S.W.3d 117, 125 (Ark. Ct. App. 2014), involves an employment contract and does not address tolling due to fraudulent concealment at all. And *Floyd v. Koenig* supports

---

[4] Plaintiffs are correct that Ford is not moving for summary judgment on statute of limitations grounds on the Morfords' (KS) implied warranty claims. Opp. at 13 n.46.

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

Ford's argument: it states "a duty to speak arises only when under special circumstances . . . where there is a confidential relationship."  274 S.W.3d 339, 342-43 (Ark. Ct. App. 2008). Plaintiffs have no evidence of a confidential relationship in this case.

Plaintiffs' other cases are inapposite too.  *General Motors Corp. v. Bryant*, 285 S.W.3d 634, 637, 642-43 (Ark. 2008), only discusses whether statutes of limitations defeat predominance at class certification, and does not address tolling due to fraudulent concealment.  *Holiday Inn Franchising, Inc. v. Hotel Assocs., Inc.*, 382 S.W.3d 6, 12 (Ark. Ct. App. 2011), does not apply because it discusses the "long-term relationship" between the plaintiff and defendant that gave rise to a duty.  Plaintiffs do not dispute Lund had *zero* interactions with Ford before purchasing her vehicle (Mot. at 17), and they have no coherent argument as to how Lund's discussion with the Randall Ford dealership about the need to repair her engine was deceptive or constituted a "positive act" of fraud by anyone, let alone Ford.  Plaintiffs fare no better with their argument that Lund's visit to Ford's website somehow created a duty; the only information Lund was interested in was the price, the color, and whether the vehicle had a back-up camera, none of which bore on the functionality of the engine so as to constitute a positive act of fraud by Ford.  Sinclair Decl. Ex. CC, Lund Dep. 22:2-14, 29:3-10.  Indeed, she testified that she based her decision to buy the Escape on her experience with a prior Escape she owned, *id.* at 22:9-14, not based on any act by Ford.

***Wests (CA).***  Tolling due to fraudulent concealment is not available for the Wests' implied warranty and Song-Beverly claims, as recent case law has reinforced Ford's argument that tolling due to fraudulent concealment is not available absent wrongdoing that is "'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'"  Mot. at 19 (quoting *Guisinger v. Keystone RV Co.*, 2026 WL 1046715, at *16 (C.D. Cal. Apr. 2, 2026)); *see also Jamil v. Mercedes-Benz USA, LLC*, 780 F. Supp. 3d 957, 966 (C.D. Cal. 2025) (tolling requires showing "Defendant made misrepresentations, partial representations, or engaged in other affirmative conduct to conceal the existence of the Defect").  Plaintiffs make no effort in their Opposition to distinguish *Guisinger*, recent authority that post-dates the Court's order in *Nelson.*  Finally, the standard at summary judgment is different than the motion to

11

dismiss posture of the Court's prior ruling. Mere allegations that tolling *could* apply are not sufficient to survive summary judgment. *See Lessin*, 756 F. Supp. 3d at 918.

Plaintiffs also do not dispute that the discovery rule is inapplicable to the Wests' implied warranty claims. *See* Opp. at 16-17. The discovery rule cannot save the Wests' CLRA claim because Plaintiffs cannot show that the Wests were "diligent" in investigating the defect. It is undisputed that the Wests first experienced what they allege to be symptoms of the engine defect in 2016, experienced multiple reoccurrences of problems with their vehicle, but did not bring suit until 2020. Mot. at 18. Plaintiffs' only argument is to assert that Mr. West's testimony regarding the timeline of when he experienced problems was a "misstatement," but they have made no effort to correct the misstatement by providing an errata or any evidence. Plaintiffs' argument that Mr. West was unaware of any issues sufficient to put him on notice of the defect until he required an engine replacement 7 years after purchase is contrary to the position they hold in their same brief that the defect presents serious symptoms present from the point of sale. *See* Opp. at 3-5. It is thus undisputed that the Wests were on notice that there was a defect in their vehicle from the time they allegedly experienced symptoms. Mot. at 18. Plaintiffs also have made no effort to establish the additional element of tolling due to the discovery rule—the inability to discover the defect despite diligence. *Galvez v. Ford Motor Co.*, 2018 WL 4700001, at *5 (E.D. Cal. Sept. 30, 2018) (plaintiff on notice once issues with vehicle appeared).

**Balaszek (IN) and Pickering (IN).** Plaintiffs do not dispute that the discovery rule does not apply to Indiana implied warranty and IDCSA claims. Opp. at 19. The only decisions Plaintiffs cite involve motions to dismiss, which, at the pleadings stage, involve a different standard. *Carroll v. BMW of N. Am., LLC*, 553 F. Supp. 3d 588, 612 (S.D. Ind. 2021) (cited in Mot. at 19), applies the correct standard at summary judgment. Plaintiffs do not dispute the holding of *Carroll*, which finds that "Indiana law narrowly defines concealment" for purposes of tolling and requires a duty to speak arising from "a fiduciary or confidential relationship." *Id.* at 614. Plaintiffs do not dispute that neither Balaszek nor Pickering had any interactions with Ford directly, Mot. at 20, and Plaintiffs cite to no evidence that Ford "actively concealed" the defect from Balaszek or Pickering. *Carroll*, 553 F. Supp. 3d at 614 (finding tolling did not apply even

12

though evidence showed BMW was investigating instances of alleged defect).

*Manfras (MD).* Plaintiffs do not dispute that the discovery rule does not apply to the Manfras' (MD) claim either. Plaintiffs' cited cases, Opp. at 21, also do not hold that failing to disclose a defect is sufficient for fraudulent concealment—it requires that "the defendant [take] affirmative action to conceal the cause of action." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 275 (Md. Ct. App. 2007); *see also Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 678, 712 (E.D. Mich. 2022) ("[P]laintiffs must prove that the defendant took affirmative action to conceal the defect and that the plaintiff could not have discovered it despite the exercise of reasonable diligence.") (MD law). Plaintiffs assert that "financial incentives" involving the interest rate on Ford's vehicles "diverted" Mr. Manfra's attention from investigating any defect. Opp. at 21. That assertion is not plausible, let alone based on evidence. Plaintiffs also fail to provide any authority or evidence to support their argument that the sales representative at the dealership could be considered an "agent" of Ford such that any alleged misstatements by them could be attributed to Ford, and thus their attempt to distinguish *Mercedes-Benz of N. Am., Inc. v. Garten*, 618 A.2d 233 (Md. Ct. Spec. App. 1993), rings hollow. Absent any showing of "affirmative action" of concealment by Ford—the very standard *put forth by Plaintiffs' own authority*—the Manfras' implied warranty claims are time-barred.

*Metro (MI).* Plaintiffs do not dispute that the discovery rule does not apply to Metro's (MI) claim. They also do not dispute that tolling for fraudulent concealment under Michigan law requires "affirmative acts of misrepresentation that were designed to prevent subsequent discovery." Opp. at 25. But Plaintiffs present no facts or argument as to how Metro's viewing of the vehicle's price on Ford's website prevented her discovery of her implied warranty claim. *See Miller v. Gen. Motors, LLC*, 773 F. Supp. 3d 461, 522-23 (E.D. Mich. 2025) (tolling did not apply when plaintiff did not describe how statements were fraudulent or prevented discovery of the claim). And Plaintiffs' argument that Metro communicated with a sales representative at the dealership,[5] Opp. at 24, is insufficient for fraudulent concealment tolling, as this Court held in

---

[5] Alleged misrepresentations by the dealership are not sufficient for a claim of fraudulent concealment under Michigan law, which requires that a plaintiff make a "direct inquiry" to the defendant. *Ignition Switch*, 257 F. Supp. 3d at 425.

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

*Nelson v. Ford Motor Co.*, 2025 WL 2581611, at \*15 (E.D. Cal. Sept. 5, 2025). *See also In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 425 (S.D.N.Y. 2017) (fraudulent concealment claim failed when "Michigan Plaintiffs do not allege that they made any inquiries directly to New GM regarding the safety of their vehicles or the existence of any potential defects"). Similarly, no authority supports Plaintiffs' contention the dealership's refusal to replace oxygen sensors (Opp. at 24)—parts that are unrelated to the alleged defect—prevented Metro from discovering her implied warranty claim. *Miller*, 773 F. Supp. 3d at 510 (statement from dealership about repair not sufficient for fraudulent concealment). Finally, Metro also argues that subsequent repairs did not reveal the existence of the defect, but all the repairs were performed by an auto shop teacher at Metro's workplace (Pls. Ex. 13, Metro Dep. 168:10-170:1); Plaintiffs have no argument that this person acted on behalf of Ford.

Metro's claims also do not relate back to the filing of the earlier complaint with former Plaintiffs Coppock and Goodrich. Relation back requires an "identity of interest," which requires the same core of operative facts. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996); *Howard v. Hui*, 2001 WL 1159780, at \*6 (N.D. Cal. Sept. 24, 2001). Metro's claims lack the same core of facts as either Coppock or Goodrich. Coppock's implied warranty claim failed because she experienced engine trouble outside the durational limits of Ford's express warranty period. Dkt. 76 at 15; *see Palmer v. Stassinos*, 236 F.R.D. 460, 466 (N.D. Cal. 2006) (relation back not applicable when earlier plaintiffs lacked standing to bring claim). Goodrich does not have an identity of interest with Metro: she purchased a used Fusion with a 1.5L engine—a different engine type from the 2.0L and 2.3L engines encompassed in Plaintiffs' current proposed Michigan class of vehicles would encompass Metro's vehicle. Dkt. 162-1 at 21-22.

**H.    Leave to Substitute New Plaintiffs Should Not Be Granted**

Finally, Ford requests the Court deny Plaintiffs' request for leave to substitute new plaintiffs for the states they are currently seeking certification for in the event that Ford's motion is granted as to Balaszek (IN), the Morfords (KS), the Manfras (MD), and Metro (MI). Opp. at 25. Plaintiffs' Opposition is not a proper way to bring such a request. And the request would be doomed. Plaintiffs first filed this lawsuit nearly *6 years ago* and have filed 5 iterations of the

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

complaint including 35 individual plaintiffs. *See* Dkts. 1, 20, 43, 81, 144. Plaintiffs are not entitled to an unlimited amount of attempts to find representative plaintiffs. Substituting new plaintiffs would require reopening discovery to allow Ford to propound written discovery, request documents, conduct depositions, and schedule vehicle inspections. Substitution could also necessitate additional motion to dismiss briefing or rebriefing of class certification issues (if any class is certified), since it is Plaintiffs' burden to show that a proposed class representative is typical of the class. The advanced stage of this case means amendment would be prejudicial and result in further delay. *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *17 (N.D. Cal. June 9, 2010) (defendants prejudiced by proposed substitution of class representatives because "[a]llowing Plaintiffs to 'swap out' certain class representatives . . . would require Defendants to conduct new and/or additional discovery that would not otherwise have been required"); *Velazquez v. GMAC Mortg. Corp.*, 2009 WL 2959838, at *4 (C.D. Cal. Sept. 10, 2009) (similar); *Aguilar v. Boulder Brands, Inc.*, 2014 WL 4352169, at *5 (S.D. Cal. Sept. 2, 2014) ("The nullification of prior discovery and the need for new discovery can constitute sufficient prejudice to bar a motion to amend a complaint.").

The cases cited by Plaintiffs are not to the contrary. *Estakhrian v. Obenstine*, 859 F. App'x 121, 122-23 (9th Cir. 2021), allowed amendment because no additional discovery was necessary. *Edwards v. Angeles Abbey Mem'l Park, Inc.*, 2009 WL 1971375, at *1 (C.D. Cal. July 2, 2009), does not discuss the rationale for permitting amendment at all. *Cabrera v. Bayer Healthcare LLC*, 2024 WL 4228237, at *5 (C.D. Cal. June 24, 2024), involves a plaintiff with otherwise viable claims who voluntarily withdrew, not one whose claims failed as a matter of law. *Aliff v. Vervent Inc.*, 2022 WL 3588322, at *4 (S.D. Cal. Aug. 22, 2022), involved an early-in-the-case motion for summary judgment before the completion of fact discovery, which is not the case here—fact discovery closed in December 2025. Dkt. 126. Plaintiffs should not be granted leave to add additional class representatives.

## III.   CONCLUSION

For the foregoing reasons and the reasons in Ford's Motion for Partial Summary Judgment, summary judgment should be granted to Ford on certain claims.

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD

Dated:  August 5, 2026                O'MELVENY & MYERS LLP

By:      /s/ *Randall W. Edwards*
         Randall W. Edwards

*Counsel for Defendant*
Ford Motor Company

FORD'S REPLY ISO MSJ
NO. 2:20-CV-01796-DAD-CKD