RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Tel: +1 (415) 984-8700
Fax: +1 (415) 984-8701

AMY J. LAURENDEAU (S.B. #198321)
alaurendeau@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: +1 (949) 823-6900
Fax: +1 (949) 823-6994

KELSEY M. LARSON (S.B. #267982)
klarson@omm.com
O'MELVENY & MYERS LLP
400 S. Hope St., 19th Floor
Los Angeles, CA 90071
Tel: +1 (213) 430-6000
Fax: +1 (213) 430-6407

*Counsel for Defendant
Ford Motor Company*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA MILLER, et al., as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 2:20-cv-01796-DAD-CKD<br><br>(Consolidated with Nos. 2:21-cv-00417-DAD-CKD, 2:21-cv-00468-DAD-CKD)<br><br>**FORD MOTOR COMPANY'S REPLY IN SUPPORT OF FORD'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:  September 21, 2026<br>Time:  1:30 p.m.<br>Judge:  Hon. Dale A. Drozd<br>Courtroom:  4, 15th Floor |

**FORD'S REPLY IN SUPPORT OF FORD'S STATEMENT OF UNDISPUTED FACTS**

Pursuant to the Eastern District of California Local Rule 260(b), Ford hereby submits this Reply to Plaintiffs' Response to Ford's Separate Statement of Undisputed Facts.

| | Plaintiff Lund (AR) | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| 1 | Patricia Lund purchased her used 2016 2.0L Ford Escape on October 21, 2016 from Fort City Motors in Fort Smith, Arkansas. <br><br> Sinclair Decl. Ex. C, Lund Dep. 49:6-14. | Undisputed. <br><br> Plaintiffs note, however, that Ford's cited evidence does not support the asserted fact. Lund Dep. Tr. 49:6–14 concerns Ms. Lund's November 24, 2020 purchase of a 2020 Ford Escape and trade-in of the 2016 Ford Escape, not her original purchase of the 2016 Ford Escape. | Ford refers the court to the corrected transcript excerpts. <br><br> Sinclair Decl. Ex. CC (Additional Excerpts), Lund Dep. 19:24-20:2; 30:21-31:2. |
| 2 | Ms. Lund did not communicate with Ford Motor Company before filing a lawsuit against it related to her Escape. <br><br> Sinclair Decl. Ex. C, Lund Dep. 33:12-15 | **Undisputed in part and disputed in part.** <br><br> Ford's cited testimony addresses only whether Ms. Lund had spoken with anyone at Ford Motor Company before purchasing the vehicle; it does not address other Ford-related communications or exposures before suit. Ms. Lund testified that, before purchasing the 2016 Ford Escape, she reviewed pricing information on Randall Ford's website. Talley Decl., Ex. 38, Lund Dep. Tr. 29:5–10. <br><br> She also testified that, before filing suit, she went in person to Randall Ford regarding the issues with her 2016 Ford Escape, spoke with Randy at Randall Ford about what they were going to do with the vehicle, was told the vehicle needed a new engine, was told the vehicle was still within the engine warranty period, and was told Randall Ford had contacted Ford's regional office. Talley Decl., Ex. 38, Lund Dep. Tr. 46:7–47:24. | Plaintiff raises no genuine dispute of material fact. It is undisputed that prior to purchasing her vehicle, Ms. Lund did not communicate with Ford Motor Company. After purchasing her vehicle, Ms. Lund did not communicate with anyone at Ford Motor Company prior to filing a lawsuit against Ford Motor Company. Plaintiffs' response does not identify any contrary evidence. <br><br> Sinclair Decl. Ex. CC (Additional Excerpts), Lund Dep. 80:13-17. <br><br> Plaintiffs' "dispute" in this Response on the relevance of communications with a dealership is a legal position not relevant to this factual document and, moreover, is wrong as a matter of law. |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| Plaintiff Lund (AR) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| | | Plaintiffs further dispute any implication that communications with Ford-authorized dealerships are legally irrelevant. | |

| Plaintiffs Evan and Amber West (CA) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| 3 | Before their vehicle purchase, the Wests did not speak to anybody at Ford Motor Company.<br><br>Sinclair Decl. Ex. D, A. West Dep. 31:7-10; Ex. E, E. West Dep. 58:16-25. | **Disputed in part and undisputed in part.**<br><br>Ford's cited testimony addresses only whether Amber West spoke directly with Ford Motor Company regarding the Ford Fusion pre-purchase.<br><br>Disputed to the extent Ford implies that no communications with a Ford-authorized dealership or other Ford-related exposures occurred. | It is undisputed that the Wests testified that they did not speak to anybody at Ford Motor Company about their vehicle purchase. Sinclair Decl. Ex. D, A. West Dep. 31:7-10 ("Q. Did you speak with anybody who worked for Ford Motor Company about the Fusion before you made your purchase? A. No."); Ex, E, E. West Dep. 58:16-25 ("Q. Did you talk to anybody at – that was working for Ford Motor Company before you bought the Fusion? A. Other than the salesman, no. Q…Did you talk to anybody at Ford Motor Company? A. No."). Plaintiffs do not cite any contrary evidence.<br><br>Plaintiffs' "dispute" in this Response on the relevance of communications with a dealership is a legal position not relevant to this factual document and, moreover, is wrong as a matter of law. |
| 4 | The Wests purchased their Fusion in part for Ms. West's use as a business vehicle to visit clients | **Disputed.**<br><br>Ford's cited testimony addresses Amber West's use of the Ford Fusion to travel to and from | Plaintiffs' cited evidence does not raise a genuine dispute. Ms. West testified she was the primary driver of |

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| | **Plaintiffs Evan and Amber West (CA)** | | |
| | during her job as a social worker.<br><br>Sinclair Decl. Ex. D, A. West Dep. 33:10-13; 34:14-21; 83:1-4. | work and to travel to various locations to meet with individuals as part of her job as a social worker. Talley Decl., Ex. 24, A. West. Dep. Tr. 33:10-35:5.<br><br>Ford's cited testimony does not concern Amber West's use of the vehicle for business purposes or to transport individuals other than herself as part of her job. The Wests testified that they selected the vehicle and used the vehicle as a family car, for family trips, and for daily personal errands. Talley Decl., Ex. 25, E. West Dep. Tr. 22:6-16, 23:4-12; Talley Decl., Ex. 24, A. West Tr. 21:15–20, 33:3–17, 37:6–38:11.<br><br>Plaintiffs further dispute any implication that Amber West purchased the vehicle for use other than "primarily for personal, family, or household purposes" as defined by Cal. Civ. Code §§ 1761(a) and 1791(a). | the vehicle and that she used the Fusion as part of her job. Sinclair Decl. Ex. D, A. West Dep. 33:10-17. Ms. West further testified that when she bought the Fusion, she was expecting to use the vehicle for both work as well as personal purposes. *Id.* at 83:1-4. Ms. West could not recall whether she spent more than 50% of her use of the vehicle in connection with her business purpose. *Id.* at 37:1-5.<br><br>Ford further objects to Plaintiffs' "dispute" regarding the applicability and scope of Cal. Civ. Code §§ 1761(a) and 1791(a) as a legal conclusion not proper for this document. |
| 5 | The applicable warranty on the Wests' 2013 Ford Fusion is Ford's Limited New Vehicle Warranty, which covers certain powertrain components including the engine for the earlier of five years or 60,000 miles.<br><br>Sinclair Decl. Ex. A (2013 Ford's Warranty Guide). | **Undisputed in part and disputed in part.**<br><br>Undisputed that Sinclair Decl. Ex. A is a version of Ford's 2013 Warranty Guide and that it provides: "Extended warranty coverage periods are available for certain vehicle parts and conditions, Specifically, [that] ... Powertrain components are covered for five years or 60,000 miles, whichever occurs first," and that the extended warranty coverage applies to the Engine.<br><br>Disputed that Sinclair Decl. Ex. A is the applicable warranty on the Wests' 2013 Ford Fusion. Ford's cited evidence does not show the Warranty Guide, | Plaintiffs' objection is irrelevant, as they concede that the Wests' express warranty claims fail. Opp. at 1 n. 3 ("Plaintiffs do not contest Ford's summary judgment arguments for the express warranty claims of Amber and Evan West…"). |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| Plaintiffs Evan and Amber West (CA) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| | | version DW7J 19T201 CA, is the one applicable to the Wests' vehicle. | |
| 6 | Under the Limited New Vehicle Warranty, in certain circumstances an authorized Ford dealer will repair or replace a covered part that fails "during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship." Sinclair Decl. Ex. A (2013 Ford Warranty Guide) at 9. | **Undisputed in part and disputed in part.** Undisputed that the Warranty Guide contains the quoted language; disputed to the extent Ford characterizes the remedy as limited to repair or replacement of a 'covered part,' because the Warranty Guide also refers to repair, replacement, or adjustment of all parts that malfunction or fail during the applicable coverage period. Sinclair Decl. Ex. A at 9. | Plaintiffs' objection is irrelevant, as they concede that the Wests' express warranty claims fail. Opp. at 1 n. 3 ("Plaintiffs do not contest Ford's summary judgment arguments for the express warranty claims of Amber and Evan West…"). |
| 7 | Mr. West testified his wife experienced a stalling issue in 2016. Sinclair Decl. Ex. E, E. West Dep. 110:5-11; 115:24-116:8. | Undisputed. Plaintiffs note, however, that Ford's cited evidence does not support the asserted fact. Ford's cited evidence concerns testimony from Evan West stating between some date in September 2016 and June 2017, Amber West did not report that the vehicle was stalling. Evan West also testified that between 2016 and 2020, the vehicle was stalling every three to six months. Talley Decl., Ex. 25, E. West Dep. Tr. 88:13-17. | |
| 8 | Antelope Valley Ford was unable to replicate the stalling issue in September 2016. Sinclair Decl. Ex. E, E. West Dep. 93:15-94:20. | Undisputed. | |
| 9 | Mr. West testified that he experienced loss of power issues every three to six months after the September 2016 incident. Sinclair Decl. Ex. E, E. West Dep. 88:13-17. | Undisputed. | |
| 10 | Mr. West did not take their Fusion into any | **Disputed.** | Plaintiffs' objection is irrelevant, as they |

| Plaintiffs Evan and Amber West (CA) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| | dealership for any stalling issues while his vehicle was within the warranty period.<br><br>Sinclair Decl. Ex. E, E. West Dep. 115:21-116:4; 126:16-18. | Ford's cited testimony does not support the fact asserted. It concerns stalling issues occurring between September 2016 and June 2017 (Talley Decl., Ex. 25, E. West Dep. Tr. 115:21-116:4) and whether Evan West brought the vehicle to any "other" dealerships to address a stalling event (Talley Decl., Ex. 25, E. West Dep. Tr. 126:16-18).<br><br>The Wests brought the vehicle to Antelope Valley Ford on or around September 6, 2016, with approximately 47,812 miles on the odometer complaining that "while driving car stalled out and after 10mins car started." Talley Decl., Ex. 63, PLTF_0003278. | concede that the Wests' express warranty claims fail. Opp. at 1 n. 3 ("Plaintiffs do not contest Ford's summary judgment arguments for the express warranty claims of Amber and Evan West…"). |
| 11 | Mr. West took their Fusion into a repair shop, KJ Grand Am Tires in November 2018 because his vehicle was outside the warranty period.<br><br>Sinclair Decl. Ex G, PLTF_003305 (E. West Dep. Ex. 19); Ex. E, E. West Dep. 133:23-134:3; 138:6-11. | Undisputed.<br><br>Plaintiffs note, however, that Ford's cited evidence and testimony do not support the fact asserted. The cited testimony concerns Evan West bringing the vehicle to KJ Grand Am Tires because the vehicle was not running, and Evan West testified he decided to go to KJ Grand Am Tires because "the dealership's highly expensive" and that he believed the vehicle was out of warranty at that time. | Plaintiffs' objection is irrelevant, as they concede that the Wests' express warranty claims fail. Opp. at 1 n. 3 ("Plaintiffs do not contest Ford's summary judgment arguments for the express warranty claims of Amber and Evan West…"). |
| 12 | Ms. West first contacted Ford Motor Company regarding their vehicle in October or November 2020.<br><br>Sinclair Decl. Ex. D, A. West Dep. 72:8-14. | Undisputed. | |
| 13 | Ms. West did not recall any specifics of her call with Ford Motor Company Customer Service other than that Ford indicated that it | Undisputed. | |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| Plaintiffs Evan and Amber West (CA) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| | would not cover the engine replacement.<br><br>Sinclair Decl. Ex. D, A. West Dep. 72:15-74:8. | | |

| Plaintiff Miller (CA) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| 14 | Ms. Miller purchased her vehicle for use as a work vehicle.<br><br>Sinclair Decl. Ex. H, Miller Dep. 67:15-20. | **Disputed.**<br><br>Ford's cited testimony does not support the fact asserted. Ms. Miller testified she knew she would need to travel significantly for work and considered it a factor in her vehicle purchase, not that she purchased it exclusively for business purposes. Moreover, Ms. Miller's use of the vehicle for work reduced to 0% over time. Talley Decl., Ex. 26, Miller Dep. Tr. 103:18–105:18.<br><br>Ms. Miller considered the vehicle her personal car and never stopped using it for personal purposes. Talley Decl., Ex. 26, Miller Dep. Tr. 165:16–167:11.<br><br>Plaintiffs further dispute any implication that Vanessa Miller did not purchase her vehicle "primarily for personal, family, or household purposes" as defined by Cal. Civ. Code §§ 1761(a) and 1791(a), including commuting to work. | Plaintiffs raise no genuine dispute of fact. Ms. Miller testified that she would need to travel significantly for work and that this was a factor in her vehicle purchase. Ms. Miller also stated that she purchased the Edge for "personal and for work", believing her usage to be 50% work and 50% personal, and that her intended use of the vehicle has not changed over time since her purchase. Ms. Miller further testified during her deposition that as a sales representative, she had to track her mileage in order to be reimbursed for her business use of the vehicle. Ford did not assert the purchase was exclusively for business purposes. Nor did Ford dispute that Ms. Miller had zero use of her vehicle for personal use.<br><br>Sinclair Decl. Ex. DD (Additional Excerpts), Miller Dep. 55:23-56:7; Ex. H, Miller Dep. 67:15-20; 103:18-104:6.<br><br>Ford further objects to Plaintiffs' "dispute" regarding the |

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| | **Plaintiff Miller (CA)** | | |
| | | | applicability and scope of Cal. Civ. Code §§ 1761(a) and 1791(a) as a legal conclusion not proper for this document. |
| 15 | Ms. Miller used her Edge 50% of the time for business use.<br><br>Sinclair Decl. Ex. H, Miller Dep. 103:18-23; 105:2-4. | **Disputed.**<br><br>Ford's cited testimony does not support the fact asserted. Ford's cited testimony concerns Ms. Miller's intended use of the vehicle for personal usage and to commute for work. Ms. Miller testified that her use of the vehicle for personal and work commuting were equally important to her. Talley Decl., Ex. 26, Miller Dep. Tr. 103:24-104:3.<br><br>Ms. Miller testified she did not start traveling for work to meet with customers until sometime in 2018. Talley Decl., Ex. 26, Miller Dep. Tr. 67:9-11.<br><br>Ms. Miller testified between 2021 and 2023, she used the vehicle about 25% for traveling for work. Talley Decl., Ex. 26, Miller Dep. Tr. 104:24-25.<br><br>Ms. Miller testified after 2023, her use of the vehicle to travel for work was sporadic to none. Talley Decl., Ex. 26, Miller Dep. Tr. 104:9-15, 105:20-25.<br><br>Plaintiffs further dispute any implication that Vanessa Miller purchased her vehicle for use other than "primarily for personal, family, or household purposes" as defined by Cal. Civ. Code §§ 1761(a) and 1791(a), including traveling for work. | Plaintiffs raise no genuine dispute of fact. Ms. Miller testified her use of the vehicle was for "personal and for work" and that for the majority of the time in which she drove the Edge, her usage was about 50% business use.<br><br>That the use of Ms. Miller's vehicle lessened over time has no impact on her use when she originally purchased it.<br><br>Sinclar Decl. Ex. H, Miller Dep. 103:18-23; 104:21-105:4.<br><br>Ford further objects to Plaintiffs' "dispute" regarding the applicability and scope of Cal. Civ. Code §§ 1761(a) and 1791(a) as a legal conclusion not proper for this document. |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| No | Fact | Plaintiffs' Response | Ford's Response |
|----|------|---------------------|-----------------|
|  | **Plaintiff Balaszek (IN)** | | |
| 16 | In December 2019, Ms. Balaszek took her Escape in for a routine oil change at which the technician noted empty coolant in her vehicle. No engine repair was requested or attempted during this routine oil change.<br><br>Sinclair Decl. Ex. J, Balaszek Dep. 75:3-16. | **Undisputed in part and disputed in part.**<br><br>Ford's cited testimony does not support the fact asserted. Ford's cited testimony concerns Ms. Balaszek's visit to Take 5 Oil Change for an oil change. Ms. Balaszek heard the technician state her coolant was empty and refilled it for her. Ms. Balaszek did not testify regarding requested or attempted engine repair as that question was not posed to her. Plaintiffs also note that Ms. Balaszek did not testify that she experienced any symptoms of the Defect in December 2019, prior to, during, or after the subject oil change. | Plaintiffs raise no genuine dispute of fact. Plaintiffs cite to no evidence that an engine repair was requested or attempted during the oil change. Rather, Ms. Balaszek testified that when she picked her vehicle up from Take 5 Oil Change and heard the technicians state her coolant was empty, she did not ask the technicians about the coolant being empty. Plaintiffs' discussion of additional facts does not present evidence that disputes what Ford included in Fact #16.<br><br>Sinclar Decl. Ex. J, Balaszek Dep. 76:23-77:3. |
| 17 | Ms. Balaszek continued to drive her Escape after the December 2019 oil change.<br><br>Sinclair Decl. Ex. J, Balaszek Dep. 78:18-79:4; 84:15-17. | Undisputed.<br><br>Plaintiffs note, Ms. Balaszek did not testify she observed and ignored symptoms of the Defect following the December 2019 oil change and continued to drive the vehicle without repairs. On the contrary, after the December 2019 oil change, Ms. Balaszek observed white smoke emitting from the hood of the vehicle on multiple occasions and had to have the engine replaced only nine months later, in September 2020. Talley Decl., Ex. 14, Balaszek Dep. Tr. 84:18-85:2; Talley Decl., Ex. 22, PLTF_0000059.<br><br>The engine was replaced only two months after Ford issued a Technical Service Bulletin in July 2020 for Ms. Balaszek's vehicle, recommending | Plaintiffs do not dispute that Ms. Balaszek continued to drive her vehicle. |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| | **Plaintiff Balaszek (IN)** | | |
| | | replacement of the engine short block. Talley Decl., Ex. 60, PLTF_0000068. | |
| 18 | Plaintiff Balaszek has continued to drive her Escape since that time until February 2024, when her daughter became the primary driver.<br><br>Sinclair Decl. Ex. J, Balaszek Dep. 32:12-16; 43:20-22; 44:7-17. | **Undisputed in part and disputed in part.**<br><br>Disputed to the extent it implies Ms. Balaszek's daughter became the primary driver of the vehicle before the engine was replaced. Ms. Balaszek testified that in 2020, upon seeing white smoke coming out of the hood, Ms. Balaszek contacted Webb Ford to inquire about a repair; however, Webb Ford advised any repair would not be without cost. Talley Decl., Ex. 14, Balaszek Dep. Tr. 80:15-81:5.<br><br>Following her conversation with Webb Ford, Ms. Balaszek brought her vehicle to All American Tires for service and was provided a notice indicating the white smoke was a known issue with the particular engine installed in her vehicle. Talley Decl., Ex. 14, Balaszek Dep. Tr. 83:4-19.<br><br>Ms. Balaszek testified in September 2020 she authorized Dean's Auto Repair to diagnose and repair the vehicle. Talley Decl., Ex. 14, Balaszek Dep. Tr. 87:4-25; 88:8-11.<br><br>Ms. Balaszek testified in September 2020, Dean's Auto Repair replaced the vehicle's engine. Talley Decl., Ex. 14, Balaszek Dep. Tr. 90:19-25. | Plaintiffs raise no genuine dispute. Plaintiffs do not dispute that Ms. Balaszek continued to drive her Escape from December 2019 to February 2024. Plaintiffs' additional facts offered here do not dispute what Ford presented as Fact #18.<br><br>Sinclair Decl. Ex. J, Balaszek Dep. 32:12-16; 43:20-22; 44:7-17. |
| 19 | Ms. Balaszek did not communicate with Ford regarding the engine issues with her Escape.<br><br>Sinclair Decl. Ex. J, Balaszek Dep. 97:16-21. | **Disputed.**<br><br>Ford's cited testimony addresses only whether Ms. Balaszek had notified Ford, not whether she communicated with Ford Motor Company. Ms. Balaszek testified she told the salesperson | Plaintiffs raise no genuine dispute of fact. Plaintiffs identify no evidence of any communication by Ms. Balaszek to Ford Motor Company. Ms. Balaszek testified that |

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| **Plaintiff Balaszek (IN)** | | | |
| | | who sold her the vehicle. Ms. Balaszek also testified she contacted Webb Ford to inquire about a repair, however, Webb Ford advised any repair would not be without cost. Talley Decl., Ex. 14, Balaszek Dep. Tr. 80:15-81:5.<br><br>Plaintiffs further dispute any implication that communications with Ford-authorized dealerships are legally irrelevant. | she only communicated with a salesperson at a dealership regarding her issues with her Escape.<br><br>Plaintiffs' "dispute" in this Response on the relevance of communications with a dealership is a legal position not relevant to this factual document and, moreover, is wrong as a matter of law. |

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| **Plaintiff Pickering (IN)** | | | |
| 20 | Mr. Pickering purchased the Fusion for use as a business vehicle.<br><br>Sinclair Decl. Ex. M, Pickering Dep. 80:15-81:15. | **Disputed.**<br><br>Ford's cited testimony does not support the asserted fact. Ford's cited testimony concerns Mr. Pickering's intended use of the vehicle for personal usage and to commute and travel for work. The nature of Mr. Pickering's sales job at the time required him to travel for work. Mr. Pickering did not testify that the vehicle was purchased to be leased by others or to transport others.<br><br>Plaintiffs further dispute any implication that Mr. Pickering is not a consumer or that Mr. Pickering did not purchase his vehicle primarily for personal, family, or household purposes, including traveling for work. | Plaintiffs raise no genuine dispute of fact and cite no evidence to the contrary. Mr. Pickering testified that his use of the vehicle was approximately between 75% - 80% business use and 25% - 20% personal use. The fact that Mr. Pickering did not lease his vehicle or transport others is irrelevant to whether he purchased his vehicle for business purposes, and Plaintiffs have no legal argument to the contrary.<br><br>Sinclair Decl. Ex. M, Pickering Dep. 81:10-15.<br><br>Ford objects that Plaintiffs' "dispute" of the implication of a legal conclusion is not a proper dispute of the facts in this document. |
| 21 | Mr. Pickering did not communicate with Ford | **Disputed.** | Plaintiffs raise no genuine dispute of fact. |

| Plaintiff Pickering (IN) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| | Motor Company regarding his Fusion.<br><br>Sinclair Decl. Ex. M, Pickering Dep. 133:25-134:5. | Ford's cited testimony addresses only whether Mr. Pickering had communicated with Ford Motor Company regarding the short block replacement. Talley Decl., Ex. 27, Pickering Dep. Tr. 134:3-13.<br><br>Plaintiffs further dispute any implication that communications with Ford-authorized dealerships are legally irrelevant. | Mr. Pickering testified that he did not speak to anybody at Ford Motor Company at the time of purchase regarding his Fusion, nor did he speak to anyone at Ford Motor Company in connection with any repairs or issues after his purchase.  Plaintiffs say they dispute Fact #21 but do not provide any contrary evidence or any statement that Mr. Pickering did communicate with Ford Motor Company regarding his Fusion. Any dispute also is without basis because Mr. Pickering also testified elsewhere to the effect of Ford's Fact #21.<br><br>Sinclair Decl. Ex. FF (Additional Excerpts), Pickering Dep. 72:20-22; 113:9-13; *see also* Ex. M, Pickering Dep. 133:25-134:5.<br><br>Plaintiffs' "dispute" in this Response on the relevance of communications with a dealership is a legal position not relevant to this factual document and, moreover, is wrong as a matter of law. |

| Plaintiffs Craig and Kelli Morford (KS) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| 22 | Kelli and Craig Morford purchased their new 2017 2.0L Ford Escape on April 18, 2017 from Shawnee Mission Ford. | Undisputed. | |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| Plaintiffs Craig and Kelli Morford (KS) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| | Sinclair Decl. Ex. O, PLTF_000003 3 (C. Morford Dep. Ex. 3). | | |
| 23 | Ms. Morford is the primary driver of their Escape.<br><br>Sinclair Decl. Ex. Q, K. Morford Dep. 55:7-10. | Undisputed. | |
| 24 | Ms. Morford used their Escape for errands and other daily activities, including transporting her young daughter.<br><br>Sinclair Decl. Ex. Q, K. Morford Dep. 55:1-14; 55:24-56:1; 57:1-7. | Undisputed.<br><br>Plaintiffs note, however, Ford's cited testimony does not reflect the reason for Ms. Morford's continued use of the vehicle to transport her young daughter. Ms. Morford continued using the vehicle by necessity, not by choice. She testified that she believed the vehicle was unsafe, but the Morfords had no other option but to continue using it, given they could not afford to replace it. Talley Decl., Ex. 11, K. Morford Dep. Tr. 125:20-126:3. | |

| Plaintiffs Aaron and Victoria Manfra (MD) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| 25 | The Manfras purchased their new 2017 2.0L Ford Edge on April 18, 2017, from Len Stoler Ford in Owings Mills, Maryland.<br><br>Sinclair Decl. Ex. S, PLTF_002258 (A. Manfra Dep. Ex. 6); Ex. R, A. Manfra Dep. 21:23-24; 98:11-13. | **Disputed as to the vehicle model, the engine displacement, and the date of purchase. Undisputed that the vehicle was purchased new from Len Stoler Ford.**<br><br>The Manfras purchased a 2017 Ford Fusion, not a 2017 Ford Edge. Their vehicle was equipped with a 1.5L-displacement engine, not a 2.0L-displacement engine. Talley Decl., Ex. 61, PLTF_002258 (Purchase Contract). They purchased their vehicle on February 18, 2017, not April 18, 2017. *Id.* | Undisputed that the Manfras purchased a 2017 1.5L Ford Fusion on February 18, 2017. Ford's Fact #25 inadvertently identified the wrong model and date. |
| 26 | Before purchasing their Edge, Mr. Manfra researched the Ford Edge on third-party websites. | **Disputed as to the vehicle model.** | Undisputed that the Manfras purchased a |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| **Plaintiffs Aaron and Victoria Manfra (MD)** | | | |
| | Sinclair Decl. Ex. R, A. Manfra Dep. 89:16-90:19. | The Manfras purchased a 2017 Ford Fusion, not a Ford Edge. Talley Decl., Ex. 61, PLTF_002258 (Purchase Contract). | 2017 1.5L Ford Fusion on February 18, 2017. |
| 27 | Before purchasing their Edge, Mr. Manfra only reviewed the Ford website to check on incentives, but he did not use Ford's website as a review tool about the Edge.\n\nSinclair Decl. Ex. R, A. Manfra Dep. 91:1-5. | **Disputed as to the vehicle model.**\n\nThe Manfras purchased a 2017 Ford Fusion, not a Ford Edge. Talley Decl., Ex. 61, PLTF_002258 (Purchase Contract).\n\nPlaintiffs also note that Mr. Manfra testified the financial incentives he reviewed on Ford's website enticed him to pick the Fusion over other cars. Talley Decl., Ex. 47, A. Manfra Dep. Tr. 81:10–82:10; 85:7–9; 87:3– 5; 88:2–8; 91:1–5. | Undisputed that the Manfras purchased a 2017 1.5L Ford Fusion. |
| 28 | Before purchasing his Edge, Mr. Manfra did not communicate with anyone at Ford.\n\nSinclair Decl. Ex. R, A. Manfra Dep. 98:4-6. | **Disputed as to the vehicle model, and disputed to the extent Ford's assertion includes communications with personnel at the Ford-authorized dealership rather than an individual at Ford Motor Company.**\n\nThe Manfras purchased a 2017 Ford Fusion, not a Ford Edge. Talley Decl., Ex. 61, PLTF_002258 (Purchase Contract).\n\nBefore purchasing the Fusion, Mr. Manfra spoke with a Ford salesperson about the vehicle's reliability. He later testified that, in light of the faulty engine, he felt misled about the fusion's reliability. Talley Decl., Ex. 47, A. Manfra Dep. Tr. 30:1-6. | Undisputed that the Manfras purchased a 2017 1.5L Ford Fusion.\n\nPlaintiffs raise no genuine dispute of fact. Mr. Manfra testified that before purchasing his 2017 Fusion, he did not speak to anyone at Ford Motor Company.\n\nSinclar Decl. Ex. R, A. Manfra Dep. 98:4-6. |

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| **Plaintiff Metro (MI)** | | | |
| 29 | Ms. Metro experienced vehicle hesitation upon acceleration in 2018. | **Undisputed in part and disputed in part.** | Plaintiffs raise no genuine dispute of fact. It is undisputed that Ms. Metro experienced |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| Plaintiff Metro (MI) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| | Sinclair Decl. Ex. U, Metro Dep. 138:3-139:10; 144:2-7. | **Undisputed** that Ms. Metro experienced vehicle hesitation upon acceleration starting in 2018 and approximately 95% of the hesitation occurred during acceleration. Talley Decl., Ex. 13, Metro Dep. Tr. 143:22¬144:1, 8-23.<br><br>**Disputed in part.** Ford's cited testimony addresses only Ms. Metro's experience with vehicle hesitation in 2018 and whether she believed it was a symptom of the engine defect; it does not address whether the hesitation was on acceleration.<br><br>Ms. Metro testified that she experienced ongoing engine issues including misfires, hesitation on startup, and rough operation that worsened over time. Talley Decl., Ex. 13, Metro Dep. Tr. 161:8-162:20<br><br>Moreover, the misfiring, hesitation, and rough operation persisted even after ineffective repairs. Talley Decl., Ex. 13, Metro Dep. Tr. 157:14-158:13. | vehicle hesitation upon acceleration in 2018, as is clear from the continuation of the testimony on the same page (144).<br><br>Sinclair Dep. Ex. U, Metro Dep. 138:3-139:10, 144:2-15. |
| 30 | Ms. Metro took her vehicle in to Imlay Ford on July 29, 2022.<br><br>Sinclair Decl. Ex. U, Metro Dep. 187:6-21 . | **Disputed.** Ford's cited testimony concerns Ms. Metro calling AAA to tow her vehicle to Imlay Ford after July 27th.<br><br>Undisputed that Plaintiff had her vehicle towed to Imlay Ford by AAA on July 28, 2022. *See* Talley Decl., Ex. 62, PLTF_0004581-4585 and Talley Decl., Ex. 21, PLTF_0002604. | Plaintiffs raise no genuine dispute of fact. Ms. Metro testified that she had her vehicle taken in, via tow, to Imlay Ford.<br><br>Sinclair Decl. Ex. U, Metro Dep. 187:6-21. |

| Plaintiff Kennedy (MN) | | | |
|---|---|---|---|
| No | Fact | Plaintiffs' Response | Ford's Response |
| 31 | Mark Kennedy purchased his 2016 2.0L Ford Edge used on November 24, 2020 from BMW of Minnetonka. | Undisputed.<br><br>Plaintiffs note, however, Ford's cited testimony does not fully support the asserted fact. Ford's cited testimony does not | |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| | | **Plaintiff Kennedy (MN)** | |
| | Sinclair Decl. Ex. T, Kennedy Dep. 116:8-117:1. | indicate Mr. Kennedy purchased the vehicle used. | |
| 32 | Mr. Kennedy did not review any advertisements from Ford Motor Company before purchasing his Edge.<br><br>Sinclair Decl. Ex. T, Kennedy Dep. 94:18-95:5; 95:22-96:12; 100:25-101:6; 102:8-16. | **Disputed.**<br><br>Ford's cited testimony does not support the asserted fact. Mr. Kennedy testified he visited the Ford Motor Company manufacturer's website to review information about the Ford Edge. Ford's cited testimony does not concern Mr. Kennedy's review of any advertisements on the Ford Motor Company website. The term information may include advertisements. | Plaintiffs' objection is irrelevant as they do not oppose the grant of summary judgment as to Kennedy's Minnesota False Statement in Advertising Act Claim. Opp. at 1 n.3. |
| 33 | Mr. Kennedy did not see any information regarding the 2016 Edge on Ford's website, but only viewed the specifications for the Ford vehicles available at the time of his purchase in 2020.<br><br>Sinclair Decl. Ex. T, Kennedy Dep. 94:18-95:5; 95:22-96:12. | **Disputed.**<br><br>Ford's cited testimony does not support the asserted fact. Mr. Kennedy testified he visited the Ford Motor Company manufacturer's website to review information about the Ford Edge. | Plaintiffs' objection is irrelevant as they do not oppose the grant of summary judgment as to Kennedy's Minnesota False Statement in Advertising Act Claim. Opp. at 1 n.3. |

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| | | **Plaintiff Mullen (OH)** | |
| 34 | In April 2021, Mr. Mullen experienced trouble initially starting his Edge, but once started, the vehicle would run without issue.<br><br>Sinclair Decl. Ex. W, Mullen Dep. 126:1-16; 128:16-18; 131:14-25; 134:25-135:14. | **Disputed.**<br><br>Ford's cited testimony does not support the asserted fact that the vehicle would run without issue. Mr. Mullen testified that even once he was able to start the vehicle, the engine would misfire and lunge for the first couple of miles. Talley Decl., Ex. 12, Mullen Dep. Tr. 134:5-135:3. | Plaintiffs raise no genuine dispute of fact. Plaintiffs do not dispute that Mr. Mullen was always able to start his vehicle after pushing the start button again. Sinclair Decl. Ex. W, Mullen Dep. 131:14-25.<br><br>Mr. Mullen testified that once the vehicle started, the vehicle would have some initial trouble, described as "shifting incorrectly," but would resolve and drive without issue for the remainder of the |

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| | **Plaintiff Mullen (OH)** | | |
| | | | drive, as is clear from the preceding portion of the testimony on the same page (134:5-20).<br><br>Sinclair Decl. Ex. W, Mullen Dep. 134:5-20. |
| 35 | From April 2021 to August 2021, Mr. Mullen continued to drive his Edge.<br><br>Sinclair Decl. Ex W, Mullen Dep. 63:5-64:25; 185:19-186:2; 192:7-193:23. | Undisputed.<br><br>Plaintiffs note, however, between April 2021 and August 2021, as well as after August 2021, Mr. Mullen monitored the condition of his vehicle consistently. On or around April 13, 2021, Mr. Mullen added a fuel treatment to his vehicle in hopes it would fix the rough idle he observed in the vehicle. Talley Decl., Ex. 12, Mullen Dep. Tr. 166:7-10, 18-24, 167:1-2.<br><br>Mr. Mullen testified he brought the vehicle into a Ford dealership several times between when he first observed the rough idle through the time the engine was replaced. Talley Decl., Ex. 12, Mullen Dep. Tr. 168:10-13.<br><br>Mr. Mullen also testified he brought the vehicle to a Ford dealership in April 2021 and the mechanic replaced a coil pack. Talley Decl., Ex. 12, Mullen Dep. Tr. 170:22-171:2.<br><br>Mr. Mullen also testified he brought the vehicle to a Ford dealership in May 2021 and the mechanic performed additional repairs, swapping cylinder 1 and two coil packs. Talley Decl., Ex. 12, Mullen Dep. Tr. 175:18-24.<br><br>Mr. Mullen also testified he brought the vehicle to a Ford dealership for repairs in June 2021, in which the mechanic | Plaintiffs admit the fact is undisputed. Plaintiffs' additional comments on other evidence are irrelevant to whether this is an undisputed fact. |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| No | Fact | Plaintiffs' Response | Ford's Response |
|---|---|---|---|
| **Plaintiff Mullen (OH)** | | | |
| | | tested the injectors. Talley Decl., Ex. 12, Mullen Dep. Tr. 183:19-23. | |
| 36 | Mr. Mullen completed a 700-mile road trip from Ohio to Missouri in his Edge, favoring it over his other vehicle.<br><br>Sinclair Decl. Ex W, Mullen Dep. 193:20-23. | Undisputed.<br><br>Plaintiffs note, however, Mr. Mullen testified he decided to use the Edge for the approximate 700-mile road trip because the other vehicle had higher miles and some repairs that needed to be completed. Talley Decl., Ex. 12, Mullen Dep. Tr. 193:11-19. | Plaintiffs admit the asserted fact is undisputed. Plaintiffs' additional comments on other evidence are irrelevant to whether this is an undisputed fact. |
| 37 | Mr. Mullen has no concerns with his daughter driving the Edge.<br><br>Sinclair Decl. Ex W, Mullen Dep. 57:21-24. | **Disputed.**<br><br>Ford's cited testimony does not support the asserted fact. Mr. Mullen testified he did not have any concerns about giving the Edge to his daughter. Mr. Mullen was not asked whether he had concerns with his daughter driving the Edge. Additionally, Mr. Mullen gave the vehicle to his daughter after the defective engine was replaced and only after Mr. Mullen had driven the vehicle for another 75,000 miles with the replacement engine without experiencing any symptoms of the Defect. Talley Decl., Ex. 12, Mullen Dep. Tr. 57:8-24, 244:23-245:2. | Plaintiffs raise no genuine dispute of fact. Mr. Mullen testified he had no concerns about giving the 2017 Ford Edge to his daughter, for which his daughter intended to drive the Ford Edge as a vehicle.<br><br>Sinclair Decl. Ex. W, Mullen Dep. 57:21-24 ("Q. And then did you have any concerns about giving the 2017 Ford Edge to your daughter? A. I did not."). |
| 38 | Mr. Mullen stated his daughter considers the Edge an "upgrade" from her prior vehicle.<br><br>Sinclair Decl. Ex W, Mullen Dep. 56:20-57:7. | Undisputed.<br><br>Plaintiffs note, however, Mr. Mullen testified his daughter considered the Edge an upgrade over her prior vehicle because it had features such as all-wheel drive, a back-up camera, and a sunroof, and because it was newer. Mr. Mullen did not testify that his daughter considered the Edge an upgrade because of the vehicle's engine or powertrain. | |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

| No | Plaintiff Batdorf (TN) | | |
|---|---|---|---|
| | Fact | Plaintiffs' Response | Ford's Response |
| 39 | Mr. Batdorf sold his MKC in late 2022 to CarMax located in Hendersonville, Tennessee, after he joined the action.<br><br>Sinclair Decl. Ex. AA, Batdorf Dep 30:17-31:18. | N/A – Plaintiffs intend to dismiss Tyson Batdorf. | |
| 40 | Mr. Batdorf did not notify Ford when he sold his Lincoln MKC in 2022.<br><br>Sinclair Decl. Ex. AA, Batdorf Dep. 31:14-18; 45:2-5. | N/A – Plaintiffs intend to dismiss Tyson Batdorf. | |

| No | Plaintiff Gonzalez (TX) | | |
|---|---|---|---|
| | Fact | Plaintiffs' Response | Ford's Response |
| 41 | Mr. Gonzalez did not recall ever contacting Ford Motor Company directly regarding his Escape.<br><br>Sinclair Decl. Ex. BB, Gonzalez Dep. 169:16-170:3. | **Undisputed in part and disputed in part.**<br><br>Ford's cited evidence does not support the asserted fact. Gonzalez Tr. 169:16–25 concerns Mr. Gonzalez's contact with Ford Motor Company through Ford Motor Company's authorized dealership, Leif Johnson Ford. Gonzalez Tr. 170:1-3 addresses only whether Mr. Gonzalez talked with anyone at Ford Motor Company directly. Plaintiffs further dispute any implication that communications with Ford-authorized dealerships are legally irrelevant.<br><br>Undisputed that Mr. Gonzalez did not recall talking to Defendant Ford Motor Company directly. Undisputed that Mr. Gonzalez owned a Ford Escape. | Plaintiffs raise no genuine dispute of fact. It is undisputed that Mr. Gonzales did not recall ever contacting anyone at Ford Motor Company regarding his Escape.<br><br>Plaintiffs' "dispute" in this Response on the relevance of communications with a dealership is a legal position not relevant to this factual document and, moreover, is wrong as a matter of law. |

FORD'S REPLY ISO
STATEMENT OF UNDISPUTED FACTS
NO. 2:20-CV- 2:20-CV-01796-DAD-CKD

Dated:  August 5, 2026                    O'MELVENY & MYERS LLP

                                          By:    /s/ *Randall W. Edwards*
                                                 Randall W. Edwards

                                          *Counsel for Defendant*
                                          Ford Motor Company