RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Tel: +1 415 984 8700

AMY J. LAURENDEAU (S.B. #198321)
alaurendeau@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: +1 (949) 823-6900

KELSEY M. LARSON (S.B. #267982)
klarson@omm.com
O'MELVENY & MYERS LLP
400 S. Hope St., 19th Floor
Los Angeles, CA 90071
Tel: +1 (213) 430-6000

*Counsel for Defendant*
FORD MOTOR COMPANY

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

VANESSA MILLER, et al., as individuals and on behalf of all others similarly situated,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendant.

Case No. 2:20-cv-01796-DAD-CKD (Consolidated with Nos. 2:21-cv-00417-DAD-CKD, 2:21-cv-00468-DAD-CKD)

---

TREVOR NELSON, et al., as individuals and on behalf of all others similarly situated,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendant.

Case No. 2:24-cv-02231-DAD-CKD

**DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFFS' EXPERT STEVEN B. BOYLES**

**[PUBLIC REDACTED VERSION]**

Date: September 21, 2026
Time: 1:30 p.m.
Judge: Hon. Dale A. Drozd
Courtroom: 4, 15th Floor

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. SUMMARY OF STEVEN BOYLES'S OPINIONS ........ 3

A. Overview of Boyles's Methodology ........ 3

B. Overview of Boyles's Assumptions ........ 4

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 6

A. Boyles's "Cost of Repair" Theory Does Not Fit Plaintiffs' Asserted Legal Claims ........ 6

B. Boyles's "Cost of Repair" Methodology Is Not Reliable ........ 7

C. Boyles's Model Ignores the Actual Bargain Struck by Proposed Class Members ........ 10

D. Boyles's Methodology Suffers from Other Methodological Flaws ........ 11

V. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Brooks v. Darling Int'l, Inc.*,
2017 WL 1198542 (E.D. Cal. Mar. 31, 2017) .......... 5

*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998).......... 8

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... passim

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995).......... 5

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 5, 7

*Davidson v. Apple Inc.*,
2019 WL 2548460 (N.D. Cal. June 20, 2019) .......... 11

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 5

*Gutierrez v. Wells Fargo & Co.*,
2010 WL 1233810 (N.D. Cal. Mar. 26, 2010).......... 6

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) .......... 10

*In re Gen. Motors LLC Ignition Switch Litig.*,
407 F. Supp. 3d 212 (S.D.N.Y. 2019).......... 8

*In re Gen. Motors LLC Ignition Switch Litig.*,
427 F. Supp. 3d 374 (S.D.N.Y. 2019).......... 8

*Isip v. Mercedes-Benz USA, LLC*,
155 Cal. App. 4th 19 (2007).......... 6

*Lust By & Through Lust v. Merrell Dow Pharms.*,
89 F.3d 594 (9th Cir. 1996).......... 5

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024).......... 7

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019).......... 9

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014).......... 5

*Philips v. Ford Motor Co.*,
2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) .......... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Vizcarra v. Unilever U.S., Inc.*,
339 F.R.D. 530 (N.D. Cal. 2021) .... 13

*Watts v. Allstate Indem. Co.*,
2013 WL 210059 (E.D. Cal. Jan. 17, 2013) .... 5

**STATUTES**

Cal. Civ. Code § 3343 .... 7

Cal. Com. Code § 2714(2) .... 6

**RULES**

Fed. R. Evid. 401 .... 5

Fed. R. Evid. 402 .... 5

Fed. R. Evid. 702 .... 5

Fed. R. Evid. 702(a) .... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' damages expert in support of class certification, Steven Boyles, offers a flawed "cost of repair" methodology for calculating classwide damages under a "benefit of the bargain" damages theory. According to Boyles, every class member bargained for and expected to purchase a "defect-free" vehicle. Ex.[1] Q, Boyles Rpt. ¶ 16. This assumption is belied by the facts that the class vehicles came with Ford's New Vehicle Limited Warranty with an express disclaimer—"[t]his warranty does not mean that each Ford vehicle is defect free" (Ex. R, FORD-MILLER 00086420)—as well as an option to purchase an extended warranty for powertrain components such as the engine. Many putative class members, including at least two Named Plaintiffs, who experienced the alleged defect at issue received engine repairs covered by warranty. And, despite claiming to calculate "benefit of the bargain" damages, Boyles admits he did not calculate or perform any analysis of the difference between what class members believed they were bargaining for and the value they actually received. Ex. S, Boyles Dep. 130:8-132:6. He instead opines that awarding all putative class members the full cost of an engine replacement—regardless of whether the alleged defect ever manifested in their vehicles, and regardless of whether the class members still own their vehicles, received a free warranty repair, or paid a fraction of Boyles's estimated repair costs—would give class members the "benefit of the[ir] bargain." Ex. Q, Boyles Rpt. ¶ 16. On this basis, Boyles calculates average per-vehicle damages of approximately $5,871.17. *Id.* ¶ 50. The Court should exclude Boyles's plainly flawed opinions under the governing standards of Fed. R. Evid. 702 and *Daubert* for four independent reasons.

***First***, Boyles's proposed damages methodology does not fit the damages allowed for the claims that Plaintiffs seek to certify. It does not adequately measure damages for implied warranty claims because it does not consider factors legally relevant to such claims, such as

---

[1] All references to "Ex." refer to the exhibits attached to the concurrently filed Declaration of Amy J. Laurendeau in Support of Defendant Ford Motor Company's Motions to Exclude Expert Opinions Relevant to Class Certification.

vehicle use, condition, mileage, and wear and tear. Ex. S, Boyles Dep. 132:24-133:2. Boyles himself admitted that his cost of repair model does not distinguish between fraud damages and warranty damages—rather, it calculates damages "without regard" to the specific claims a plaintiff has asserted. *Id.* at 23:16-23:8; 25:3-10. He has not calculated fraud damages specifically, has not performed any calculation of fair market value, and has not reached any conclusion about demand or supply curves. *Id.* at 163:3-7, 163:19-22.

***Second***, Boyles's methodology is unreliable as it lacks testing, peer review, and general acceptance. His model was not tested, includes no sensitivity analysis, considers no alternative methodologies, and depends on tentative, non-final inputs that may vary over time. It lacks sufficient economic analysis accepted by the courts and relies on a small set of repair invoices, rendering his methodology unreliable and inadmissible.

***Third***, Boyles's methodology improperly fails to consider, as it must, consumer expectations under the benefit-of-the-bargain framework that he proposes. His model is premised on consumers bargaining for (and Ford agreeing to sell) a "defect-free" vehicle. But as Boyles concedes, Ford's warranty, which, again, disclaims the vehicles were "defect free," was part of that bargain. Ex. R, FORD-MILLER00086420; Ex. S, Boyles Dep. 200:23-201:16. Boyles also is not an expert in consumer expectations (Boyles Dep. 162:4-6), has never studied how consumers negotiate or bargain for a vehicle (*id.* at 203:7-15), did not evaluate any actual sales prices of class vehicles (*id.* at 162:19-20), and admitted he had not even read the warranties applicable to class vehicles (*id.* at 135:8-12). His conceded failure to consider consumers' expectations related to their vehicle purchase—which he admitted would be informed by Ford's warranty (which he ignored)—renders his methodology untethered to the facts of the case and unreliable. His methodology does not contain a reliable means of calculating damages for only putative class members, as it blanket applies to anyone who ever purchased a class vehicle, and provides no means of identifying and excluding those who, for example, did not suffer any damages as a result of the alleged defect.

***Fourth***, Boyles's methodology is riddled with individualized inquiries that preclude classwide application and independently warrant exclusion. His model applies identically across

all vehicles regardless of actual failure rates of the alleged "Saw Cut Defect'—whether 0.5% or 99%. Ex. S, Boyles Dep. 182:22-24. It yields the exact same damages for someone with a 10% chance of experiencing engine failure from the alleged defect as someone with a 0.01% chance. *Id.* at 176:2-9. Yet Plaintiffs' own expert, Dr. Wachs, calculated failure rates of [redacted] for 2.0L Escapes and about [redacted] for 1.5L Escapes—a [redacted] difference. Ex. F, Wachs Rpt. at 24-25, Ex. S, Boyles Dep. 177:14-21. Boyles's model does not account for whether a class member received a free warranty repair, includes no time-of-ownership adjustment, and Boyles admitted that class members' actual damages will *not* equal the amount yielded by his formula. *Id.* at 73:4-11, 73:18-74:14, 169:6-25.

For all of these independent reasons, Boyles's opinions should be excluded under Rule 702.

## II. SUMMARY OF STEVEN BOYLES'S OPINIONS

### A. Overview of Boyles's Methodology

Plaintiffs asked Boyles to develop and determine a methodology to quantify alleged damages on a classwide basis. Ex. Q, Boyles Rpt. ¶ 7. Boyles assumes that the class members would have paid less, or not purchased their vehicles at all, had Ford disclosed the alleged engine defect at the time of sale. *Id*. ¶¶ 17-18. Boyles opines that in order to make class members "whole," they are entitled to the full "cost of repair" to remedy the defect fully—namely, the cost of an engine replacement. *Id*. ¶¶ 20, 40. Boyles calculates the cost of an engine replacement by adding the costs of parts and labor and arrives at average per-vehicle damages of approximately $5,871.17. *Id*. ¶ 50. He states this is the "measure of difference in value of a Class Vehicle *without* the defect as compared to a Class Vehicle *with* the defect." *Id.* ¶ 51.

Boyles maintains that damages can be calculated on a classwide basis by aggregating the "cost of repair" for all putative class members, regardless of their purchase circumstances, actual prices paid, repairs received or needed, manifestation of the alleged defect, customer satisfaction with the class vehicles, or vehicle performance. *Id*. ¶¶ 33, 35. In other words, according to Boyles, even class members who have since sold their class vehicles, and whose vehicles never experienced the alleged defect while they owned it, are entitled to damages equal to the cost of

replacing the vehicle's engine. Ex. S, Boyles Dep. 140:19-142:11. Class members who received an engine replacement, fully covered by Ford under the vehicle's warranty, likewise are entitled to damages equal to the cost of replacing the vehicle's engine (*id.* at 168:14-19), as are class members who paid out of pocket for an engine replacement but incurred costs that were less than the average (*id.* at 218:15-24).

**B. <u>Overview of Boyles's Assumptions</u>**

For his damages proposal, Boyles makes several "classwide" assumptions provided by Plaintiffs' counsel—two of which, in particular, are critical for this motion and, as addressed in the argument section, are divorced from the facts of the case. See *infra*, Section IV.C-D.

***Classwide Existence of Unremedied Defect for Lifetime of Vehicle.*** Boyles assumes that all class vehicles are "defective" and in need of repair and that 100 percent of the vehicles require the same type of engine repair, i.e., a long block replacement. Ex. S, Boyles Dep. 182:6-24; *see also* 175:11-14. He further assumes that the alleged defect is "itself the injury, regardless of whether the faulty part makes itself known to the consumer or causes performance issues." Ex. Q, Boyles Rpt. ¶ 21. Boyles acknowledged that his model yields the same damages regardless of the probability of failure—whether it is 10% or 0.01%. Ex. S, Boyles Dep. 176:2-9. And Boyles ignores that several class vehicles, including some of the Named Plaintiffs' vehicles, received covered in-warranty repairs. *Id.* at 170:14-19.

***Defect-Free Expectation.*** Boyles also assumes that every putative class member bargained for a "defect-free" vehicle. Ex. Q, Boyles Rpt. ¶ 16; Ex. S, Boyles Dep. 184:7-13. He conceded that he is not an expert in consumer expectations (Ex. S, Boyles Dep. 162:4-6), has never studied how consumers negotiate for vehicles (*id.* at 203:7-15), did not evaluate any differences in consumer interests or expectations (*id.* at 162:7-11), and did not read the warranties applicable to class vehicles (*id.* at 135:8-12). Boyles himself acknowledged the existence of the warranty, noting that as a result, "consumers might be aware of the possibility of needing some sort of repair," which directly contradicts his assumption that consumers expected a "defect-free" vehicle. *Id.* at 186:15-187:3. Nonetheless, Boyles concedes that this is "the underlying assumption" that serves as the foundation for his report. *Id.* at 84:5-9.

## III. LEGAL STANDARD[2]

As the proponents of expert testimony, Plaintiffs have the burden of establishing its admissibility under Federal Rule of Evidence 702. *Lust By & Through Lust v. Merrell Dow Pharms*., 89 F.3d 594, 598 (9th Cir. 1996). The trial court acts as a "gatekeeper" to make a two-step assessment of the proposed expert opinion and makes "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Brooks v. Darling Int'l, Inc*., 2017 WL 1198542, at *4 (E.D. Cal. Mar. 31, 2017) (Drozd, J.).

Expert testimony also must be relevant—i.e., it must assist the trier of fact in comprehending the evidence. Fed. R. Evid. 401–402, 702(a); *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). To be relevant, an expert's opinions must be connected to the underlying data by more than an expert's *ipse dixit*. *Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1315-16 (9th Cir. 1995). Although expert testimony can be based on factual assumptions, those assumptions must find support from the record—or be subject to exclusion for "too great an analytical gap" between the data and opinion offered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Expert testimony based on "personal opinions and speculation rather than on a systematic assessment ... is inadmissible as a matter of law under Rule 702," and "speculative testimony is inherently unreliable." *Ollier v. Sweetwater Union High Sch. Dist*., 768 F.3d 843, 861 (9th Cir. 2014).

At class certification, the trial court conducts "an analysis tailored to whether an expert's opinion was sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and predominance." *Brooks*, 2017 WL 1198542, at *4. "[T]o the extent that an expert's opinion may come into play in deciding whether to certify a class, the court must ensure that the expert's testimony passes muster under FRE 702 and *Daubert*." *Watts v. Allstate Indem. Co*., 2013 WL 210059, at *5 (E.D. Cal. Jan. 17, 2013). Plaintiffs must establish

[2] Unless otherwise indicated, all internal quotation marks and citations are omitted and all emphasis is added.

as part of Rule 23(b)(3)'s predominance requirement that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) (rejecting damages model that failed to translate "the legal theory of the harmful event into an analysis of the economic impact of that event"). Thus, a damages methodology is "inadmissible under *Daubert*" if it does not "fit" the claims of the class. *Gutierrez v. Wells Fargo & Co.*, 2010 WL 1233810, at *7–8 (N.D. Cal. Mar. 26, 2010).

## IV. ARGUMENT

### A. Boyles's "Cost of Repair" Theory Does Not Fit Plaintiffs' Asserted Legal Claims

Boyles's damages model fails *Comcast's* requirements because it is untethered to Plaintiffs' legal theories of recovery. Plaintiffs assert both implied warranty and fraud-based claims. Ex. S, Boyles Dep. 9:13-17. Yet Boyles's model calculates damages "without regard" to the specific claims a plaintiff has asserted. *Id*. at 23:16-24:8, 25:3-6. This one-size-fits-all approach fails as a matter of law because different legal claims require different measures of damages.

Implied warranty claims require proof that the vehicle was unfit for its ordinary purpose at the time of sale and that the consumer suffered damages as a result. The measure of damages for breach of implied warranty is typically the "difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." *See* Cal. Com. Code § 2714(2); *see also Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 25 (2007) (applying measure of damages under Cal. Com. Code § 2714(2) to breach of implied warranty claim). This requires an analysis of the actual condition of the vehicle—including wear and tear, mileage, and use. Boyles conceded that his cost of repair model does not account for variations in vehicle condition, mileage, or use as would be required for implied warranty damages, Ex. S, Boyles Dep. 132:24-133:2, nor has he performed any analysis of those factors that go to the heart of an implied warranty claim.

Fraud damages, meanwhile, are measured differently. Under California law, for example, fraud damages in a consumer case are typically measured by either the "out-of-pocket" rule or

"benefit of the bargain" rule, both of which require a comparison of market values. *See* Cal. Civ. Code § 3343. Plaintiffs assert that class members "did not receive that for which they bargained" and therefore propose calculating damages using the "cost to repair" to put class members "in the same position they would have had the car not been sold with a defective engine." Dkt. 162-1- (Pls.' Mot. for Class Certification) at 39-40; *see also* Dkt. 144 (Second Am. Consolidated Compl.) ¶ 420 (asserting cost of repair damages theory). Yet Boyles did not calculate the difference between what any consumer bargained for versus what they received. Ex. S, Boyles Dep. 130:8-12 ("Q. So you haven't calculated the difference between what the class members believed they were getting and what they actually got; correct? You haven't calculated that value? A. I – I think that's fair."). He did not perform any calculation of fair market value of any class vehicles. *Id.* at 163:19-22. He did not reach any conclusion about the demand side or supply side curves. *Id*. at 164:2-7. He has not calculated fraud damages specifically or distinguished his approach for fraud versus warranty claims in any way.

Under *Comcast*, a damages model that does not "measure only those damages attributable to" the plaintiffs' theory of liability is insufficient. 569 U.S. at 35. Because Boyles's cost of repair model is divorced from the legal theories of both implied warranty and fraud, it should be excluded. *See Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1027 (9th Cir. 2024) ("[W]here an expert's damages model is untethered from plaintiff's theory of liability such that it has no possibility of demonstrating the amount of damages in a particular case, … a plaintiff may not rely upon it[.]").

### B. <u>Boyles's "Cost of Repair" Methodology Is Not Reliable</u>

Boyles's methodology also lacks the hallmarks of reliable expert analysis. Under *Daubert*, courts evaluate whether a methodology has been tested, subjected to peer review, has known error rates, and enjoys general acceptance in the relevant field. 509 U.S. at 593-94. Boyles's methodology satisfies none of these criteria.

***Boyles performed no testing or sensitivity analysis.*** Boyles admitted he did not perform any sensitivity analysis to test the robustness of his model. Ex. S, Boyles Dep. 133:6-7. He did not consider any alternative methodologies. *Id*. at 110:15-20 ("I don't recall considering anything

else"). He admitted that the cost of repair could vary depending on when the repair is performed due to inflation. *Id*. at 247:21-25. And the variables in his formula—the engine assembly part cost, average labor cost, and total hours—are tentative and not finalized. Ex. Q, Boyles Rpt. ¶¶ 51-53. In addition, Boyles acknowledged that his model would need to be "adjusted for numerous class members" (Ex. S, Boyles Dep. 233:14-21), but that he "[hasn't] contemplated exactly how the allocation will be conducted[.]" *Id.* at 234:13-22. Put simply, a methodology whose inputs are admittedly provisional cannot be considered reliable.

***Boyles's data is insufficient and unrepresentative.*** Benefit of the bargain damages are measured by the difference in market value between the product as promised and the product as delivered, *see In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 383 (S.D.N.Y. 2019) (CA law), both of which Boyles admitted he did not calculate. Ex. S, Boyles Dep. 130:8-20. Market value is determined by the interaction of supply and demand. *Id.* "Evidence that fails to account for both supply and demand is not evidence of market value." *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 233 (S.D.N.Y. 2019). By his own admission, Boyles did not analyze any supply or demand factors or consider Ford's willingness to supply vehicles regardless of price. Ex. S, Boyles Dep. 164:2-16.

Even assuming that a "cost to repair" could be an acceptable proxy for "benefit of the bargain" damages, Boyles's cost to repair methodology is further flawed. Boyles's repair calculations are based only on 10 repair invoices from Named Plaintiffs, the majority of whom Plaintiffs are not even setting forth as class representatives. Ex. T, Boyles Rpt. App'x C (only 4 out of 10 plaintiffs actual proposed class representatives—Nelson, Speigner, Metro and Pirog). He acknowledged that he does not know if Named Plaintiffs are representative of the class as a whole. Boyles Dep. 264:12-19. Boyles also did not adjust his model for variations in the labor rates in the putative class states. *Id.* at 234:1-12, 265:9-21. Nor did he adjust his cost to repair for the two different repairs for Plaintiffs' two proposed classes: the 1.5L engines require a short block replacement, while the 2.0L and 2.3L require a long block replacement. Ex. E, Lillo Rpt. at 39-40. An expert opinion based on unrepresentative data is unreliable under Rule 702. *See Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) ("An opinion based on such

unsubstantiated and undocumented information is the anthesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702.").

***Boyles's methodology lacks peer-review or general acceptance.*** Boyles offers no evidence that his "cost of repair" equals "benefit of the bargain" methodology has been tested, subjected to peer review, or is generally accepted in any relevant field. He relies heavily on *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019), for the proposition that his methodology has been judicially approved. But *Nguyen* is readily distinguishable. There, the Ninth Circuit found that a uniform, cost of repair model was a permissible theory of damages in the abstract—it did not hold that any particular expert's use of such a theory, with its specific assumptions and data limitations, was necessarily reliable. *See id*. at 821. Specifically, *Nguyen* concerned an alleged defect that was present in all vehicles at the time of sale—a uniform risk—and which could not be cured by any post-sale repairs. *Id.* at 819. Here, by contrast, the risk varies dramatically across class vehicles, such that a uniform damages figure does not accurately represent what any individual class member actually lost. Ex. S, Boyles Dep. 177:18-178:13. And Plaintiffs concede there is an adequate repair for the alleged defect here (Ex. A, Jordan Rpt. ¶ 7(d), Ex. S, Boyles Dep. 28:7-25) and that some putative class members received that repair (Ex. S, Boyles Dep. 202:4-12). Boyles's methodology would present as a windfall for many purchasers, including those who no longer own their vehicles and never experienced the defect, those who received covered, in-warranty repairs, and those who paid less for repairs than Boyles's estimated average. Boyles's implementation of his model is beset with methodological flaws—reliance on undefined variables, no sensitivity analysis, no verification of the underlying defect, and an insufficient analysis of economic factors—that render it unreliable regardless of whether the abstract theory is permissible.

In sum, Boyles's methodology lacks significant analysis, has not been tested, has not been peer-reviewed, and is not generally accepted. It fails *Daubert*'s reliability requirements and should be excluded.

### C. Boyles's Model Ignores the Actual Bargain Struck by Proposed Class Members

Boyles's model also fails because it ignores the actual bargain made between consumers and Ford. Boyles premises his entire damages calculation on the assumption that every class member bargained for—and expected to receive—a "defect-free" vehicle. Ex. Q, Boyles Rpt. ¶ 16; Ex. S, Boyles Dep. 183:22-184:6. But this assumption is directly contradicted by the terms of the bargain that class members actually struck.

Ford's warranty—which Boyles admitted was part of the bargain, Ex. S, Boyles Dep. 201:7-16—expressly states that "[t]his warranty does not mean that each Ford vehicle is defect free." *See* Ex. R, FORD-MILLER 00086420 at -433. The warranty's very existence acknowledges that defects may occur, and it allocates the risk of such defects between the parties. A damages model that assumes a "defect-free" bargain when the actual bargain expressly disclaims that premise is fundamentally unreliable. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 578-79 (C.D. Cal. 2014) (rejecting expert methodology that failed to account for actual consumer expectations).

Boyles candidly conceded his lack of expertise in consumer expectations. He testified: "I don't hold myself out as one" when asked whether he is an expert on what consumers expected. Ex. S, Boyles Dep. 162:4-6. He did not evaluate any differences in consumer interests or expectations across the class. *Id.* at 162:7-11. He acknowledged that consumers may be aware of potential issues due to the existence of a warranty. *Id*. at 186:15-187:3. And he admitted he had not even read the warranties applicable to the class vehicles before forming his opinion. *Id*. at 135:8-12.

Boyles's failure to consider the actual bargain is fatal under *Comcast*. If the "benefit of the bargain" is the damages theory, then the model must accurately reflect what the bargain actually was—not what the expert assumed it to be. Boyles conducted no analysis and had no expertise in consumer expectations to support his assumption about the supposed bargain. Ex. S, Boyles Dep. 162:7-11. Boyles has never studied how consumers negotiate or bargain for a vehicle. *Id*. at 203:7-15. He did not evaluate any actual sales prices of class vehicles. *Id*. at

162:19-21. He did not do any analysis of competitor vehicles or alternative purchase choices. *Id.* at 134:5-15. He did not calculate the value of warranty coverage or how it impacts consumer decisions. He simply assumed—without any factual basis—that every consumer expected a perfectly functioning engine for the lifetime of the vehicle. But he acknowledged that Ford's warranty was part of the bargain, *id.* at 200:23-201:16, and the warranty does not promise zero defects. Ex. R, FORD-MILLER 00086420 at -433. Boyles further acknowledged that consumers may be aware of potential issues in their vehicles due to the existence of the warranty, which could affect expectations. Ex. S, Boyles Dep. 186:15-187:3; *see Davidson v. Apple Inc.*, 2019 WL 2548460, at *14 (N.D. Cal. June 20, 2019) (rejecting plaintiffs' expert damages model under *Comcast* because it failed to account for warranty on the phones in the consumers' purchase decision). Boyles has thus not presented any classwide evidence that proposed class members all bargained for a vehicle that would never experience any defect or otherwise did not get the benefit of their bargain.

**D. <u>Boyles's Methodology Suffers from Other Methodological Flaws</u>**

Boyles's methodology is also independently excludable because it is riddled with individualized inquiries that preclude classwide application. Under *Comcast*, a damages model must be capable of measuring damages on a classwide basis consistent with the theory of liability. 569 U.S. at 35. Where a model cannot do so without resorting to individual inquiries, it fails. *See Philips v. Ford Motor Co.*, 2016 WL 7428810, at *21 (N.D. Cal. Dec. 22, 2016) (excluding expert whose model could not account for variances in individualized factors such as risk and disutility).

***Varying manifestation rates.*** Boyles's model applies identically regardless of manifestation rates—whether 0.5% or 99%. Ex. S, Boyles Dep. 182:22-24. It yields the same damages for someone with a 10% chance of engine failure as someone with a 0.01% chance. *Id.* at 176:2-9. Yet the evidence shows vast differences in failure rates across vehicle lines. Plaintiffs' own expert, Dr. Wachs, calculated failure rates of [redacted] for 2.0L Escapes and about [redacted] for 1.5L Escapes. Ex. F, Wachs Rpt. at 24-25; Boyles Dep. 177:14-24. Ford's data shows warranty claim rates on the 2017 2.0L Edge of [redacted] for the 2019

2.3L Explorer. Ex. K, Lennox Rpt., App'x E. A model that calculates the same damages across all class vehicles despite these dramatic differences in risk cannot generate reliable classwide damages. *See Comcast*, 569 U.S. at 37 (rejecting model of damages "that are not the certain result of the wrong").

***Failure to account for warranty repairs.*** Boyles's model does not account for whether a class member already received a free warranty repair for the very condition his model purports to remedy. Ex. S, Boyles Dep. 169:6-170:13. Under Ford's extended warranty program 21N12, class members who owned a 2017-2019 1.5L Ford Escape or Fusion received a covered short block replacement up to 7 years/84,000 miles. *See* Ex. W, FORD-MILLER 00117445. Awarding full "cost of repair" damages to class members who already received a free repair would constitute a double recovery—a result no damages methodology should produce.

***No time-of-ownership or resale adjustment.*** Boyles's formula lacks any time-of-ownership adjustment or resale-value consideration. Ex. S, Boyles Dep. 73:4-11. A consumer who owned a vehicle for six months receives the same damages as one who owned it for ten years. *Id.* at 229:14-231:11. A consumer who sold the vehicle and transferred the "defect" to someone else still receives full repair cost, regardless of whether the defect impacted the resale price. *Id.* at 253:16-254:11. This inability to reflect the actual variations in how any individual class member was damaged means his damages model cannot be applied classwide.

***Knowledge of the defect.*** Boyles has no method to determine whether individual class members had knowledge of the alleged defect at the time of purchase. *Id.* at 205:10-206:11. Boyles's "benefit of the bargain" theory—at its core—assumes that a class member "did not negotiate and bargain for a vehicle" that had a "defect," making knowledge a key factor in any class member's purported damages. *Id.* at 92:21-93:4; *see also* Ex. W, Rossi Rpt. at 32-33 (noting that increasing availability of information regarding the alleged defect informs any analysis of the value of class vehicles). He even concedes that if a consumer had knowledge of the alleged defect, then that individual would not be damaged, yet he did no analysis of, and admittedly has no information on, what consumers knew. Ex. S, Boyles Dep. 97:15-98:9; 106:6-107:9.

***Inapplicability to individual class members.*** Boyles himself admitted the insufficiency of his model—testifying that the *actual amount that Named Class Representatives paid to repair their vehicles* will not equal the amount yielded by his formula, and that further not-yet-determined adjustments would be needed. *Id.* at 73:18-74:16. This admission is devastating. A damages model that its own proponent concedes does not accurately calculate damages for any individual class member cannot satisfy *Comcast*'s requirements. *See Comcast*, 569 U.S. at 37 (rejecting model that failed to calculate damages for individual class members without "labyrinthine individual calculations"); *see also Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 553-54 (N.D. Cal. 2021) (rejecting damages model that expert admitted failed to isolate the economic value associated with the specific alleged misrepresentation).

## V. CONCLUSION

Boyles's "cost of repair" damages model is deeply flawed and does not match Plaintiffs' theory of liability. Ford respectfully requests that the Court exclude Boyles's opinions and testimony under Rule 702 and *Daubert*, and that the Court disregard his opinions in adjudicating Plaintiffs' class certification motion.

Dated: August 12, 2026

O'MELVENY & MYERS LLP

By: /s/ *Amy J. Laurendeau*
Amy J. Laurendeau

*Counsel for Defendant*
Ford Motor Company