# EXHIBIT A

# PROPOSED TO BE FILED UNDER SEAL – PUBLIC REDACTED VERSION

RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Tel: +1 415 984 8700

AMY J. LAURENDEAU (S.B. #198321)
alaurendeau@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: +1 (949) 823-6900

KELSEY M. LARSON (S.B. #267982)
klarson@omm.com
O'MELVENY & MYERS LLP
400 S. Hope St., 19th Floor
Los Angeles, CA 90071
Tel: +1 (213) 430-6000

*Counsel for Defendant*
FORD MOTOR COMPANY

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VANESSA MILLER, et al., as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 2:20-cv-01796-DAD-CKD (Consolidated with Nos. 2:21-cv-00417-DAD-CKD, 2:21-cv-00468-DAD-CKD) |
| TREVOR NELSON, et al., as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 2:24-cv-02231-DAD-CKD<br><br>**DEFENDANT FORD MOTOR COMPANY'S SUR-REPLY RE: PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION [PUBLIC REDACTED VERSION]**<br><br>Date: September 21, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Dale A. Drozd<br>Courtroom: 4, 15th Floor |

# I. INTRODUCTION

Ford submits this brief sur-reply to address two new arguments raised for the first time in Plaintiffs' Reply in Support of Consolidated Motion for Class Certification (Dkt. 180; "Reply"). ***First***, Plaintiffs propose, in a footnote in the Reply, to expand their class definition to include 2.0L 2016-2019 Escapes and Fusions that they "inadvertently excluded" from the proposed California, Florida, Kansas, Michigan, Nebraska, and North Carolina "Duratec" classes. But several key differences within the 2.0L and 2.3L 2016-2019 Fusions and Escapes, as well as differences between them and the other proposed class vehicles preclude class certification. ***Second***, Plaintiffs also include a "trial plan" that purports to show how it would be manageable to try a case comprised of 10 states, 14 claims, 10 different models, and 3 engines, each of which had changes over time. But Plaintiffs' plan is only three pages (and a few lines), and it does not show how such a conglomerate trial is superior and manageable. As detailed below, the plan fails to rigorously analyze the numerous differences in the 10 states' implied warranty and consumer fraud laws and differences in evidence. Plaintiffs' alternative trial plan proposes using California law as a "bellwether" trial, despite providing no authority as to how a bellwether could be used in a class action outside the multi-district litigation context, and even though no California class is even proposed as to the vehicles with the 1.5L engines. Plaintiffs also put forth no argument as to why California law—which has several unique features from other states' laws, including requirements as to personal use and defect manifestation—should be applied. The additional problems exposed in Plaintiffs' bid to expand the class definition and their trial plan further support denial of their motion for class certification.

# II. ARGUMENT

## A. Plaintiffs' Expansion of the Class Definition to Include 2016-2019 MY 2.0L Fusions and Escapes is Improper and Includes Vehicles with Rates of Coolant Intrusion that Varied Significantly

Plaintiffs note in a footnote to their Reply that they "inadvertently excluded the 2016-2019 Escape and 2016-2019 Fusion" for the 2.0L Duratec class and request that the Court allow them to modify the class definition. Reply at 1 n.3. In light of Plaintiffs' request to expand the class definition to include the 2.0L 2016-2019 Fusions and Escapes, Ford addresses evidence specific

to those vehicles that shows significant variations in the evidence applicable to those vehicles precludes a finding that common issues predominate. The reported warranty rates of the 2017-2019 Model Year ("MY") 2.0L (post the head gasket change) Fusion and Escape vehicles varied significantly compared to other vehicles in Plaintiffs' Duratec class. For example, compared to the 2017-2019 2.0L MY Edge, the highest failure rates for the Fusions and Escapes were around [redacted] percent, [redacted] that of the highest for the Edge (at [redacted] percent). Opp. Ex. 17 (Dkt. 169-18), Lennox Rpt., App'x E. These differences are not coincidental: as Ford's investigation found, rates of coolant intrusion in the 2.0L were correlated with fuel efficiency, and the Fusion and Escapes were more fuel efficient than the 2.0L Edge, Lincoln MKC, and Lincoln MKZ. Opp. at 7 (Dkt. 169) (citing Opp. Ex 10, Dkt. 169-11). In addition, as discussed in Ford's opposition to Plaintiffs' consolidated motion for class certification, there are key engineering differences between MY 2017-2019 and 2016 2.0L vehicles. This applies equally to the 2.0L Fusions and Escapes: in late MY 2016, an [redacted] was made to the [redacted], but also led to [redacted]. *See* Opp. at 5-6, 18-20. This change also affected warranty rates for the 2016-2019 MY 2.0L Fusions and Escapes. For example, the 2016 MY 2.0L Fusion and 2.0L Escape had warranty claims rates of [redacted] percent and [redacted] percent respectively, significantly [redacted] than rates seen in MY 2017 (after the head gasket change), which were [redacted] percent and [redacted] percent respectively. Opp. Ex. 17 (Dkt. 169-18), Lennox Rpt., App'x E.

The varying failure rates of the 2016-2019 MY 2.0L Escapes and Fusions compared to the other Duratec class vehicles further reinforce that evidence is not "common" across the class. As Ford argued in its Opposition, varying failure rates across the class models and MY of the putative class vehicles could lead the jury to come to different conclusions as to whether the defect existed class-wide. Opp. at 19-20. Varying failure rates also impact whether the failure to disclose the existence of a defect is a "material" fact. Opp. at 31-32. Although Plaintiffs seek to expand the Duratec class to include the 2016-2019 MY 2.0L Escapes and Fusions, including these vehicles further highlights the extent to which evidence is not "common" across the class.

**B. Plaintiffs' Trial Plan Does Not Establish that a Class Action is Superior or Manageable**

Despite it being Plaintiffs' burden to establish that a class action is superior and manageable, *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189-90 (9th Cir. 2001), they for the first time introduce on Reply their "trial plan." Dkt. 180-3. Plaintiffs seek to certify 10 separate state classes, with 14 total claims. Their 3-page trial plan (plus 2 and a half pages of footnotes) does not prove that a class action covering all those claims would be "manageable" or superior. Plaintiffs' trial plan does nothing to establish that 14 separate claims, brought in 10 separate state classes, divided yet further into 2 other classes of 3 different engines, and comprised of 10 separate vehicle models, which span different model years, can be feasibly tried (or described in plain English). *Speerly v. Gen. Motors Co.*, 143 F.4th 306, 321 (6th Cir. 2025) (noting difficulties in managing multi-state, multi-claim class actions with varying state laws and theories of defect). When presenting a trial plan for large, multi-state class actions, Plaintiffs have the burden to show that a multi-state class action would be "manageable" and how differences in state law can be addressed. *Zinser*, 253 F.3d at 1189; *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (reversing grant of class certification because "variances in state law overwhelm common issues"), *overruled in part on other grounds in Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 349 (D.N.J. 1997) ("In a motion for class certification, plaintiffs bear the burden of providing an 'extensive analysis' of state law variations to determine whether there are insuperable obstacles to class certification").

Plaintiffs' trial plan does not address the variations among the 14 state-law claims' substantive elements. Plaintiffs contend that there is little variation in the at-issue states' consumer protection or implied warranty laws, but this is contradicted by many pages of class-certification briefing parsing the differences in each state's laws. Class Cert. Mot. (Dkt. 162-1) at 28-31; Opp. at 29-34, 39-40. For example, some but not all claims require that a product was purchased for personal use: IN DCSA, CA Song-Beverly Act, MD CPA, and CA CLRA. Opp. at 38. State laws also vary in regards to whether "manifestation" of a defect is necessary to bring a

claim. For example, the FL DUTPA requires manifestation (Opp. at 34), a CA Song-Beverly implied warranty claim requires a "substantial certainty" that a defect manifest during the life of the product (Opp. at 37-39), while some other state-law claims have no manifestation requirement if injury can otherwise be established. *E.g.*, *In re Gen. Motors LLC Ignition Switch Litig*., 339 F. Supp. 3d 262, 304–05 (S.D.N.Y. 2018) (under CO law, manifestation of the defect not required to bring an implied warranty claim). Even though Plaintiffs contend that implied warranty law is largely the same for all the states (Dkt. 180-3 at 2), that itself is an overstatement: Indiana law, for example, allows for the length of an implied warranty to be limited to the duration of an express warranty, *Shea v. Gen. Motors LLC*, 567 F. Supp. 3d 1011, 1020 (N.D. Ind. 2021). *See Davis v. BMW of N. Am.*, 2025 WL 3284957, at *2 (D.N.J. Nov. 25, 2025) (plaintiffs' assertion that all elements to states' implied warranty claims "need to be resolved with common evidence" is "conclusory and not enough to meet the burden of showing that variations in state law will not make a proposed class unmanageable.")

Plaintiffs' trial plan notes the differences between state consumer-fraud laws that require a showing of reliance versus ones they argue only require materiality and causation. Dkt. 180-3 at n.4. Plaintiffs' trial plan also concedes that different states have different requirements regarding if and when Ford had a duty to disclose. *Id.* at n.5. But the plan does not address how a trial would be managed with those differences. That deficiency is compounded by Plaintiffs' failure to even address in their trial plan other state-law differences, including any presumption of reliance and the accrual of relevant statutes of limitations and requirements for tolling. Opp. at 29-32, 39-40. These differences further weigh against a finding of superiority. *See Est. of Pilgrim v. Gen. Motors LLC*, 344 F.R.D. 381, 398 (E.D. Mich. 2023) (differing statutes of limitations goes to predominance). While Plaintiffs' trial plan does note some differences in states' laws, it proposes no plan for how these differences could be addressed by a court or jury, and thus does not show that a class action is superior. *In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003) (finding trial plan with multiple sub-classes not manageable due to the "risk of jury confusion, when taken together with the risk of improperly grouping different states' laws, outweighs any possible advantages to be gained from certification of so many different classes").

An additional independent deficiency in Plaintiffs' proposed trial plan is that it does not address how Plaintiffs propose to try their two separate categories of classes: the 4 states that involve vehicles with the 1.5L (Sigma) and the 6 states that involve vehicles with the different 2.0L and 2.3L (Duratec) engines. Plaintiffs have not provided any plan as to what evidence should be introduced for each class, whether they should be tried together, and what elements of proof will be common to one group of classes versus the other. Plaintiffs also propose no plan for how "merchantability" can be proved with common classwide proof, as state implied warranty law generally requires an analysis of each plaintiff's use of the vehicle, including how long they drove, what symptoms they experienced, and whether the vehicle was adequately repaired. Opp. at 35-37. Such a plan is inadequate to show that a class action is superior. *In re Paxil*, 212 F.R.D. at 546 (6-page trial plan which "does not even begin to lay out the specific elements to prove certain causes of action" insufficient to show superiority).

Plaintiffs' trial plan "Option 2," to present a California bellwether trial, does not solve those problems and raises additional ones. First, the whole point of a class action is to consolidate claims into one action. Proposing multiple trials concedes the lack of commonality of the different state classes. The examples Plaintiffs cite at Dkt. 180-1 n.2 of cases allowing a "bellwether" trial are inapplicable: they all are MDL proceedings, which have unique procedural considerations. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006) ("multidistrict litigation is a special breed of complex litigation"). Plaintiffs make no argument why this particular single action should be treated as an MDL, and Ford is aware of no authority supporting the use of bellwether trials of one state law class to overcome manageability concerns to obtain certification. None of the authorities cited by Plaintiffs, *see* Dkt. 180-3 at n.2, provide any analysis of why a bellwether was appropriate, or why a bellwether means that a multi-state class action would be manageable. The bellwether trial concept Plaintiffs propose would not solve the manageability problems as to different state laws or differing engineering facts about the vehicles. While trying a bellwether state would eliminate from that first trial the issue of differing state laws, the bellwether would have limited value for guiding the outcome of trials in other states that have differences in state laws such as those Ford has identified. And a

bellwether trial of claims of one state does nothing to manage the differences in engineering within an engine type (Sigma or Duratec), and the outcome of a trial of a single state, as Plaintiffs propose, would necessarily leave unresolved for a later trial any issues involving the other engine type.

Still further, Plaintiffs' proposal of using California law does not make sense. Plaintiffs propose, with minimal analysis, that California law is representative, and "due to its size" should be the choice of law for a bellwether. Dkt. 180-3 at 3. But California is ***not*** the largest state in terms of sales of the subject vehicles ([redacted] is). Opp. Ex. 17 (Dkt 169-18), Lennox Rpt. at App'x C. And California law has several differences from the laws of the other states at issue. Plaintiffs themselves note that the CA Song-Beverly implied warranty claim, alone of all Plaintiffs' implied warranty claims, is not based on the UCC. Dkt. 180-3 at 2. The CLRA and CA Song-Beverly Act also have additional elements that are not present in other states' laws. Opp. at 38 (requiring product be used for personal use, citing *Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009) (CLRA), and *Valdez v. Ford Motor Co.,* 2024 WL 1344420, at *7 (E.D. Cal. Mar. 29, 2024) (Song-Beverly implied warranty)). Finally, Plaintiffs have no proposal for how a trial on claims under California law makes sense to manage claims under Colorado, Illinois, Indiana, and Maryland laws, which involve only the vehicles with 1.5L Sigma engines—the California proposed class does not even involve that engine. *See* Class Cert. Mot. (Dkt. 162-1) at 22 (only CA claims brought by the Nelsons, plaintiffs in *Nelson v. Ford*, who are owners of a 2.3L vehicle). Thus, Plaintiffs' suggestion of a California class action bellwether does not further their argument that a class action is superior or manageable.

## III. CONCLUSION

For the foregoing reasons and for the reasons in Ford's Opposition to Plaintiffs' Consolidated Motion for Class Certification, Plaintiffs' request to expand the Duratec class to include 2016-2019 2.0L Escapes and Fusions should be denied, their trial plan disregarded, and their motion for class certification denied.

Dated: August 19, 2026

O'MELVENY & MYERS LLP

By: /s/ *Randall W. Edwards*
Randall W. Edwards

*Counsel for Defendant*
Ford Motor Company