William A. Kershaw
Stuart C. Talley
Ian J. Barlow
KERSHAW TALLEY BARLOW PC
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 779-7000
Facsimile: (916) 244-4829
bill@ktblegal.com
stuart@ktblegal.com
ian@ktblegal.com

[Additional Counsel on Signature Pages]

*Attorneys for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA MILLER, et al., as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 2:20-cv-01796-DAD-CKD (Consolidated with Nos. 2:21-cv-00417-DAD-CKD, 2:21-cv-00468-DAD-CKD) |
| TREVOR NELSON, et al., as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 2:24-cv-02231-DAD-CKD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFFS' EXPERT DR. COLIN JORDAN**<br><br>Date: September 21, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Dale A. Drozd<br>Courtroom: 4, 15th Floor |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................................................................................................1

II. LEGAL STANDARD ..............................................................................................2

III. ARGUMENT ..........................................................................................................3

A. Dr. Jordan Reliably Opines That the Defect Is Safety-Related. ..............................3

1. Dr. Jordan's experience provides a reliable foundation for his opinions about the Defect's unsafe nature. ..........................................................3

2. Dr. Jordan properly cited NHTSA complaints and evidence from the plaintiffs in this case to support his analysis of the Defect. ..........................4

3. Dr. Jordan's methodology is reliable. ..........................................................7

B. Dr. Jordan Should Be Permitted to Testify about the Weakness of Ford's Pre-Sale Testing. ..........................................................................................9

IV. CONCLUSION .....................................................................................................11

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Cadena v. Am. Honda Motor Co.*,
2024 WL 4005097 (C.D. Cal. July 2, 2024) ..... 5

*Cadena v. Am. Honda Motor Co.*,
2025 WL 3483436 (C.D. Cal. Dec. 3, 2025) ..... 9, 10

*In re Countrywide Financial Corp.*,
984 F. Supp. 2d 1021 (C.D. Cal. 2013) ..... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ..... 2

*Doyle v. Chrysler Grp. LLC*,
2015 WL 353993 (C.D. Cal. Jan. 21, 2015) ..... 10

*Dreyer v. Ryder Automotive Carrier Group, Inc.*,
367 F. Supp. 2d 413 (W.D.N.Y. 2005) ..... 5, 6

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ..... 2

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ..... 2

*Forouzan v. BMW of N. Am., LLC*,
2018 WL 6016277 (C.D. Cal. June 27, 2018) ..... 8

*Grodzitsky v. American Honda Motor Co.*,
2017 WL 8943159 (C.D. Cal. Oct. 30, 2017) ..... 10

*Hadi v. Toyota Motor Corp.*,
2026 WL 1770597 (C.D. Cal. May 27, 2026) ..... 10

*Hamilton v. TBC Corp.*,
821 F. App'x 720 (9th Cir. 2020) ..... 7

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ..... 4

*In re Honda Idle Stop Litigation*,
2024 WL 5265402 (C.D. Cal. Dec. 10, 2024) ..... 8, 9

*Johnson v. Nissan North America, Inc.*,
2022 WL 2869528 (N.D. Cal. July 21, 2022) ..... 5

*Kennedy v. Collagen Corp.*,
161 F.3d 1226 (9th Cir. 1998) ..... 3, 7

*Lyman v. Ford Motor Co.*,
2026 WL 1469885 (E.D. Mich. May 26, 2026) ..... 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Moghaddam v. Jaguar Land Rover N. Am., LLC*,
2018 WL 6003579 (C.D. Cal. Sept. 19, 2018) .......... 8

*Paeschke v. Gen. Motors LLC*,
2017 WL 4003382 (E.D. Wash. Aug. 18, 2017) .......... 5

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) .......... 2

*Smargisso v. Air & Liquid Sys. Corp.*,
750 F. Supp. 3d 1046 (N.D. Cal. 2024) .......... 2

*Stiner v. Brookdale Senior Living, Inc.*,
665 F. Supp. 3d 1150 (N.D. Cal. 2023) .......... 2

*Tunnell v. Ford Motor Co.*,
330 F. Supp. 2d 707 (W.D. Va. 2004) .......... 10

*United States v. General Motors Corp.*,
518 F.2d 420 (D.C. Cir. 1975) .......... 7

*Won v. Gen. Motors, LLC*,
2022 WL 3010886 (E.D. Mich. July 28, 2022) .......... 3, 4, 7

*Zamora v. BMW of N. Am., LLC*,
2022 WL 17061082 (C.D. Cal. Sept. 13, 2022) .......... 8

## I. INTRODUCTION

Dr. Colin Jordan, an experienced automotive engineer, has disclosed expert engineering opinions regarding the problematic "saw cut" cooling channel that Ford machined in the engine block of certain of its turbocharged "EcoBoost" engines. He has a PhD in Mechanical Engineering, along with a professional engineer certification and a certification as a Vehicle Fire Investigator.[1] During his over four decades working in the field of automotive engineering, he has worked as an accident reconstructionist and has investigated around 3,000 car accidents.[2] He also spent a decade working for Ford as a Crashworthiness Engineer in the Light Truck Safety Group and as an Engineering Consultant.[3]

Based on Dr. Jordan's education, training, professional experience, and review of case documents, Dr. Jordan concluded that "[t]he Class Vehicles equipped with the subject Ford EcoBoost engines contained a design defect that permits coolant intrusion into the combustion chamber."[4] Ford challenges two of the opinions that formed the basis for that conclusion: (1) the "saw cut" Defect at issue creates a safety concern because it can cause engine shutdown, loss of power, unexpected deceleration, and failure in hazardous situations; and (2) Ford's pre-release testing for the Class Engines was inadequate because it failed to simulate real-world driving conditions.[5]

Ford's request to exclude these opinions should fail. Contrary to Ford's assertions, Dr. Jordan's education, training, and engineering experience qualifies him to offer both opinions, and he relied on internal Ford documents and other permissible sources to support these opinions. Ford may disagree with Dr. Jordan's conclusions, but those disagreements go to the

---

[1] Ex. 1 (App'x A to Declaration of Dr. Colin Jordan Ph.D., P.E.) ("Jordan CV"). "Ex." refers to exhibits to the Declaration of Mark P. Chalos in Support of Plaintiffs' Oppositions to Defendant Ford Motor Company's Motion to Exclude Certain Opinions of Plaintiffs' Experts, filed concurrently herewith.

[2] Ex. 2 (Excerpts of the May 18, 2026 Deposition of Dr. Colin Jordan) ("Jordan Dep.") 178:9–10.

[3] Ex. 1 (Jordan CV).

[4] Dkt. 190-1 (Declaration of Dr. Colin Jordan Ph.D., P.E.) ("Jordan Rep.") ¶ 6(a).

[5] *Id.* ¶¶ 20–21, 46, 51.

weight of the evidence, not its admissibility. Plaintiffs respectfully ask the Court to deny Ford's motion.

## II. LEGAL STANDARD

Ford's motion is governed by the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), under which "the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011); *see Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022) ("District courts have a longstanding responsibility to screen expert testimony, and to prevent unfounded or unreliable opinions from contaminating a jury trial."). Under this framework, expert testimony is admissible if:

> (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

*Elosu*, 26 F.4th at 1023; *see Smargisso v. Air & Liquid Sys. Corp.*, 750 F. Supp. 3d 1046, 1057 (N.D. Cal. 2024) ("Expert testimony is admissible under Federal Rule of Evidence 702 if the expert is qualified and if the testimony is both relevant and reliable.").

"Although a district court may screen an expert opinion for reliability, and may reject testimony that is wholly speculative, it may not weigh the expert's conclusions or assume a factfinding role." *Elosu*, 26 F.4th at 1020. Even "shaky" evidence must be admitted; "cross examination, contrary evidence, and attention to the burden of proof, not exclusion," is the proper remedy for *any* admissible evidence. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Plaintiffs, as the party offering Dr. Jordan's testimony, bear the burden of showing, "by a preponderance of the evidence, that the admissibility requirements are satisfied." *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1168 (N.D. Cal. 2023).

## III. ARGUMENT

### A. Dr. Jordan Reliably Opines That the Defect Is Safety-Related.

Dr. Jordan's first challenged opinion is that the Defect "creates a safety concern."[6] In his expert report, Dr. Jordan explains the basis for this opinion: engine failure—which Ford cannot dispute occurs as a result of internal coolant intrusion[7]—can cause "loss of power while driving," "loss of power-assisted systems," "unexpected deceleration," and "failure in hazardous situations."[8] These failures can increase collision risk and make it harder to control the vehicle, particularly in an emergency.[9]

Ford does not dispute Dr. Jordan is qualified or his testimony about vehicle safety is relevant to this case. Instead, Ford claims Dr. Jordan's testimony about these "obvious" safety issues is not reliable because he does not follow the exact methodology or cite the exact evidence Ford would prefer. *See Won v. Gen. Motors, LLC*, 2022 WL 3010886, at *18 (E.D. Mich. July 28, 2022) (denying motion to exclude expert testimony relating to "obvious safety implications of . . . defect that causes such severe misbehaviors as a three-second delay engaging from neutral into drive, or 'lurching' of a vehicle that causes it to dislodge from a test setup and collide with nearby objects"). Ford's arguments about Dr. Jordan's "use of a particular methodology . . . go to the weight, not the admissibility," of his testimony. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998). Ford's motion to exclude on this basis should be denied.

#### 1. Dr. Jordan's experience provides a reliable foundation for his opinions about the Defect's unsafe nature.

Dr. Jordan has vast experience in automotive engineering that qualifies him to opine that Ford's Saw Cut Defect creates a safety concern. This "education and experience," by itself, "provide[s] a sufficiently reliable foundation for his opinions concerning" vehicle safety as it relates to the Defect. *Lyman v. Ford Motor Co.*, 2026 WL 1469885, at *11 (E.D. Mich. May 26,

---

[6] Jordan Rep. ¶ 21.

[7] *See id.* ¶ 20 (discussing evidence, including deposition testimony by Ford engineers, that "[a]s a result of the Defect . . . the engine will have a loss of power").

[8] *Id.* ¶ 21.

[9] *Id.*

2026) (denying motion to exclude Dr. Jordan's testimony in case involving oil consumption defect); *see Won*, 2022 WL 3010886, at *18 (rejecting GM's argument that expert lacked "particular 'expertise' in . . . 'vehicle safety'" because "it does not take any specific specialized expertise for an expert in drivetrain design to opine about . . . obvious safety implications"); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (expert's "knowledge and experience" may "provide[] a sufficient foundation of reliability for his testimony").

**2. <u>Dr. Jordan properly cited NHTSA complaints and evidence from the plaintiffs in this case to support his analysis of the Defect.</u>**

Dr. Jordan's opinion that the Saw Cut Defect creates a safety issue is not only based on his long experience investigating automotive safety, but also his analysis of the evidence in this case. As he testified at his deposition, internal coolant intrusion causes cylinder misfire, and "[w]henever you have a misfire, you have a power loss."[10] Ford does not credibly dispute that the Defect can cause power loss.[11] Moreover, Dr. Jordan opined that the Defect has in real life actually caused loss of power, including stalling (that is, "0 RPM"), based on his review of NHTSA complaints and the deposition testimony of named plaintiffs in this case.[12] Based on Dr. Jordan's experience, "power loss, stalling is extremely dangerous. It's very, very dangerous. And in all the accidents I've looked at, it's a very dangerous scenario. I've seen many, many accidents with power loss, stalling."[13]

---

[10] Ex. 2 (Jordan Dep.) 171:7–9; *see id.* 172:19–22 ("But for every coolant intrusion, you will have a loss of power, because you will have less than ideal combustion, so your vehicle will no longer have the power it was advertised at.").

[11] *See, e.g.*, Ex. 3 (Excerpts of the August 13, 2025 Deposition of Joseph Henne) 55:6–8 ("If you have an internal coolant leak, something went wrong in your engine and will eventually lead to a failure of the engine."); *id.* 131:19–132:8 (Ford's "limp home mode" following coolant leak causes engine to go to "[p]retty severely restricted power"); Ex. 4 (Excerpts of the October 17, 2025 Deposition of Robert Wade) 133:10–12 (following internal coolant intrusion, the engine "cylinder will not have any pressure or temperature increase due to combustion, because you don't have combustion"); Ex. 5 (Excerpts of the October 15, 2025 Deposition of Mark Tuneff) 49:13–15 (Q: "In a motor vehicle an overheated engine can cause loss of [motive] power, right?" A: "It can, yes, sir.").

[12] Ex. 2 (Jordan Dep.) 173:3–4, 14–16.

[13] *Id.* 178:10–14; *see id.* 177:21–178:1 ("But when you have a power loss, you're much more susceptible to get into an accident. That's just a fact. You can't make it through the intersection.

With respect to the NHTSA complaints, Dr. Jordan queried the agency's online database for complaints that mention "power loss [or] stalling . . . and obviously coolant intrusion."[14] The number of customer complaints that hit on these filters was "shock[ing]" and "amazing."[15] As Dr. Jordan testified: "It's insane how many there are."[16] After reviewing these "hundreds, hundreds" of complaints, Dr. Jordan included two examples per engine type in his expert report "in the interest of making something readable."[17]

Experts testifying about an automotive defect or safety-related issues frequently cite complaints filed with NHTSA, the government's vehicle safety regulator. *Paeschke v. Gen. Motors LLC*, 2017 WL 4003382, at *3 (E.D. Wash. Aug. 18, 2017) ("It is not uncommon for experts to review NHTSA complaints in these types of cases."). For instance, in *Johnson v. Nissan North America, Inc.*, 2022 WL 2869528 (N.D. Cal. July 21, 2022), Nissan criticized plaintiffs' expert "for failing to examine particular failures and having insufficient data." *Id.* at *10. As the court noted, however, the expert did "examine consumer complaints submitted to the government" about the alleged defect. *Id.* Nissan was free to attack "the weight" of this evidence, but it was not per se unreliable. *Id.* at *8; *see also Cadena v. Am. Honda Motor Co.*, 2024 WL 4005097, at *4 (C.D. Cal. July 2, 2024) (Honda's arguments regarding expert's "reliance on anecdotal statements from Honda customers" went to "the weight of the evidence," not whether his testimony was reliable). Here, too, Ford is free to argue to the jury that the many hundreds of complaints Dr. Jordan reviewed do not establish the existence of a safety defect, but Dr. Jordan's reliance on this permissible evidence does not warrant exclusion of his opinion.

Ford's two cited cases do not say otherwise. In *Dreyer v. Ryder Automotive Carrier Group, Inc.*, 367 F. Supp. 2d 413 (W.D.N.Y. 2005), the expert developed a new metric that he claimed was "a reliable indicator of a product's safe design," but he could not point to any

---

You have a power loss on I-95, good luck. Everybody is going like 90 miles an hour in back of you. It's so dangerous.").

[14] *Id.* 175:4–6.

[15] *Id.* 174:8–11.

[16] *Id.* 176:1.

[17] *Id.* 175:25–176:3; *see* Jordan Rep. ¶ 94.

situations in which any court or agency used this metric for the claimed purpose. *Id.* at 445. *Dreyer* actually supports Plaintiffs: as the court noted, "[t]he fact that an accident has not occurred in a million operations of a mechanical device does not logically compel the conclusion that in the particular case the cause of the accident, once revealed, is not a design defect that should have been reasonably foreseen." *Id.* at 445 n.28. In other words, the expert could not opine that his invented metric showed the absence of a defect, and the court rejected the defendant's attempt to set a threshold for defectiveness based on a certain number of incidents. *In re Countrywide Financial Corp.*, 984 F. Supp. 2d 1021 (C.D. Cal. 2013), concerned a statistical report that claimed to apply a random sampling methodology but, in reality, suffered from "the potential for systematic error in the form of selection bias." *Id.* at 1039. Dr. Jordan is not a statistics expert and he is not purporting to apply a random sampling methodology. Instead, he used these many customer complaints to complement his own independent analysis about the symptoms and dangerousness of the Saw Cut Defect. As discussed above, that use of customer complaint data is perfectly appropriate.

Finally, Dr. Jordan properly relied on evidence relating to the named plaintiffs. Dr. Jordan's report cited deposition testimony from 12 plaintiffs in this action, all of whom reported "[e]ngine power loss" as a result of internal coolant intrusion.[18] Contrary to Ford's mischaracterization of this testimony, Dr. Jordan did not simply parrot plaintiffs who "[said] that [] their engine had a power loss." Dkt. 187-1 ("Mot.") at 7 (quoting Jordan Dep. 164:1–7). His report features lengthy quotes from each of these plaintiffs' deposition transcripts substantiating "stalling and or power loss," as well as a summary of how Ford addressed the Defect (in each instance, replacing the engine or engine block).[19] It is particularly rich for Ford to attack Dr. Jordan for including plaintiff testimony in his analysis of the safety impact of the Defect, given that Ford's own engineering expert relies on this same evidence for his opinions.[20]

---

[18] Jordan Rep. ¶ 20.
[19] *Id.* ¶¶ 75–92, 95.
[20] Dkt. 186-3 (Expert Report of Peter Lillo, Ph.D., P.E.) ¶¶ 237, 255, 296; *see id.* ¶ 314 (discussing how expert "investigated [Plaintiffs'] experiences").

### 3. Dr. Jordan's methodology is reliable.

In addition to its misguided arguments about Dr. Jordan's evidentiary foundation, Ford says he should have analyzed certain factors: "detectability," "severity," and "rate or frequency." Mot. at 4. The factors Ford cites come from its own expert's report, and that expert does not provide any basis for concluding that all three must be analyzed before determining a safety defect exists. Dkt. 190-4 (Expert Report of Mark Tuneff) at 3. Ford cites no case (and Plaintiffs are not aware of any) that says an expert must be excluded if he does not align his methodology with that of the moving party's expert.[21] *See Kennedy*, 161 F.3d at 1231 (expert's "use of a particular methodology . . . go[es] to the weight, not the admissibility," of his testimony).

Regardless, Dr. Jordan did analyze these three factors and found that they support his conclusions. ***First***, Dr. Jordan testified that the Defect "may not" be "[o]bservable to the average driver."[22] Because the Defect can arise unexpectedly, "it may be an issue": a driver may be "going to cross an intersection and then he wants to accelerate, there's a truck coming towards him, he doesn't have the power to get out of the way and the tractor-trailer hits him."[23] That deposition testimony is consistent with his expert report, where Dr. Jordan discussed the dangers posed by unexpected "loss of power" or "rapid deceleration."[24] ***Second***, Dr. Jordan discussed the severity of the Defect at length in both his report and deposition.[25] ***Third***, Dr. Jordan analyzed

---

[21] Ford also cites *United States v. General Motors Corp.*, 518 F.2d 420 (D.C. Cir. 1975), which concerned "the showing required for summary judgment in a defect notification action" brought by the federal government under the National Traffic and Motor Vehicle Safety Act of 1966 (NTMVSA). *Id.* at 442. That is a distinct situation without any application here. *See Hamilton v. TBC Corp.*, 821 F. App'x 720, 722 (9th Cir. 2020) (recognizing that *General Motors* does not apply to typical defect cases because "[t]he court's reasoning turned on the text and legislative history of that particular statute"); *see also Gen. Motors*, 518 F.2d at 434 (recognizing that the NTMVSA "was designed as a preventive measure supplementary of and in addition to the common law of negligence and product liability" (quotation marks omitted)).

[22] Ex. 2 (Jordan Dep.) 159:18–19.

[23] *Id.* 159:19–23.

[24] Jordan Rep. ¶ 21.

[25] *Id.*; Ex. 2 (Jordan Dep.) 178:9–14 ("But I know, as a person that's looked at approximately 3,000 accidents, power loss, stalling is extremely dangerous. It's very, very dangerous. And in all the accidents I've looked at, it's a very dangerous scenario. I've seen many, many accidents with power loss, stalling.").

Ford's own warranty analysis and concluded that "[f]ailure rates for vehicles appear at unprecedented,"[26] "mind-blowing"[27] frequency.

Ford also makes fact-specific arguments about its ultimate liability in this case—proper argument for the jury, perhaps, but not for this Rule 702 challenge. For instance, Ford claims Dr. Jordan's safety opinion is incorrect because "millions of Ford vehicles had Sigma and Duratec engines with saw cut channels and, over the decade-plus of their use, have traveled many ***billions*** of miles." Mot. at 5. "To the extent [Ford] believes [Dr. Jordan's] expert opinions are simply wrong or inconsistent with the facts of the case, that should be demonstrated through rigorous cross examination and the rebuttal testimony by [Ford's] own expert." *Zamora v. BMW of N. Am., LLC*, 2022 WL 17061082, at *2 (C.D. Cal. Sept. 13, 2022); *see also Forouzan v. BMW of N. Am., LLC*, 2018 WL 6016277, at *6 (C.D. Cal. June 27, 2018) ("Questions as to whether an expert has applied a particular methodology correctly typically go to the weight of the evidence.").

Ford also says Dr. Jordan should have done certain things differently, including considering whether "*external* coolant leaks" were to blame for the safety-related issues he identified and analyzing "frequency of coolant intrusion in the vehicle population." Mot. at 4–5. If Ford believes Dr. Jordan "failed to consider all relevant information," Ford "can elicit such weakness[] during cross-examination." *Moghaddam v. Jaguar Land Rover N. Am., LLC*, 2018 WL 6003579, at *9 (C.D. Cal. Sept. 19, 2018).

Ford barely cites any case law except for *In re Honda Idle Stop Litigation*, 2024 WL 5265402 (C.D. Cal. Dec. 10, 2024), a wholly distinguishable case. There, the expert's "safety opinion amount[ed] to nothing more than a conclusory statement that stalled cars pose safety risks." *Id.* at *3. He did not provide *any* "specific information as to the tools or methodologies he employed in reaching his safety opinions, and Plaintiffs provide[d] no [such] information in their brief." *Id.* While the court allowed the expert would be "permitted to rely on Honda's data, as

---

[26] Jordan Rep. ¶ 16.

[27] Ex. 2 (Jordan Dep.) 42:10–15.

well as his own observations, in coming to his conclusions," he did not actually have any such reliable foundation for his testimony. *Id.*; *see id.* ("[I]t is uncertain precisely how Mr. Okçuoğlu's safety opinions are expert rather than lay opinions . . . ."). Here, by contrast, Dr. Jordan has decades of experience in vehicle safety which, in combination with his review of NHTSA complaints and the experiences of a dozen named plaintiffs in this action, and with confirmation from Ford's own documents and testimony, led him to the reasoned conclusion that the Saw Cut Defect creates a safety concern. *See, e.g.*, *Cadena v. Am. Honda Motor Co.*, 2025 WL 3483436, at *19 (C.D. Cal. Dec. 3, 2025) (denying motion to exclude safety expert who spent his career "preoccupied . . . with engineering [braking] systems to achieve the safest possible product" and "relie[d] on other outside sources").

### B. Dr. Jordan Should Be Permitted to Testify about the Weakness of Ford's Pre-Sale Testing.

Ford also moves to exclude Dr. Jordan's opinion that Ford's pre-sale testing on the Class Engine was "not representative of real world driving."[28] In addition to his own education, training, and engineering experience, Dr. Jordan relied on Ford's own "Prevent Action Closure" papers, [redacted].[29] [redacted]"[30] Dr. Jordan's conclusion about Ford's testing is thus permissibly based on [redacted]. *See Cadena*, 2025 WL 3483436, at *16 ("[E]xpert opinions [on pre-sale testing] may be deduced from a review of internal documents . . . .").

Ford's motion conflates two distinct issues. Dr. Jordan is offering an opinion about the sufficiency of Ford's pre-sale testing; he is not offering an opinion "that Ford ***knew*** of any testing inadequacy at the time of sale." Mot. at 8. Ford's pre-sale knowledge, an element of

---

[28] Jordan Rep. ¶ 46(e).
[29] *Id.* at pp.36 (fig. 10), 38 (fig. 12).
[30] *Id.*

certain consumer protection claims, is a factual question for which Ford's testing is just one consideration.[31] Dr. Jordan's opinion about the soundness of Ford's tests is relevant to the knowledge inquiry, but Plaintiffs do not seek to use that opinion to prove that Ford actually knew at the time of sale that its testing was inadequate.[32]

Ford also says Dr. Jordan should have reviewed actual pre-sale test data or testing protocols. "Deficiencies related to the failure of an expert to consider portions of the record not identified by counsel can easily be highlighted upon cross-examination of the expert; thus, any such deficiencies in this instance go to weight rather than admissibility." *Doyle v. Chrysler Grp. LLC*, 2015 WL 353993, at *6 (C.D. Cal. Jan. 21, 2015) (denying motion to exclude expert's testing opinion). Ford cites *Grodzitsky v. American Honda Motor Co.*, 2017 WL 8943159 (C.D. Cal. Oct. 30, 2017), which excluded an expert who allegedly performed testing that "fail[ed] to confirm his theory" about Honda's testing. *Id.* at *5. Dr. Jordan's opinion here does not rely on his independent testing, nor must it—contrary to Ford's assertion, *Grodzitsky* did not say that any expert offering an opinion on testing *must* "show that his own proposed testing would have identified [the] defect." Mot. at 8; *cf. Cadena*, 2025 WL 3483436, at *16 (denying motion to exclude testing expert "on the basis that (1) he only reviewed internal documents and (2) that he reviewed certain other sources that Defendant claims are not credible"). Instead, here, Dr. Jordan's opinion about the deficiency in Ford's testing relies on [redacted], which is a sufficient basis for admissible expert engineering testimony. *See Cadena*, 2025 WL 3483436, at *16 (testing expert can "rel[y] on permissible sources for his opinions, *i.e.*, internal Honda

---

[31] Plaintiffs have addressed Ford's knowledge of the Defect in their class certification and summary judgment briefing. *See* Dkt. 162-1 at 6–11, 31–32; Dkt. 175 at 14–15; Dkt. 180 at 9–12; Dkt. 180-2.

[32] Ford's two cited cases were about this irrelevant knowledge point, and neither involved an expert who sought to opine on pre-sale testing. *Cf. Hadi v. Toyota Motor Corp.*, 2026 WL 1770597, at *3 (C.D. Cal. May 27, 2026) (expert sought to testify about "what Toyota knew and should have done"); *Tunnell v. Ford Motor Co.*, 330 F. Supp. 2d 707, 729 (W.D. Va. 2004) (holding that evidence of "Ford's engineering choices or motivation . . . may well be admissible through other direct and circumstantial means," but expert cannot opine as to Ford's knowledge or subjective "motivation").

documents," and Honda was free "to question the credibility of [the expert's] sources . . . on cross-examination").

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny Ford's motion to exclude Dr. Jordan's safety and testing opinions.

Dated: August 26, 2026

Respectfully submitted,

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

/s/ *Mark P. Chalos*

Mark P. Chalos (*pro hac vice*)
222 2nd Ave South, Suite 1640
Nashville, Tennessee 37219-2423
Telephone: (615) 313-9000
mchalos@lchb.com

Phong-Chau G. Nguyen (S.B. #286789)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
pgnguyen@lchb.com

Annika K. Martin (*pro hac vice*)
Gabriel Panek (*pro hac vice*)
Lucas Issacharoff (*pro hac vice*)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
akmartin@lchb.com
gpanek@lchb.com
lissacharoff@lchb.com

Cody R. Padgett (S.B. #275553)
Majdi Y. Hijazin (*pro hac vice*)
Abigail J. Gertner (*pro hac vice*)
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
cody.padgett@capstonelawyers.com
majdi.hijazin@capstonelawyers.com
abigail.gertner@capstonelawyers.com

William A. Kershaw
Stuart C. Talley

Ian J. Barlow
KERSHAW TALLEY BARLOW PC
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 779-7000
Facsimile: (916) 244-4829
bill@ktblegal.com
stuart@ktblegal.com
ian@ktblegal.com

Russell D. Paul (*pro hac vice*)
Amey J. Park (*pro hac vice*)
Natalie Lesser (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
rpaul@bm.net
apark@bm.net
nlesser@bm.net

Thomas P. Thrash (*pro hac vice*)
William T. Crowder (*pro hac vice*)
THRASH LAW FIRM PA
1101 Garland Street
Little Rock, AR 72201
Telephone: (501) 374-1058
tomthrash@sbcglobal.net
willcrowder@thrashlawfirmpa.com

Patrick Newsom (*pro hac vice*)
NEWSOM LAW PLC
40 Music Square East
Nashville, Tennessee 37203
Telephone: 615-251-9500
patrick@newsom.law

*Attorneys for Plaintiffs and the Proposed Classes*