# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

VANESSA MILLER, et al., as individuals and on behalf of all others similarly situated,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendant.

CASE NO.: 2:20-cv-01796-DAD-CKD

DEPOSITION OF STEVEN B. BOYLES
VOLUME I
LOS ANGELES, CALIFORNIA
FRIDAY, MAY 15, 2026

REPORTED BY: NATALIE PARVIZI-AZAD, CSR, RPR, RSR
CSR NO. 14125

Q. So, talking about just the damages model that you developed, not anything that you may be asked to do in the future or someone else may do in the future, does your damages model in any way, today, take into account the fact that there are different engine sizes for different class vehicles? 12:54:39 12:54:41 12:54:43 12:54:46 12:54:49 12:54:53

A. It certainly does, in light of the fact that these are variable, and that variables can have different values based on whatever the determination is. There's not an explicit analysis conducted yet that says, "Here's the different vehicles. Here's the -- here's the replacement cost, so that's the cost we're going to use." That, I understand, would happen during a merits phase. 12:55:09 12:55:10 12:55:10 12:55:15 12:55:19 12:55:21 12:55:23 12:55:25

And so, what I've provided is a formula that can be applied on a class-wide basis, using whatever those variables are going to ultimately be. 12:55:26 12:55:29 12:55:32

Q. So to the extent the engine assembly part cost the average labor cost or the total hours necessary to perform the repair procedures varies, depending on agent -- on engine size, your model may reflect or may account for differences in the different engine sizes in class vehicles; correct? 12:55:38 12:55:41 12:55:43 12:55:49 12:55:53 12:55:56

A. It can account for that based on jurisdiction, based on engine sizes, based on, as we 12:55:58 12:56:01

then that would be potential additional harm, just 14:07:52
as the inconvenience of having to go through that 14:07:55
process. 14:07:57

Q. How would -- sorry. Were you finished? 14:07:58

A. No, I'm finished. Thank you. 14:08:04

Q. How would we determine whether someone who 14:08:05
requires and receives a complete engine replacement 14:08:08
under warranty that's covered free of charge was 14:08:10
still damaged? 14:08:13

A. Well, I think there's maybe two points to 14:08:13
make there. One, we'd have to understand what the 14:08:30
replacement was. If it was -- I mean, I'm assuming 14:08:31
that the -- the logistics of this process would be 14:08:35
if there's an introduction of warranty data, and 14:08:41
that warranty data says, "Here is what was replaced. 14:08:47
There's no more saw cut. There's no issue. Move 14:08:50
on," there's likely no harm outside, at least as of 14:08:54
that point. 14:08:58

Initially, there's still harm. There's 14:08:59
still damage that was then subsequently mitigated. 14:09:01
There's still inconvenience, which potentially could 14:09:07
be additional damage. 14:09:11

There could be other things, but my 14:09:11
analysis doesn't -- doesn't assess that possibility. 14:09:13
I wasn't asked to assess that possibility. 14:09:15



Veritext Legal Solutions
866-299-5127 calendar-ca@veritext.com www.veritext.com

Q. Does the damages model -- can the damages model that you came up with for this case be used to calculate damages to someone who requires and receives an engine replacement under warranty that's covered free of charge? 14:09:18 14:09:21 14:09:25 14:09:31 14:09:34

A. As a new car buyer, my assumption would be that that individual this -- this model would not applicable to, but as we describe earlier, if it's a subsequent used car buyer, and there's a warranty and a proper replacement for that individual, again, without the other caveats included, the previous owner would still be -- this model would still be applicable to that previous owner. 14:09:42 14:09:50 14:09:55 14:09:58 14:10:01 14:10:06 14:10:10 14:10:14

Q. Do you know how many people in the potential class have received a covered engine replacement? 14:10:17 14:10:20 14:10:23

A. I do not. 14:10:24

Q. Would that affect your opinion? 14:10:24

A. No. 14:10:46

Q. Does the milage at which engine failure occurred in any way affect your analysis? 14:10:46 14:10:46

A. No. 14:10:46

Q. Does it matter if an engine failure, for purposes of your analysis, occurs in or outside warranty? 14:10:50 14:10:50 14:10:53

A. It does not other than I would assume again, if we're getting into a subsequent mitigating factor, that might be something that needs to be dealt with during the merits phase. But as far as the analysis goes as of the date of transaction, then, no. 14:10:57 14:11:01 14:11:04 14:11:08 14:11:11 14:11:13

Q. If I understand your opinions correctly, all class vehicles are damaged in the same amount, correct, subject to the variables? 14:11:14 14:11:15 14:11:21

A. The -- the -- the -- the opinion is that the cost of repair is the same -- the theory is the same for all class vehicles. As we talked about a short while ago, there could be slight differences to the value of each variable based on, at least in part, the size of the engine, the actual -- is it short block or long block, and maybe the jurisdiction that the individual would be -- or that even vehicle would be repaired within. 14:11:26 14:11:29 14:11:34 14:11:39 14:11:42 14:11:46 14:11:48 14:11:51 14:11:56

So I think there's -- those are there the similarities and differences that I would imagine, and then there could be subsequent mitigating and allocation differences. 14:12:04 14:12:06 14:12:08 14:12:12

Q. Setting aside differences in these variables, all class vehicles are damaged in the same manner; correct? 14:12:12 14:12:14 14:12:18

Q. How do we determine whether this calculation that you've proposed needs to be adjusted or reduced for any given class member? 15:47:51 15:47:55 15:48:00

A. Well, the calculation does not need to adjusted. The variables as -- as described throughout this report are likely going to be different no matter how you apply the formula. If you apply the formula in Texas versus California or nationwide there could be different inputs to the variables; it could be different labor rates; it might be different time commitment; it might be different values to the part itself. 15:48:03 15:48:05 15:48:07 15:48:09 15:48:09 15:48:17 15:48:19 15:48:21 15:48:25

Then, as I've described numerous times, I haven't contemplated exactly how the allocation will be conducted, because we need to understand what the class is, but we can apply a percentage as one example based on years of service or months in service or some aspect to each of those components to allocate that individual variable. So if the variable is $3,000 and it's 50/50 applied to a new car owner and a used car owner then you'd apply 50 percent to that variable as well. 15:48:27 15:48:30 15:48:33 15:48:36 15:48:41 15:48:44 15:48:48 15:48:51 15:48:57 15:49:00

Q. Is it possible that a -- for a given vehicle, that has multiple owners, the cost of repair could be three times the $5,871.17 you've 15:49:02 15:49:09 15:49:13

Q. Were there outliers in Schedule 1? 16:39:56

A. Well, I didn't assess whether or not there were outliers, based on the purpose of this schedule, which was just to represent the information that was, at least, produced to date. 16:39:59 16:40:01 16:40:04 16:40:05

But looking at this, I can see that the information -- that the first row looks like it's, you know, certainly higher than some of the others, but there isn't a specific comparison of different parts and whether or not, on a part-by-part basis, there would be similarities in pricing. 16:40:08 16:40:14 16:40:17 16:40:22 16:40:24 16:40:26

Q. Do you think the named plaintiffs are representative samples of the total population of all class vehicle purchasers? 16:40:29 16:40:31 16:40:33

MR. PADGETT: Objection. Calls for a legal conclusion. Vague and ambiguous. 16:40:37 16:40:39

A. I certainly haven't provided an opinion on that. I don't know that I have an opinion on whether or not they're representative. 16:40:44 16:40:46 16:40:48

Do you mean as individuals or based on their -- their invoices of repairs? 16:40:50 16:40:52

Q. Based on their cost of repairs. 16:40:55

MR. PADGETT: Same objections. 16:41:00

A. I think, just as I described earlier, these are data points that were utilized for current 16:41:01 16:41:03

purposes in conjunction with review of -- of other 16:41:09
data that I've seen. I would anticipate that if 16:41:11
warranty data was provided and reviewed, we could 16:41:17
see -- and provide a more accurate representation of 16:41:20
what those costs might be in different 16:41:25
jurisdictions, for different types of vehicles, 16:41:27
different size blocks, or, you know, short blocks 16:41:30
and long blocks, et cetera. 16:41:32

Q. The labor rates and part costs that you've 16:41:34
included in your report, as I understand your 16:41:48
testimony today, those aren't necessarily the rates 16:41:51
or the part costs that you would believe should be 16:41:54
applied to any individual class member's damage 16:42:02
calculation, they're just representative of the 16:42:07
rates that could be applied; correct? 16:42:14

A. I think that's fairly accurate in that 16:42:15
what I'm -- what I was trying to achieve here was 16:42:19
demonstrating that there was a -- a method that 16:42:22
could be applied, there was access to information 16:42:25
that could be utilized to perform the formula, and 16:42:27
here is examples of that information. 16:42:35

Depending on what the ultimate class 16:42:37
certified to be, whether by state or type of 16:42:39
vehicle, time frame, et cetera, we could hone in on 16:42:45
this type of information, including utilization of 16:42:48

warranty database, assuming it's got prizing 16:42:50
information in it, and we could apply that 16:42:53
information to the formula and run those 16:42:57
calculations. 16:42:59
Q. I believe you told me this morning, when 16:43:05
we first started talking, that all of your opinions, 16:43:06
the opinions that you've formed to date, are 16:43:09
contained in your expert report. 16:43:12
Do you recall that? 16:43:13
A. It sounds reasonable that I would have 16:43:14
stated that, yes. 16:43:19
Q. Is there anything, based on your testimony 16:43:20
today or your review of your report, that you want 16:43:21
to change in your report or that you think is no 16:43:23
longer accurate or needs modifying? 16:43:26
A. I don't believe so, no. 16:43:30
Q. Okay. 16:43:31
MS. LAURENDEAU: I have no more questions. 16:43:31
Thank you for your time. 16:43:32
THE WITNESS: Thank you. 16:43:33
MR. PADGETT: Let's go off the record for 16:43:34
a second. 16:43:35
THE VIDEOGRAPHER: The time is 4:44 p.m., 16:43:37
and we're off the record. 16:43:39
(Discussion held off the record.) 16:43:39

CERTIFIED STENOGRAPHER'S CERTIFICATE

STATE OF CALIFORNIA )
) SS.
COUNTY OF LOS ANGELES )

I, NATALIE PARVIZI-AZAD, HERBY CERTIFY:

I AM A DULY QUALIFIED CERTIFIED SHORTHAND REPORTER IN THE STATE OF CALIFORNIA, HOLDER OF CERTIFICATE NUMBER CSR 14125 ISSUED BY THE COURT REPORTERS BOARD OF CALIFORNIA AND WHICH IS IN FULL FORCE AND EFFECT. (BUS. & PROF. § 8016)

I AM NOT FINANCIALLY INTERESTED IN THIS ACTION AND NOT A RELATIVE OR EMPLOYEE OF ANY ATTORNEY OF THE PARTIES, OR OF ANY OF THE PARTIES. (CIV. PROC. § 2025.320(A))

I AM AUTHORIZED TO ADMINISTER OATHS OR AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE, SECTION 2093 (B) AND PRIOR TO BEING EXAMINED, THE DEPONENT WAS FIRST PLACED UNDER OATH OR AFFIRMATION BY ME. (CIV. PROC. §§ 2025.320, 2025.540(A))

I AM THE CERTIFIED OFFICER THAT STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE FOREGOING PROCEEDING AND THE FOREGOING TRANSCRIPT IS A TRUE RECORD OF THE TESTIMONY GIVEN. (CIV. PROC. § 2025.540(A))

I HAVE NOT, AND SHALL NOT, OFFER OR PROVIDE ANY SERVICES OR PRODUCTS TO ANY PARTY'S ATTORNEY OR THIRD PARTY WHO IS FINANCING ALL OR PART OF THE ACTION WITHOUT FIRST OFFERING SAME TO ALL PARTIES OR THEIR ATTORNEYS ATTENDING THE PROCEEDING AND MAKING SAME AVAILABLE AT THE SAME TIME TO ALL PARTIES OR THEIR ATTORNEYS. (CIV. PROC § 2025.320(B))

I SHALL NOT PROVIDE ANY SERVICE OR PRODUCT CONSISTING OF THE CERTIFIED STENOGRAPHER'S NOTATIONS OR COMMENTS REGARDING THE DEMEANOR OF ANY WITNESS, ATTORNEY, OR PARTY PRESENT AT THE PROCEEDING TO ANY PARTY OR ANY PARTY'S ATTORNEY OR THIRD PARTY WHO IS FINANCING ALL OR PART OF THE ACTION, NOR SHALL I COLLECT ANY PERSONAL IDENTIFYING INFORMATION ABOUT THE WITNESS AS A SERVICE OR PRODUCT TO BE PROVIDED TO ANY PARTY OR THIRD PARTY WHO IS FINANCING ALL OR PART OF THE ACTION. (CIV. PROC. § 2025.320(C))

DATED: May 28, 2026



NATALIE PARVIZI-AZAD, CSR NO.14125