# EXHIBIT D

*CONFIDENTIAL*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VANESSA MILLER, PATSY LUND, AMBER WEST, EVAN WEST, DARRICK CHRISTODARO, AMY HOFFER, JILLIAN CONSTABLE, MONTERIO BUTCHER, HARLAMPI BOZHINOV, MARY GLADE, TERESA BALASZEK, CRAIG MORFORD, KELLI MORFORD, AARON MANFRA, VICTORIA MANFRA, STACEY COPPOCK, RACHEL GOODRICH, BRIAN SIMONDS, DAVID SCHIAVI, ROBYN PIROG, ZACHARY SCOTT DAMM, AMANDA GATES, SHARI TECHLIN, TYSON JOHN BATDORF, ANTHONY CICERO, DAVID GONZALEZ, JEFFERY HODGES, MARK KENNEDY, JOHN KRECEK, TRACEY ANN METRO, SCOTT PICKERING, KIMBERLY THOMAS as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 2:20-cv-01796-DAD-CKD (Consolidated with Nos. 2:21-cv-00417-DAD-CKD, 2:21-cv-00468-DAD-CKD) |
| TREVOR NELSON, SARAH NELSON, DARRYL BUTLER, and ALEJANDRO FRADES, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 2:24-cv-02231-DAD-CKD |

**SUR-REBUTTAL DECLARATION OF PETER ROSSI, PH.D.**

**June 1, 2026**

1. Dr. Guofang Huang, who has been retained by Plaintiffs in this matter, rebuts my analysis[1] of the impact of the alleged Engine Defect disclosure on used Class Vehicle prices in his report of April 17, 2026.[2] Dr. Huang does not dispute the central proposition of my analysis that used vehicle prices reflect consumer perceptions and consumer preferences and, therefore, can be used to directly test whether disclosure of the alleged Engine Defect would cause vehicle prices to fall as Plaintiffs' damage expert contends.[3] Indeed, to do so would contradict his own empirical work that uses very similar approaches with used vehicle data. Instead, Dr. Huang incorrectly claims[4] that my analysis lacks statistical power and should be discounted on this basis.[5, 6]

2. Statistical power is the ability of a statistical procedure to detect departures from a maintained or null hypothesis. A simple example will be helpful to explain this idea as well as to see the fundamental error made by Dr. Huang. Imagine that we plan to collect data on the heights of a sample of US adults. Our goal is to examine the difference between the heights of men and women and determine if there is a statistically significant difference in height. Here the null hypothesis is

---

1 I previously submitted a declaration in this matter dated March 20, 2026, in which I assessed the extent to which there exists valid economic evidence that Class Members have overpaid for the Class Vehicles or have suffered a loss in value of their Class Vehicles due to the Engine Defect alleged by Plaintiffs. *See* Declaration of Peter Rossi, Ph.D., *Vanessa Miller et al., v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-01796-DAD-CKD; and *Trevor Nelson et al. v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:24-cv-02231-DAD-CKD, March 20, 2026 ("Rossi Declaration").

2 Expert Rebuttal Report of Dr. Guofang Huang, *Vanessa Miller et al., v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-01796-DAD-CKD; and *Trevor Nelson et al. v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:24-cv-02231-DAD-CKD, April 17, 2026 ("Huang Report").

3 *See, e.g.*, Expert Report of Steven B. Boyles, *Vanessa Miller et al., v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-01796-DAD-CKD; and *Trevor Nelson et al. v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:24-cv-02231-DAD-CKD, March 20, 2026 ("Boyles Report"), ¶ 51 ("Furthermore, irrespective of the quality or completeness of the data produced in this matter, the above formula provides an effective and reasonable approach to compensate class members for the reduction in value to the vehicles they purchased.").

4 Dr. Huang also incorrectly criticizes my use of J.D. Power's "clean condition" trade-in values. It would be inappropriate to use other condition types from J.D. Power in my analysis. *See* Huang Report, ¶ 13.

5 *See, e.g.*, Huang Report, ¶ 50 ("As I have explained above, Dr. Rossi's tests have low power. Therefore, his test results do not conclusively disprove that disclosure of the alleged engine defect lowers consumer value for the Class Vehicles.").

6 In the interest of brevity, I am not addressing all of the errors made in Dr. Huang's report and deposition.

that men and women have the same population average height. With our sample of adults, we can compare the sample mean of women's heights with the sample mean of men's heights. If these means are "far enough" apart, we will reject or refute the null hypothesis of equal population heights for men and women. That is, if the difference in mean heights exceeds a specific threshold value, we will reject the null of equal mean population heights.

3. The power of this procedure is the ability of the procedure to reject the null hypothesis when the population heights are indeed different. This power is expressed as a probability (*e.g.*, 90 per cent or 0.9). Clearly, power depends in part on exactly how large the differences in population height between men and women are. If we use a sample of 100 men and women, we will have high power against large differences in height[7] but very low power against small differences. If the true difference in heights is only 0.25 inches then the power of our procedure is likely to be small. On the other hand, if the true difference is on the order of several inches, samples of size 100 or so can provide good power values. It is always possible to claim that any statistical analysis, no matter how rigorous or how informative the sample, has low power against certain alternatives that represent very small deviations from the null hypothesis. This is precisely the error Dr. Huang has committed.

4. Plaintiffs' damages expert, Mr. Boyles, claims that, once the alleged Engine Defect is known to the marketplace, Class Vehicles will experience a "reduction in value" of more than $5,000 ($5,871.17 to be precise).[8] This represents a very large reduction in the value of even new Class Vehicles with MSRPs in the range of $25,025–$31,490 for the 2017 Class Vehicles used in my

---

7 In addition to sample size and differences in means between the heights of men and women, power also depends on the within-group variances for men and women.

8 Boyles Report, ¶¶ 50–51 ("As the formula reflects, using the average cost information for the replacement part per the invoices reviewed, along with an assumption of the applicable hourly labor rate per the table above (e.g., $145 per hour based on the national average) results in a damage value of $5,871.17 per class member. … Furthermore, irrespective of the quality or completeness of the data produced in this matter, the above formula provides an effective and reasonable approach to compensate class members for the reduction in value to the vehicles they purchased.").

analysis, and an even larger reduction in the value of used Class Vehicles.[9] Dr. Huang insists that my analysis lacks power not against reductions in value on the order of that sponsored by Mr. Boyles but against much smaller values, which range from about $1,000 (in his Table 1) to tiny values of only about $30 (in his Table 6).[10] Dr. Huang does not provide these damages values for which his power calculations are determined, as these demonstrate that his computations are irrelevant to the issue of power for the use of my analysis. Instead, he incorporates arbitrary values of both awareness and probability of "having to make the necessary [engine] replacements"[11] in order to reduce the damages values to smaller numbers sufficient to apply his power criticism.[12]

5. To illustrate the severity of this error, I corrected the power calculations in Dr. Huang's Table 1 in the table below. All power values exceed 0.89, and the majority are above 0.99. Dr. Huang's complaints regarding power are simply not relevant to my analysis. I never claimed that my analysis would have high power against damages numbers between 1/6 and 1/100 of those claimed by Plaintiffs' damages expert, Mr. Boyles.

---

9 Rossi Declaration, Tables 4–7.

10 The implied damages ranges for Tables 1–6 of the Huang Report are $900–$1,325, $450–$662.50, $270–$397.50, $90–132.50, $45–$66.25, and $27–$39.75, respectively. I calculated the implied damages ranges using the formula $\beta_{7jk}^{max} \times MSRP_{Class\ Vehic} \times 24$, where $\beta_{7jk}^{max}$ is the effect size reported in Tables 1–6 of the Huang Report, and the $MSRP_{Class\ Vehicle}$ is the MSRP reported for Class Vehicles in Table 4–7 of the Rossi Declaration. The resulting monthly damages amounts ($\beta_{7jk}^{max} \times MSRP_{Class\ Vehicle}$) are then multiplied by 24 to obtain the total damages ranges for the "two-year test period" used in Dr. Huang's power analysis.

11 Huang Report, ¶¶ 40–41.

12 Dr. Huang's power analysis contradicts Plaintiffs' damages expert, Mr. Boyles, because Dr. Huang's power analysis relies on an assumed incidence rate for manifestation of the alleged Engine Defect. In contrast, Mr. Boyles's damages estimate does not account for the incidence rate because his theory of damages is based on the allegation that all Class Members were damaged "regardless of whether the faulty part makes itself known to the consumer or causes performance issues." *See* Boyles Report, ¶ 21.

**Table 1. Correcting Dr. Huang's Calculations for the Upper Bounds on the Power of the Tests in the Rossi Declaration**

| | | | | **As Calculated in the Huang Report** | | **Corrected Calculation** | |
|---|---|---|---|---|---|---|---|
| Source Table | Class Vehicle | Variable | Std Err | $\beta_{7jk}^{max}$ | Power | $\beta_{7jk}^{max}$ | Power |
| G1 | 2017 Ford Escape 1.5L | Ford Escape 2.5L × 2024 × t | 0.001 | 0.0014 | 0.4144 | 0.0094 | 1.0000 |
| G1 | 2017 Ford Escape 1.5L | Ford Escape 2.5L × 2025 × t | 0.001 | 0.0014 | 0.4144 | 0.0094 | 1.0000 |
| G1 | 2017 Ford Escape 1.5L | Honda CR-V EX × 2024 × t | 0.002 | 0.0014 | 0.1757 | 0.0094 | 0.9986 |
| G1 | 2017 Ford Escape 1.5L | Honda CR-V EX × 2025 × t | 0.002 | 0.0014 | 0.1757 | 0.0094 | 0.9986 |
| G1 | 2017 Ford Escape 1.5L | Chevrolet Equinox LS × 2024 × t | 0.001 | 0.0014 | 0.4144 | 0.0094 | 1.0000 |
| G1 | 2017 Ford Escape 1.5L | Chevrolet Equinox LS × 2025 × t | 0.002 | 0.0014 | 0.1757 | 0.0094 | 0.9986 |
| G2 | 2017 Ford Escape 2.0L | Ford Escape 2.5L × 2024 × t | 0.001 | 0.0014 | 0.4046 | 0.0078 | 1.0000 |
| G2 | 2017 Ford Escape 2.0L | Ford Escape 2.5L × 2025 × t | 0.001 | 0.0014 | 0.4046 | 0.0078 | 1.0000 |
| G2 | 2017 Ford Escape 2.0L | Honda CR-V EX-L × 2024 × t | 0.002 | 0.0014 | 0.1725 | 0.0078 | 0.9868 |
| G2 | 2017 Ford Escape 2.0L | Honda CR-V EX-L × 2025 × t | 0.002 | 0.0014 | 0.1725 | 0.0078 | 0.9868 |
| G2 | 2017 Ford Escape 2.0L | Chevrolet Equinox Premier × 2024 × t | 0.002 | 0.0014 | 0.1725 | 0.0078 | 0.9868 |
| G2 | 2017 Ford Escape 2.0L | Chevrolet Equinox Premier × 2025 × t | 0.002 | 0.0014 | 0.1725 | 0.0078 | 0.9868 |
| G3 | 2017 Ford Fusion 1.5L | Ford Fusion 2.5L × 2024 × t | 0.001 | 0.0016 | 0.4793 | 0.0098 | 1.0000 |
| G3 | 2017 Ford Fusion 1.5L | Ford Fusion 2.5L × 2025 × t | 0.001 | 0.0016 | 0.4793 | 0.0098 | 1.0000 |
| G3 | 2017 Ford Fusion 1.5L | Honda Accord × 2024 × t | 0.002 | 0.0016 | 0.1977 | 0.0098 | 0.9993 |
| G3 | 2017 Ford Fusion 1.5L | Honda Accord × 2025 × t | 0.002 | 0.0016 | 0.1977 | 0.0098 | 0.9993 |
| G3 | 2017 Ford Fusion 1.5L | Toyota Camry × 2024 × t | 0.002 | 0.0016 | 0.1977 | 0.0098 | 0.9993 |
| G3 | 2017 Ford Fusion 1.5L | Toyota Camry × 2025 × t | 0.002 | 0.0016 | 0.1977 | 0.0098 | 0.9993 |
| G4 | 2017 Ford Mustang 2.3L | Ford Mustang 3.7L × 2024 × t | 0.001 | 0.0020 | 0.6180 | 0.0086 | 1.0000 |
| G4 | 2017 Ford Mustang 2.3L | Ford Mustang 3.7L × 2025 × t | 0.001 | 0.0020 | 0.6180 | 0.0086 | 1.0000 |
| G4 | 2017 Ford Mustang 2.3L | Chevrolet Camaro × 2024 × t | 0.002 | 0.0020 | 0.2501 | 0.0086 | 0.9960 |
| G4 | 2017 Ford Mustang 2.3L | Chevrolet Camaro × 2025 × t | 0.002 | 0.0020 | 0.2501 | 0.0086 | 0.9960 |
| G4 | 2017 Ford Mustang 2.3L | Dodge Challenger × 2024 × t | 0.003 | 0.0020 | 0.1590 | 0.0086 | 0.8904 |
| G4 | 2017 Ford Mustang 2.3L | Dodge Challenger × 2025 × t | 0.003 | 0.0020 | 0.1590 | 0.0086 | 0.8904 |

**Notes**:
[1] The results produced by Dr. Huang's "PowerCalculation.ipynb" code do not match the results reported in Table 1 of the Huang Report (with a margin of difference between 1.8% and 4.7%). This table presents results for Dr. Huang's power analysis based on the output of his code.
[2] For calculating power for the 2017 Ford Escape 1.5L in Michigan based on the results I presented in Table G-1 of the Rossi Declaration, Dr. Huang incorrectly uses the 2024 *pMSRPr* value for the 2017 Ford Escape 1.5L in California (0.3442), instead of that in Michigan (0.3404). For the corrected power calculations, I use the same input that Dr. Huang uses, with the exceptions of using the correct maximum effect size ($\beta_{7jk}^{max}$) under Plaintiffs' damages framework, and the 2024 *MSRP* value for the 2017 Ford Escape 1.5L in Michigan.

**Sources**: Huang Report; J.D. Power Data; Rossi Declaration.

6. In addition, it's unnecessary for me to conduct a standalone power analysis because my analysis includes multiple statistically significant coefficients. The critical part of my analysis is the estimated accumulated differential depreciation provided in Tables 8–11 of the Rossi Declaration. These tables provide 12 comparisons between Class Vehicles and comparator vehicles. Of these 12, three are statistically significant – one at the 0.05 level and two at the 0.008 level. These are highly significant results, although the sign is counter to Plaintiffs' claims –in these cases, the Class Vehicles' depreciation is *lower* (relative to the base period) than the comparator vehicles. But the fact that there are statistically significant results indicates that the analysis does have power. In particular, these results show a differential depreciation rate of $1,000–$3,000, showing power against these levels of differential depreciation.

7. In summary, Dr. Huang has conducted a power analysis of much smaller damages values than Plaintiffs contend are relevant. A corrected power analysis of the appropriate damage levels shows that my analysis has high power. This is to be expected due to the presence of highly significant results (but of the opposite sign expected by Plaintiffs).

Signed this 1st day of June 2026 in Los Angeles, California

Peter E. Rossi

# Appendix A. Materials Considered

**Legal Documents**

Declaration of Peter Rossi, Ph.D., *Vanessa Miller et al., v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-01796-DAD-CKD; and *Trevor Nelson et al. v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:24-cv-02231-DAD-CKD, March 20, 2026.

Expert Rebuttal Report of Dr. Guofang Huang (along with produced documents), *Vanessa Miller et al., v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-01796-DAD-CKD; and *Trevor Nelson et al. v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:24-cv-02231-DAD-CKD, April 17, 2026.

Expert Report of Steven B. Boyles, *Vanessa Miller et al., v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-01796-DAD-CKD; and *Trevor Nelson et al. v. Ford Motor Company*, U.S. District Court, Eastern District of California, Case No. 2:24-cv-02231-DAD-CKD, March 20, 2026.

**Data**

J.D. Power Data.